BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: ORAL PHENYLEPHRINE LITIGATION | ) ) ) | MDL No. ____ |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION
FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Erin Barton, Sam Gallo, Kimberly Buscaglia, and Francis Catanese ("Movants"), respectfully submit this brief in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

Movants seek transfer and assignment of all pending Actions[1] against those companies that have marketed and sold oral purported decongestants that contain the compound phenylephrine as listed in the Schedule of Actions,[2] as well as any subsequently-filed actions involving similar facts or claims ("tag-along actions"), to the District of New Jersey, the location of multiple defendants' headquarters. There are presently at least thirteen substantially similar Actions, filed on behalf of plaintiffs and proposed nationwide and statewide classes in nine different federal district courts alleging substantially the same wrongful conduct on the part of the named defendants.

All Actions involve common questions of law and fact that arise from the defendants' sale of oral decongestants containing phenylephrine ("Decongestant Products") that Plaintiffs allege defendants knew did not actually work to decongest.

---

[1] All defined terms have the definitions assigned to them in Plaintiffs' contemporaneously-filed transfer motion.

[2] The Schedule of Actions is current as of 2:30 PM ET on September 18, 2023.

**I.     BACKGROUND**

Phenylephrine is one of two compounds found in nasal decongestant products administered orally and offered for sale to consumers on store shelves. The other compound is pseudoephedrine. While pseudoephedrine is an effective decongestant, purchasing products containing it is often difficult: because pseudoephedrine has been used in illicit methamphetamine laboratories, consumers are restricted in the amount of it that may be purchased, and products containing pseudoephedrine usually are placed behind store counters or in locked cabinets, with purchasers often required to produce identification and leave personal information during each purchase. Plaintiffs allege that, unknown to consumers, but known to Defendants (marketers of Decongestant Products purchased by a plaintiff in a pending Action) orally administered phenylephrine is no more effective than a placebo. In the last year alone nearly $1.8 billion in sales of Decongestant Products occurred in the United States across more than 250 separate products. Plaintiffs allege each such sale was deceptive, violated the consumer protection laws of various states, breached warranties, and was otherwise illegal.

**II.    LEGAL STANDARD**

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id*; *see also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

### III.     ARGUMENT

The Actions, and the many tag-along actions that will follow, are appropriate for Section 1407 transfer because they involve common issues and transfer will benefit the parties, witnesses, and courts. In short, each case will turn on issues relating to the purported efficacy of the compound phenylephrine, a question of fact identical across each litigation. Further, the proposed transferee forum, the District of New Jersey, is uniquely well-situated as a convenient forum: several major defendants in the Actions have either their global or United States headquarters in the District of New Jersey, including defendants Reckitt Benckiser LLC (Mucinex products), Kenvue Inc., Johnson & Johnson Consumer Companies Inc. (Sudafed and Tylenol products), and Bayer Corp (Alka-Seltzer products). Several of the other defendants—including GlaxoSmithKline and McNeil Consumer Healthcare—have their U.S. and/or global headquarters in nearby Pennsylvania—and McNeil is owned by defendant Kenvue, which, as noted, is headquartered in New Jersey. To the best of the undersigned's knowledge every defendant transacts business in the district. Given the number of defendants located in and around New Jersey and the fact that many witnesses will be located there, transfer to the District of New Jersey is most appropriate.

### Transfer of These Actions Is Appropriate Under 28 U.S.C § 1407

Multidistrict litigation "eliminate[s] the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Multidistrict litigation thus avoids 'duplicative discovery; prevent[s] inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1383 (J.P.M.L. June 2, 2017).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly [and] chaotic" action is greatest. *In re Plumbing Fixture Cases*, 298 F. Supp. at 493.  Here, all factors weigh heavily in favor of multidistrict litigation.

### **The Actions Involve Common Fact Issues and Should be Heard Together**

At least thirteen class cases relating to the efficacy and sale of the Decongestant Products have been filed across the United States. More will almost certainly be filed in the coming days. Each of the pending complaints makes materially identical allegations, including:

- Defendants manufacture and sell oral decongestants containing phenylephrine (the "Decongestant Products").

- The Decongestant Products do not work as decongestants.

- Defendants knew that their Decongestant Products do not work as decongestants, and sold them anyway.

- Defendants accordingly are liable to plaintiffs and all other purchasers of Decongestant Products.

