BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE LITIGATION | MDL DOCKET NO. Case Pending No. 29 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS COPPOCK AND BAUGHMAN**

Plaintiffs Kaycie Coppock[1] and Jennifer Baughman[2] (collectively "Plaintiffs") respectively submit this interested party response to the *Barton* plaintiffs' Motion for Transfer of Actions Pursuant to 28 U.S.C. §1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion"). *See* Doc. 1. For the reasons set forth in the Motion, Plaintiffs support coordination or consolidation under 28 U.S.C. §1407, but respectively submit that the U.S. District Court for the Eastern District of Louisiana (under the guidance of the Honorable Eldon E. Fallon) is a more appropriate and convenient transferee district for this nationwide litigation.

**I.      INTRODUCTION**

The U.S. Food and Drug Administration ("FDA") held a Non-prescription Drug Advisory Committee ("Committee") meeting on September 11-12, 2023, to discuss the effectiveness of oral phenylephrine as an active ingredient in over-the-counter ("OTC") cough and cold products. Many OTC medicines, including phenylephrine, are sold because they have an ingredient that the FDA generally recognizes as safe and effective ("GRASE") when used as recommended on the product labeling, which is documented in an "OTC monograph." Phenylephrine is found in many of the most common OTC cold and flu medications, including Sudafed PE Sinus Congestion, Vicks

---

[1] Plaintiff Coppock is the named plaintiff in the putative class action case of *Coppock v. Procter & Gamble et al.*, Case No. 2:23-cv-05353 (E.D. La.).

[2] Plaintiff Baughman is the named plaintiff in the putative class action case of *Baughman v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 2:23-cv-07737 (C.D. Cal.).

DayQuil and NyQuil Severe Cold and Flu, Benadryl Allergy D Plus Sinus, Mucinex Sinus-Max, Robitussin Peak Cold Nighttime Nasal Relief, and Theraflu.

The Committee discussed and reviewed previously submitted data and more recent data related to the efficacy of phenylephrine as a nasal decongestant. The Committee concluded—in a 16-0 vote—that the current peer-reviewed scientific data do not support that the recommended dosage of orally administered phenylephrine is effective as a nasal decongestant.[3] The Committee did not raise any concerns about safety issues with phenylephrine at the recommended doses. The FDA will consider the input of the advisory Committee, and the evidence, before taking any action on the status of orally administered phenylephrine. However, the Committee's unanimous conclusion that phenylephrine is not effective as a nasal decongestant has sparked the filing of multiple class action lawsuits.

As of this filing, there are thirteen (13) putative class actions filed in nine (9) different federal jurisdictions against various brand-name and generic manufacturers of products containing phenylephrine, both as a single ingredient product and in combination with other ingredients. Plaintiffs in all of these putative class actions allege that they purchased orally administered phenylephrine-containing products to relieve symptoms of nasal decongestion, and that they purportedly suffered economic injury because phenylephrine is ineffective as a nasal decongestant. All of these putative class actions allege violations of various consumer protection statutes. They also request the same type of economic damages (refunds) and various forms of injunctive relief. Accordingly, Plaintiffs support the transfer of their actions and the other phenylephrine cases listed in the Schedule of Actions (collectively "the Actions"), as well as any tag-along cases subsequently

---

[3] https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-results-recent-advisory-committee-meeting-oral-phenylephrine.

filed involving similar facts or claims, to an appropriate transferee forum. However, Plaintiffs submit that the appropriate forum and transferee judge for this nationwide litigation is the U.S. District Court for the Eastern District of Louisiana before the Honorable Eldon E. Fallon. Judge Fallon presides over Plaintiff Coppock's Action.

