FINNEGAN

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:23–cv–14060

De Priest et al v. Walgreen Co. et al
Assigned to: Honorable Jorge L. Alonso
Demand: $9,999,000
Cause: 28:1332 Diversity–(Citizenship)

Date Filed: 09/25/2023
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Hannah De Priest**
*Individually and on Behalf of All Others
Similarly Situated*

represented by **John E Tangren**
DiCello Levitt LLP
Ten North Dearborn St.
Sixth Floor
Chicago, IL 60602
312–214–7900
Email: jtangren@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**Adam J. Levitt**
DiCello Levitt Gutzler LLC
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
(312) 214–7900
Fax: Not a member
Email: alevitt@dicellolevitt.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Frizell Johnson**
*Individually and on Behalf of All Others
Similarly Situated*

represented by **John E Tangren**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Adam J. Levitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ruben Varela**
*Individually and on Behalf of All Others
Similarly Situated*

represented by **John E Tangren**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Adam J. Levitt**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Walgreen Co.**

**Defendant**

**Publix Super Markets, Inc.**

**Defendant**

**Kenvue, Inc.**

**Defendant**

**McNeil Consumer Healthcare**

**Defendant**

**Procter & Gamble Company**

**Defendant**

**CVS Pharmacy, Inc.**

**Defendant**

**Glaxosmithkline LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2023 | 1 | COMPLAINT filed by Ruben Varela, Frizell Johnson, Hannah De Priest; Jury Demand. Filing fee $ 402, receipt number AILNDC–21138773. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Levitt, Adam) (Entered: 09/25/2023) |
| 09/25/2023 | | CASE ASSIGNED to the Honorable Jorge L. Alonso. Designated as Magistrate Judge the Honorable Sheila M. Finnegan. Case assignment: Random assignment. (axk, ) (Entered: 09/25/2023) |
| 09/25/2023 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post–trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (axk, ) (Entered: 09/25/2023) |
| 10/02/2023 | 2 | ATTORNEY Appearance for Plaintiffs Hannah De Priest, Frizell Johnson, Ruben Varela by Adam J. Levitt (Levitt, Adam) (Entered: 10/02/2023) |
| 10/03/2023 | 3 | ATTORNEY Appearance for Plaintiffs Hannah De Priest, Frizell Johnson, Ruben Varela by John E Tangren (Tangren, John) (Entered: 10/03/2023) |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

HANNAH DE PRIEST, FRIZELL JOHNSON, )
and RUBEN VARELA, Individually and on )
Behalf of All Others Similarly Situated, )
                      )
                 Plaintiffs, )
                      )
       vs. )
                      )
                      )
WALGREEN CO.; PUBLIX SUPER )
MARKETS, INC.; KENVUE, INC.; MCNEIL )
CONSUMER HEALTHCARE; PROCTER & )
GAMBLE COMPANY; CVS PHARMACY, )
INC.; and GLAXOSMITHKLINE LLC, )
                      )
                Defendants. )

Case No. _____

CLASS ACTION

DEMAND FOR JURY TRIAL

# CLASS ACTION COMPLAINT

Plaintiffs Hannah De Priest, Frizell Johnson, and Ruben Varela (collectively, "Plaintiffs"), individually and on behalf of all members of the public similarly situated, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, allege as follows:

## INTRODUCTION

1.      Plaintiffs seek damages and equitable relief, individually and on behalf of all other Class members, for Defendants' sales of products to be taken orally containing phenylephrine, a compound that purportedly acts as a decongestant, but that Defendants have long known does no such thing. Defendants sold these phenylephrine-containing purported decongestants anyway, generating billions of dollars in sales in the last year alone.

2.      Phenylephrine is one of two compounds found in nasal decongestants administered orally and offered for sale on store shelves. The other compound is pseudoephedrine. Pseudoephedrine itself is effective as a decongestant. However, purchasing pseudoephedrine is often inconvenient for a consumer because: (a) pseudoephedrine has been used as an ingredient in illicit methamphetamine laboratories; (b) products containing it are usually placed behind store counters or in locked cabinets; and (c) purchasers are often forced to leave personal information every time they purchase it or are otherwise limited in the number of pseudoephedrine-containing medications they can buy. Consumers are naturally attracted to a decongestant that can be purchased without attendant inconvenience.

