HOLLEB HOTALING

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:23–cv–14404

Hsieh et al v. Reckitt Benckiser LLC et al
Assigned to: Honorable John J. Tharp, Jr
Demand: $9,999,000
Cause: 28:1332 Diversity–Fraud

Date Filed: 10/02/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**James Hsieh**                               represented by **Andrea Gold**
                                              Tycko And Zavareei Llp
                                              2000 Pennsylvania Nw
                                              Suite 1010
                                              Washington, DC 20006
                                              (202) 973–0900
                                              Fax: Not a member
                                              Email: agold@tzlegal.com
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dominic Rio**                               represented by **Andrea Gold**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mohanad Abdelkarim**                        represented by **Andrea Gold**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven Chechia**                            represented by **Andrea Gold**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Reckitt Benckiser LLC**

**Defendant**

**Kenvue, Inc.**

**Defendant**

**Procter & Gamble Company**

**Defendant**

**GlaxoSmithKline LLC**

**Defendant**

**Johnson & Johnson Consumer Inc.**

**Defendant**

**Walgreen Co.**

**Defendant**

**CVS Pharmacy, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2023 | 1 | COMPLAINT filed by Mohanad Abdelkarim, Dominic Rio, Steven Chechia, James Hsieh; Jury Demand. Filing fee $ 402, receipt number AILNDC–21177692. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gold, Andrea) (Entered: 10/02/2023) |
| 10/02/2023 | 2 | CIVIL Cover Sheet (Gold, Andrea) (Entered: 10/02/2023) |
| 10/02/2023 | 3 | ATTORNEY Appearance for Plaintiffs Mohanad Abdelkarim, Steven Chechia, James Hsieh, Dominic Rio by Andrea Gold (Gold, Andrea) (Entered: 10/02/2023) |
| 10/03/2023 | | CASE ASSIGNED to the Honorable John J. Tharp, Jr. Designated as Magistrate Judge the Honorable Keri L. Holleb Hotaling. Case assignment: Random assignment. (Civil Category 2). (gmm, ) (Entered: 10/03/2023) |
| 10/03/2023 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post–trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (gmm, ) (Entered: 10/03/2023) |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JAMES HSIEH, DOMINIC RIO, MOHANAD ABDELKARIM, and STEVEN CHECCHIA, individually and as a representative of all others similarly situated, | Case No. 1:23-cv-14404 |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | DEMAND FOR JURY TRIAL |
| v. | |
| RECKITT BENCKISER LLC, KENVUE, INC.; PROCTER & GAMBLE COMPANY; GLAXOSMITHKLINE LLC; JOHNSON & JOHNSON CONSUMER INC.; WALGREEN CO.; and CVS PHARMACY, INC. | |
| Defendants. | |

Plaintiffs James Hsieh, Dominic Rio, Mohamed Abdelkarim, and Steven Checchia (collectively, the "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants RECKITT BENCKISER LLC, KENVUE, INC.; PROCTER & GAMBLE COMPANY; GLAXOSMITHKLINE LLC; JOHNSON & JOHNSON CONSUMER INC.; WALGREEN CO.; and CVS PHARMACY, INC. (collectively, "Defendants") and state as follows:

## INTRODUCTION

1.     For years, Defendants have marketed and sold billions of dollars' worth of over-the-counter oral medications containing phenylephrine (collectively, the "Phenylephrine Products" or "Products") as nasal decongestants when, in fact, they are entirely ineffective.

2.     The inefficacy of Phenylephrine Products has been reported in the scientific community for decades, yet Defendants have continued to deceptively market and sell them to consumers nationwide.

3.     Most recently, on September 11 and 12, 2023, the FDA convened a meeting of its Nonprescription Drugs Advisory Committee for review of the purported efficacy of phenylephrine

1

as a nasal decongestant.

4.      In its lengthy report, the FDA outlined the results of many scientific studies over a period of many years which have concluded that, as compared to placebos, phenylephrine was not more effective.[1]

5.      Thus, Defendants have known for years that phenylephrine is ineffective as a nasal decongestant when consumed orally, yet have continued to market and sell the Phenylephrine Products as nasal decongestants.

6.      The Plaintiffs and similarly situated consumers like them purchased the Phenylephrine Products for nasal decongestion. Indeed, these efficacy claims are the only or a significant reason a consumer would purchase the Phenylephrine Products.

7.      Defendants' claims, however, are provably false, misleading, and reasonably likely to deceive the public because reliable scientific evidence, including expert opinion and scientific studies, shows that the active ingredient in the Phenylephrine Products, phenylephrine, is no more effective than a placebo at nasal decongestion.

8.      A key reason that the Phenylephrine Products are not capable of having any effect beyond that of a placebo is that, when consumed orally, only a very small amount of phenylephrine even reaches the nose. Instead, a substantial amount of phenylephrine is digested by the stomach.

9.      Accordingly, Plaintiffs bring this action for violation of Illinois, New Jersey, California, and Pennsylvania consumer protection laws and for common law fraud, negligent misrepresentation, and unjust enrichment on behalf of themselves and similarly situated persons to obtain compensation for the monetary difference between the Phenylephrine Products as warranted and as sold, including a full refund where appropriate, for themselves and for all other similarly situated purchasers nationwide for the worthless Phenylephrine Products.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter

---

[1] *See NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph*, Food & Drug Admin., at 53, *available at* https://www.fda.gov/media/171915/download.

in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendants.

11.     This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Defendants, because Defendants are authorized to conduct and do business in this judicial district. Defendants have marketed, promoted, distributed, and sold the Phenylephrine Products in this State, and Defendants have sufficient minimum contacts with this State and/or have sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a), because Defendants transact substantial business in this District, including marketing and sales of the Phenylephrine Products.

## PARTIES

14.     Plaintiff James Hsieh ("Plaintiff Hsieh") resides in Chicago, Illinois. During the Class Period,[2] Plaintiff Hsieh purchased numerous Phenylephrine Products manufactured and sold by Defendants Kenvue Inc., Procter & Gamble Company, GlaxoSmithKline LLC, Johnson & Johnson Consumer Inc., and Walgreen Co., including Sudafed Sinus Congestion, NyQuil Severe Cold & Flu, Theraflu Multi- Symptom Severe Cold, Robitussin Maximum Strength Severe Multi-Symptom Cough Cold + Flu, and Wal-Phed PE Nasal Decongestant. Plaintiff Hsieh purchased the Products because he believed they would provide nasal decongestion benefits, as advertised, but they did not.

---

[2] The "Class Period" is defined herein as the applicable statute of limitations preceding the filing of this action to the date of class certification.

15.     Plaintiff Dominic Rio ("Plaintiff Rio") resides in Nutley, New Jersey. During the Class Period, Plaintiff Rio purchased numerous Phenylephrine Products manufactured and sold by Defendant Walgreen Co., including Walgreens branded Allergy Relief and Walgreens branded Severe Cold & Flu. Plaintiff Rio purchased the Products because he believed they would provide nasal decongestion benefits, as advertised, but they did not.

16.     Plaintiff Mohanad Abdelkarim ("Plaintiff Abdelkarim") resides in Riverside, California. During the Class Period, Plaintiff Abdelkarim purchased numerous Phenylephrine Products manufactured and sold by Defendants Reckitt Benckiser LLC, Kenvue Inc., Procter & Gamble Company, GlaxoSmithKline LLC, and Johnson & Johnson Consumer Inc., including Sudafed PE, Tylenol Cold & Flu, NyQuil Cold & Flu, Mucinex, and Robitussin Cough Cold & Flu. Plaintiff Abdelkarim purchased the Products because he believed they would provide nasal decongestion benefits, as advertised, but they did not.

