# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:23−cv−13843

Riccio v. Pfizer, Inc.
Assigned to: Honorable Joan B. Gottschall
Demand: $5,000,000
Cause: 28:1332 Diversity−Account Receivable

Date Filed: 09/18/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Rose Riccio**
represented by
**Erin J. Ruben**
Milberg Coleman Bryson Phillips
Grossman Pllc
900 W. Morgan Street
Raleigh, NC 27603
(919) 600−5000
Fax: Not a member
Email: eruben@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Hunter Bryson**
Milberg Coleman Bryson Phillips
Grossman, Pllc
900 W. Morgan Street
Raleigh, NC 27603
(919) 600−5000
Fax: Not a member
Email: hbryson@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nick Suciu , III**
Milberg Coleman Bryson Phillips
Grossman, PLLC
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 483021
313 303−3472
Fax: Pro Hac Vice
Email: nsuciu@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Susan Weiner**
Pearson Warshaw, LLP
328 Barry Avenue S.
Suite 200
Wayzata, MN 55391
612−389−0600
Fax: 612−389−0610
Email: mweiner@pwfirm.com
*ATTORNEY TO BE NOTICED*

**Ryan Thomas Gott**
Pearson Warshaw, Llp
328 Barry Ave. South
Suite 200
Wayzata, MN 55391
(612) 389−0600
Fax: Not a member
Email: rgott@pwfirm.com
*ATTORNEY TO BE NOTICED*

**Gary M. Klinger**
Milberg Coleman Bryson Phillips
Grossman PLLC
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
866−252−0878
Fax: Active
Email: gklinger@milberg.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Pfizer, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/18/2023 | 1 | COMPLAINT filed by Rose Riccio; Jury Demand. Filing fee $ 402, receipt number AILNDC−21100598.(Klinger, Gary) (Entered: 09/18/2023) |
| 09/18/2023 | 2 | CIVIL Cover Sheet (Klinger, Gary) (Entered: 09/18/2023) |
| 09/18/2023 | 3 | ATTORNEY Appearance for Plaintiff Rose Riccio by Nick Suciu, III (Suciu, Nick) (Entered: 09/18/2023) |
| 09/18/2023 | 4 | ATTORNEY Appearance for Plaintiff Rose Riccio by John Hunter Bryson (Bryson, John) (Entered: 09/18/2023) |
| 09/18/2023 | 5 | ATTORNEY Appearance for Plaintiff Rose Riccio by Erin J. Ruben (Ruben, Erin) (Entered: 09/18/2023) |
| 09/20/2023 | 6 | ATTORNEY Appearance for Plaintiff Rose Riccio by Melissa Susan Weiner (Weiner, Melissa) (Entered: 09/20/2023) |
| 09/20/2023 | 7 | ATTORNEY Appearance for Plaintiff Rose Riccio by Ryan Thomas Gott (Gott, Ryan) (Entered: 09/20/2023) |
| 09/20/2023 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post−trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (mek, ) (Entered: 09/20/2023) |
| 09/20/2023 | | CASE ASSIGNED to the Honorable Joan B. Gottschall. Designated as Magistrate Judge the Honorable Gabriel A. Fuentes. Case assignment: Random assignment. (mek,) (Entered: 09/20/2023) |
| 09/21/2023 | | SUMMONS Issued as to Defendant Pfizer, Inc. (mek) (Entered: 09/21/2023) |
| 09/22/2023 | 8 | MINUTE entry before the Honorable Joan B. Gottschall: An initial status report is due on or before November 29, 2023. Counsel and parties are directed to familiarize themselves with the pretrial procedures in Judge Gottschall's case management packet, which is available from the court's website at http://www.ilnd.uscourts.gov. Please pay particular attention to the requirement to exchange initial disclosures within 14 days of the parties' initial discovery planning conference and the court's requirement that the parties are to explore settlement opportunities and identify areas of agreement prior to the filing of the first status report. See Fed. R. Civ. P. 26(a)(1)(C) and 26(f)(2). If, by the due date of the scheduled status report, defendants have not been served, plaintiff should send an email to the chambers email account, chambers_gottschall@ilnd.uscourts.gov, to reset the status date. Counsel in cases |

