Query    Reports    Utilities    Help    Log Out

ACO,DJI

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:23-cv-07311-NGG-VMS

Coyle v. GlaxoSmithKline LLC et al                      Date Filed: 09/29/2023
Assigned to: Judge Nicholas G. Garaufis                  Jury Demand: Plaintiff
Referred to: Magistrate Judge Vera M. Scanlon            Nature of Suit: 195 Contract Product Liability
Cause: 28:1332 Diversity-Product Liability               Jurisdiction: Diversity

**Plaintiff**

**John Coyle**                           represented by   **Virginia E Anello**
                                                          Douglas & London, P.C.
                                                          111 John Street, Suite 1400
                                                          New York, NY 10038
                                                          212-566-7500
                                                          Fax: 212-566-7501
                                                          Email: vanello@douglasandlondon.com
                                                          *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GlaxoSmithKline LLC**

**Defendant**

**Johnson & Johnson Consumer Companies, Inc**

**Defendant**

**Johnson & Johnson Consumer Inc.**

**Defendant**

**Kenvue, Inc**

**Defendant**

**Reckitt Benckiser LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2023 | 1 | COMPLAINT against All Defendants filing fee $ 402, receipt number ANYEDC-17136067 Was the Disclosure Statement on Civil Cover Sheet completed -NO,, filed by John Coyle. (Attachments: # 1 Civil Cover Sheet) (Anello, Virginia) (Entered: 09/29/2023) |
| 09/29/2023 | 2 | Proposed Summons. Re 1 Complaint by John Coyle (Attachments: # 1 Proposed Summons, # 2 Proposed Summons, # 3 Proposed Summons, # 4 Proposed Summons) (Anello, Virginia) (Entered: 09/29/2023) |
| 10/02/2023 |   | Case Assigned to Judge Nicholas G. Garaufis and Magistrate Judge Vera M. Scanlon. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (KD) (Entered: 10/02/2023) |
| 10/02/2023 | 3 | Clerk's Notice Re: Consent. A United States Magistrate Judge has been assigned to this case and is available to conduct all proceedings. In accordance with Rule 73 of the Federal Rules of Civil Procedure, Local Rule 73.1, the parties are notified that if all parties consent, the assigned Magistrate Judge is available to conduct all proceedings in this action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to this Notice is a blank copy of the consent form that should be filled out, signed and filed electronically only if all parties wish to consent. Any party may withhold its consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.The form may also be accessed at the following link: https://img.nyed.uscourts.gov/files/forms/MJConsentForm.pdf (KD) (Entered: 10/02/2023) |

| 10/02/2023 | [4] | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (KD) (Entered: 10/02/2023) |
|---|---|---|
| 10/02/2023 | | Your proposed summons was not issued for one of the following reasons: **If multiple defendants, there must me a rider attached to the one (1)Proposed summons with the name and addresses of all defendants included. Additionally, The full case caption(All Plaintiff and Defendant name) must appear on the summons.**<br><br>Please correct and resubmit using Proposed Summons/Civil Cover Sheet. (KD) (Entered: 10/02/2023) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/04/2023 18:46:46 | | | |
| **PACER Login:** | KirklandPACER | **Client Code:** | 55353-0003/clawrenc |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-07311-NGG-VMS |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN COYLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br><br>GLAXOSMITHKLINE LLC; JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CONSUMER INC. (f/k/a McNeil-PPC, Inc.); KENVUE INC.; and RECKITT BENCKISER LLC,<br><br>Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, by his attorneys, **DOUGLAS & LONDON, P.C.,** upon information and belief, at all times hereinafter mentioned, alleges as follows:

## NATURE OF THE CASE

1.     This is a class action brought by Plaintiff, JOHN COYLE, individually and on behalf of all other similarly situated individuals, who were damaged and/or injured as a result of the actions of Defendants, GLAXOSMITHKLINE LLC; JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CONSUMER INC. (f/k/a McNeil-PPC, Inc.); KENVUE INC.; RECKITT BENCKISER LLC; ("Defendants") as set forth herein.

2.     Defendants are entities that were and/or are responsible for, among other things, the design, research, manufacturing, testing, marketing, promotion, advertising, distribution and/or sale of over-the-counter pharmaceutical products containing phenylephrine (referred to interchangeably herein as "PE") directed to be taken orally. These products include, but are not limited to, the well-known cold and flu medicine brands Tylenol, TheraFlu, and Mucinex in

addition to generic "store brands" developed by retailers such as CVS, Walgreens, Walmart and Target (collectively "phenylephrine products").