The near identity of claims means that any court tasked with resolving one of these lawsuits would face the same fundamental legal and factual issues across all of these cases.  Indeed, whatever the causes of action technically alleged, resolution of each of the cases filed to date will likely turn on two basic factual questions: (1) whether the Decongestant Products are no more

4

effective than placebo at providing decongestant relief; and (2) whether Defendants knew or should have known the Decongestant Products were no more effective than placebo.

The first of these questions—whether the Decongestant Products are, in fact, ineffectual—is a pure question of fact that applies to each Defendant's product(s) and would, on its own, require centralization of these matters. While sold under different names and by different companies, the Decongestant Products each purportedly works due to the inclusion of the compound phenylephrine. Plaintiffs allege that orally-administered phenylephrine is, in fact, no better at decongesting than a sugar pill. In other words, the core factual inquiry will not be particular to each Defendant's product(s), but to the compound on which each product is built. Where the "parties in all actions are likely to use many of the same experts" and where the actions concern the same scientific issues, "[c]entralization will minimize duplication of this expert discovery as well as pretrial motion practice related to expert issues [and will] prevent inconsistent rulings with respect to class certification." *In re Hair Relaxer Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 3060, 2023 WL 1811836, at *2 (J.P.M.L. Feb. 6, 2023).

Indeed, the JPML routinely centralizes cases where a question common to the matters is the efficacy of a drug or medical practice. *See*, *e.g.*, *In re Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, 224 F. Supp. 3d 1330, 1332 (J.P.M.L. 2016) (transferring case involving drug with the "same mechanism" as drug in other action, and noting transfer particularly appropriate where actions "involve many of the same [scientific] studies."); *In re: Pradaxa (dabigatran etexilate) Prod. Liab. Litig.*, 883 F. Supp. 2d 1355 (J.P.M.L. 2012) (consolidating all actions that "share common questions" about effect of drug); *In re Accutane Prod. Liab. Litig.*, 343 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004) (centralizing actions where all involve common questions relating to the development of a given drug and defendants' knowledge of that drug's effects); *In re: Xarelto*

5

*(Rivaroxaban) Prod. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014) (recognizing necessity for centralization, even in context of personal injury litigation, where issue includes efficacy and dangerousness of a drug); *cf. In re Prac. of Naturopathy Litig.*, 434 F. Supp. 1240, 1242 (J.P.M.L. 1977) (centralization appropriate where common issue among suits is whether a given medicinal practice is "beneficial and efficacious.").

The second core factual question—whether Defendants knew that the Decongestant Products were ineffectual—is, likewise, a question of fact subject to common proof. The parties will almost certainly employ experts not only to explain and contextualize studies regarding the efficacy of phenylephrine, but also to discuss industry practice and standards that would impact Defendants' knowledge of those studies' content. In short, Plaintiffs are likely to argue that Defendants would keep up with appropriate scientific research, and accordingly that each Defendant was necessarily aware that phenylephrine was no more effective in oral form than a placebo.

The JPML has recognized that where factual questions relate to industry standards or common practices, centralization may be appropriate. *See*, *e.g.*, *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020) (whether Defendant's practices "met industry standards" was a common question supporting centralization); *In re Commodity Credit Corp. Litig. Involving Grain Shipments (No. 11)*, 364 F. Supp. 462, 463 (J.P.M.L. 1973) (centralizing over Defendants' objection where core question was industry standard for practice impacting litigation). *Cf. In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022) (recognizing that where "all defendants are in the same industry with similarly allegedly infringing products" centralization is warranted, particularly where the impact of the same "industry standards" relates to the action's disposition).

These two core factual issues—individually or in combination—compel centralization for the sake of efficiency and the avoidance of conflicting rulings. In addition, however, other factors weigh in favor of centralization to promote orderly and consistent resolution of legal and factual questions.

First, while a question of law, it should be noted that each case is likely to turn on whether the claims asserted are preempted by applicable federal law (at all, in whole, or in part). The possibility of differing rulings in differing jurisdictions risks the needless creation of a circuit split on a vital legal issue that will likely arise in later cases. *Cf. In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping Litig.*, No. MDL 3074, 2023 WL 3828643, at *1–2 (J.P.M.L. June 2, 2023) (centralizing cases, and noting that "several of the actions involve claims under the same statutes and, as the motions to dismiss filed in several of these cases demonstrate, even motions under different states' statutes will present similar issues.").