Consolidation is appropriate. The inefficacy of orally administered phenylephrine, both as a single ingredient product and in combination with other ingredients, is *the* common denominator in all the putative class action lawsuits filed. For that reason, discovery in all Actions is likely to overlap. Discovery conducted in each of these Actions will be substantially similar and will involve the same documents and witnesses vis-à-vis named defendants. Further, questions of law and fact will undoubtedly overlap between the groups of Actions because they arise from a common factual core—i.e. the ingredient phenylephrine—and they assert similar legal theories and factual allegations. If necessary, the transferee judge could account, at his or her discretion, for any differences among the Actions through the use of appropriate pretrial techniques—such as establishing separate discovery and/or motion tracks related to brand-name products versus generic products—to efficiently manage this litigation. *In re: Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004). As noted by the Panel in *In re: Oxycontin*, "transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re: Oxycontin Antitrust Litig.,* 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) (centralizing litigation, even though several motions to transfer had already been granted).

Absent formal coordination, there will inevitably be duplication in discovery and other pretrial matters, potentially inconsistent pretrial rulings (including rulings on *Daubert* challenges

and class certification motions), and duplication of work for the parties, counsel, and courts. Formal coordination, whereby a Plaintiffs' Steering Committee is appointed, will alleviate many of these concerns. *See In re: Cooper Tire & Rubber Co. Tires Prods. Liab. Litig*., 2001 WL 253115, at *1 (J.P.M.L. Feb. 23, 2001) (centralization under Section 1407 granted where "[m]otion practice and relevant discovery will overlap substantially in each action."); *In re: Cuisinart Food Processor Antitrust Litig*., 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").

While the Panel has not always been eager to centralize litigation on an industry-wide basis, it has not hesitated to do so where it has determined that centralization is the best solution, including where, as here, the litigation: involves several putative class actions filed across the country; concerns products manufactured by common defendants; and alleges the same or similar harm. *See*, *e.g*., *In re: Walgreens Herbal Supplements Mktg. and Sales Pract. Litig*., 109 F. Supp. 3d 1373 (J.P.M.L. 2015) (rejecting arguments for separate MDLs and finding that "a single MDL encompassing all four retailers is necessary to ensure the just and efficient conduct of this litigation."); *In re: Automotive Wire Harness Sys. Antitrust Litig.,* 867 F.Supp.2d 1349, 1350 (J.P.M.L.2012) (centralizing three proposed dockets concerning different types of automotive products in a single MDL because each proposed docket shared significant factual issues and "stem[med] from the same government investigation"); *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F.Supp.3d 1378 (J.P.M.L. 2015) (centralizing actions involving different defendants and different drugs where the allegations involved the same alleged misconduct and same injury); *In re: Androgel Prods. Liab. Litig*., 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (centralizing all-testosterone replacement therapy actions); *In re: Incretin Mimetics Prods. Liab. Litig*., 968 F.

Supp. 2d 1345 (J.P.M.L. 2013) (centralizing actions against competing defendants which manufactured four similar diabetes drugs that allegedly caused pancreatic cancer).

The Panel has even *rejected* requests to create separate MDLs for different product lines involving the same manufacturer where "all the actions contained the same core factual allegation." *In re: Frito-Lay North America, Inc. All Natural Litigation*, 908 F. Supp. 2d 1379-1380 (J.P.M.L. 2012) (centralizing seven actions involving different product lines—Frito-Lay Bean Dip, SunChips, and Tostitos—on basis that they all "share factual questions arising out of allegations that Frito-Lay markets and labels certain food products grown from genetically modified organisms as 'All Natural,' in a manner that is allegedly misleading to consumers").