3.      By contrast, phenylephrine-containing products have no such restrictions and are not subject to a highly inconvenient buying process. Phenylephrine is found in many popular over-the-counter oral medications that purportedly act as decongestants—the "Decongestant Products"—including such popular products produced and/or sold by Defendants, including, but

not limited to, Sudafed PE (Kenvue[1]/McNeil Consumer Healthcare), Tylenol Cold & Flu Severe (Kenvue/McNeil); Benadryl Allergy Plus (Kenvue/McNeil); Theraflu (GlaxoSmithKline); DayQuil and NyQuil Severe Cold & Flu (Procter & Gamble Company); along with more generic Decongestant Products produced and sold by, among others, Defendants CVS, Walgreen Co., and Publix.

4.     Last year alone, nearly $1.8 billion in sales of phenylephrine-containing purported decongestants took place in the United States across more than 250 products, accounting for approximately 80% of the market for over-the-counter decongestants.

5.     Unknown to the public but known to the manufacturers and distributers in this lucrative market, phenylephrine taken orally is ineffective. It provides no relief for congestion, and is no better than a placebo, like a sugar pill, as a decongestant when taken orally.

6.     Since at least 2007, scientific studies using modern testing methodologies and rigors have, time and again, shown that phenylephrine taken orally is ineffective. Even still, rather than acknowledge the truth of these studies, manufacturers and distributers, like Defendants, have continued to market and sell their products with phenylephrine as effective decongestant medicine.

7.     As one pharmacist who has led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

8.     This fact did not discourage Defendants continuing to sell phenylephrine products and to charge a premium price for those ineffective products.

---

[1]     As noted below, Kenvue is a company, founded in February 2022, that prior to a spinoff had served as the Consumer Healthcare division of Johnson & Johnson. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Kenvue.

9.      Had Plaintiffs known that the phenylephrine-containing products were ineffective as a nasal decongestant, they would not have purchased them or paid substantially less for them.

10.     Accordingly, Plaintiffs, on behalf of themselves and all other purchasers of Defendants' phenylephrine products, seek to hold Defendants accountable for their deceptions, breaches of warranties, and violations of consumer protection statutes. Defendants knew these products were ineffectual. They marketed and sold them anyway.

## PARTIES

11.     Plaintiff Hannah De Priest is a resident and citizen of Illinois. In or around March 2023, Plaintiff De Priest had sinus congestion associated with a cold and purchased from CVS the Decongestant Products DayQuil Severe Cold and Flu and NyQuil Severe Cold and Flu, manufactured by Defendant Procter & Gamble Co. and containing phenylephrine for purported decongestant relief. Plaintiff De Priest paid a premium price for DayQuil and NyQuil because they contained phenylephrine, but the phenylephrine contained in the DayQuil and NyQuil was ineffective in relieving Plaintiff De Priest's congestion.

12.     In the past, Plaintiff De Priest also purchased other Decongestant Products, including, but not limited to, Tylenol Cold and Flu Severe (Kenvue) and CVS store brand generic DayQuil. She has been a regular purchaser of Tylenol products containing phenylephrine since approximately 2016. Each of these Decongestant Products commanded a premium price because they contained phenylephrine, but the phenylephrine in each of these Decongestant Products was ineffective in relieving congestion. All of Plaintiff De Priest's relevant purchases occurred in Illinois.

13.     Plaintiff Frizell Johnson is a resident and citizen of Illinois. In or around September 2023, Plaintiff Johnson had sinus congestion associated with a cold and purchased from CVS the Decongestant Products Theraflu Severe Cold manufactured by Defendant GlaxoSmithKline, and

NyQuil Severe Cold and Flu, manufactured by Defendant Procter & Gamble—both containing phenylephrine for purported decongestant relief. Plaintiff Johnson paid a premium price for Theraflu and NyQuil because they contained phenylephrine, but the phenylephrine contained in the Theraflu and NyQuil was ineffective in relieving Plaintiff Johnson's congestion. All of Plaintiff Johnson's relevant purchases occurred in Illinois.

14.     Plaintiff Ruben Varela is a resident and citizen of Florida. In or around March 2023, Plaintiff Varela had sinus congestion associated with a cold and purchased from Walgreens and Publix generic store brand equivalents of the Decongestant Products Sudafed PE and Mucinex— both containing phenylephrine for purported decongestant relief. Plaintiff Varela paid a premium price for the products because they contained phenylephrine, but the phenylephrine was ineffective in relieving Plaintiff Varela's congestion. All of Plaintiff Varela's relevant purchases occurred in Florida.