17.     Plaintiff Steven Checchia ("Plaintiff Checchia") resides in Aston, Pennsylvania. During the Class Period, Plaintiff Checchia purchased numerous Phenylephrine Products manufactured and sold by Defendants Reckitt Benckiser LLC, Kenvue Inc., Procter & Gamble Company, Johnson & Johnson Consumer Inc., and CVS Pharmacy, Inc., including CVS branded Cooling Severe Nighttime Cold & Flu Relief, Tylenol Cold & Flu, NyQuil Cold & Flu, and Mucinex cough and Chest Congestion. Plaintiff Checchia purchased the Products because he believed they would provide nasal decongestion benefits, as advertised, but they did not.

18.     Defendant Reckitt Benckiser LLC ("Reckitt") is a Delaware limited liability corporation with its headquarters and principal place of business in Parsippany, New Jersey. Reckitt is a wholly-owned subsidiary of Reckitt Benckiser Group PLC. Reckitt manufacturers and markets Phenylephrine Products, including Mucinex.

19.     Defendant Kenvue Inc. is a consumer healthcare company that was previously part of Johnson & Johnson. Kenvue is incorporated in Delaware and headquartered in Skillman, New Jersey.

20.     Defendant Procter & Gamble Company is a consumer goods company that is

incorporated in Ohio and headquartered in Cincinnati, Ohio. Procter & Gamble manufactures and markets Phenylephrine Products, including NyQuil.

21.     Defendant GlaxoSmithKline LLC is a pharmaceutical and biotechnology company incorporated in Delaware and has its headquarters and principal place of business in Philadelphia, Pennsylvania. GlaxoSmithKline is a wholly-owned subsidiary of GlaxoSmithKline PLC. GlaxoSmithKline manufactures and markets Phenylephrine Products, including Theraflu and Robitussin.

22.     Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its headquarters and principle place of business in Skillman, New Jersey. Johnson & Johnson Consumer Inc. manufactures, markets, advertises, and sells Phenylephrine Products under the brand names Sudafed and Tylenol.

23.     Defendant Walgreen Co. is an Illinois corporation and is headquartered and has its principal place of business in Deerfield, Illinois. Walgreen Co. sells generic versions of Phenylephrine Products under a Walgreens brand name.

24.     Defendant CVS Pharmacy, Inc. is a Rhode Island corporation with its headquarters and principle place of business in Woonsocket, Rhode Island. CVS Pharmacy, Inc. sells generic versions of Phenylephrine Products under a CVS brand name.

## FACTS

25.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

**A.     Defendants Knew or Should Have Known the Phenylephrine Products Were Not Effective Decongestants.**

26.     Phenylephrine Products are sold at a variety of grocery chains, retail stores, online stores, pharmacies, and low-cost retailers, including Amazon.

27.     The Phenylephrine Products include, but are not necessarily limited to, products produced, marketed, and sold by Defendants under the brand name Mucinex (Reckitt Benckiser), Sudafed PE (Kenvue/Johnson & Johnson Consumer Inc.), Tylenol Cold & Flu (Kenvue/Johnson & Johnson Consumer Inc.); NyQuil Cold & Flu (Procter & Gamble); Theraflu Multi-Symptom

Severe Cold (GlaxoSmithKline); and the generic Phenylephrine Products produced and sold by Defendants Walgreen Co. and CVS Pharmacy, Inc.

28.     The Phenylephrine Products have at least one common active ingredient: phenylephrine.

29.     Phenylephrine became popular in the United States in the early 2000s as a substitute for pseudoephedrine, a decongestant exploited by consumers to make methamphetamine that beginning in 2006 could only be sold from "locked cabinets" or "behind the counter."[3]

30.     In 1976, a U.S. Food and Drug Administration ("FDA") review panel found oral phenylephrine safe and effective for "nonprescription relief of nasal congestion caused by the common cold, allergic rhinitis, and sinusitis."[4]

31.     However, scientific knowledge about phenylephrine has developed considerably in the ensuing decades.

32.     As detailed herein, competent scientific evidence demonstrates that phenylephrine in the Phenylephrine Products is not capable of producing the nasal decongestion that Defendants promise purchasers. Defendants' advertising claims are provably false and misleading as a result.

33.     Further, Defendants willfully and knowingly kept information about phenylephrine's efficacy from consumers.

34.     Defendants knew or should have known that their claims about the Phenylephrine Products were false and misleading as for years the scientific medical community rejected phenylephrine as an effective decongestant, but Defendants nonetheless continued to market and

---

[3] *See* Berkeley Lovelace Jr., *FDA panel says common over-the-counter decongestant doesn't work*, NBC News (Sept. 12, 2023), https://www.nbcnews.com/health/health-news/fda-panel-says-common-counter-decongestant-phneylephrine-doesnt-work-rcna104424; *see also Legal Requirements for the Sale and Purchase of Drug Products Containing Pseudoephedrine, Ephedrine*, and Phenylpropanolamine, FDA (Nov. 24, 2017), https://www.fda.gov/drugs/information-drug-class/legal-requirements-sale-and-purchase-drug-products-containing-pseudoephedrine-ephedrine-and.

[4] Leslie Hendeles & Randy C. Hatton, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. of Allergy & Clinical Immunology 279-80 (2006), *available at* https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext.

sell the Products as having that capability.

35.     Scientists have been complaining about phenylephrine's inefficacy for decongestion in publications aimed at the scientific community since at least the 1970s.

36.     For example, in 2006 Drs. Leslie Hendeles and Randy Hatton explained that despite an FDA review panel's 1976 conclusion that phenylephrine is safe and effective, "[p]henylephrine, at the FDA-approved dose of 10 mg for adults, is unlikely to provide relief of nasal congestion." *See* Hendeles & Hatton, *Oral phenylephrine: An ineffective replacement for pseudoephedrine*, *supra* note 4.[5]

37.     They explained: "It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver. Only 38% of the dose reaches the systemic circulation, compared with 90% of a pseudoephedrine dose. Moreover, **in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance**." *See id.* (emphasis added) (citing J. H. Hengstmann, J.H. & J. Goronzy, *Pharmacokinetics of 3H-phenylephrine in man*, 21 Eur. J. Clin. Pharmacol. 335-341 (1982); Kanfer I. Dowse R. & Vuma V., *Pharmacokinetics of oral decongestants*, 13 Pharmacotherapy 116S-128S (1993); and Bickerman H.A., *Physiologic and pharmacologic studies on nasal airway resistance (RN)*, presented at a conference sponsored by the Scientific Development Committee

---

[5] *See also* Randy C. Hatton & Leslie Hendeles, *Why Is Oral Phenylephrine on the Market After Compelling Evidence of Its Ineffectiveness as a Decongestant?*, Annals of Pharmacotherapy, Mar. 2022, *available at* https://journals.sagepub.com/doi/abs/10.1177/10600280221081526; Leslie Hendeles, 13 *Selecting a Decongestant, Pharmacotherapy* 129S (1993), *available at* https://accpjournals.onlinelibrary.wiley.com/doi/abs/10.1002/j.1875-9114.1993.tb02781.x (stating that "phenylephrine is subject to first-pass metabolism and therefore is not bioavailable in currently recommended doses," and "phenylpropanolamine and pseudoephedrine, but **not phenylephrine**, are effective decongestants" (emphasis added)). Higher doses of phenylephrine for decongestion would threaten to "push blood pressure to potentially dangerous levels," so is not a tenable alternative. *See* Matthew Perrone, *Popular nasal decongestant doesn't actually relieve congestion, FDA advisers say*, Associated Press (updated Sept. 12, 2023), https://apnews.com/article/sudafed-decongestants-phenylephrine-pseudoephedrine-fda-0f140bafae9a500c5fba05fe764ecb66.

of the Proprietary Association, Washington, D.C., Dec. 8, 1971).