| | | |
|---|---|---|
| | | removed from another court should follow these procedures to the extent applicable. See the order and Judge Gottschall's case management packet for further details. Mailed notice. (mgh, ) (Entered: 09/22/2023) |
| 09/22/2023 | 9 | ORDER signed by the Honorable Joan B. Gottschall on 9/22/2023. Mailed notice. (mgh, ) (Entered: 09/22/2023) |
| 10/02/2023 | 10 | SUMMONS Returned Executed by Rose Riccio as to Pfizer, Inc. on 9/25/2023, answer due 10/16/2023. (Klinger, Gary) (Entered: 10/02/2023) |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROSE RICCIO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PFIZER, INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>Case No.: |

Plaintiff, Rose Riccio, on behalf of herself and all others similarly situated, brings this class action against Defendant, Pfizer, Inc. ("Defendant" or "Pfizer"), and alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

## GENERAL ALLEGATIONS

1. Pfizer offers a variety of non-prescription drugs, including oral nasal decongestants, competing in a billion-dollar industry. Such products include the over the counter oral nasal decongestants "Robitussin Adult MAXIMUM STRENGTH– Severe Multi-Symptom Cough Cold + Flu," "Robitussin Adult MAXIMUM STRENGTH– Severe Multi-Symptom Cough Cold + Flu Nighttime," and "Robitussin Adult MAXIMUM STRENGTH– Severe Multi-Symptom Cough Cold + Flue – Day and Night Value Pack" (collectively, "Products" or "Robitussin PE Products"). These Products are phenylephrine hydrochloride ("PE") nasal decongestant syrups marketed as "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Body Aches," and "Fever."

2. The active decongestant ingredient is phenylephrine, which the weight of the reliable scientific evidence, as recently unanimously confirmed by a Food and Drug Administration ("FDA") committee, has determined to be no more effective as a nasal

1

decongestant than placebo.

3.  When consumers purchase decongestants and pain relief pills, the strength of the ingredients are important purchasing considerations, especially for consumers seeking a "MAXIMUM STRENGTH" product.

4.  Pfizer takes advantage of this consumer preference for strong relief by prominently representing the alleged strength of the Robitussin PE Products in the one place every consumer looks when purchasing a product—the front packaging.

5.  On each product package for the Products, Pfizer uniformly touts in capitalized, white font set against a red background on the front of the package that provides "MAXIMUM STRENGTH" relief and also misleadingly touts "MAXIMUM STRENGTH" as to their other active ingredient, acetaminophen, as a pain reliever::







6.      The Day & Night Cold Relief product also falsely touts it is "MAXIMUM STRENGTH" as to the other active ingredient, acetaminophen, as a body aches/fever reliever.

7.      By portraying the Robitussin PE Products as "MAXIMUM STRENGTH" decongestants and body aches/fever relievers, Pfizer misleads consumers into believing the ingredients are suited to providing the strongest decongestant and body aches/fever relief allowable over the counter.

8.      Despite marketing these Robitussin PE Products as "MAXIMUM STRENGTH," Pfizer knew the active nasal decongestant ingredient, phenylephrine hydrochloride, was not as strong as other decongestants. Indeed, studies have shown that phenylephrine hydrochloride is no

4

more effective than a placebo. Additionally, the Products do not even contain the maximum dosage of acetaminophen. and are thus not deserving of the "MAXIMUM STRENGTH" label and representation.

9.      Thus, this "MAXIMUM STRENGTH" packaging is misleading because nasal decongestants that are actually effective—without the "MAXIMUM STRENGTH" claim—are available. For example, both oxymetazoline and pseudoephedrine are both available without a prescription, and the former may be purchased over the counter.