3.    Plaintiff, JOHN COYLE, brings this class action on behalf of himself and the following ascertainable Class defined as "All persons throughout the United States that paid, in whole or in part, for oral phenylephrine products manufactured, marketed, promoted, distributed, sold and/or caused to be sold by Defendants, for personal, family or household use" (the "Proposed Class").

4.    Additionally, and/or alternatively, Plaintiff, JOHN COYLE, brings this class action as a multi-state class action with the ascertainable subclass defined as "All persons from the following states that paid, in whole or in part, for oral phenylephrine products manufactured, marketed, promoted, distributed, sold and/or caused to be sold by Defendants, for personal, family or household use: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Washington D.C., Florida, Idaho, Illinois, Iowa, Massachusetts, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Vermont, and Washington" (the "Proposed Multi-State Subclass").

5.    Additionally, and/or alternatively, Plaintiff, JOHN COYLE, brings this class action on behalf of a subclass of ascertainable New York citizens defined as "All persons from the state of New York that paid, in whole or in part, for oral phenylephrine products manufactured, marketed, promoted, distributed, sold and/or caused to be sold by Defendants, for personal, family or household use" (the "Proposed New York Subclass").

6.    At all relevant times and during the Class Period, Defendants represented to the Plaintiff, the Proposed Class/Subclasses and the public at large that their oral phenylephrine-

2

containing products were effective as nasal decongestants, worked as advertised and were of merchantable quality.

7.    Defendants' representations were false, misleading, deceptive and/or otherwise unlawful because Defendants' oral phenylephrine-containing products were no more effective than a placebo.

8.    Defendants failed to disclose to the Plaintiff, the Proposed Class/Subclasses and/or the public at large that their oral phenylephrine-containing products were not effective despite their decades-long knowledge that the drugs did not work.

9.    Plaintiff and the Proposed Class/Subclasses are individuals who purchased oral phenylephrine-containing products from Defendants, and who did not receive what they paid for.

10.   As a result, Plaintiff and the Proposed Class/Subclasses have been damaged.

11.   Plaintiff brings this action on behalf of himself and all other similarly situated individuals who purchased oral phenylephrine-containing products from Defendants, and who did not receive what they paid for.

12.   Defendants are liable to Plaintiff and the Proposed Class/Subclasses for damages under theories of consumer fraud, breach of implied warranty and unjust enrichment.

## JURISDICTION

13.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because at least one member of the Class is a citizen of a different State than the Defendants, there are 100 or more class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost.

14.   This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District. Defendants have sufficient minimum contacts and purposefully

availed themselves of the benefits and protections of the Eastern District of New York by continuously and systematically conducting substantial business in New York. Each of the Defendants markets and distributes its products in New York.

## PARTY PLAINTIFF

15.     Plaintiff John Coyle is a natural person and resident of the State of New York.

16.     Plaintiff purchased the following oral phenylephrine products from Defendants JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CONSUMER INC. (f/k/a McNeil-PPC, Inc.); and KENVUE INC.: TYLENOL Cold + Flu Severe Caplets; TYLENOL Cold + Flu + Cough Day & Night Liquid.

17.     Plaintiff purchased the following oral phenylephrine products from Defendant GLAXOSMITHKLINE LLC: TheraFlu Expressmax Daytime/ Nighttime Severe Cold & Cough Syrup; TheraFlu ExpressMax Severe Cold and Flu Syrup.

18.     Plaintiff purchased the following oral phenylephrine products from Defendant RECKITT BENCKISER LLC: Mucinex Sinus-Max Severe Congestion Relief Caplets; and Mucinex Fast Max Daytime/Nighttime Liquidgels & Liquid.

19.     Plaintiff purchased the oral phenylephrine products identified in Paragraphs 16 to 18 believing that they were effective as nasal decongestants as represented by Defendants.

20.     Plaintiff was deceived by Defendants because the oral phenylephrine products identified in Paragraphs 16 to 18 were not effective as nasal decongestants.

21.     Plaintiff would not have purchased Defendants' oral phenylephrine products had he known that they were not effective as nasal decongestants.

22.     Plaintiff has been injured, damaged and/or has incurred losses as a result of the behavior of the Defendants as set forth herein.

4

## PARTY DEFENDANTS

23.     Defendant **Johnson & Johnson Consumer Companies, Inc.** is a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey.

24.     Upon information and belief, Defendant Johnson & Johnson Consumer Companies, Inc. is a wholly owned subsidiary of Johnson & Johnson, a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey (collectively "J&J").

25.     At all times relevant to this complaint, Defendant J&J was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain oral phenylephrine-containing products, including but not limited to, Tylenol, Sudafed and Benadryl.