Second, the "common early procedural posture among the actions" should favor centralization. *In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022). Each of the Complaints at issue was recently filed and has not been subject to pretrial motion practice, meaning that the transferee court would issue rulings not merely respecting issues of discovery or class definition, but with respect to, e.g., the viability of any master consolidated complaint that would ultimately be filed.

Finally, many claims relating to Defendants' sales of the Decongestant Products have been filed, and many more are likely to follow. Such "increased presence of apparently unique counsel, coupled with the increased number of involved actions, districts, and judges, makes it highly difficult, if not impossible, to coordinate this litigation effectively on an informal basis." *In re:*

*Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II),* 997 F.Supp.2d 1354, 1356 (J.P.M.L. 2014).

In short, determination of these and other common issues in a single district will promote uniform resolution of key questions, reduce costs for parties and witnesses, promote the efficient prosecution and resolution of the phenylephrine-related cases filed thus far (not to mention likely tag-along matters) and, consequently, provide speedier and more consistent decisions. Although multiple defendants are involved, these cases exhibit factual commonalities that have led this Panel to create multidistrict litigations under circumstances with far more diversity of claims and defendants. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Mar. 30, 2020) ("Despite some variances among the actions before us, all share a factual core with the MDL actions: the manufacturer and distributor defendants' alleged knowledge of and conduct regarding the diversion of these prescription opiates, as well as the manufacturers' allegedly improper marketing of the drugs."); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 771 F. Supp. 415, 416-17 (J.P.M.L. 1991) (centralizing litigation involving thousands of different products across nearly five hundred different defendants in light of the "common questions of fact relating to injuries or wrongful death allegedly caused by exposure to asbestos or asbestos containing products").

**Transfer will serve the convenience of the parties and witnesses
and will promote the just and efficient conduct of the Actions**

According to the Manual for Complex Litigation, the following four overlapping factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

1. The elimination of duplicative discovery;

2. The avoidance of conflicting rules and schedules;

3. The reduction of litigation cost; and

    4.  The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.

 Each factor weighs clearly in favor of transfer here.

### a. Transfer Will Eliminate Duplicative Discovery.

 Because each Action is based upon similar facts, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). Given this duplicative discovery, transfer would inevitably conserve the parties' resources, *In re Air Crash at Dallas/Fort Worth Airport*, 623 F. Supp. 634, 635 (J.P.M.L. 1985), particularly in light of this matter's size: there are already thirteen cases so far filed in nine Districts spread across eight different states, with those numbers only set to increase.

### b. Transfer Will Avoid Conflicting Rules and Schedules.

 The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

 Pretrial procedures will necessarily involve motions to dismiss, discovery motions, *Daubert* motions, and class certification motions. Conflicting rulings on these motions will cause unnecessary confusion and duplicative effort. Further, although "only" nine district courts have cases now, since Defendants essentially comprise every major purveyor or manufacturer of over-the-counter pharmaceuticals and are alleged to have violated consumer protection statutes through

their sale of widely used oral decongestants, that number is likely to increase as more cases are filed.

### c. Transfer Will Reduce Litigation Costs and Conserve the Time and Effort of the Parties, Attorneys, Witnesses, and Courts.

Each of the Actions, and the many tag-along actions soon to follow, will benefit from having a single transferee judge address and adjudicate issues related to discovery and pretrial motion practice. *In re PineIntel*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004). Otherwise, courts and lawyers may be briefing the same issues in several district courts, across several circuits, with conflicting laws; witnesses may be called to depositions in numerous cases; and third parties may be called to produce documents and witnesses in several different cases. In other words, "only through a coordinated pretrial discovery program, tailored to fit the discovery needs of each party and supervised by a single judge, can overlapping and duplicitous discovery be avoided and the just and efficient conduct of the litigation assured." *In re Aviation Prod. Liab. Litig.*, 347 F. Supp. 1401, 1403–04 (J.P.M.L. 1972).

## **The District of New Jersey Is the Most Appropriate Transferee Forum**

### **1.    The District of New Jersey Is Home To Multiple Defendants.**

This Panel has recognized that a defendant's maintenance of corporate headquarters in a District is one reason to select that district as a transferee forum, because when "defendants maintain headquarters within the district, [that] implies that relevant documents and witnesses will likely be found there." *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004).