## II.     LEGAL STANDARD

Transfer and consolidation is proper if actions pending in different federal district courts involve similar questions of fact to the extent that consolidating pretrial proceedings would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## III.    ARGUMENT

### A.  These Actions are Appropriate for Transfer and Coordination pursuant to 28 U.S.C. § 1407(a).

1.     These Actions Involve Common Questions of Fact.

Section 1407 requires that for centralization to be appropriate, the cases must share "one or more common questions of fact." In assessing whether consolidation is appropriate under Section 1407, the Panel looks to the pleadings. As noted in the Motion, the complaints in these Actions clearly present common questions of fact. Each complaint is based on allegations that defendants' orally administered phenylephrine-containing products do not work as advertised to relieve nasal decongestion, in violation of various statutes and common law. In addition, the

complaints allege similar legal theories and seek certification of similar classes and/or subclasses. This Panel has consistently consolidated cases such as this because, even though they involve different products, they inherently involve common questions of fact. *See, e.g., In re: Johnson & Johnson Sunscreen Mktg., Sales Pract. and Prods. Liab. Litig.*, 568 F. Supp. 3d at 1413-14; *In re: Abbott Infant Formula Prods. Liab. Litig.*, 2022 WL 3134144, at *1-2; *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d at 1379.

2. <u>Transfer and Coordination Serves Not Only the "Convenience of the Parties and Witnesses," but also "Promote(s) the Just and Efficient Conduct of the Action."</u>

As argued in the Motion, consolidation will avoid duplicative discovery and prevent inconsistent pretrial rulings. First, centralization sidesteps tremendous inefficiencies in the process of conducting discovery. This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re: Resource Exploration Inc. Sec. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L. 1980). This includes reducing the cost of document review platforms and depositions for third-party witnesses as much as party witnesses.  Consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving the parties' and the judiciaries' resources.

Second, consolidation decreases the likelihood of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re: Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification).

6

**B.  This Panel Should Transfer the Related Actions to the Eastern District of Louisiana Before Judge Eldon E. Fallon.**

The selection of an appropriate transferee court is based on a balancing test of several factors, none of which is dispositive. *See* Manual of Complex Litigation (Fourth) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977). The factors include:

- Where the largest number of cases is pending;

- Where discovery has occurred;

- Where cases have progressed furthest;

- The site of the occurrence of the common facts;

- Where the cost and inconvenience will be minimized; and

- The experience, skill and caseload of available judges.

*Id*.

Although the FDA advisory Committee's report was only recently issued, thirteen (13) putative class actions have already been filed in nine (9) different federal jurisdictions, including in the: Eastern District of Louisiana; Central and Eastern Districts of California; Northern and Middle Districts of Florida; District of Minnesota; District of New Jersey; and Eastern District of New York. Given the geographic dispersal of the Actions, no district stands out at this point as the geographic focal point. No discovery has commenced in any of the filed actions.

Moreover, there does not appear to be a common site of the occurrence of the common facts since most of the primary brand-name defendant manufacturers are headquartered in different states. Defendants Johnson & Johnson Consumer Inc., Kenvue, Inc. McNeil Consumer Healthcare, and Sanofi-Aventis U.S. LLC are headquartered in New Jersey; Defendant Procter & Gamble is headquartered in Ohio; Defendants GlaxoSmithKline LLC, Bayer Healthcare LLC,

and Church & Dwight Co., Inc. are headquartered in Pennsylvania. Most of the generic

phenylephrine manufacturing defendants are likewise headquartered in different states: Walgreen

Co. (Illinois); Target Corporation (Minnesota); Albertsons Companies Inc. (Idaho); Rite Aid

Corporation (Pennsylvania); Amazon (Washington); Associated Wholesale Grocers, Inc. and

Valu Merchandisers Co. (Kansas); Rickitt Benckiser LLC (New Jersey).

      Thus, respectively, the primary factors this Panel should consider in determining whether

consolidation and transfer is appropriate are the present rate of filings (which are expected to

increase exponentially), the experience, skill and caseload of available judges, and geographic

location. To be sure, the impact of any subsequent FDA recall of oral phenylephrine products

from the market will be far-reaching and undoubtedly generate additional lawsuits. As

recognized in the FDA advisory Committee's report, "Should the Agency take an action

regarding the GRASE status of oral phenylephrine, we also understand that a significant impact

on industry would be inevitable."[4]  Thus, while each of the Actions are assigned to capable

jurists, the magnitude and complexity of this litigation supports that it be centralized before a

jurist with experience in complex multidistrict products liability litigation.