15.     Defendant Walgreen Co. ("Walgreens") is an Illinois corporation with its headquarters and principal place of business in Deerfield, Illinois. Until December 31, 2014, Walgreens had no corporate parent. On December 31, 2014, Walgreens became a wholly owned subsidiary of Walgreens Boots Alliance, Inc. pursuant to a merger to reorganize Walgreen Co. into a holding company structure. Walgreens refers to itself as "the first global pharmacy-led, health and wellbeing enterprise" with a purpose of "help[ing] people across the world lead healthier and happier lives." Walgreens operates over 8,000 retail pharmacies in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. There are nearly 600 Walgreens retail pharmacies in the State of Illinois alone. Walgreens sells generic versions of Decongestant Products containing phenylephrine under a "Walgreens" brand.

16.     Defendant Publix Super Markets, Inc. ("Publix") is a Florida corporation with its principal place of business in Lakeland, Florida. Publix is an American retail supermarket chain

with over 1,300 locations in Alabama, Florida, Georgia, Kentucky, North Carolina, South Carolina, and Tennessee. Publix sells generic versions of Decongestant Products containing phenylephrine under a "Publix" brand.

17. Defendant Kenvue Inc. ("Kenvue") is an American consumer health company, and formerly the consumer healthcare division of Johnson & Johnson. Kenvue is headquartered in Skillman, New Jersey. It wholly owns Defendant McNeil Consumer Healthcare. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Defendant Kenvue.

18. Defendant McNeil Consumer Healthcare ("McNeil") is wholly owned by Defendant Kenvue, with headquarters in Fort Washington, Pennsylvania. McNeil manufactures and markets numerous Decongestant Products, including, but not limited to, Sudafed PE, a purported decongestant containing phenylephrine.

19. Defendant GlaxoSmithKline LLC ("GSK") is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania. GlaxoSmithKline is a wholly owned subsidiary of GlaxoSmithKline PLC, a public limited company registered in England and Wales. GlaxoSmithKline is a biopharmaceutical company that, among other Decongestant Products, manufactures and markets Theraflu.

20. Defendant Procter & Gamble Company ("P&G") is an American multinational consumer goods corporation headquartered in Cincinnati, Ohio. Among other Decongestant Products, Procter & Gamble manufactures and markets Nyquil.

21. Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with its principal place of business in Woonsocket, Rhode Island. CVS had no corporate parent until 1996, when it became a wholly owned subsidiary of its current parent, CVS Health Corporation. CVS operates approximately 9,600 retail pharmacies in all 50 states, the District of Columbia, and

Puerto Rico. There are approximately 350 CVS retail pharmacies in the State of Illinois. CVS sells generic versions of Decongestant Products containing phenylephrine under a "CVS" brand.

## JURISDICTION & VENUE

22.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District. Defendants have each purposefully availed themselves of the benefits and protections of the State of Illinois by continuously and systematically conducting substantial business in Illinois. Each Defendant markets and distributes its products in Illinois.

24.     The Court additionally and independently has personal jurisdiction over Defendant Walgreens because Walgreens is located and operates its headquarters in the State of Illinois.

25.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants maintain key business operations in this District, and market and sell their products, including Decongestant Products, in this District.

## FACTUAL ALLEGATIONS

### *The Market for Decongestants*

26.     The market for products that purportedly relieve nasal congestion is worth over $2 billion annually and includes over 250 products.

27.     The two leading ingredients purportedly used to relieve nasal congestion are phenylephrine and pseudoephedrine. These active ingredients are sold as the only active ingredients in some products, and one or both of them are included as active ingredients in multi-symptom products.

28.     Pseudoephedrine-based products are useful as decongestants. However, due to the misuse of pseudoephedrine as a base to produce illegal methamphetamines, since 2006 federal law has made products containing pseudoephedrine, while available "over the counter" in the sense that they can, for the most part, be bought without a doctor's prescription, inconvenient to buy. The products are usually behind a pharmacy counter in locked containers, consumers are limited in the amount they can purchase, and purchasers are often required to provide personal identification and other information to track the amount of the substance purchased.

29.     Accordingly, the best-selling products in the decongestant market have been those that use phenylephrine, which account for approximately 80% of the market for over-the-counter decongestants. In the last year alone, nearly $1.8 billion of phenylephrine-based purported decongestants were sold.