38.     Over the years, other scientists have similarly rejected phenylephrine's efficacy for purpose of nasal decongestion. *See, e.g.*, Ronald R. Eccles, *Substitution of phenylephrine for pseudoephedrine as a nasal decongeststant. An illogical way to control methamphetamine abuse*, 63 Brit. J. Clinical Pharmacology 10 (2006) ("The only study involving an oral dose of PE [phenylephrine] reported that 10 mg PE was no more effective than placebo as a nasal decongestant.");[6] Randy C. Hatton, Almut G. Winterstein et al., *Ambulatory Care: Efficacy and Safety of Oral Phenylephrine: Systematic Review and Meta-Analysis*, Annals of Pharmacology, Mar. 2007 (concluding "[t]here is insufficient evidence that oral phenylephrine is effective for nonprescription use as a decongestant," so "[t]he [FDA] should require additional studies to show the safety and efficacy of phenylephrine");[7] Elie O. Meltzer et al., *Oral Phenylephrine HCl for Nasal Congestion in Seasonal Allergic Rhinitis: A Randomized, Open-label, Placebo-controlled Study*, 3 J. of Allergy & Clinical Immunology: In Practice 702 (2015) (concluding that "PE HCl [phenylephrine hydrochloride], at doses of up to 40 mg every 4 hours, is not significantly better than placebo at relieving nasal congestion in adults with SAR [seasonal allergic rhinitis]" and therefore "[t]he phenylephrine section of the Food and Drug Administration monograph on over-the-counter cold, cough, allergy, bronchodilator, and antiasthmatic products should be revised accordingly").[8]

39.     More recently, in March 2022, Science Magazine published Dr. Derek Lowe's commentary reiterating what scientists seem to have already concluded; that "here in the US, if you go to the drugstore and purchase an over-the-counter nasal decongestant (as a single agent or a combination of drugs that includes a decongestant), you will in every single case be buying

---

[6]     *Available      at      https://bpspubs.onlinelibrary.wiley.com/doi/full/10.1111/j.1365-2125.2006.02833.x* (citing J.W. McLauren, W.F. Shipman, & R. Rosedale Jr., *Oral decongesants. A double-blind comparison study of the effectiveness of four sympathomimetic drugs: objective and subjective*, 71 Laryngoscope 54-67 (1961)).

[7] *Available at https://journals.sagepub.com/doi/10.1345/aph.1H679.*

[8] *Available at https://www.sciencedirect.com/science/article/abs/pii/S2213219815002524.*

phenylephrine. Which does not work." Derek Lowe, *The Uselessness of Phenylephrine*, Science Mag. (Mar. 30, 2022), *available at* https://www.science.org/content/blog-post/uselessness-phenylephrine.

40. According to Dr. Lowe, consistent with Drs. Hendeles's and Hatton's explanation in 2006, *supra*, phenylephrine is "so useless" because "[i]t is extensively metabolized, starting in the gut wall," and "the lack of cardiovascular effects at low doses [*i.e.*, the type of dose usually used for decongestants] argues for very low systemic effects (and expected low efficacy as a decongestant)." *See id.*

41. In line with these findings, patient representative Jennifer Schwartzott recently condemned the drug's ongoing marketing and sale for decongestion. "This drug and this oral dose should have been removed from the market a long time ago," she stated. Berkeley Lovelace Jr., *FDA panel says common over-the-counter decongestant doesn't work*, *supra* note 3. "The patient community requires and deserves medications that treat their symptoms safely and effectively and I don't believe that this medication does." *Id.*

42. Defendants did or should have known about these findings regarding phenylephrine's inefficacy for decongestion in conducting their own testing long before any of these publications denounced phenylephrine as "useless."

43. If there is any doubt that the foregoing publications demonstrated that phenylephrine cannot supply effective congestive relief, an FDA panel recently concurred the same. *See infra* Facts § B.

44. Unfortunately for Plaintiffs and the putative classes, however, these findings were not published to a mass consumer audience.

45. As a result, Defendants have been able to continue to market and sell the Products and thereby exploit consumers seeking congestive relief, as well as such consumers' expectations that reputable drug manufacturers, distributors, and retailers would not market and sell a Product that is worthless for its stated purpose.

**B.** **The FDA's September 2023 Briefing Document on "Efficacy of Oral Phenylephrine as a Nasal Decongestant" Confirms What Scientists Already Knew—That Phenylephrine Does Not Provide Effective Congestive Relief.**

46.    In September 2023, the FDA's Nonprescription Drugs Advisory Committee unanimously concluded that oral phenylephrine products are not effective in resolving nasal decongestion.

47.    The two-day meeting that resulted in the unanimous vote was the byproduct of a petition by University of Florida researchers petitioning the FDA to remove the majority of phenylephrine products "based on recent studies showing they failed to outperform placebo pills in patients with cold and allergy congestion."[9] They had originally contested phenylephrine's efficacy in 2007.[10]

48.    A Briefing Document published in connection with the Nonprescription Drug Advisory Committee Meeting on oral phenylephrine's efficacy as a nasal decongestant stated that FDA's "Clinical Pharmacology team has confirmed that the actual oral bioavailability of PE is less than 1%." *See NDAC Briefing Document*, *supra* note 1, at 31.

49.    The Briefing Document explains that "[t]his is due to the high first-pass metabolism effect when PE [phenylephrine] is administered orally, whereas PE is effective when administered intranasally and has systemic effects when much smaller doses are administered intravenously." *Id.*

50.    Ultimately, the reviewers concluded that:

> 1) oral PE at monographed dosages is not effective as a decongestant (i.e., in the face of the new data, the original data are likely not sufficient to support a GRASE [Generally Recognized as Safe and Effective] determination), 2) oral doses up to 40 mg would also not be effective, 3) finding an effective oral dose that is also safe is not feasible (meaning that doses higher than 40 mg would need to be explored but would also not be safe to study due to effects on blood pressure), and 4) an appropriate dosing interval for oral PE has not been established (meaning that,

---

[9] *See* Matthew Perrone, *Popular nasal decongestant doesn't actually relieve congestion, FDA advisers say*, *supra* note 5.

[10] *See id.*; *see also New Cold Drugs Work, but Experts Want More Proof*, ABC News (Feb. 19, 2009), https://abcnews.go.com/Health/ColdFlu/story?id=4002807&page=1.

based on the PK [pharmacokinetic] data, an every-4-hour dosing interval is likely too long).

*Id.* at 33.