10.     Further, Pfizer knew that higher doses of acetaminophen exist on the market. The Court need look no further than the manufacturing and marketing of acetaminophen products as "Regular Strength" for 325 mg and "Extra Strength" for 500 mg capsules, tablets, and gelcaps, taken, as with the Robitussin PE Product, in dosages of two each.

11.     Despite this knowledge, Pfizer chose to mislead consumers through its promotion of the Robitussin PE Products, with and without acetaminophen, as "MAXIMUM STRENGTH" decongestants and pain relievers. However, none of the Robitussin PE Products are "MAXIMUM STRENGTH." Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether the Robitussin PE Products are "MAXIMUM STRENGTH" decongestants and body aches/fever relievers, or to ascertain the true quality or strength of these Products. For that reason, reasonable consumers must and do rely on manufacturers, like Pfizer, to be honest and transparent and to properly disclose on the packaging all material information regarding the Products and strength.

12.     Rather than being honest and transparent, Pfizer makes this "MAXIMUM STRENGTH" representation in a knowingly false, misleading and deceptive manner.

13.     For all the reasons set forth herein, including, but not limited to, Pfizer's

5

misrepresentations and omissions regarding its "MAXIMUM STRENGTH" claims, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Pfizer's Robitussin PE Products, for: (1) violation of State consumer protection laws and (2) unjust enrichment.

## THE PARTIES

14.    Plaintiff is a citizen of Illinois, residing in the Village of Niles, within Cook County. She purchased Robitussin Severe Multi-Symptom Cough, Cold + Flu within the applicable statute of limitations period, most recently in 2023.

15.    Pfizer is a Delaware corporation with its principal place of business in New York. As such, Pfizer is a resident and citizen of New York.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over Pfizer in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois. Pfizer has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold the Products in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time Pfizer was engaged in business activities in the state of Illinois.

17.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class

members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Pfizer are citizens of different states.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Pfizer conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Robitussin PE Products in this District. Furthermore, Plaintiff Riccio resides in this District.

## FACTS COMMON TO ALL CLASS MEMBERS

20.     Pfizer is one of the largest drug manufacturing companies in the world. As such, Pfizer sells several OTC drugs, including the "Robitussin" branded line of products.

21.     Phenylephrine hydrochloride is the active ingredient in Pfizer's Robitussin PE Products for nasal decongestion. Acetaminophen is the active ingredient in the Robitussin PE Products that are the subject of this action as a pain reliever. When included, both form the basis for Pfizer's "MAXIMUM STRENGTH" misrepresentations on the Products' packaging, and overall advertising and marketing campaign.

22.     At all relevant times, Pfizer has marketed its Products in a consistent and uniform manner nationwide.

23.     As alleged above, the Robitussin PE Products represent that they are "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Body Aches," and "Fever," which representations prominently appear on the front label of the Products in capitalized, white font set against a red background that contrasts with the background of the packaging. This instantly catches the eye of

all reasonable consumers, including Plaintiff and class members.

24.　A reasonable consumer would understand that "MAXIMUM STRENGTH" relief means the Products contained the strongest nasal decongestant available on the over the counter market, as well as the strongest dose of acetaminophen for pain relief.

25.　All reasonable consumers, including Plaintiff, read and relied on Pfizer's "MAXIMUM STRENGTH" representations when purchasing the Products. Indeed, when purchasing pharmaceuticals, especially those promising to be "MAXIMUM STRENGTH," consumers look for a product with the strongest active ingredients possible and are willing to pay a premium for them.

26.　Pfizer's "MAXIMUM STRENGTH" representation was material to Plaintiff's and class members' decision to purchase the Robitussin PE Products. Had consumers, such as Plaintiff, known the Robitussin PE Products were not "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Body Aches," and "Fever," they would not have purchased the Products or would have paid less. Indeed, the only reason consumers purchase pharmaceuticals is for their advertised therapeutic effect. They want relief from their cold symptoms, and in this case, Plaintiff and the Class members purchased "MAXIMUM STRENGTH" based on Pfizer's false representations and omissions.