26.     Defendant **Kenvue Inc.** is formerly the consumer healthcare division of Johnson & Johnson. Kenvue is headquartered in Skillman, New Jersey. It wholly owns Defendant McNeil Consumer Healthcare.

27.     Upon information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Defendant Kenvue.

28.     Defendant **Johnson & Johnson Consumer Inc.** (f/k/a McNeil-PPC, Inc.)  is a wholly owned subsidiary of Defendant Kenvue, with manufacturing facilities in both Fort Washington, Pennsylvania and Lancaster, Pennsylvania.

29.     Johnson & Johnson Consumer Inc. manufactures and markets numerous Decongestant Products, including but not limited to TYLENOL Cold + Flu Severe Caplets AND TYLENOL Cold + Flu + Cough Day & Night Liquid, two purported oral decongestants containing phenylephrine.

30. Defendant **GlaxoSmithKline LLC** is a Delaware corporation with headquarters and a principal place of business in the State of Pennsylvania.

31. Upon information and belief, GlaxoSmithKline LLC is a wholly-owned subsidiary of GlaxoSmithKline PLC a public limited company organized under the laws of England and Wales (collectively "GSK").

32. At all times relevant to this complaint, Defendant GSK was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain oral Phenylephrine Products, including but not limited to, Theraflu, Robitussin, Contac, and Advil.

33. Defendant **Reckitt Benckiser LLC** is a Delaware limited liability corporation, with headquarters and a principal place of business in the State of New Jersey.

34. Upon information and belief, Reckitt Benckiser LLC, is a wholly-owned subsidiary of Reckitt Benckiser Group PLC, a public limited company organized under the laws of England and Wales (collectively "Reckitt").

35. At all times relevant to this complaint, Reckitt, was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Mucinex.

## FACTUAL ALLEGATIONS

### Background: Oral Nasal Decongestants

36. Defendants are manufacturers, marketers, promoters, advertisers, distributors and/or sellers of products that contain the drug phenylephrine.

37. Phenylephrine-containing products are marketed, promoted, advertised, distributed and/or sold by Defendants as nasal decongestants – products that can be used to relieve nasal stuffiness by decreasing nasal airway resistance.

38.     Based upon Defendants' representations, phenylephrine works by constricting blood vessels in the nasal passages which, in turn, reduces swelling and congestion.

39.     As relevant here, Defendants' phenylephrine-containing products are ingested orally into the body either in pill or liquid form.[1]

40.     Defendants' phenylephrine-containing products are sold over-the-counter and are relatively easy to purchase by a consumer.

41.     Phenylephrine is one of two compounds that can be found in nasal decongestants; the other compound is pseudoephedrine.[2]

42.     Unlike phenylephrine, the science supports that pseudoephedrine is effective as a nasal decongestant. Although consumers do not need a prescription, products containing pseudoephedrine are not typical over-the counter drugs because they must be purchased behind store counters or they are found in locked cabinets.[3] Many times, purchasers must provide personal identification information, such as that contained on a driver's license, to purchase products containing pseudoephedrine, and many times they are limited in the number of medications they can purchase. This is because pseudoephedrine has been used as an ingredient in illicit methamphetamine laboratories.

43.     Given the inconveniences with purchasing products containing pseudoephedrine, consumers tend to purchase the more convenient products containing phenylephrine, which, at all

---

[1] Products do exist where phenylephrine can be administered via a nasal spray as opposed to oral ingestion. These products are not the subject of the present complaint.
[2] *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 52, available at https://www.fda.gov/media/171915/download ("Phenylephrine is a specific alpha-1 adrenergic receptor agonist that works by temporarily constricting blood vessels. By contrast, pseudoephedrine is a relatively less selective agonist that acts on both alpha and beta-adrenergic receptors.").
[3] Combat Methamphetamine Epidemic Act of 2005.

relevant times, they believed to be effective as nasal decongestants given Defendants' representations, warranties and concealments.

44.     Last year, nearly $1.8 billion in sales of products containing phenylephrine were made in the United States, accounting for approximately 80% of the market for over-the-counter nasal decongestants.

**Concerns Raised Over the Effectiveness of Oral Phenylephrine**

45.     For several decades, scientists have raised concerns that oral phenylephrine-containing products are ineffective as nasal decongestants. As far back as 1993, Dr. Leslie Hendeles, a Professor at the University of Florida, College of Pharmacy, published his conclusion in the Journal of Pharmacotherapy that orally administered phenylephrine is ineffective as a nasal decongestant because it is destroyed in the stomach and would therefore not make it into the bloodstream.[4]

46.     Likewise, in 2006, Dr. Hendeles, this time joined by a colleague at the University of Florida, Dr. Randy C. Hatton, published his conclusion in the Journal of Allergy and Clinical Immunology that "Phenylephrine…is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver…Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[5]

---

[4] Hendeles, L. *Selecting a Decongestant*, Pharmacotherapy vol. 13,6 Pt 2 (1993): 129S-134S; discussion 143S-146S ("phenylephrine is subject to first-pass metabolism and therefore is not bioavailable in currently recommended doses."); Christina Jewett, *Why it took so long for the FDA to Tackle a Cold Medicine*, N.Y. Times, Sept. 15, 2023. https://www.nytimes.com/2023/09/15/health/fda-cold-medicine-decongestant.html.