Multiple Defendants in the Phenylephrine-related suits have either their global or United States headquarters in the District of New Jersey, including at least Reckitt Benckiser LLC, Kenvue Inc., Johnson & Johnson Consumer Inc, and Bayer Corp. At least one of Johnson & Johnson or Kenvue (formerly Johnson & Johnson's Consumer Healthcare Division) is named in nine of the thirteen actions, and Reckitt Benckiser LLC is named in three. Two cases have already been filed in the District of New Jersey.

Moreover, each Defendant targeted in multiple complaints does substantial business in New Jersey. Indeed, due to the high concentration of pharmaceutical companies in and around New Jersey (beyond even the defendants in this litigation), District of New Jersey courts are familiar with the issues at play in this matter and well-suited to preside over this pharmaceutical case. Unsurprisingly, the JPML has transferred multiple cases involving pharmaceutical companies to the District of New Jersey, including, e.g., *In re Insulin Pricing Litig.*, No. MDL 3080, 2023 WL 5065090, at *3 (J.P.M.L. Aug. 3, 2023); *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, 223 F. Supp. 3d 1345 (J.P.M.L. 2016); *In re Proton-Pump Inhibitor Prod. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1355 (J.P.M.L. 2017); *In re Desloratadine Pat. Litig.*, 502 F. Supp. 2d 1354 (J.P.M.L. 2007).

### 2. The District of New Jersey Is Convenient Because of Its Central Location.

The District of New Jersey is also uniquely geographically convenient for this litigation. With respect to those major company Defendants whose United States or global headquarters are not in New Jersey, they are largely nearby: Procter & Gamble's headquarters are in Cincinnati, Ohio; McNeil Healthcare's headquarters are in Fort Washington, Pennsylvania; and GlaxoSmithKline's U.S. Headquarters are in Philadelphia, Pennsylvania. Many major airports also serve the District of New Jersey. Newark's airport alone serves more than 45 air carriers with nearly 1,200 daily arrivals and departures to domestic and international destinations.[3] A number of other major airports—including in New York City and Philadelphia—are close by. In short, the district is relatively easy to reach from anywhere in the United States, and most witnesses in these matters are within a short flight or train ride from the proposed transferee court.

## IV. CONCLUSION

For the above-stated reasons, Movants respectfully request that the Panel transfer the Actions set forth on the attached Schedule and all subsequently filed tag-along cases for coordinated or consolidated pretrial proceedings before a United States District Court in the District of New Jersey.

Dated: September 18, 2023

Respectfully submitted,

| | |
|---|---|
| /s/James E. Cecchi | /s/ Adam J. Levitt |
| James E. Cecchi | Adam J. Levitt |
| Donald A. Ecklund | John E. Tangren |
| Jordan M. Steele | Daniel R. Schwartz |
| **CARELLA, BYRNE, CECCHI,** | **DICELLO LEVITT LLP** |
| **BRODY & AGNELLO, P.C.** | Ten North Dearborn Street, Sixth Floor |
| 5 Becker Farm Road | Chicago, Illinois 60602 |
| Roseland, New Jersey 07068 | Telephone: (312) 214-7900 |

---

[3] *Get Started Sending and Receiving Cargo at Newark*, Port Authority of New York and New Jersey, https://www.panynj.gov/airports/en/air-cargo/newark.html

| | |
|---|---|
| Telephone: (973) 994-1700<br>jcecchi@carellabyrne.com<br>decklund@carellabyrne.com<br>jsteele@carellabyrne.com | alevitt@dicellolevitt.com<br>jtangren@dicellolevitt.com<br>dschwartz@dicellolevitt.com |
| /s/ Christopher A. Seeger<br>Christopher A. Seeger<br>David R. Buchanan<br>Scott A. George<br>**SEEGER WEISS LLP**<br>55 Challenger Road, 6th Floor<br>Ridgefield Park, New Jersey 07660<br>Telephone: (973) 639-9100<br>cseeger@seegerweiss.com<br>dbuchanan@seegerweiss.com<br>sgeorge@seegerweiss.com | /s/ Paul J. Geller<br>Paul J. Geller<br>Stuart A. Davidson<br>**ROBBINS GELLER RUDMAN<br> & DOWD LLP**<br>225 NE Mizner Boulevard, Suite 720<br>Boca Raton, Florida 33432<br>Telephone: (561) 750-3000<br>pgeller@rgrdlaw.com<br>sdavidson@rgrdlaw.com |

*Counsel for Movants*