      That jurist is the Honorable Eldon E. Fallon, who presides over the *Coppock* matter and

sits in a district with the capacity to handle this litigation.[5] Judge Fallon is a well-respected jurist

who has successfully presided over some of the largest and most complex MDLs in this

country's history. *See, e.g., In re: Vioxx Prods. Liab. Litig.*, 360 F.Supp.2d 1352 (J.P.M.L. 2005)

(MDL 1657). Judge Fallon currently presides over two (2) MDLs that are winding down

---

[4] https://www.fda.gov/media/171915/download.
[5] The Eastern District of Louisiana is currently home to only five (5) pending MDLs. *See In re: NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382 (J.P.M.L. 2008) (transfer to district with relatively low number of pending MDL dockets).

following settlements in 2019. *See In re: Chinese-Manufactured Drywall Prods. Liab. Litig*., 626 F.Supp.2d 1346 (J.P.M.L. 2009) (MDL 2047); *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig*., 65 F.Supp.2d 1402 (J.P.M.L. 2014) (MDL 2592). Thus, the Eastern District of Louisiana, and Judge Fallon in particular, have the capacity to efficiently manage the litigation. *See, e.g.*, *In re Erie COVID-19 Business Interruption Protection Insurance Litig.*, 509 F. Supp. 3d 1370 (J.P.M.L. 2020) (transferring to a district with the "capacity to efficiently manage … cases"); *In re Paxil Prods. Liab. Litig.,* 296 F. Supp. 2d 1374, 1375 (J.P.M.L. 2003) (transferring to a "judge with the time and experience to steer this complex litigation on a prudent course").

The Panel has also considered the support of parties in determining the best transferee court. *See, e.g., In re: Xarelto,* 65 F.Supp.2d at 1405 (noting that the transferee district has the support of a number of plaintiffs); *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (relying on the fact that the transferee district was "the preferred transferee forum of several responding parties" in deciding to transfer the MDL to that district); *In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015) (noting that "[n]umerous plaintiffs support centralization in this district, both in the first instance and in the alternative."). Here, counsel in the *Baughman*[6] case, pending in the Central District of California, has joined in supporting the transfer of these Actions to the Eastern District of Louisiana before Judge Fallon.

Finally, the Eastern District of Louisiana has more  Actions pending than any other district and has long had the infrastructure to easily accommodate out-of-town lawyers, parties, and witnesses should the need arise to appear in person. Indeed, the Eastern District of Louisiana is

---

[6] *Baughman v. Johnson & Johnson Consumer Companies, Inc*., Case No. 2:23-cv-07737 (C.D. Cal.).

arguably one of the most convenient and readily accessible locations for any litigation. It is centrally located and has reasonable accommodations for those traveling to the court. Respectively, the Eastern District of Louisiana is a more appropriate and convenient transferee forum than the District of New Jersey favored by the *Barton* plaintiffs, for several reasons.

First, as noted, there are three (3) Actions pending in the Eastern District of Louisiana, more than any other district.

Second, the District of New Jersey docket is more congested. As of June 30, 2023, the District of New Jersey had an average of 3,732 pending civil cases per judgeship.[7]  The Eastern District of Louisiana had an average of 482 pending civil cases per judgeship.

Third, the District of New Jersey has twelve (12) active multi-district litigations, including two (2) that were transferred there by the Panel in just the past nine months. *See In re: Insulin Pricing Litig.*, MDL No. 3080, -- F. Supp. 3d --, 2023 WL 5065090 (J.P.M.L. Aug. 3, 2023) and *In re: Samsung Customer Data Security Breach Litig.*, MDL No. 3055, -- F. Supp. 3d --, 2023 WL 1811247 (J.P.M.L. Feb. 1, 2023). Comparatively, there are a total of five (5) active multi-district litigations in the Eastern District of Louisiana.