***The Truth About Phenylephrine***

30.     The problem—until recently unknown to the public, but well known to Defendants—is that phenylephrine does not work when taken orally. While sold as a decongestant, it provides no better relief from decongestion than a placebo.

31.     Scientists have long reported that phenylephrine is ineffective. As Leslie Hendeles, PharmD and Randy Hatton, PharmD succinctly stated in the *Journal of Allergy and Clinical Immunology* in May 2006, "Phenylephrine…is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver…. Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral

- 7 -

decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[2]

32.     Scientific studies using modern testing methodologies (using good clinical practices) and rigors have repeatedly shown that phenylephrine is ineffective. On September 11 and September 12, 2023, the FDA held a non-prescription Drug Advisory Committee Meeting to discuss the efficacy of oral phenylephrine as a nasal decongestant. The Advisory Committee explained that multiple studies have shown phenylephrine to be no better than a placebo.

33.     For example, the committee described a study conducted by Johnson & Johnson from 2017 to 2018 to evaluate an oral phenylephrine product (Defendant Kenvue was until this year part of Johnson & Johnson). As explained by the panel, the trial "suggest[ed] no beneficial effect [of phenylephrine] when compared with placebo."[3]

34.     This was hardly surprising. In 2015, Meltzer et al. conducted a dose-response study relating to the treatment of nasal congestion. The study subjects were given various combinations of commercially available oral phenylephrine tablets and a placebo. The "commercially available" tablet was reported in an editorial published in the same journal as the study to have been Johnson & Johnson's (now Kenvue's) Sudafed PE.[4] The results of the study were unequivocal. As the

---

[2]     Leslie Handeles, PharmD and Randy Hatton, Pharm D, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. ALLERGY AND CLINICAL IMMUNOLOGY 1 (May 1, 2006) (citing Bickerman HA. Physiologic and pharmacologic studies on nasal airway resistance Presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association. Washington, DC. December 8, 1971), https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5.

[3]     *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at  52, https://www.fda.gov/media/171915/download.

[4]     Hatton & Hendeles, *Over the Counter Oral Phenylephrine: A Placebo for Nasal Congestion*, J. ALLERGY AND CLINICAL IMMUNOLOGY PRAC. (Sept/Oct. 2015), https://pubmed.ncbi.nlm.nih.gov/26362551/.

authors put it, "we failed to identify a dose for [phenylephrine]…that was significantly more effective than placebo in relieving nasal congestion…."[5]

35.     Nevertheless, Johnson & Johnson—and now freshly spun-off Kenvue—through its subsidiary Defendant McNeil continued to manufacture and sell its phenylephrine products, including Sudafed PE.

36.     Defendants, as manufacturers of the phenylephrine-based products, were each aware of the studies suggesting that phenylephrine is ineffective as a nasal decongestant.

37.     As one pharmacist who has led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

## TOLLING OF ALL APPLICABLE STATUTES OF LIMITATIONS

### *Discovery Rule Tolling*

38.     Plaintiffs and the other Class members had no way of knowing about Defendants' deception concerning their Decongestant Products. As consumers, they reasonably believed that the phenylephrine contained within the Decongestant Products offered for sale could act as decongestants.

39.     Within the time period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Decongestant Products were ineffective as advertised.

40.     Plaintiffs and the other Class members did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants did not report information

---

[5]     Meltzer *et al.*, *Oral Phenylephrine HCl for Nasal Congestion in Seasonal Allergic Rhinitis: A randomized, Open-label, Placebo-controlled Study*, 3 J. ALLERGY AND CLINICAL IMMUNOLOGY PRAC. 6 (Sept/Oct 2015), https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2815%2900252-4

within their knowledge about the ineffectiveness of their Decongestant Products; nor would a reasonable and diligent investigation have disclosed that Defendants had concealed such information about the products' efficacy, which was only known by Plaintiffs and the other Class members after the FDA decision in September 2023.

41.    For these reasons, all applicable statutes of limitation have been tolled through the discovery rule for the asserted claims.

***Fraudulent Concealment Tolling***

42.    All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time-period relevant to this action.

43.    Rather than disclose the truth about their Decongestant Products, Defendants falsely represented these products as ones that would relieve congestion.

***Estoppel***

44.    Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of their Decongestant Products.