51.     According to Dr. Mark Dykewicz, a Saint Louis University School of Medicine allergy specialist commenting on the unanimous vote, "Modern studies, when well conducted, are not showing any improvement in congestion with phenylephrine."[11]

52.     Regardless of the scientific evidence indicating phenylephrine's inefficacy for congestion that Defendants knew or should have known about for decades, Defendants have continued to market and sell their Phenylephrine Products as nasal decongestants, making probably millions if not billions in the process off of consumers' ignorance.

**C.     For Years, Defendants Have Made the False and Misleading Representation that their Phenylephrine Products Provide Relief from Nasal Decongestion.**

53.     For years, Defendants have distributed, marketed, and sold the Phenylephrine Products on a nationwide basis, including in Illinois, New Jersey, California, and Pennsylvania.

54.     Indeed, just in the last year, nearly $1.8 billion in sales of phenylephrine-containing so-called nasal decongestants were made in the United States.[12]

55.     Throughout their advertising of the Phenylephrine Products, Defendants have consistently advertised that consuming the Phenylephrine Products will result in nasal decongestion.

56.     Defendants have disseminated this message across a variety of media, including on websites and online promotional materials, and most importantly, at the point of purchase on the front of the Phenylephrine Products' packaging and labeling where it cannot be missed by consumers.

---

[11] *See* Matthew Perrone, *Popular nasal decongestant doesn't actually relieve congestion, FDA advisers say*, *supra* note 5.

[12] *See* Theresa M. Michele, *Oral Phenylephrine as a Nasal Decongestant in the Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic (CCABA) OTC Monograph*, Nonprescription Drugs Advisory Committee September 11-12, 2023, U.S. Food & Drug Admin., at 117, *available at* https://www.fda.gov/media/171971/download.

57.     Throughout the relevant time period, Defendants have packaged the Phenylephrine Products using substantially similar and deceptive packages and labels with the nasal decongestion advertising messaging at issue.

58.     The Phenylephrine Products' packaging and labeling advertises the Phenylephrine Products as nasal decongestants or as providing nasal decongestion when neither statement is true.

59.     Defendants have reaped enormous profits from their false and/or deceptive advertising and sale of the Phenylephrine Products.

/ / /

/ / /

/ / /

60.     For example, Walgreens manufacturers, markets, and sells a Nighttime Severe Cold & Flu medicine that contains phenylephrine and states *twice*—once in block letters—on the front panel that it is a "NASAL DECONGESTANT," in addition to an Allergy Relief medicine that contains phenylephrine and indicates on the front panel that it is a "NASAL DECONGESTANT":




/ / /

/ / /

/ / /

61.     CVS likewise manufactures, markets, and sells a "Cooling Severe Nighttime" medicine for cold and flu relief that contains phenylephrine, which it specifically defines on the front panel as a "Nasal decongestant":



62.     The packaging and/or labeling of Defendants' other Phenylephrine Products similarly falsely indicate that such Products have the capability of relieving decongestion.

63.     In short, Defendants do not have legitimate scientific support for the claim that phenylephrine provides congestive relief. Rather, such representations are simply an attempt to apply a deceiving scientific sheen onto a baseless advertising claim that competent scientific evidence refutes.

## DISCOVERY RULE AND FRAUDULENT CONCEALMENT TOLLING

64.     Upon information and belief, Defendants have continued marketing and selling the Phenylephrine Products with the false and misleading representation on the Products' packaging and/or labeling that they are nasal decongestants and/or provide congestive relief to the present day.

65.     Defendant knew or should have known that this representation was false and misleading, but nevertheless continued to publish this representation on the Products' packaging and/or labeling and in associated advertising, and concealed the fraud to protect their reputation and financial interests. Indeed, the fact that Defendants' deception was only publicly revealed to a mass consumer audience in September 2023 when the FDA made public its advisory panel's unanimous vote that phenylephrine is not an effective decongestant, indicates that Defendants always intended to withhold this information from its customers.

66.     Class and subclass members who purchased the Phenylephrine Products outside of the applicable statute of limitations could not have discovered through the exercise of reasonable diligence that the Products would not provide effective congestive relief and that Defendants were concealing the same.

67.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to all claims set forth below. And all applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment of the facts alleged herein throughout the time period relevant to this action.

## PLAINTIFFS' PURCHASES OF DEFENDANTS' PRODUCTS

68.     Plaintiff Hsieh, a resident of Chicago, Illinois, purchased Phenylephrine Products manufactured and sold by Defendants Kenvue Inc., Procter & Gamble Company, GlaxoSmithKline LLC, Johnson & Johnson Consumer Inc., and Walgreen Co. during the Class Period, including Sudafed Sinus Congestion, NyQuil Severe Cold & Flu, Theraflu Multi-Symptom Severe Cold, Robitussin Maximum Strength Severe Multi-Symptom Cough Cold + Flu, and Wal-Phed PE Nasal Decongestant. He purchased these products because he believed they

would provide the advertised nasal decongestion benefits. However, the products did not help or improve his nasal congestion as advertised. Thus, as a result of these purchases, Plaintiff Hsieh suffered injury in fact and lost money. Had he known the truth about Defendants' misrepresentations and omissions, he would not have purchased the Phenylephrine Products. Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages.

69. Plaintiff Rio, a resident of Nutley, New Jersey, purchased Phenylephrine Products manufactured and sold by Defendant Walgreen Co. during the Class Period, including Walgreens branded Allergy Relief and Walgreens branded Severe Cold & Flu. He purchased these products because he believed they would provide the advertised nasal decongestion benefits. However, the products did not help or improve his nasal congestion as advertised. Thus, as a result of these purchases, Plaintiff Rio suffered injury in fact and lost money. Had he known the truth about Defendants' misrepresentations and omissions, he would not have purchased the Phenylephrine Products. Plaintiff Rio is not claiming physical harm or seeking the recovery of personal injury damages.

70. Plaintiff Abdelkarim, a resident of Riverside, California, purchased Phenylephrine Products manufactured and sold by Defendants Reckitt Benckiser LLC, Kenvue Inc., Procter & Gamble Company, GlaxoSmithKline LLC, and Johnson & Johnson Consumer Inc. during the Class Period, including Sudafed PE, Tylenol Cold & Flu, NyQuil Cold & Flu, Mucinex, and Robitussin Cough Cold & Flu. He purchased these products because he believed they would provide the advertised nasal decongestion benefits. However, the products did not help or improve his nasal congestion as advertised. Thus, as a result of this purchase, Plaintiff Abdelkarim suffered injury in fact and lost money. Had he known the truth about Defendants' misrepresentations and omissions, he would not have purchased the Phenylephrine Products. Plaintiff Abdelkarim is not claiming physical harm or seeking the recovery of personal injury damages.

71. Plaintiff Checchia, a resident of Aston, Pennsylvania, purchased Phenylephrine Products manufactured and sold by Defendants Reckitt Benckiser LLC, Kenvue Inc., Procter & Gamble Company, Johnson & Johnson Consumer Inc., and CVS Pharmacy, Inc. during the Class

Period, including CVS branded Cooling Severe Nighttime Cold & Flu Relief, Tylenol Cold & Flu, NyQuil Cold & Flu, and Mucinex cough and Chest Congestion. He purchased these products because he believed they would provide the advertised nasal decongestion benefits. However, the products did not help or improve his nasal congestion as advertised. Thus, as a result of these purchases, Plaintiff Checchia suffered injury in fact and lost money. Had he known the truth about Defendants' misrepresentations and omissions, he would not have purchased the Phenylephrine Products. Plaintiff Checchia is not claiming physical harm or seeking the recovery of personal injury damages.