27.　Pfizer's marketing efforts are made in order to—and do in fact—induce consumers to purchase the Robitussin PE Products at a premium because consumers believe they are getting "MAXIMUM STRENGTH" decongestants. This deceives consumers because they are not informed that phenylephrine hydrochloride nasal decongestants are not "MAXIMUM STRENGTH" as compared to other, available decongestants.

28.　Pfizer, however, has at all relevant times been well aware that its PE Products are

8

not "MAXIMUM STRENGTH" nasal decongestants and that other, stronger decongestants are available.

29.     Starting in December 2007, the FDA convened a Nonprescription Drugs Advisory Committee ("NDAC") meeting, to address questions about phenylephrine's purported effectiveness. On September 11 and 12, 2023, an advisory panel of the FDA met again to present its findings on scientific literature presented as to the effectiveness of phenylephrine hydrochloride (referred to by the FDA as "PE") as an oral nasal decongestant. The panel found: "[W]e have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours)."

30.     In 2015, in a well-publicized fashion, further independent research was submitted to the FDA requesting the PE be reclassified as not effective as a nasal decongestant.

31.     As a leading manufacturer of phenylephrine hydrochloride oral nasal decongestants, Defendant knew, or should have known, of the same scientific literature reviewed by the FDA. Nonetheless, it represents that the Robitussin PE Products are "MAXIMUM STRENGTH." This is particularly misleading because there exist other non-prescription nasal decongestants, which contain effective active ingredients, such as pseudoephedrine. Accordingly, consumers are induced into purchasing the Robitussin PE Products, based on the "MAXIMUM STRENGTH" representation, when comparing it to competing nasal decongestants.

32.     Nonetheless, because the Robitussin PE Products contain phenylephrine as the only active oral nasal decongestant ingredient, for that reason alone they are not "MAXIMUM STRENGTH" relief for "Nasal Congestion." Phenylephrine is not the "MAXIMUM STRENGTH" nasal decongestant available over the counter. Even Defendant offers other

Robitussin-branded decongestant with higher strength active decongestant ingredients.

33.     Further, the "MAXIMUM STRENGTH" representation in the Robitussin PE Products is misleading for yet another reason. The only active ingredient for "Body Aches/Fever" is 325 mg of acetaminophen, which is the equivalent of a "Regular Strength" acetaminophen tablet. Thus, the strength of the acetaminophen dosage is far below anything that can be considered "MAXIMUM STRENGTH," or as it is acetaminophen is commonly marketed as "Extra Strength."

34.     Pfizer intended for Plaintiff and Class members to be deceived or misled by its misrepresentations and omissions. Indeed, label space is limited, so manufacturers only place the most pertinent information on the front label. Defendant specifically labeled and marketed the Robitussin PE Products as "MAXIMUM STRENGTH" relief for "Nasal Congestion" "Body Aches," and "Fever," when other oral nasal decongestants were not marketed in a similar fashion.

35.     Pfizer's deceptive and misleading practices proximately caused harm to Plaintiff and the Classes.

36.     Plaintiff and Class Members would not have purchased the Robitussin PE Products, or would have paid less for them, had they known the truth about the mislabeled and falsely advertised products. Indeed, other, stronger nasal decongestants and higher acetaminophen doses are available.

## PLAINTIFF'S FACTUAL ALLEGATIONS

37.     Plaintiff relied on the "MAXIMUM STRENGTH" label in deciding to purchase what she believed to be the strongest nasal decongestant. Had Plaintiff known that phenylephrine, the only active oral nasal decongestant ingredient in Robitussin PE Products, is not the "MAXIMUM STRENGTH" nasal decongestant allowable over the counter, she would not have purchased it. Further, had she known the acetaminophen in the Robitussin PE Product was not the

maximum dosage available, she would not have purchased it.