[5] Leslie Handeles PharmD and Randy Hatton, Pharm D, *Oral phenylephrine: An ineffective replacement for pseudoephedrine*?, 118 J. Allergy and Clinical Immunology 1 (May 1, 2006), citing Bickerman HA. Physiologic and pharmacologic studies on nasal airway resistance presented at a conference sponsored by

8

47.     In 2007, Dr. Hendeles and Dr. Hatton submitted a Citizen's Petition to the FDA ("2007 CP") requesting that the dosage of oral phenylephrine listed on the Final Monograph be re-evaluated. They submitted their meta-analysis of the original data used by the "Cough Cold Advisory Panel" (i.e. the data that led to the initial conclusion that the drug was effective) and explained why their meta-analysis of the same data reached the opposite conclusion: oral phenylephrine is not effective as a nasal decongestant.

48.     In response to the 2007 CP, the FDA held a Non-Prescription Drugs Advisory Committee Meeting December 14, 2007 where the committee discussed: (1) that the results are not consistent across studies for nasal airway resistance ("NAR") and that symptoms should be the primary endpoint instead; (2) that evidence of efficacy consists primarily of studies conducted 40 years prior and included fewer than 200 people; and (3) NAR results may not be generalizable to a wide population based on such small studies.

49.     Accordingly, the Nonprescription Drugs Advisory Committee recommended additional trials which would be:

- Multi-center, parallel, randomized, double blind, placebo-controlled trials, preferably with an active control such as pseudoephedrine, to evaluate nasal congestion scores and symptom relief;

- Characterization of phenylephrine dose response and dosing interval;

- Comparison of pharmacokinetics of single-ingredient products versus multiple-ingredient products; and

- Safety evaluation of the effects of phenylephrine on blood pressure.

---

the Scientific Development Committee of the Proprietary Association. Washington, DC. December 8, 1971, available at https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5

**2023 Nonprescription Advisory Committee Meeting**

50. On September 11, 2023 and September 12, 2023, the FDA held a Drug Advisory Committee meeting to "discuss the effectiveness of oral phenylephrine as an active ingredient in over-the-counter (OTC) cough and cold products that are indicated for the temporary relief of congestion, both as a single ingredient product and in combination with other ingredients."

51. At this meeting, the Advisory Committee concluded that "orally administered PE is not effective as a nasal decongestant at the monographed dosage as well as up to 40 mg."

52. As support for its finding above, the Advisory Committee referred to studies that have been completed since the 2007 meeting which show "that oral phenylephrine is no more effective than a placebo."

53. The Environmental Exposure Studies ("EEU") completed in 2007 demonstrate that orally ingested PE failed to provide any benefit over the placebo."[6]

54. Likewise, in 2009, Horak et al. reported "no difference in nasal congestion scores for PE when compared to a placebo."[7]

55. In 2016, Meltzer reported on a Merck study that exposed participants to four times the amount of orally ingested phenylephrine that appears in the final monograph for oral decongestants published in 1994. Despite the higher dose, oral phenylephrine was no more effective than a placebo. [8]

---

[6] *December 14, 2007 Monograph* at 37, available at https://www.fda.gov/media/171915/download.
[7] *NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph* at 38, available at https://www.fda.gov/media/171915/download.
[8] Meltzer, EO, PH Ratner, and T McGraw, 2016, Phenylephrine hydrochloride modified-release tablets for nasal congestion: a randomized, placebo-controlled trial in allergic rhinitis patients, Ann Allergy Asthma Immunol, 116(1):66-71.

56. In 2018, Johnson and Johnson conducted a study to evaluate an oral phenylephrine product finding "no beneficial effect of either PE treatment when compared to a placebo."[9]

57. At the conclusion of the September 2023 two-day meetings, the Advisory Committee agreed by 16-0 vote that phenylephrine does not work. The FDA is currently considering the input of the Advisory Committee and the evidence to determine what action to take.

58. Upon information and belief, Defendants knew or should have known at all relevant times that their products containing phenylephrine were not effective as nasal decongestants.