Fourth, the Eastern District of Louisiana is a more convenient forum for the parties and their counsel, who are located in different regions of the country. In support of the District of New Jersey, the *Barton* plaintiffs contend that, because New Jersey is headquarters to *some* of the named defendants, relevant documents and witnesses will likely be found there. *See* Doc. 1-1, at 11. But, as noted above, even *more* named defendants (brand and generic manufacturers) are located in districts *other* than New Jersey, so relevant documents and witnesses will be scattered in various locations. And, as a practical matter, the physical location of documents is no longer a significant

---

[7] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf.

factor in weighing transferee districts because in an era of electronic documents, this factor assumes much less importance than it did formerly.

Fifth, the *Barton* plaintiffs contend that the District of New Jersey is "geographically convenient" for this litigation, noting that the region is serviced by major airports and major airlines. *Id*. at 12. The same is true of the Eastern District of Louisiana, located in New Orleans. General questions of travel accessibility are not a factor here. Because the Eastern District of Louisiana is truly a "geographically central forum," it is more geographically convenient for parties and counsel in disparate regions. *See In re: Xarelto,* 65 F.Supp.2d at 1405 (noting that the Eastern District of Louisiana "provides a geographically central forum for this nationwide litigation").

### C.  In the Alternative, the Phenylephrine Actions Should be Consolidated Before Judge Jane T. Milazzo in the Eastern District of Louisiana

As an alternative, the Panel should consolidate the Actions before the Honorable Jane T. Milazzo in the Eastern District of Louisiana. Judge Milazzo has over a decade of experience as a practicing attorney and over fifteen (15) years of judicial experience, both on State and Federal Courts. She was the first woman elected to the bench from the 23rd Judicial District of Louisiana, holding that position until her elevation to the federal bench in 2011. Judge Milazzo currently presides over the *Fichera*[8] Action and, like Judge Fallon, is an eminently capable jurist with relevant experience in multidistrict litigation,[9] including class action litigation, and sits in a district with the capacity to handle this litigation (the Eastern District of Louisiana).

---

[8] *Fichera v. The Procter & Gamble Company*, Case No. 2:23-cv-05274 (E.D. La.).
[9] Judge Milazzo currently presides over the *In re: Taxotere (Docetaxel) Eye Injury Prods. Liab. Litig*., MDL No. 3023, 584 F. Supp. 3d 1378 (J.P.M.L. 2022) and *In re: Taxotere (Docetaxel) Prods. Liab. Litig*., MDL 2740, 220 F. Supp. 3d 1360 (J.P.M.L. 2016).

IV.     CONCLUSION

        Wherefore, for all the foregoing reasons, Plaintiffs respectfully request an Order consolidating these Actions in the Eastern District of Louisiana before Judge Eldon E. Fallon or, in the alternative, Judge Jane T. Milazzo.


Dated: September 20, 2023


By: /s/ Bryan F. Aylstock
Bryan F. Aylstock (FL Bar # 0078263)
R. Jason Richards (FL Bar # 18207)
Jennifer Hoekstra  (LA Bar #34716)
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ, PLLC**
17 E. Main Street, Ste. 200
Pensacola, Florida 32502
T: (850) 202-1010
F: (850) 916-7449
E-Mail:  baylstock@awkolaw.com
         jrichards@awkolaw.com
         jhoekstra@awkolaw.com

***Attorneys for Plaintiff Kaycie Coppock***,
*E.D. LA, Case No.*
*2:23-cv-05353*

/s/ Kiley L. Grombacher
Kiley L. Grombacher
(CA Bar #245960)
**BRADLEY/GROMBACHER, LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
T: (805) 270-7100
F: (805) 270-7589
E-Mail:
kgrombacher@bradleygrombacher.com

***Attorney for Plaintiff Jennifer Baughman***,
*C.D. Cal., Case No. 2:23-cv-07737*