45.    Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of their Decongestant Products.

46.    Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

47.    Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

48.    Plaintiffs seek to represent the following Classes:

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreen Co. (the "Walgreens Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreen Co. in the State of Florida (the "Walgreens Florida Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreen Co. in the State of Illinois (the "Walgreens Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Publix (the "Publix Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Publix in the State of Florida (the "Publix Florida Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue (the "Kenvue Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of Illinois (the "Kenvue Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant CVS (the "CVS Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant CVS in the State of Illinois (the "CVS Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline (the "GSK Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of Illinois (the "GSK Illinois Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble (the "Procter & Gamble Nationwide Class").

All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Illinois (the "Procter & Gamble Illinois Class").

49.     Excluded from the Classes are the Defendants, and any of the Defendants' members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.

Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

50.     This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

51.     Plaintiffs reserve the right before the Court to determine whether certification of other classes or subclasses are appropriate.

52.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

53.     **Numerosity: Rule 23(a)(1):** The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands of members of the Classes based on the size of the market for decongestant products and Defendants' share of that market, but the precise number of Class members is unknown to Plaintiffs.

54.     **Commonality and Predominance: Rules 23(a)(2) and (b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

(a)     when Defendants knew that phenylephrine was ineffective as a decongestant;

(b)     whether Defendants sold Decongestant Products as effective;

(c)     what measures Defendants took to conceal the truth about their Decongestant Products;

(d)     Defendants' duty to disclose the truth about their Decongestant Products;

(e)       whether Plaintiffs and the other Class members overpaid for Defendants' Decongestant Products; and

(f)       whether Plaintiffs and the other Class members are entitled to equitable and injunctive relief.

55.       **Typicality: Rule 23(a)(3):** Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged.

56.       **Adequacy: Rule 23(a)(4):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

57.       **Declaratory and Injunctive Relief: Rule 23(b)(2):** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making declaratory and injunctive relief appropriate, with respect to each Class as a whole.

58.       **Superiority: Rule 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in managing this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to seek redress for Defendants' wrongful conduct individually. Even if Class members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments. It increases the delay and expense to all

parties and the court system. By contrast, a class action is suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CHOICE OF LAW

59. Because Plaintiffs bring this Complaint in Illinois, Illinois's choice of law regime governs the state law allegations in this Complaint. Under Illinois's choice of law rules, Illinois law applies to all Class members' claims, regardless of their state of residence or state of purchase, as there is no conflict between Illinois's law and the laws of other states with an interest in the outcome of this litigation.

60. Additionally, Defendant Walgreens has its principal place of business in Illinois. All Class members—even those who never set foot in Illinois but purchased Decongestant Products—directly implicate Illinois's interest in regulating businesses and commerce.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT ("ICFA")
### 815 Ill. Comp. Stat. Ann. 505/1, *et seq.*
### (Walgreens, Kenvue, McNiel, Procter & Gamble, CVS, GlaxoSmithKline)

61. Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-60, as if fully set forth herein.

62. Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count), against Defendants Walgreens, Kenvue, McNiel, Procter & Gamble, CVS, and GlaxoSmithKline (the "Defendants" for purposes of this Count).

63. At all relevant times, Plaintiffs and Defendants were each a "person," as defined by 815 Ill. Comp. Stat. Ann. 505/1(c), and satisfy the consumer nexus test in that Defendants' unfair and deceptive acts and practices regarding the Decongestant Products.

64. The Decongestant Products were directed at and impacted the market generally and/or otherwise implicate consumer protection concerns. Defendants' unfair and deceptive acts and practices have impacted at least hundreds of thousands of consumers nationwide and in Illinois and remedying Defendants' wrongdoing through the relief requested herein would serve the interests of consumers.

65. At all relevant and material times, Defendants' wrongdoing alleged herein occurred in the conduct of "trade" and "commerce" as defined in the ICFA where Defendants' unfair and deceptive acts and practices regarding the Decongestant Products occurred during and related directly to the routine purchase and sale of Decongestant Products at retail outlets and/or online. 815 Ill. Comp. Stat. Ann. 505/1(f).

66. Under the ICFA, the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UTPA"), 815 Ill. Comp. Stat. Ann. 510/2, in the conduct of any trade or commerce is unlawful whether any person has, in fact, been misled, deceived, or damaged thereby.