## CLASS DEFINITIONS AND ALLEGATIONS

72.     Plaintiffs reallege and incorporate herein all previous paragraphs of the Complaint.

73.     This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23.

74.     Plaintiffs James Hsieh, Dominic Rio, Mohanad Abdelkarim, and Steven Checchia seek certification of the following Nationwide Classes that are composed of and defined as follows:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant Reckitt Benckiser LLC. ("**Reckitt Nationwide Class**")

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant Kenvue Inc. ("**Kenvue Nationwide Class**")

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant Procter & Gamble Company. ("**Procter & Gamble Nationwide Class**")

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant GlaxoSmithKline LLC. ("**GlaxoSmithKline Nationwide Class**")

All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant Johnson & Johnson Consumer Inc. ("**Johnson & Johnson Nationwide Class**")

All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant Walgreen Co. ("**Walgreen Nationwide Class**")

All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes manufactured by Defendant CVS Pharmacy, Inc. ("**CVS Nationwide Class**")

75. Plaintiff Hsieh seeks certification of the following Illinois Subclasses that are composed of and defined as follows:

All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant Reckitt Benckiser LLC . ("**Reckitt Illinois Subclass**")

All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant Kenvue Inc. ("**Kenvue Illinois Subclass**")

All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant Procter & Gamble Company. ("**Procter & Gamble Illinois Subclass**")

All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant GlaxoSmithKline LLC. ("**GlaxoSmithKline Illinois Subclass**")

All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant Johnson & Johnson Consumer Inc. ("**Johnson & Johnson Illinois Subclass**")

All persons in Illinois who, within the applicable statute of limitations preceding

the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant Walgreen Co. ("**Walgreen Illinois Subclass**")

All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Illinois manufactured by Defendant CVS Pharmacy, Inc. ("**CVS Illinois Subclass**")

76.     Plaintiff Rio seeks certification of the following New Jersey Subclasses that are composed of and defined as follows:

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant Reckitt Benckiser LLC. ("**Reckitt New Jersey Subclass**")

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant Kenvue Inc. ("**Kenvue New Jersey Subclass**")

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant Procter & Gamble Company. ("**Procter & Gamble New Jersey Subclass**")

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant GlaxoSmithKline LLC. ("**GlaxoSmithKline New Jersey Subclass**")

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant Johnson & Johnson Consumer Inc. ("**Johnson & Johnson New Jersey Subclass**")

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant Walgreen Co. ("**Walgreen New Jersey Subclass**")

All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in New Jersey manufactured by Defendant CVS Pharmacy, Inc. ("**CVS New Jersey Subclass**")

77.     Plaintiff Abdelkarim seeks certification of the following California Subclasses that are composed of and defined as follows:

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant Reckitt Benckiser LLC. ("**Reckitt California Subclass**")

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant Kenvue Inc. ("**Kenvue California Subclass**")

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant Procter & Gamble Company. ("**Procter & Gamble California Subclass**")

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant GlaxoSmithKline LLC. ("**GlaxoSmithKline California Subclass**")

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant Johnson & Johnson Consumer Inc. ("**Johnson & Johnson California Subclass**")

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant Walgreen Co. ("**Walgreen California Subclass**")

All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in California manufactured by Defendant CVS Pharmacy, Inc. ("**CVS California Subclass**")

78.     Plaintiff Checchia seeks certification of the following Pennsylvania Subclasses that

are composed of and defined as follows:

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant Reckitt Benckiser LLC. ("**Reckitt Pennsylvania Subclass**")

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant Kenvue Inc. ("**Kenvue Pennsylvania Subclass**")

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant Procter & Gamble Company. ("**Procter & Gamble Pennsylvania Subclass**")

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant GlaxoSmithKline LLC. ("**GlaxoSmithKline Pennsylvania Subclass**")

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant Johnson & Johnson Consumer Inc. ("**Johnson & Johnson Pennsylvania Subclass**")

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant Johnson Walgreen Co. ("**Walgreen Pennsylvania Subclass**")

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Phenylephrine Products for personal or household purposes in Pennsylvania manufactured by Defendant CVS Pharmacy, Inc. ("**CVS Pennsylvania Subclass**")

79. Excluded from the preceding classes and subclasses (collectively, the "Classes") are Defendants' officers and directors and current or former employees of Defendants and their immediate family members, as well as any judge, justice, or judicial officer presiding over this

matter and the members of their immediate families and staff.

## A.    Ascertainability

80.    Plaintiffs are informed and believe that the identities of members of the Classes are ascertainable through Defendants' records.

## B.    Numerosity

81.    The Phenylephrine Products are sold throughout the United States, including throughout the country, including in Illinois, New Jersey, California, and Pennsylvania, such that the Classes are so numerous that joinder of all members of the Classes is impracticable.

82.    The classes and subclasses number over one-hundred (100) persons and are so numerous that joinder of all members is impracticable. The exact number of members can be readily determined from information in Defendants' possession and control.

## C.    Commonality and Predominance

83.    Defendants have engaged in the same conduct regarding all members of the Classes. The injuries and damages to these class members also present questions of law and fact that are common to each class member, and that are common to the Classes as a whole and will drive the litigation and predominate over any questions affecting only individual class members. Numerous common issues of fact and law exist, including, without limitation:

  a.  Whether Defendants knew that phenylephrine was ineffective in the Phenylephrine Products as a nasal decongestant;

  b.  Whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

  c.  Whether Defendants kept information about the inefficacy of the Phenylephrine Products from consumers;

  d.  Whether Defendants' alleged conduct violates public policy;

  e.  Whether the alleged conduct constitutes violations of the laws asserted;

  f.  Whether Defendants engaged in false or misleading advertising;

  g.  Whether Plaintiffs and the members of the Classes have sustained monetary

loss and the proper measure of that loss; and

    h.   Whether Plaintiffs and members of the Classes are entitled to other appropriate remedies.

**D.    Typicality**

84.    The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses, and injuries of all those in the Nationwide Classes and Illinois, New Jersey, California, and Pennsylvania Subclasses that they respectively represent, and the claims, defenses, and injuries of each class and subclass member are typical of those of all other members in the respective classes and subclasses. Plaintiffs' claims all arise from Defendants' practice of marketing and selling Phenylephrine Products with the express statement on the Products' packaging and/or labeling that they are nasal decongestants and/or provide congestive relief. This practice is applicable to all class and subclass members.

**E.    Adequacy**

85.    Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the members of the Classes.

**F.    Superiority**

86.    A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class and subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiffs and class and subclass members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if class and subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court

system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

87.    The Classes may also be certified because Defendants have acted or refused to act on grounds generally applicable to the Classes.

88.    Unless the Classes are certified, Defendants will retain monies received as a result of its conduct that were taken from Plaintiffs and class and subclass members.