38.      Plaintiff resides in Village of Niles, Illinois and is a citizen of Illinois. Throughout the relevant period, Plaintiff purchased the Products at issue in this lawsuit and was exposed to, and reasonably relied upon, Pfizer's "MAXIMUM STRENGTH" representations. Specifically, Plaintiff purchased Pfizer Robitussin Severe Multi-Symptom Cough, Cold + Flu from a local Walgreens and Jewel Osco located near her home in within Village of Niles, Illinois as recently as three months ago. At the time of purchase, Plaintiff reviewed the Product packaging, including the front-label representations, and reasonably believed from these representations that the Products were "MAXIMUM STRENGTH." In reasonable reliance on these representations, Plaintiff paid an increased cost for the Products, which were worth less than represented because the statements were not true and were highly misleading. The "MAXIMUM STRENGTH" representation on the Products' packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if she knew the "MAXIMUM STRENGTH" representations were untrue and/or misleading. Plaintiff paid a price premium for empty promises that Pfizer did not keep. Had Plaintiff been aware that the "MAXIMUM STRENGTH" representations made by Pfizer on the Products was untrue, she would have paid less for the Products, or would not have purchased them at all.

## FED. R. CIV. P. 9(B) ALLEGATIONS

39.      Pfizer made material misrepresentations and/or omissions of fact in its labeling and marketing of the Robitussin PE Products by representing that they are "MAXIMUM STRENGTH" decongestant and pain relief products.

40.      Pfizer's alleged conduct was and continues to be fraudulent because it has the effect

11

of deceiving consumers into believing that the Robitussin PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products. Pfizer omitted from Plaintiff and Class members that the Robitussin PE Products are not "MAXIMUM STRENGTH" oral nasal decongestant products because other decongestant products exist in the market that are stronger as decongestants. Pfizer knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Pfizer has and continues to represent that the Robitussin PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products when they are not, and has omitted from the Robitussin PE Products' packaging the fact that there are other non-prescription products that are stronger decongestants. So too with respect to Pfizer's misrepresentations that Robitussin PE products are "MAXIMUM STRENGTH" with respect to pain relief, even though their acetaminophen content is only regular strength.

41.     Pfizer made material misrepresentations and/or omissions detailed herein, including that the Robitussin PE Products are "MAXIMUM STRENGTH" oral nasal decongestant and pain reliever, continuously throughout the applicable class period(s).

42.     Pfizer's material misrepresentations and omissions, that the Robitussin PE Products are "MAXIMUM STRENGTH" oral nasal decongestant and pain reliever products, were located on the front label of the Robitussin PE Products in capitalized, bold white lettering that contrasts with the red background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and class members, at the point of sale in every transaction. Robitussin PE Products are sold in brick-and-mortar stores and online stores in Illinois and nationwide.

43.     Pfizer made written misrepresentations of fact on the front label of the Robitussin PE Products, that the Robitussin PE Products were "MAXIMUM STRENGTH" oral nasal

decongestant products and pain relievers, even though other stronger decongestant and body pain reliever products are available over the counter. As such, Pfizer's "MAXIMUM STRENGTH" representations are false and misleading. Moreover, Pfizer omitted from the Robitussin PE Products' labeling the fact that there are other non-prescription products available in the market that are stronger decongestants and pain relievers. And as alleged in detail throughout this Complaint, Plaintiff and class members read and relied on Pfizer's "MAXIMUM STRENGTH" representations and omissions before purchasing the Robitussin PE Products.

44.     Pfizer misrepresented its PE Products as being "MAXIMUM STRENGTH" decongestant and body aches/fever products and omitted from the Robitussin PE Products' labeling the fact that there are other, non-prescription products available in the market that are stronger decongestants and pain relievers, for the express purpose of inducing Plaintiff and Class members to purchase the inferior phenylephrine hydrochloride and acetaminophen products at a price premium. As such, Pfizer profited by selling the misrepresented products to at least thousands of consumers throughout the nation.