59. Nevertheless, Defendants manufactured, marketed, promoted, advertised, distributed and/or sold their products containing phenylephrine to the public representing that they were effective as nasal decongestants.

60. Defendants' representations to Plaintiff, the Proposed Class/Subclasses and the public at large – that their products containing phenylephrine worked as nasal decongestants – were false, deceptive, misleading and otherwise unlawful.

61. Defendants' omissions to Plaintiff, the Proposed Class/Subclasses and the public at large – failing to inform that their products containing phenylephrine did not work as nasal decongestants – were false, deceptive, misleading and otherwise unlawful.

62. As a result of Defendants' behavior, Plaintiff and the Proposed Class/Subclasses were damaged.

63. Defendants have violated the consumer protection laws of various states, including the State of New York.

---

[9] *NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph* at 53, available at https://www.fda.gov/media/171915/download.

64.     Defendants have breached the implied warranty laws of various states, including the State of New York, with respect to their phenylephrine because their phenylephrine were not merchantable when they were sold to Plaintiff and/or the Proposed Class/Subclasses.

65.      Defendants have been unjustly enriched because they earned profits, revenues, benefits and/or enrichments at the expense of the Plaintiff and the Proposed Class/Subclasses.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of himself, and all others similarly situated, including the classes and subclasses defined as follows:

> All persons throughout the United States that paid, in whole or in part, for oral phenylephrine products manufactured, marketed, promoted, distributed, sold and/or caused to be sold by Defendants, for personal, family or household use.

67.     Additionally, and/or alternatively, Plaintiff brings this action pursuant to Federal Rules of Civil Procedure Rule 23 as a multi-state class action with the ascertainable subclass defined as follows:

> All persons from the following states that paid, in whole or in part, for oral phenylephrine products manufactured, marketed, promoted, distributed, sold and/or caused to be sold by Defendants, for personal, family or household use: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Washington D.C., Florida, Idaho, Illinois, Iowa, Massachusetts, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Vermont, and Washington.

68.     Additionally, and/or alternatively,  Plaintiff brings this action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of a subclass of ascertainable New York citizens defined as:

All persons from the state of New York that paid, in whole or in part, for oral phenylephrine products manufactured, marketed, promoted, distributed, sold and/or caused to be sold by Defendants, for personal, family or household use.

69.     Excluded from the Proposed Class/Subclasses are the Defendants herein, any entity in which the Defendants have a controlling interest, and officers, directors and/or employees of the Defendants, and the legal representatives, heirs, successors, and assignees of the Defendants, and/or its officers, directors, and/or employees.

70.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Federal Rules of Civil Procedure Rule 23.

71.     This action is properly maintainable as a class action.

72.     Defendants engaged in conduct and/or behavior giving rise to the legal rights sought to be enforced by Plaintiff and the Proposed Class/Subclasses.

73.     Defendants sold phenylephrine-containing products to Plaintiff and the Proposed Class/Subclasses and made substantially similar representations regarding their efficacy as nasal decongestants.

74.     In selling their phenylephrine-containing products to Plaintiff and the Proposed Class/Subclasses, all Defendants warranted that their phenylephrine-containing products were merchantable.

75.     All Defendants breached said warranties because their phenylephrine-containing products were not of merchantable quality.

76.     All Defendants were unjustly enriched at the expense of the Plaintiff and the Proposed Class/Subclasses and said unjust enrichment was based upon substantially similar, if not identical, background facts.

13

77.     The Proposed Class/Subclasses is so numerous that individual joinder of all their members, in this or any action, is impracticable. The exact number and identification of members of the Proposed Class/Subclasses are presently unknown to Plaintiff, but upon information and belief the Proposed Class/Subclasses is believed to include hundreds of thousands of members, if not more.

78.     Common questions of fact and law exist as to all members of the Proposed Class/Subclasses, which predominate over any questions affecting only individual members of each Proposed Class, including, *inter alia*:

    a.     Whether Defendants' phenylephrine-containing products were effective as nasal decongestants;

    b.     Whether Defendants were aware that their phenylephrine-containing products were ineffective as nasal decongestants, and, if so, when did they become aware;

    c.     Whether Defendants designed, researched, manufactured, tested, marketed, advertised, promoted, distributed and/or sold their phenylephrine-containing products to Plaintiff and the Proposed Class/Subclasses with knowledge that their phenylephrine-containing products were not effective as nasal decongestants;

    d.     Whether Defendants' behavior violated the consumer fraud laws of various states, including the State of New York;

    e.     Whether Defendants breached the implied warranty of merchantability under the laws of various states, including the State of New York;

    f.     Whether Defendants were unjustly enriched by selling their phenylephrine as a nasal decongestant even though it was not effective;

    g.     The nature and extent of damages and other remedies to which the conduct of Defendants entitles Plaintiff and the Proposed Class/Subclasses.