67. Under Section 2 of the UTPA, 815 Ill. Comp. Stat. Ann. 510/2, a "person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation, the person … (12) engages in any … conduct which … creates a likelihood of confusion or misunderstanding."

68. Plaintiffs and the members of the Class have suffered losses because of Defendants' employment of unfair or deceptive acts and practices. As alleged herein, Defendants each sold Decongestant Products to Plaintiffs and each class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

69.     Defendants accordingly willfully engaged in the unfair and deceptive acts and practices described above and knew or should have known that those acts and practices were unfair and deceptive and in violation of the ICFA.

70.     This deception alleged herein occurred in connection with Defendants' conduct of trade and commerce in Illinois.

71.     Defendants intended for Plaintiffs and the members of the Class to purchase Decongestant Products in reliance upon Defendants' unfair and deceptive acts and practices.

72.     Defendants' conduct offends public policy as set forth in 225 Ill. Comp. Stat. Ann. 85/1 & 41 and Ill. Admin. Code tit. 89, §§ 140.445, 140.447(b), and is immoral, unethical, oppressive, or unscrupulous as described herein and caused substantial injury to consumers, competitors, or other business. Defendants' unjustified, inflated pricing of their Decongestant Products is oppressive because it overcharges consumers. The pricing of Decongestant Products is unethical and unscrupulous because it is the result of Defendants' desire to achieve maximum financial gain for medicine used by consumers whose medical conditions may require such medicine.

73.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the members of the Class were deceived into paying artificially inflated prices for Defendants' Decongestant Products and have been damaged thereby.

74.     Defendants are therefore liable to Plaintiffs and the members of the Class for the damages they sustained, plus statutory damages, penalties, costs, and reasonable attorneys' fees to the extent provided by law.

75.     Plaintiffs are entitled to injunctive and declaratory relief under the ICFA because Defendants' violations of the ICFA continue unabated and there is no adequate remedy at law to stop Defendants' conduct.

76.     Illinois has numerous contacts with the conduct alleged herein and a strong interest in applying the ICFA to that conduct. Defendants are found, do business, or transact business within this District. Defendants' improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part. Defendant Walgreens' principal place of business in the United States is in this District, and their pricing, sales, and distribution operations for its Decongestant Products sold throughout the United States, which form the basis of this litigation, originate from and/or are controlled by, its offices in this District.

77.     As such, Illinois's contacts to this litigation make it a desirable forum for this litigation and Illinois's interest in applying the ICFA in this litigation outweighs any interests other states or their laws may have.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (All Defendants)

78.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-60, as if fully set forth herein.

79.     Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

80.     At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code ("U.C.C.") governing the implied warranty of merchantability and fitness for ordinary purpose.[6]

---

[6]     *See, e.g.*, Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84- 2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y.

81.     Defendants were at all times a "merchant" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

82.     The Decongestant Products are and were "goods" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

83.     Defendants were obligated to provide Plaintiffs and the other Class members Decongestant Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold, and conformed to the standards of the trade.

84.     Defendants impliedly warranted that those drugs were of merchantable quality and fit for that purpose.

85.     Defendants breached their implied warranties, because their Decongestant Products were not of merchantable quality or fit for their ordinary purpose.

86.     Defendants' breaches of implied warranties were a direct and proximate cause of Plaintiffs' and the other Class members' damages.

### COUNT III
### FRAUD BY OMISSION OR CONCEALMENT
### (All Defendants)

87.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-60, as if fully set forth herein.

88.     Plaintiffs bring this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

---

U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

89.     Defendants intentionally and knowingly falsely concealed, suppressed and/or omitted material facts including as to the standard, quality or grade of the Decongestant Products. Due to their fraudulent conduct, Plaintiffs and the other Class members have suffered actual damages.

90.     Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

91.     Defendants were obligated to inform Plaintiff and the other members of the Class of the effectiveness of phenylephrine due to their exclusive and superior knowledge of the Decongestant Products. Plaintiffs and other Class members also expressly reposed a trust and confidence in Defendants because the nature of their dealings as healthcare entities and with Plaintiffs and other members of the Class as their consumers.

92.     Plaintiffs and the other Class members would not have purchased the Decongestant Products but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Decongestant Products and existence of the Decongestant Products, or would have paid less for the Decongestant Products.

93.     Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.