### COUNT I
### Illinois Consumer Fraud and Deceptive Business Practices Act
### Misrepresentation and/or Omission
### On Behalf of the Reckitt Illinois Subclass, Kenvue Illinois Subclass, Procter & Gamble Illinois Subclass, GlaxoSmithKline Illinois Subclass, Johnson & Johnson Illinois Subclass, Walgreen Illinois Subclass, and CVS Illinois Subclass (collectively, "Illinois Subclasses") Against All Defendants

89.    Plaintiff James Hsieh realleges and incorporates herein all previous paragraphs of this Complaint.

90.    Plaintiff Hsieh brings this claim on behalf of himself and the Illinois Subclasses.

91.    At all times relevant hereto, Plaintiff Hsieh, the Illinois Subclass members, and Defendants were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

92.    Plaintiff Hsieh and the Illinois Subclass members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

93.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

94.    Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed,

and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

95.     At all times relevant hereto, Defendants engaged in the advertising, offering for sale, sale, and/or distribution of property.

96.     Plaintiff Hsieh and the Illinois Subclass members purchased the Phenylephrine Products at issue herein for their use or that of members of their households.

97.     The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

98.     Defendants, by and through their employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of their Phenylephrine Products through the misrepresentation on the Products' packaging and/or labeling that the Products are nasal decongestants when they cannot provide effective congestive relief, as well as the omission, suppression, and/or concealment from Plaintiff Hsieh and the Illinois Subclasses that phenylephrine cannot effectively provide such relief. Defendants thus misrepresented the quality of the Products and deceived Plaintiff Hsieh and the Illinois Subclasses.

99.     The fact that Defendants misrepresented, concealed, suppressed, or omitted, as alleged above, was material in that efficacy is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase a healthcare product.

100.     Defendants' misconduct, including their misrepresentations and omissions of material facts alleged herein, took place in connection with Defendants' course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

101.     Defendants engaged in such unlawful course of conduct with the intent to induce

Plaintiff Hsieh and the Illinois Subclass members to buy a worthless product or pay premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

102.    Plaintiff Hsieh and the Illinois Subclass members were damaged by such conduct in that they bought a worthless product or paid premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

103.    The deceptive acts and/or practices of Defendants alleged herein occurred in connection with Defendants' conduct of trade and commerce in Illinois.

104.    Defendants intended for Plaintiff Hsieh and the Illinois Subclass members to purchase their Phenylephrine Products in reliance on Defendants' deceptive acts and/or practices.

105.    Plaintiff Hsieh and the Illinois Subclass members would not have purchased the Phenylephrine Products, or alternatively would not have paid a premium for them, had Defendants not misrepresented them as nasal decongestants.

106.    The deceptive acts and/or practices of Defendants violate the ICFA, 815 Ill Comp. Stat. 505/2.

107.    As a direct and proximate result of the deceptive acts and/or practices of Defendants, Plaintiff Hsieh and the Illinois Subclasses were damaged in that they did not receive the benefit of their bargain and bought a worthless product or paid premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

108.    Plaintiff Hsieh and the Illinois Subclass members request that this Court award injunctive relief and enjoin Defendants from continuing to violate the ICFA as discussed herein. Plaintiff Hsieh and the Illinois Subclass members also seek all damages permitted by law, including compensation for the monetary difference between the Phenylephrine Products as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, prejudgment interest, attorneys' fees and costs, and all other relief permitted by law.

## COUNT II
### Illinois Consumer Fraud and Deceptive Business Practices Act
### Unfairness
### On Behalf of the Reckitt Illinois Subclass, Kenvue Illinois Subclass, Procter & Gamble Illinois Subclass, GlaxoSmithKline Illinois Subclass, Johnson & Johnson Illinois Subclass, Walgreen Illinois Subclass, and CVS Illinois Subclass (collectively, "Illinois Subclasses") Against All Defendants

109.    Plaintiff James Hsieh realleges and incorporates herein all previous paragraphs of this Complaint.

110.    Plaintiff Hsieh brings this claim on behalf of himself and the Illinois Subclasses.

111.    Plaintiff Hsieh brings this Claim in the alternative to Count I.

112.    At all times relevant hereto, Plaintiff Hsieh, the Illinois Subclass members, and Defendants were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

113.    Plaintiff Hsieh and the Illinois Subclass members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

114.    The ICFA prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

115.    Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

116.    At all times relevant hereto, Defendants engaged in the advertising, offering for sale, sale, and/or distribution of property.

117.    Plaintiff Hsieh and the Illinois Subclass members purchased the Phenylephrine Products at issue herein for their use or that of members of their households.

118.    The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of

any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

119.     Defendants, by and through their employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of their Phenylephrine Products by unfairly representing on the Products' packaging and/or labeling that the Products are nasal decongestant when they cannot provide effective congestive relief. Defendants engaged in such unlawful course of conduct with the intent to induce Plaintiff Hsieh and the Illinois Subclass members to purchase their Phenylephrine Products and thus buy a worthless product or pay premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

120.     Defendants' acts or practices were "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

121.     Defendants' acts or practices offend the clearly stated public policy prohibiting false advertising in their misrepresenting the efficacy of their Phenylephrine Products as set forth in, *inter alia*, the Federal Trade Commission Act, which prohibits unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce, which includes, *inter alia*, false advertising, *see* 15 U.S.C. § 45(a)(1); *see also* 16 C.F.R. § 238.2(a) ("No statement . . . should be used in any advertisement which creates a false impression of the grade, quality, make, value . . . of the product offered[.]").

122.     Defendants' acts or practices are immoral and unethical as they serve only to benefit Defendants to the detriment of the consuming public.

123.     Defendants' acts or practices were likely to cause, and did cause, substantial injury to consumers as they resulted in Defendants receiving revenue to which Defendants are not entitled. The injuries caused by Defendants' acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. Defendants' unfair acts served no purpose other than to increase their own profits.

124.    These injuries were not reasonably avoidable. Because consumers relied on Defendants' marketing and product packaging and/or labeling for information about the efficacy of the Phenylephrine Products, consumers could not have had reason to anticipate the impending harm and thus avoid their injuries.

125.    Upon information and belief, Defendants knew or should have known that, by representing on their Phenylephrine Products' packaging and/or labeling that the Products would provide congestive relief, they were inducing Plaintiff Hsieh and the Illinois Subclasses to buy a worthless product or pay premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

126.    Defendants knew or should have known that their representation of the Phenylephrine Products as decongestants was not based on sound science.

127.    Plaintiff Hsieh and the Illinois Subclass members were damaged by such conduct in that they bought a worthless product or paid premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

128.    Defendants' unfair acts and/or practices alleged herein took place in connection with Defendants' course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

129.    Defendants intended for Plaintiff Hsieh and the Illinois Subclass members to purchase their Phenylephrine Products in reliance on Defendants' unfair acts and/or practices.

130.    The fact that Defendants represented their Phenylephrine Products as effectual decongestants was material in that efficacy is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase a healthcare product.

131.    Plaintiff Hsieh and the Illinois Subclass members would not have purchased the Phenylephrine Products, or alternatively would not have paid a premium for them, had Defendants not misrepresented them as nasal decongestants.

132.    The unfair acts and/or practices of Defendants violate ICFA, 815 Ill. Comp. Stat. 505/2.

133.     As a direct and proximate result of the unfair acts and/or practices of Defendants, Plaintiff Hsieh and the Illinois Subclasses were damaged in that they did not receive the benefit of their bargain and bought a worthless product or paid premiums above those charged to consumers for products that supply substantially similar benefits apart from decongestion.

134.     Plaintiff Hsieh and the Illinois Subclass members request that this Court award injunctive relief and enjoin Defendants from continuing to violate the ICFA as discussed herein. Plaintiff Hsieh and the Illinois Subclass members also seek all damages permitted by law, including compensation for the monetary difference between the Phenylephrine Products as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, prejudgment interest, attorneys' fees and costs, and all other relief permitted by law.