## **CLASS ACTION ALLEGATIONS**

45.     Plaintiff brings this action on behalf of themselves and the following "Classes" pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class**: All persons in the United States who purchased the Robitussin PE Products in the United States for personal use and not for resale during the applicable statute of limitations period.

> **Illinois Subclass**: All persons in the State of Illinois who purchased the Robitussin PE Products in the State of Illinois for personal use and not for resale during the applicable statute of limitations period.

> **Multi-State Consumer Protection Class:** All persons who purchased in the State

13

of Illinois or any state with similar laws[1] any of the Products, within the applicable statute of limitations, until the date notice is disseminated.

46.     Excluded from the Classes are (a) any person who purchased the Robitussin PE Products for  resale and not for personal or household use, (b) any person who signed a release of any Pfizer in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Pfizer or any entity in which a Pfizer has a controlling interest, (d) any legal counsel or employee of legal counsel for Pfizer, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

47.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

48.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class members are so numerous and geographically dispersed that joinder of all class members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative class members.

49.     **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are limited to, the following:

---

[1] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Cal. Bus. & Prof. Code § 17200*, et seq.*); Florida (Fla. Stat. §§ 501.201, *et seq.*); Illinois (815 ICLS §§ 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §§ 445.901, *et seq.*); Minnesota (Minn. Stat. §§ 325F.67, *et seq.*); New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, *et seq.*); Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*); *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

a.  Whether Pfizer made the "MAXIMUM STRENGTH" representations;

b.  Whether Pfizer promoted the Robitussin PE Products with false and misleading statements of fact and material omissions;

c.  Whether Pfizer's "MAXIMUM STRENGTH" representations are deceptive, unfair, or misleading to the reasonable consumer;

d.  Whether Pfizer's actions and/or omissions violate applicable laws;

e.  Whether Plaintiff and putative members of the Classes have suffered loss of monies or property or other value as a result of Pfizer's acts, omissions, or misrepresentations of material facts;

f.  Whether Pfizer was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the Robitussin PE Products ;

g.  Whether Plaintiff and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

h.  Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

50.  **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent Class members in that Plaintiff and the Class members each purchased and used the Robitussin PE Products and each sustained damages arising from Pfizer's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiff and all members of the putative Classes have been similarly affected by Pfizer's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Pfizer's false and deceptive

"MAXIMUM STRENGTH" representations about the Robitussin PE Products, as alleged herein.

51.    **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Classes.

52.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Pfizer. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

53.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure  23(b)(2).** Pfizer has acted or refused to act on grounds generally applicable to Plaintiff and all members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

54.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.  The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Pfizer's conduct;

b.  Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.  The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d.  Individual joinder of all members of the Classes is impracticable;

e.  Absent a class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of Pfizer's unlawful conduct; and

f.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Pfizer.

g.  In the alternative, the Classes may be certified for the following reasons:

   (1) The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Pfizer;

   (2) Adjudications of claims of the individual members of the Classes against Pfizer would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class members to protect their

interests; and

(3) Pfizer has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT
#### (By Plaintiff on Behalf of the Illinois Subclass)

55.     Plaintiff realleges paragraphs 1-54 above as if fully set forth herein.

56.     Plaintiff brings this claim on behalf of herself and the Illinois Subclass.

57.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . .".

58.     Plaintiff and the Illinois Subclass members were injured by Pfizer's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass members relied on Pfizer's misrepresentations, concealments and omissions when purchasing the Products, they were injured at the time of purchase.

59.     Pfizer does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and

elsewhere in the United States.

60.  The Products purchased by Plaintiff and the Illinois Subclass members were "consumer items" as that term is defined under the ICFA.