79.     Plaintiff's claims are typical of the claims of the members of the Proposed Class/Subclasses in that he and each member of the Proposed Class/Subclasses purchased phenylephrine-containing products from Defendants and did not receive what they paid for.

Plaintiff and the Proposed Class/Subclasses were injured by a common practice engaged in by the Defendants.

80.     Plaintiff is an adequate representatives of the Proposed Class/Subclasses because he is a member of the Proposed Class/Subclasses and his interests do not conflict with the interests of the members of the Proposed Class/Subclasses he seeks to represent.

81.     A class action is superior to other available methods for the efficient adjudication of this litigation since individual litigation of Plaintiff class members' claims is impractical. It would be unduly burdensome to the Courts in which individual litigation on the facts of hundreds of thousands of cases would proceed. Further, individual litigation presents the potential for inconsistent or contradictory judgments. Individual litigation increases the delay and expense to all parties and the Courts in resolving the legal and factual issues of these cases, and has the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

82.     Plaintiff is committed to prosecuting the action and has retained competent counsel experienced in litigation of this nature. Plaintiff is an adequate representative of the Proposed Class/Subclasses.

83.     Defendants have acted on grounds generally applicable to, and causing injury to, the Proposed Class/Subclasses, and, therefore, relief on behalf of the Proposed Class/Subclasses as a whole is appropriate.

## TOLLING OF THE STATUTE OF LIMITATIONS

84.     Any and all applicable statutes of limitations have been tolled because of Defendants' knowing and active concealment of its fraudulent, misleading, deceptive and/or otherwise unlawful behavior as set forth herein.

85.     Plaintiff and the Proposed Class/Subclasses could not have reasonably discovered the true extent of the Defendants' deception with regard to their phenylephrine-containing products until the FDA's Drug Advisory Committee disclosed the results of its meeting held on September 11, 2023 and September 12, 2023.

## FIRST CAUSE OF ACTION
## (VIOLATION OF CONSUMER PROTECTION STATUTES)

86.      Plaintiff repeats and realleges each and every allegation asserted above with the same force and effect as if fully set forth at length herein.

87.     Defendants engaged in commercial conduct by selling their oral phenylephrine-containing products to the public.

88.     Defendants made fraudulent, deceptive, misleading and/or otherwise unlawful representations regarding the effectiveness of their phenylephrine-containing products as nasal decongestants.

89.     Defendants fraudulently, deceptively, misleadingly and/or otherwise unlawfully represented to the Plaintiff, the Proposed Class and/or the public at large that their oral phenylephrine-containing products were effective as nasal decongestants.

90.     Defendants failed to disclose that their oral phenylephrine-containing products were not effective as nasal decongestants.

91.     Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or

16

the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such phenylephrine-containing products.

92.     New York state and a majority of other states throughout the country, including the District of Columbia have enacted statutes to protect consumers from deceptive, fraudulent, deceptive, unconscionable and/or otherwise unlawful trade and business practices.

93.     Defendants violated these statutes by knowingly, falsely, deceptively, misleadingly and/or otherwise unlawfully representing that their oral phenylephrine-containing products were effective as nasal decongestants.

94.     Defendants engaged in the deceptive acts and practices alleged herein in order to sell their phenylephrine-containing products to the Plaintiff, the Proposed Class and/or the public at large.

95.     Plaintiff and the Proposed Class/Subclasses purchased Defendants' phenylephrine-containing products believing that they were effective as nasal decongestants.

96.     As a direct and proximate result of Defendants' violations, Plaintiff and the Proposed Class have suffered damages, both general and special, including economic damages. Plaintiff and the Proposed Class are entitled to compensatory damages, statutory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### (VIOLATION OF CONSUMER PROTECTION STATUTES)

97.      Plaintiff repeats and realleges each and every allegation asserted above with the same force and effect as if fully set forth at length herein.

98.     Count II is brought in the alternative to Count I by Plaintiff.

99.     Defendants engaged in commercial conduct by selling their oral phenylephrine-containing products to the public.

100.     Defendants made fraudulent, deceptive, misleading and/or otherwise unlawful representations regarding the effectiveness of their phenylephrine-containing products as nasal decongestants.

101.     Defendants fraudulently, deceptively, misleadingly and/or otherwise unlawfully represented to the Plaintiff, the Proposed Multi-State Subclass and/or the public at large that their oral phenylephrine-containing products were effective as nasal decongestants.

102.     Defendants failed to disclose that their oral phenylephrine-containing products were not effective as nasal decongestants.