94.     Defendants acted with malice, oppression, and fraud.

95.     Plaintiffs and the other Class members reasonably relied on Defendants' knowing, affirmative, and active false concealment and omissions. As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Decongestant Products, Plaintiffs and the other Class members have suffered actual damages in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT
### (All Defendants)

96.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-60, as if fully set forth herein.

97.     Plaintiffs brings this claim on behalf of the nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

98.     There are no material differences in the elements of the unjust enrichment cause of action in the various states. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Illinois law applies to those claims.

99.     Defendants' efforts include, but are not limited to, providing point-of-sale materials and coupons to entice Plaintiffs and the other Class members to purchase Decongestant Products.

100.     It would be inequitable for Defendants to insulate themselves from liability on this unjust enrichment claim by asserting that retail sales by their retailers cuts off any relationship between Plaintiffs and the Classes and Defendants because Plaintiffs and the other Class members cannot seek a remedy directly from Defendants' retailers based on Defendants' sale of the Decongestant Products.

101.     Plaintiffs and all other Class members conferred a benefit on Defendants by purchasing Decongestant Products.

102.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of Decongestant Products, which retention under these circumstances is unjust and inequitable because Defendants sold the Decongestant Products as purportedly effective for providing congestion relief when in fact they were not, which caused injuries to Plaintiffs and all Class members because they paid a price premium due to Defendants' deception.

103.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and all Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

104.    Plaintiffs and Class members have no adequate remedy at law.

## COUNT V
## VIOLATION OF THE FLORDIA DECEPTIVE AND
## UNFAIR TRADE PRACTICES ACT
## Fla. Stat. §§ 501.201 *et seq.*
## (Publix, Walgreens)

105.    Plaintiff Varela ("Plaintiff," for purposes of this Count) repeats and realleges paragraphs 1-60 as if fully set forth herein.

106.    Plaintiff brings this claim on behalf of the Florida Class (the "Class," for purposes of this Count) against Defendants Publix and Walgreens (the "Defendants," for purposes of this Count).

107.    At all relevant times, Plaintiff and Class members were "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("Florida DUTPA"), Fla. Stat. § 501.203(7).

108.    Defendants were at all relevant times engaged in "trade or commerce" within the meaning of the Florida DUTPA. Fla. Stat. § 501.203(8).

109.    The Florida DUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or

commerce . . . ." Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated Florida DUTPA. As alleged herein, Defendants each sold Decongestant Products to Plaintiff and each class member as products that provide relief for nasal congestion. Yet Defendants knew that phenylephrine is ineffective at safe dosages when consumed orally.

110.     Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts: (a) had a tendency or capacity to mislead and create a false impression in consumers; and (b) were likely to and did deceive reasonable consumers, including Plaintiff, about the effectiveness of phenylephrine and the true value of the Decongestant Products Defendants sold.

111.     Defendants knew or should have known that their conduct violated the Florida DUTPA.

112.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class members were deceived into paying artificially inflated prices for Defendants' Decongestant Products and have been damaged thereby.

113.     Plaintiff and Class members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

114.     Plaintiff and Class members also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees and costs, and any other just and proper relief available under the Florida DUTPA. Additionally, Plaintiff and Class members seek punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgement in their favor and against Defendants, as follows:

A.     Certification of the proposed Classes and appointment of Plaintiffs as Class representatives;

B.     Appointment of Plaintiffs' counsel as Class Counsel;

C.     Injunctive relief, including, but not limited to:

1.     A requirement for Defendants to make full disclosure of their knowledge of the efficacy of their Decongestant Products;

2.     Disgorgement of their profits from the sales of their Decongestant Products;

3.     Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

4.     An order requiring Defendants to pay both pre- and post-judgment interest on all amounts awarded;

D.     An award of costs and attorneys' fees; and

E.     Such other further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all claims so triable.

Dated: September 25, 2023

Respectfully submitted,

/s/ Adam. J. Levitt
Adam J. Levitt
John E. Tangren
Daniel R. Schwartz
Blake Stubbs
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dschwartz@dicellolevitt.com
bstubbs@dicellolevitt.com

James E. Cecchi
Donald A. Ecklund
Jordan M. Steele
**CARELLA, BYRNE, CECCHI,
  BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
jsteele@carellabyrne.com

Christopher A. Seeger
David R. Buchanan
Scott A. George
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sgeorge@seegerweiss.com

Paul J. Geller
Stuart A. Davidson
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Telephone: (561) 750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

*Counsel for Plaintiffs and the Proposed Classes*