## COUNT III
### Violation of the New Jersey Consumer Fraud Act
### N.J. Stat. Ann. §§ 56:8-1 *et seq.*
**On Behalf of the Reckitt New Jersey Subclass, Kenvue New Jersey Subclass, Procter & Gamble New Jersey Subclass, GlaxoSmithKline New Jersey Subclass, Johnson & Johnson New Jersey Subclass, Walgreen New Jersey Subclass, and CVS New Jersey Subclass (collectively, "New Jersey Subclasses")**
**Against All Defendants**

135.     Plaintiff Dominic Rio realleges and incorporates herein all previous paragraphs of this Complaint.

136.     Plaintiff Rio brings this claim on behalf of himself and the New Jersey Subclasses.

137.     The Phenylephrine Products, which were designed, manufactured, advertised, marketed and/or sold by Defendants, are considered "merchandise" within the meaning of the New Jersey Consumer Fraud Act. Plaintiffs and the New Jersey Subclass members are "persons" and consumers with the meaning of the New Jersey Consumer Fraud Act.

138.     Defendants affirmatively misrepresented the Phenylephrine Products to consumers. These misrepresentations include but are not limited to: (a) misrepresenting that the Phenylephrine Products are nasal decongestants when they are not, (b) misrepresenting that the Phenylephrine

Products can provide congestive relief when they cannot, (c) omitting, suppressing, and/or concealing from consumers that phenylephrine is not a nasal decongestant, and (d) omitting, suppressing, and/or concealing from consumers that phenylephrine cannot provide effective congestive relief.

139.    Defendants' claims therefore were false, misleading and/or deceptive.

140.    Defendants' affirmative misrepresentations and material omissions constituted an unconscionable commercial practice, deception, fraud, false promise, and/or misrepresentation as to the nature of the goods, in violation of the New Jersey Consumer Fraud Act.

141.    As a result of Defendants' misrepresentations and material omissions, Plaintiffs and the New Jersey Subclasses have suffered ascertainable losses of money and property, which they seek to recover consisting of the damages from purchasing misrepresented and overpriced or worthless Phenylephrine Products.

142.    Plaintiff Rio and the New Jersey Subclass members specifically seek all monetary and non-monetary relief allowed by law, including ascertainable damages, treble damages, restitution and/or disgorgement of all profits, attorneys' fees and costs, injunctive relief, and any additional relief the Court deems necessary or proper.

143.    Plaintiffs and the New Jersey Subclasses seek to enjoin such unlawful deceptive acts and practices as described above. Each of the New Jersey Subclass members will be irreparably harmed unless the unlawful actions of Defendants are enjoined, in that Defendants will continue to falsely and misleadingly market, advertise and represent on the Phenylephrine Products' packaging, labeling, and/or associated advertising that the Products are nasal decongestants when they are not and/or provide congestive relief when they cannot.

144.    Absent injunctive relief, Defendants will continue to manufacture, market, and sell ineffective and misrepresented Phenylephrine Products without adequate disclosures to consumers.

145.    In this regard, Defendants have violated, and continue to violate, the New Jersey Consumer Fraud Act, which makes deception, fraud, false promise, and/or misrepresentation of

goods unlawful. As a direct and proximate result of Defendants' violation of the New Jersey Consumer Fraud Act, as described above, Plaintiffs and the members of the New Jersey Subclasses have suffered damages, as set forth above.

**COUNT IV**
**Violation of California's Consumer Legal Remedies Act**
**Civil Code § 1750, *et seq.***
**On Behalf of the Reckitt California Subclass, Kenvue California Subclass, Procter &**
**Gamble California Subclass, GlaxoSmithKline California Subclass, Johnson & Johnson**
**California Subclass, Walgreen California Subclass, and CVS California Subclass**
**(collectively, "California Subclasses")**
**Against All Defendants**

146.    Plaintiff Mohanad Abdelkarim realleges and incorporates herein all previous paragraphs of this Complaint.

147.    Plaintiff Abdelkarim brings this claim on behalf of himself and the California Subclasses.

148.    This cause of action is brought pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750 (the "Act"). Plaintiff Abdelkarim is a "consumer[s]" as defined by California Civil Code § 1761(d). The Phenylephrine Products are "goods" within the meaning of the Act.

149.    Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Abdelkarim and the California Subclasses which were intended to result in, and did result in, the sale of the Phenylephrine Products:

> a.    "Representing that [the Phenylephrine Products] have . . . approval, characteristics . . . [and] benefits . . . that they do not have";
>
> b.    "Representing that [the Phenylephrine Products] are of a particular standard, quality, or grade . . . if they are of another";
>
> c.    "Advertising goods or services with intent not to sell them as advertised"; and
>
> d.    "Representing that [the Phenylephrine Products have] been supplied in

accordance with a previous representation whey [they have] not."

150.    Defendants violated the Act by representing and failing to disclose material facts on the Phenylephrine Products' labeling and packaging and associated advertising, as described above, when they knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

151.    Pursuant to § 1782 of the Act, Plaintiffs sent notification, a true and correct copy of which is attached hereto as **Exhibit A**, to Defendants in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendants cease the actions detailed above and agree to compensate consumers who purchased their Phenylephrine Products for the monetary difference between the Products as warranted and as sold.

152.    Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in a proper forum.

153.    As a direct and proximate result of Defendants' violations, Plaintiff Abdelkarim and the California Subclass members have suffered injury in fact in an amount to be established at trial. Through their unlawful acts and practices, Defendants have obtained, and continue to unfairly obtain, money from members of the California Subclasses. As such, Plaintiff Abdelkarim requests that this Court award injunctive relief and enjoin Defendants from continuing to violate the CLRA as discussed herein and award attorneys' fees and costs.[13]

/ / /

/ / /

/ / /

---

[13] Plaintiff Abdelkarim and the California Subclasses expressly reserve their right to amend this cause of action to claim damages, including exemplary and punitive damages, if Defendants fail to remedy their practices within 30 days of service of the CLRA notice. *See* Cal. Civ. Code, § 1782(d) (expressly permitting amendment to claim damages at least 30 days after service).

## COUNT V

**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law
73 Pa. Stat. Ann. § 201-1 *et seq.*
On Behalf of the Reckitt Pennsylvania Subclass, Kenvue Pennsylvania Subclass, Procter &
Gamble Pennsylvania Subclass, GlaxoSmithKline Pennsylvania Subclass, Johnson &
Johnson Pennsylvania Subclass, Walgreen Pennsylvania Subclass, and CVS Pennsylvania
Subclass (collectively, "Pennsylvania Subclasses")
Against All Defendants**

154.    Plaintiff Steven Checchia repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

155.    Plaintiff Checchia brings this claim on behalf of himself and the Pennsylvania Subclasses.

156.    Defendants are "person[s]," as meant by 73 Pa. Cons. Stat. § 201-2(2).

157.    Plaintiff Checchia and the Pennsylvania Subclass members purchased goods and services in "trade" and "commerce," as meant by 73 Pa. Cons. Stat. § 201-2(3), primarily for personal, family, and/or household purposes.