61.  Pfizer engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Pfizer as set forth above concerning its Products, which has caused damage and injury to Plaintiff and the Illinois Subclass members. Plaintiff and the Illinois Subclass members were injured by Pfizer's unfair and deceptive acts at the time of purchasing the Products.

62.  Pfizer's marking of Robitussin PE Products violates this prohibition by deceiving consumers into believing Robitussin PE is a "MAXIMUM STRENGTH" decongestant or pain reliever/fever reducer.

63.  Pfizer engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

64.  Pfizer engaged in misleading and deceptive advertising that represented that the Robitussin PE Products were MAXIMUM STRENGTH." Pfizer chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe Pfizer's false and misleading "MAXIMUM STRENGTH" representations and omissions.

65.  Pfizer's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

66.  Pfizer intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

19

67.     Pfizer's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

68.     Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the Products but for Pfizer's material misrepresentations as described in this Complaint.

**COUNT VI**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(By Plaintiff on Behalf of the Illinois Subclass)**

69.     Plaintiff realleges paragraphs 1-54 above as if fully set forth herein.

70.     Plaintiff brings this claim on behalf of herself and the Illinois Subclass.

71.     The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

72.     815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

73.     Pfizer's marking of Robitussin PE Products violates this prohibition by deceiving consumers into believing Robitussin PE is a "MAXIMUM STRENGTH" decongestant or body aches/fever reliver.

74.     Pfizer engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

75.     Pfizer engaged in misleading and deceptive advertising that represented that the Robitussin PE Products were MAXIMUM STRENGTH." Pfizer chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe Pfizer's false and misleading "MAXIMUM STRENGTH" representations and omissions.

76.     Pfizer intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Robitussin PE Products.

77.     Pfizer's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass members to be deceived about the true nature of the Products.

78.     Pfizer's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

79.     Pfizer's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass Members at the time of purchase.

80.     Plaintiff and the Illinois Subclass Members would not have purchased, or would have paid less for, the Products but for Pfizer's material misrepresentations as described in this Complaint.

81.     Pfizer intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

## COUNT III
### VIOLATION OF STATE CONSUMER PROTECTION STATUTES
**(By Plaintiff on Behalf of the Multi-State Consumer Protection Class)**

82.     Plaintiff incorporates paragraphs 1-54 as if fully set forth herein.

83.     Plaintiff brings this cause of action on behalf of herself and the Multi-State Consumer Protection Class.

84.     Plaintiff and Multi-State Consumer Protection Class members have been injured as a result of Pfizer's violations of the state consumer protection statutes listed above in paragraph 45 and footnote 1, which also provide a basis for redress to Plaintiff and Multi-State Consumer Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

85.     Pfizer's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

86.     Pfizer violated the Multi-State Consumer Class states' consumer protection, unfair trade practices, and deceptive acts laws through its misleading and deceptive advertising that represented that the Robitussin PE Products were "MAXIMUM STRENGTH." Pfizer chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the Products would be impacted by its omissions and would reasonably believe Defendant's false and misleading "MAXIMUM STRENGTH" representations and omissions.

87.     Pfizer's misrepresentations were material to Plaintiff and Multi-State Consumer Class members' decision to purchase the Robitussin PE Products or pay a premium for the Robitussin PE Products.

88.     Pfizer made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

89.     As a result of Pfizer's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Class members paid a premium for the Products.

90.     As a result of Defendant's violations, Pfizer has been unjustly enriched.

91.     Pursuant to the alleged consumer protection, unfair trade practices, and deceptive acts laws, Plaintiff and Multi-State Consumer Class members are entitled to recover compensatory damages, restitution, punitive and special damages, including but not limited to statutory or treble damages, reasonable attorneys' fees, and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiff, In the Alternative, and on Behalf of the Nationwide and/or Illinois Subclass)**

92.     Plaintiff realleges paragraphs 1-54 above as if fully set forth herein.

93.     Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and/or the Illinois Subclass. It is alleged it the alternative to the extent there is no adequate remedy at law.