103.     Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such phenylephrine-containing products.

104.     New York state and a majority of other states throughout the country, including the District of Columbia have enacted statutes to protect consumers from deceptive, fraudulent, deceptive, unconscionable and/or otherwise unlawful trade and business practices.

105.     Defendants violated these statutes by knowingly, falsely, deceptively, misleadingly and/or otherwise unlawfully representing that their oral phenylephrine-containing products were effective as nasal decongestants.

106.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. § 45.50.471, *et seq.*

107.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq.*

108.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, *et seq.*

109.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200, *et seq.*

110.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17500, *et seq.*

111.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, *et seq.*

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq.*

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

114.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2532, *et seq.*

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq.*

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, *et seq.*

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/2, *et seq*

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE § 714H.1, *et seq*.,

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN. LAWS ch. 93A, §1, *et seq.*

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, *et seq.*

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

125.    Defendants have engaged in unfair competition or deceptive acts or practices in violation of N.J.S.A. § 56:8-1, *et seq.*

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

127.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq.*

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, *et seq*

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OKLA. STAT. TIT. 78 § 51-55, *et seq.*

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq*

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE ANN. § 39-5-10, *et seq.*

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

135.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

136.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

137.    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

138.    Defendants engaged in the deceptive acts and practices alleged herein in order to sell their phenylephrine-containing products to the Plaintiff, the Proposed Multi-State Class and/or the public at large.

139.    Plaintiff and the Proposed Multi-State Class purchased Defendants' phenylephrine-containing products believing that they were effective as nasal decongestants.

140.    As a direct and proximate result of Defendants' violations, Plaintiff and the Proposed Multi-State Class have suffered damages, both general and special, including economic

damages. Plaintiff and the Proposed Multi-State Class are entitled to compensatory damages, statutory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION
### (VIOLATION OF CONSUMER PROTECTION STATUTES)

141.    Plaintiff repeats and realleges each and every allegation asserted above with the same force and effect as if fully set forth at length herein.

142.    Count III is brought in the alternative to Counts I and II by Plaintiff.

143.    Defendants engaged in commercial conduct by selling their oral phenylephrine-containing products to the public.

144.    Defendants made fraudulent, deceptive, misleading and/or otherwise unlawful representations regarding the effectiveness of their phenylephrine-containing products as nasal decongestants.

145.    Defendants fraudulently, deceptively, misleadingly and/or otherwise unlawfully represented to the Plaintiff, the Proposed New York Subclass and/or the public at large that their oral phenylephrine-containing products were effective as nasal decongestants.

146.    Defendants failed to disclose that their oral phenylephrine-containing products were not effective as nasal decongestants.

147.    Defendants' misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such phenylephrine-containing products.

148.    New York has enacted statutes to protect consumers from deceptive, fraudulent, deceptive, unconscionable and/or otherwise unlawful trade and business practices.

22

149.    Defendants violated these statutes by knowingly, falsely, deceptively, misleadingly and/or otherwise unlawfully representing that their oral phenylephrine-containing products were effective as nasal decongestants.

150.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq*.

151.    Defendants engaged in the deceptive acts and practices alleged herein in order to sell their phenylephrine-containing products to the Plaintiff, the Proposed New York Class and/or the public at large.

152.    Plaintiff and the Proposed New York Class purchased Defendants' phenylephrine-containing products believing that they were effective as nasal decongestants.

153.    As a direct and proximate result of Defendants' violations, Plaintiff and the Proposed New York Class have suffered damages, both general and special, including economic damages.  Plaintiff and the Proposed New York Class are entitled to compensatory damages, statutory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(BREACH OF WARRANTIES)**

154.    Plaintiff repeats and realleges each and every allegation asserted above with the same force and effect as if fully set forth at length herein.

155.    At all times herein mentioned, Defendants designed, researched, manufactured, tested, tested, advertised, promoted, distributed and/or sold their respective products containing phenylephrine.

156.    At the time Defendants designed, researched, manufactured, tested, tested, advertised, promoted, distributed and/or sold their respective products containing phenylephrine

23

for use by Plaintiff and the Proposed Class/Subclasses, Defendants knew of the use for which their phenylephrine-containing products were intended (i.e. as nasal decongestants) and expressly and/or impliedly warranted their oral phenylephrine-containing products were of merchantable quality and safe and fit for such use.

157. Defendants expressly and impliedly represented and warranted to the Plaintiff, the Proposed Class/Subclasses and/or the public that their oral phenylephrine-containing products were safe and of merchantable quality and fit for the ordinary purpose for which said products were to be used.