158.    Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce in violation of 73 Pa. Cons. Stat. Ann. § 201-3, including the following:

  a.    Representing that their goods and services have approval, characteristics, uses, or benefits that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v));

  b.    Representing that their goods and services are of a particular standard or quality if they are another (73 Pa. Stat. Ann. § 201- 2(4)(vii)); and

  c.    Advertising their goods and services with intent not to sell them as advertised (73 Pa. Stat. Ann. § 201-2(4)(ix)).

159.    Defendants' unfair or deceptive acts and practices include:

  a.    Misrepresenting that the Phenylephrine Products are nasal decongestants when they are not;

34

b. Misrepresenting that the Phenylephrine Products can provide congestive relief when they cannot;

c. Omitting, suppressing, and/or concealing from consumers that phenylephrine is not a nasal decongestant; and

d. Omitting, suppressing, and/or concealing from consumers that phenylephrine cannot provide effective congestive relief.

160. Defendants' representations and omissions were material because efficacy is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase a healthcare product.

161. Defendants intended to mislead Plaintiff Checchia and the Pennsylvania Subclass members and induce them to rely on their misrepresentations and omissions.

162. Had Defendants disclosed to Plaintiff Checchia and the Pennsylvania Subclass members that the Phenylephrine Products cannot provide effective congestive relief, Defendants would have incurred substantial economic losses as they would have needed to pull their Phenylephrine Products from the market or decrease the Products' prices to reflect their inability to decongest. Millions of consumers, including Plaintiff Checchia and the Pennsylvania Subclass members, trusted Defendants to supply honest and scientifically valid claims about the efficacy of their products. Defendants accepted the responsibility of producing, distributing, and/or selling legitimate medicinal products to consumers seeking to alleviate cold and allergy symptoms. Accordingly, Plaintiff Checchia and the Pennsylvania Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

163. Defendants acted intentionally, knowingly, and maliciously to violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and recklessly disregarded Plaintiffs and the Pennsylvania Subclass members' rights.

164. As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices and Plaintiff Checchia's and the Pennsylvania Subclass

35

members' reliance on them, Plaintiff Checchia and the Pennsylvania Subclass members have suffered monetary damages, as alleged herein, including but not limited to the cost of a worthless product or a premium above that charged to consumers for products that supply substantially similar benefits apart from decongestion.

165. Plaintiff Checchia and the Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including, pursuant to 73 Pa. Stat. Ann. § 201-9.2, actual damages or statutory damages of $100 (whichever is greater), treble damages, attorneys' fees and costs, and grant any additional relief the Court deems necessary or proper, including but not limited to injunctive relief.

**COUNT VI**
**Common Law Fraud, Deceit, and/or Misrepresentation**
**On Behalf of the Classes**
**Against All Defendants**

166. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

167. Plaintiffs bring this claim on behalf of themselves and the Classes.

168. Defendants represented to Plaintiffs and all putative Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members on the Phenylephrine Products' labeling and/or packaging and associated advertising that the Products are nasal decongestants when they cannot provide effective congestive relief, as well as the omission, suppression, and/or concealment from Plaintiffs and the Classes that phenylephrine cannot effectively provide such relief.

169. Defendants knew, or should have known, that the misrepresentation alleged herein was false at the time they made the misrepresentation and/or they acted recklessly in making such a misrepresentation.

170. Defendants' misrepresentation of the efficacy of their Phenylephrine Products at providing congestive relief was material to consumers because efficacy is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase

a healthcare product.

171.    Defendants intended that Plaintiffs and the putative Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members rely on the misrepresentations alleged herein and purchase their Phenylephrine Products.

172.    Plaintiffs and the putative Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Phenylephrine Products, were unaware of the existence of facts that Defendants suppressed and failed to disclose, and, had the facts been known, would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

173.    Plaintiffs and the Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members seek all damages permitted by law, including compensation for the monetary difference between the Phenylephrine Products as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**COUNT VII**
**Negligent Misrepresentation**
**On Behalf of the Classes**
**Against All Defendants**

174.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

175.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Classes and Illinois, New Jersey, California, and Pennsylvania Subclasses.

176.    Defendants, directly or through their agents and employees, falsely represented that the Phenylephrine Products are nasal decongestants when they cannot provide effective congestive relief.

177.    Defendants' misrepresentation related to the efficacy of their Phenylephrine Products was a misrepresentation of a material fact made directly to Plaintiffs and the Nationwide

Class and Illinois, New Jersey, California, and Pennsylvania Subclass members on the Products' packaging, labeling, and/or advertising, as described above.

178.     Defendants had no reasonable grounds for believing these representations to be true when it made them.

179.     In making these representations, Defendants intended to induce the reliance of Plaintiffs and the Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members.

180.     Plaintiffs and Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members reasonably and justifiably relied on Defendants' misrepresentations when purchasing the Products and, had the facts been known, they would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

181.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs and the Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members have been damaged in an amount to be established at trial including compensation for the monetary difference between the Phenylephrine Products as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**COUNT VIII**
**Unjust Enrichment**
**On Behalf of the Classes**
**Against All Defendants**

182.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

183.     Plaintiffs bring this claim on behalf of themselves and the Classes.

184.     This claim asserts that it is unjust to allow Defendants to retain profits from their deceptive, misleading, and unlawful conduct alleged herein.

185.     Defendants charged Plaintiffs and the Nationwide Class and Illinois, New Jersey,

California, and Pennsylvania Subclass members for the Phenylephrine Products that Defendants represented were nasal decongestants when they cannot provide effective congestive relief.

186.    As detailed above, the Phenylephrine Products do not provide effective congestive relief.

187.    Plaintiffs and the putative Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members would not have purchased the Phenylephrine Products, or alternatively would not have paid a premium for them, had Defendants not misrepresented their efficacy at providing congestive relief.

188.    Because the Defendants misrepresented their efficacy, as alleged, Defendants collected profit for this misrepresentation.

189.    As a result of these actions, Defendants received benefits under circumstances where it would be unjust to retain these benefits.

190.    Defendants have knowledge or an appreciation of the benefits conferred upon them by Plaintiffs and the putative Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members.

191.    Defendants have been unjustly enriched.

192.    Plaintiffs and the Nationwide Class and Illinois, New Jersey, California, and Pennsylvania Subclass members are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by Defendants from their deceptive, misleading, and unlawful conduct including compensation for the monetary difference between the Phenylephrine Products as warranted and as sold.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.  Certifying the Classes as requested herein;

B.  Appointing Plaintiffs' counsel as Class Counsel;

C.  Injunctive relief, including but not limited to enjoining Defendants from engaging in the unlawful and unfair business acts and practices alleged herein

and requiring Defendants to disclose phenylephrine's actual efficacy for decongestion on the packaging and/or labeling and associated advertising for the Phenylephrine Products;

D.  Disgorgement of the ill-gotten gains derived by Defendants from their sales of the Phenylephrine Products from Plaintiffs and members of the Classes;

E.  Awarding compensatory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

F.  Awarding statutory damages as permitted by the counts alleged herein;

G.  Awarding punitive damages pursuant to common and/or statutory law;

H.  Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

I.  Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

J.  For trial by jury on all issues; and

K.  Providing such further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.


Date: October 2, 2023

By: */s/ Andrea R. Gold*

Andrea R. Gold (Bar No. 6282969)
Hassan A. Zavareei
Leora Friedman (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*agold@tzlegal.com*
*hzavareei@tzlegal.com*
*lfriedman@tzlegal.com*

*Attorneys for Plaintiffs*