94.     Plaintiff and the putative class members conferred a benefit on Pfizer when they purchased the Robitussin PE Products. By its wrongful acts and omissions described herein, including selling the Robitussin PE Products containing the "MAXIMUM STRENGTH" representations, which did not conform to the promises or affirmations of fact made on the label, Pfizer was unjustly enriched at the expense of Plaintiff and the putative class members.

95.     Plaintiff's detriment and Pfizer's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

96.    Pfizer has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative class members under circumstances in which it would be unjust for Pfizer to be permitted to retain the benefit. It would be inequitable for Pfizer to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Robitussin PE Products.

97.    Pfizer has been unjustly enriched in retaining the revenues derived from class members' purchases of the Robitussin PE Products, which retention of such revenues under these circumstances is unjust and inequitable because Pfizer marketed, advertised, distributed, and sold the Robitussin PE Products, and Pfizer misrepresented the nature of the products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Robitussin PE Products with "MAXIMUM STRENGTH" representations, which caused injuries to Plaintiff and the Classes because they would not have purchased the Robitussin PE Products based on the same representations if the true facts concerning the Robitussin PE Products had been known.

98.    Plaintiff and the putative class members have been damaged as a direct and proximate result of Pfizer's unjust enrichment because they would not have purchased the Robitussin PE Products on the same terms or for the same price had they known the true nature of the Robitussin PE Products and the misstatements regarding the strength of the Robitussin PE Products' active ingredient.

99.    Pfizer either knew or should have known that payments rendered by Plaintiff and the Class members were given and received with the expectation that the "MAXIMUM STRENGTH" representations made by Pfizer in advertising and on the PE Products' labels and packaging were true. It is inequitable for Pfizer to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" representations are not true.

100.     Plaintiff and the putative Class members are entitled to recover from Pfizer all amounts wrongfully collected and improperly retained by Pfizer.

101.     As a direct result of Pfizer's wrongful conduct and unjust enrichment, Plaintiff and the putative Class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Pfizer for their inequitable and unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A.     Declaring that this action is properly maintained as a class action, certifying the proposed Classes, appointing as Class Representative and appointing Plaintiff's counsel as Class Counsel;

B.     Directing that Pfizer bear the costs of any notice sent to the Classes;

C.     Declaring that Pfizer must disgorge, for the benefit of the Classes, all or part of the ill-gotten profits they received from the sale of the Robitussin PE Products, or order Pfizer to make full restitution to Plaintiff and the members of the Classes;

D.     Awarding restitution and other appropriate equitable relief;

E.     Granting an injunction against Pfizer to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F.     Granting an Order requiring Pfizer to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "MAXIMUM STRENGTH" representations regarding the Robitussin PE Products;

G.     Ordering a jury trial and damages according to proof;

H.   Awarding Plaintiff and members of the Classes compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I.   Enjoining Pfizer from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.   Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

K.   Awarding civil penalties, prejudgment interest, and punitive damages as permitted by law; and

L.   Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.


Dated: September 18, 2023                    Respectfully submitted,


By: */s/ Gary Klinger*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Jeff Ostrow
Jonathan M. Streisfeld
Kristen Lake Cardoso
Daniel Tropin*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Email:  ostrow@kolawyers.com
        streisfeld@kolawyers.com
        cardoso@kolawyers.com

Melissa S. Weiner
Ryan J. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Email: mweiner@pwfirm.com
        rgott@pwfirm.com

Erin Ruben
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com

J. Hunter Bryson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com

Karl Amelchenko*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: kamelchenko@milberg.com

Jimmy Mintz*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
201 Sevilla Ave., 2nd Floor
Coral Gables, FL 33134
Telephone: (786) 876-8200
Email: jmintz@milberg.com

*Attorneys for Plaintiff*