158. Defendants expressly and/or impliedly represented and warranted to the Plaintiff, the Proposed Class/Subclasses and/or the public that their oral phenylephrine-containing products were effective as nasal decongestants.

159. That said aforementioned representations and warranties were false, deceptive, misleading, and/or otherwise inaccurate in that their oral phenylephrine-containing products were not of merchantable quality, were not fit for their ordinary purpose for which they were to be used, and were defective.

160. That said aforementioned representations and warranties were false, deceptive, misleading, and/or otherwise inaccurate in that their oral phenylephrine-containing products were not effective as nasal decongestants.

161. Plaintiff and the Proposed Class/Subclasses did rely on Defendants' aforementioned express and/or implied representations and/or warranties.

162. Plaintiff and the Proposed Class/Subclasses relied upon the skill and judgment of Defendants as to whether their oral phenylephrine-containing products were of merchantable quality, safe and fit for their intended use.

163.     Defendants' oral phenylephrine-containing products were injected into the stream of commerce by Defendants in a defective, unsafe, and inherently dangerous condition and the products were expected to and did reach users, handlers, and persons coming into contact with them without substantial change in the condition in which they were sold.

164.     Defendants herein breached the aforesaid express and/or implied warranties they made to Plaintiff and the Proposed Class/Subclasses.

165.     As a direct and proximate result of Defendants' breach, Plaintiff and the Proposed Class/Subclasses have suffered damages, both general and special, including economic damages. Plaintiff and the Proposed Class/Subclasses are entitled to compensatory damages, statutory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
## (UNJUST ENRICHMENT)

166.     Plaintiff repeats and realleges each and every allegation asserted above with the same force and effect as if fully set forth at length herein.

167.     As a result of Defendants' wrongdoing as set forth herein, Defendants profited, benefited and were otherwise enriched from payments that Plaintiff and the Proposed Class/Subclasses made to them for the purchase of their oral phenylephrine-containing products.

168.     In exchange for their payments, Plaintiff and the Proposed Class/Subclasses reasonably expected that the oral phenylephrine-containing products they purchased from Defendants were effective as nasal decongestants, and, thus, would work.

169.     Defendants voluntarily accepted and retained these payments with knowledge and/or awareness that Plaintiff and the Proposed Class/Subclasses believed that their oral phenylephrine-containing products were effective as a nasal decongestant.

170.     As a result of Defendants' fraudulent, deceptive, misleading and/or otherwise unlawful behavior, Plaintiff and the Proposed Class/Subclasses did not receive what they paid for.

171.     It is against equity and good conscience to permit Defendants to retain their profits, revenues, benefits and/or enrichments they earned at the expense of Plaintiff and the Proposed Class/Subclasses.

172.     Plaintiff and the Proposed Class/Subclasses are entitled in equity to seek restitution of Defendants' wrongful profits, revenues, benefits and/or enrichments to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

173.     As a direct and proximate result of the foregoing acts and/or omissions, the Plaintiff and the Proposed Class/Subclasses have suffered damages, both general and special, including economic damages. Plaintiff and the Proposed Class/Subclasses are entitled to compensatory damages, statutory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## **DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff and the Proposed Class/Subclasses demand judgment against Defendants as follows:

    i.    An order certifying the Class/Subclasses, appointing Plaintiff as class representatives, and appointing the undersigned counsel as counsel to the Class/Subclasses;

    ii.    Equitable, injunctive and declaratory relief, including enjoining their oral phenylephrine products;

    iii.    Damages in an amount to be determined at trial;

    iv.    Pre-judgment and post judgment interest at the maximum rate allowable at law;

26

v.      Statutory, treble, exemplary, and/or punitive damages in an amount to be determined at trial;

vi.     The costs and disbursements incurred by Plaintiff and the Proposed Class/Subclasses in connection with this action, including reasonable attorneys' fees;

vii.    Disgorgement of Defendants' profits from the sale of their oral phenylephrine products and

viii.   Such other and further relief under all applicable state or federal law and any relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: New York, New York
       September 29, 2023                    Respectfully submitted,

                                              /s/ Virginia E. Anello
                                             Gary J. Douglas, Esq.
                                             Michael A. London, Esq.
                                             Virginia E. Anello, Esq.
                                             Anne E. Accettella, Esq.
                                             **DOUGLAS & LONDON, P.C.**
                                             59 Maiden Lane, 6th Floor
                                             New York, NY 10038
                                             Phone: 212-566-7500
                                             Fax: 212-566-7501
                                             Email:   gdouglas@douglasandlondon.com
                                                      mlondon@douglasandlondon.com
                                                      vanello@douglasandlondon.com
                                                      aaccettella@douglasandlondon.com