Query Reports Utilities Help What's New Log Out

KIM

# United States District Court
## Northern District of Illinois - CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:23-cv-13879

Riccio v. Reckitt Benckiser Pharmaceuticals Inc.
Assigned to: Honorable Harry D. Leinenweber
Demand: $9,999,000
Cause: 28:1332 Diversity-Account Receivable

Date Filed: 09/19/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Rose Riccio**
*on behalf of herself and all others similarly situated*

represented by

**Erin J. Ruben**
Milberg Coleman Bryson Phillips Grossman Pllc
900 W. Morgan Street
Raleigh, NC 27603
(919) 600-5000
Email: eruben@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Hunter Bryson**
Milberg Coleman Bryson Phillips Grossman, Pllc
900 W. Morgan Street
Raleigh, NC 27603
(919) 600-5000
Email: hbryson@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nick Suciu , III**
Milberg Coleman Bryson Phillips Grossman, PLLC
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 483021
313 303-3472
Email: nsuciu@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Susan Weiner**
Pearson Warshaw, LLP
328 Barry Avenue S.
Suite 200
Wayzata, MN 55391
612-389-0600
Email: mweiner@pwfirm.com

*ATTORNEY TO BE NOTICED*

**Ryan Thomas Gott**
Pearson Warshaw, Llp
328 Barry Ave. South
Suite 200
Wayzata, MN 55391
(612) 389-0600
Email: rgott@pwfirm.com
*ATTORNEY TO BE NOTICED*

**Gary M. Klinger**
Milberg Coleman Bryson Phillips Grossman PLLC
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
866-252-0878
Email: gklinger@milberg.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Reckitt Benckiser Pharmaceuticals Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/19/2023 | 1 | COMPLAINT filed by Rose Riccio; Jury Demand. Filing fee $ 402, receipt number AILNDC-21104728.(Klinger, Gary) (Entered: 09/19/2023) |
| 09/19/2023 | 2 | CIVIL Cover Sheet (Klinger, Gary) (Entered: 09/19/2023) |
| 09/19/2023 | 3 | ATTORNEY Appearance for Plaintiff Rose Riccio by Nick Suciu, III (Suciu, Nick) (Entered: 09/19/2023) |
| 09/19/2023 | 4 | ATTORNEY Appearance for Plaintiff Rose Riccio by Erin J. Ruben (Ruben, Erin) (Entered: 09/19/2023) |
| 09/19/2023 | 5 | ATTORNEY Appearance for Plaintiff Rose Riccio by John Hunter Bryson (Bryson, John) (Entered: 09/19/2023) |
| 09/20/2023 | 6 | ATTORNEY Appearance for Plaintiff Rose Riccio by Melissa Susan Weiner (Weiner, Melissa) (Entered: 09/20/2023) |
| 09/20/2023 | 7 | ATTORNEY Appearance for Plaintiff Rose Riccio by Ryan Thomas Gott (Gott, Ryan) (Entered: 09/20/2023) |
| 09/20/2023 | | CASE ASSIGNED to the Honorable Harry D. Leinenweber. Designated as Magistrate Judge the Honorable Young B. Kim. Case assignment: Random assignment. (smb, ) (Entered: 09/20/2023) |
| 09/20/2023 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties |

| | | |
|---|---|---|
| | | must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (smb, ) (Entered: 09/20/2023) |
| 09/21/2023 | | SUMMONS Issued as to Defendant Reckitt Benckiser Pharmaceuticals Inc. (mek,) (Entered: 09/21/2023) |
| 10/05/2023 | 8 | SUMMONS Returned Executed by Rose Riccio as to Reckitt Benckiser Pharmaceuticals Inc. on 9/28/2023, answer due 10/19/2023. (Klinger, Gary) (Entered: 10/05/2023) |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROSE RICCIO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RECKITT BENCKISER PHARMACEUTICALS INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>Case No.: |

Plaintiff, Rose Riccio, on behalf of herself and all others similarly situated, brings this class action against Defendant, Reckitt Benckiser Pharmaceuticals Inc. ("Defendant" or "Reckitt"), and alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

**GENERAL ALLEGATIONS**

1. Reckitt offers a variety of non-prescription drugs, including oral nasal decongestants, competing in a billion-dollar industry. Such products include the over-the-counter oral nasal decongestants "Mucinex Sinus-Max Severe Congestion & Pain Relief," "Mucinex Sinus-Max Pressure Pain and Cough," and "Mucinex Fast-Max Cold and Flu" (collectively, "Products" or "Mucinex Products"). These Products are phenylephrine hydrochloride ("PE") nasal decongestant pills and acetaminophen pain relief pills marketed as "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," "Sinus Congestion," "Headaches," "Body Pain," and "Fever."

2. The active decongestant ingredient in the Products is phenylephrine, which the

weight of the reliable scientific evidence, as recently unanimously confirmed by a Food and Drug Administration ("FDA") committee, has determined to be no more effective as a nasal decongestant than placebo.

3. When consumers purchase decongestants and pain relief pills, the strength of the ingredients are important purchasing considerations, especially for consumers purchasing a "MAXIMUM STRENGTH" product.

4. Reckitt takes advantage of this consumer preference for strong relief by prominently representing the alleged strength of the Mucinex PE Products in the one place every consumer looks when purchasing a product—the front packaging.

5. On each product package for the Mucinex PE Products, Reckitt touts in capitalized, white font set against a red background, at the top of the package, that provides "MAXIMUM STRENGTH" relief. For Mucinex Fast-Max Cold and Flu, the package represents relief for "Nasal Congestion," "Sinus Pressure," "Sinus Congestion," "Headaches," "Body Pain," and "Fever":



6.      Rickett's related "Mucinex Sinus-Max Severe Congestion & Pain" product makes similar claims, promising "MAXIMUM STRENGTH" as it  "Clears Sinus Congestion" and "Relieves Headache":



7.      Likewise, the package for Reckitt's "Mucinex Sinus-Max Pressure, Pain & Cough" promises "MAXIMUM STRENGTH" as a "Nasal Decongestant" and "Pain Reliever":



6.    By portraying the Mucinex PE Products as "MAXIMUM STRENGTH" decongestants and pain relievers, Reckitt misleads consumers into believing their ingredients are suited to providing the strongest decongestant relief available over the counter.

7.    Despite marketing these Products as "MAXIMUM STRENGTH," Reckitt knew the active nasal decongestant ingredient in them, phenylephrine hydrochloride, was not as strong as other decongestants available without a prescription. Indeed, studies have shown that phenylephrine is no more effective than a placebo. Additionally, the Mucinex PE Products do not even contain the maximum dosage of acetaminophen, and are thus not deserving of the "MAXIMUM STRENGTH" label and representation.

8.    Thus, this "MAXIMUM STRENGTH" packaging is misleading because stronger nasal decongestants—without the "MAXIMUM STRENGTH" claim—are available. For example, both oxymetazoline and pseudoephedrine are both available without a prescription, and the former may be purchased over the counter.

9.    Further, Reckitt knew that higher doses of acetaminophen exist on the market. The Court need look no further than the common manufacturing and marketing acetaminophen as "Regular Strength" for 325 mg and "Extra Strength" for 500 mg caplets and liquid gels, taken, as with the Mucinex PE Products, in dosages of two each.

10.    Despite this knowledge, Reckitt chose to mislead consumers through its promotion of the Products as "MAXIMUM STRENGTH" decongestants and pain relievers. Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether the Products are "MAXIMUM STRENGTH" decongestants and pain relievers, or to ascertain the true quality or strength of these Products. For that reason, reasonable consumers must and do rely on manufacturers, like Reckitt, to be honest and transparent and to properly disclose on the packaging

all material information regarding the Products and their dose.

11. Rather than being honest and transparent, Reckitt makes this "MAXIMUM STRENGTH" representation in a knowingly false, misleading, and deceptive manner.

12. For all the reasons set forth herein, including but not limited to Reckitt's misrepresentations and omissions regarding its "MAXIMUM STRENGTH" claims, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Reckitt's PE Products, for: (1) violation of state consumer protection laws and (2) unjust enrichment.

**THE PARTIES**

13. Plaintiff Rose Riccio is a citizen of Illinois, residing in Niles, within Cook County. She purchased "Mucinex Sinus-Max Severe Congestion & Pain" within the applicable statute of limitations period, most recently in 2023.

14. Reckitt is a Delaware corporation with its headquarters and principal place of business in New Jersey. As such, Defendant is a citizen of New Jersey. Defendant Reckitt markets, distributes, and sells the Products to consumers throughout the United States through its brick-and-mortar locations and online through Defendant's website.

**JURISDICTION AND VENUE**

16. This Court has personal jurisdiction over Reckitt in this matter. The acts and omissions giving rise to this action occurred in the state of Illinois. Reckitt has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold the Products in this state, committed a statutory violation within

this state related to the allegations made herein, and caused injuries to Plaintiff and the putative class members, which arose out of the acts and omissions that occurred in the state of Illinois, during the relevant time period, at which time Reckitt was engaged in business activities in the state of Illinois.

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative class members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Reckitt are citizens of different states.

18. Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Reckitt conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Mucinex PE Products in this District. Furthermore, Plaintiff Riccio resides in this District.

**FACTS COMMON TO ALL CLASS MEMBERS**

20. Reckitt is one of the largest drug manufacturing companies in the world. As such, Reckitt sells several OTC drugs, including the "Mucinex" branded line of products.

21. Phenylephrine hydrochloride is the active ingredient in Reckitt's Mucinex PE Products for nasal decongestion. Acetaminophen is the active ingredient in the Mucinex PE Products that are the subject of this action as a pain reliever. Both form the basis for Reckitt's "MAXIMUM STRENGTH" misrepresentations on the Products' packaging, and overall advertising and marketing campaign.

22.     At all relevant times, Reckitt has marketed its products in a consistent and uniform manner nationwide.

23.     As alleged above, the Mucinex PE Products represent that they are "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," "Sinus Congestion," "Headaches," "Body Pain," and "Fever," with representations that predominately appear on the front label of the Products in capitalized, bold, white lettering on a red background that contrasts with the background of the packaging. This instantly catches the eye of all reasonable consumers, including Plaintiff and class members.

24.     Reckitt repeats and expands on these "MAXIMUM STRENGTH" misrepresentations on its website. That website claims "Mucinex Sinus-Max Severe Congestion & Pain" will provide:

> "Maximum Strength for day & night sinus multi-symptom relief. 3 maximum strength medicines in one dose help clear nasal passages, relieve that annoying headache and give mucus the boot."

https://www.mucinex.com/products/mucinex-sinus-max-severe-congestion-relief-caplets-20-count. Similarly, the website boasts that "Mucinex Fast-Max Col & Flu" will provide:

> Maximum strength formula for relief of up to 9 symptoms. This all-in-one medicine relieves multiple cold & flu symptoms. . . . Sometimes, when you're sick, you're really sick. 1 dose of this Maximum Strength formula provides relief from 9 symptoms so you can get on with your day.

https://www.mucinex.com/products/mucinex-fast-max-max-strength-severe-cold-liquid-gels-16ct-flow-through. As for "Mucinex Sinus-Max Pressure, Pain & Cough," Reckitt's website for this product claims, under the "About" tab, that it include a "maximum strength formula" to "[c]ombat the symptoms of sinus congestion." https://www.mucinex.com/products/mucinex-sinus-max-max-strength-pressure-pain-cough-liquid-gels-16ct.

25.     A reasonable consumer would understand that "MAXIMUM STRENGTH" relief

for “Nasal Congestion,” “Sinus Pressure,” “Sinus Congestion,” “Headaches,” “Body Pain,” and “Fever,” means the Mucinex PE Products contained the strongest dose of nasal decongestant available on the over-the-counter market, as well as the strongest dose of acetaminophen for “body pain,” “headache,” and “fever.”

26. All reasonable consumers, including Plaintiff, read and relied on Reckitt’s “MAXIMUM STRENGTH” representations when purchasing the Products. Indeed, when purchasing pharmaceuticals, especially those promising to be “MAXIMUM STRENGTH,” consumers often look for a product with the strongest active ingredients possible and are willing to pay a premium for them.

27. Reckitt’s “MAXIMUM STRENGTH” representation was material to Plaintiff’s and class members’ decision to purchase the Mucinex PE Products. Had consumers, such as Plaintiff, known the Mucinex PE Products were not “MAXIMUM STRENGTH” relief for “Nasal Congestion,” “Sinus Pressure,” “Sinus Congestion,” “Headaches,” “Body Pain,” and “Fever,” they would not have purchased them or would have paid less. Indeed, the only reason consumers purchase pharmaceuticals is for their advertised therapeutic effect. They want relief from their cold symptoms, and in this case, the Plaintiff and the class members purchased “MAXIMUM STRENGTH” Products based on Reckitt’s false representations and omissions.

28. Reckitt’s marketing efforts are made in order to—and do in fact—induce consumers to purchase the Mucinex PE Products at a premium because consumers believe they are getting “MAXIMUM STRENGTH” decongestants. This deceives consumers because they are not informed that phenylephrine hydrochloride nasal decongestants are inferior to other, available decongestants.

29. Reckitt, however, has at all relevant times been well aware that its PE Products are

not "MAXIMUM STRENGTH" nasal decongestants, and that other, stronger decongestants are available.

30.     Starting in December 2007, the FDA convened a Nonprescription Drugs Advisory Committee ("NDAC") meeting, to address questions about phenylephrine's purported effectiveness. On September 11 and 12, 2023, an advisory panel of the FDA met again to present its findings on scientific literature presented as to the effectiveness of phenylephrine hydrochloride ("PE") as an oral nasal decongestant. The panel found: "[W]e have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours)."

31.     In 2015, in a well-publicized fashion, further independent research was submitted to the FDA requesting the PE be reclassified as not effective as a nasal decongestant.

32.     As a leading manufacturer of phenylephrine hydrochloride oral nasal decongestants, Defendant knew or should have known of the same scientific literature reviewed by the FDA. Nonetheless, it represents that the Mucinex PE Products are "MAXIMUM STRENGTH." This is particularly misleading because there exist other non-prescription nasal decongestants, which contain effective active ingredients, such as pseudoephedrine, which are not marketed as "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," "Sinus Congestion," "Headaches," "Body Pain," and "Fever." Accordingly, consumers are induced into purchasing the Mucinex PE Products, based on the "MAXIMUM STRENGTH" representation, when comparing it to competing nasal decongestants.

33.     Nonetheless, because the Mucinex PE Products contain phenylephrine as the only active oral nasal decongestant ingredient, for that reason alone they are not "MAXIMUM

STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," or "Sinus Congestion." Phenylephrine is not the "MAXIMUM STRENGTH" nasal decongestant allowable over-the-counter. Even MUCINEX offers decongestants with higher strength active decongestant ingredients.

34.     Further, for "Mucinex Fast-Max Cold & Flu," "Mucinex Sinus Max Pressure, Pain & Cough" and "Mucinex Sinus-Max Severe Congestion & Pain," the dosage of the pain relief agent, acetaminophen, is only 325 mg, well below the maximum dosage offered by other pain relief drugs available.



Thus, the "MAXIMUM STRENGTH" representation is misleading, both as to the claims of providing the maximum decongestant and pain relief available over the counter.

35.     At any rate, because the Mucinex PE Products contain phenylephrine as the only

active oral nasal decongestant ingredient, they are not "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Sinus Pressure," and "Sinus Congestion." Phenylephrine is not the "MAXIMUM STRENGTH" nasal decongestant available on the market.

36. Reckitt intended for Plaintiff and class members to be deceived or mislead by its misrepresentations and omissions. Indeed, label space is limited, so manufacturers only place the most pertinent information on the front label. Defendant specifically labeled and marketed the Mucinex PE Products as "MAXIMUM STRENGTH" relief for "Nasal Congestion," "Sinus Pressure" and "Sinus Congestion," when other oral nasal decongestants were not marketed in a similar fashion.

37. Reckitt's deceptive and misleading practices proximately caused harm to Plaintiff and the Classes.

38. Plaintiff and class members would not have purchased the Mucinex PE Products or would have paid less for them, had they known the truth about the mislabeled and falsely advertised products. Indeed, other stronger nasal decongestants and higher acetaminophen doses are available.

## PLAINTIFF'S FACTUAL ALLEGATIONS

39. Plaintiff relied on the "MAXIMUM STRENGTH" label in deciding to purchase what she believed to be the strongest nasal decongestant. Had Plaintiff Riccio known that phenylephrine—the only active oral nasal decongestant ingredient in "Mucinex Sinus-Max Severe Congestion and Pain"—is not the "MAXIMUM STRENGTH" nasal decongestant available over the counter, she would not have purchased it.

40. Plaintiff is a citizen of Illinois, residing in Cook County. Throughout the relevant period, Plaintiff purchased the Product at issue in this lawsuit and was exposed to, and reasonably

relied upon, Reckitt's "MAXIMUM STRENGTH" representations. Specifically, Plaintiff purchased "Mucinex Sinus-Max Severe Congestion & Pain" within the applicable statute of limitations period on a number of occasions, most recently approximately within the last three months. Plaintiff usually purchased the "Mucinex Sinus-Max Severe Congestion & Pain" from a Walgreens or Jewel Osco near her home. At the time of purchase, Plaintiff reviewed the Product packaging, including the front-label representations, and reasonably believed from these representations that the Products were "MAXIMUM STRENGTH." In reasonable reliance on these representations, Plaintiff paid an increased cost for the Products, which were worth less than represented because the statements were not true and were highly misleading. The "MAXIMUM STRENGTH" representation on the Products' packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if she knew the "MAXIMUM STRENGTH" representations were untrue and/or misleading. Plaintiff paid a price premium for empty promises that Reckitt did not keep. Had Plaintiff been aware that the "MAXIMUM STRENGTH" representations made by Reckitt on the Products was untrue, she would have paid less for the Products, or would not have purchased them at all.

**FED. R. CIV. P. 9(B) ALLEGATIONS**

41. Reckitt made material misrepresentations and/or omissions of fact in its labeling and marketing of the Mucinex PE Products by representing that they are "MAXIMUM STRENGTH" decongestant products.

42. Reckitt's alleged conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Mucinex PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products. Reckitt omitted from Plaintiff and class members

that the Mucinex PE Products are not "MAXIMUM STRENGTH" oral nasal decongestant products because other decongestant products exist over the counter that are stronger as decongestants. Reckitt knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Reckitt has and continues to represent that the Mucinex PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products when they are not, and has omitted from the Mucinex PE Products' packaging the fact that there are other non-prescription products that are stronger decongestants.

43.     Reckitt made material misrepresentations and/or omissions detailed herein, including that the Mucinex PE Products are "MAXIMUM STRENGTH" oral nasal decongestant products, continuously throughout the applicable class period(s).

44.     Reckitt's material misrepresentations and omissions, that the Mucinex PE Products are "MAXIMUM STRENGTH" oral nasal decongestant and pain reliever products, were located on the front label of the Mucinex PE Products in capitalized, bold white lettering on a red background that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and class members, at the point of sale in every transaction. The PE Products are sold in brick-and-mortar stores and online stores in Illinois and nationwide.

45.     Reckitt made written misrepresentations of fact on the front label of the Mucinex PE Products, that the Mucinex PE Products were "MAXIMUM STRENGTH" oral nasal decongestant products, even though other stronger decongestant products are available over the counter. As such, Reckitt's "MAXIMUM STRENGTH" representations are false and misleading. Moreover, Reckitt omitted from the Mucinex PE Products' labeling the fact that there are other prescription products available that are stronger decongestants. And as alleged in detail throughout

this Complaint, Plaintiff and class members read and relied on Reckitt's "MAXIMUM STRENGTH" representations and omissions before purchasing the Mucinex PE Products.

46. Reckitt misrepresented its Mucinex PE Products as being "MAXIMUM STRENGTH" decongestant products and omitted from the Mucinex PE Products' labeling the fact that there are other, non-prescription products available over the counter that are stronger decongestants and pain relievers, for the purpose of inducing Plaintiff and class members to purchase the inferior phenylephrine hydrochloride and acetaminophen products at a price premium. As such, Reckitt profited by selling the misrepresented products to at least thousands of consumers throughout the nation.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action on behalf of herself and the following "Classes" pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class**: All persons in the United States who purchased the Mucinex PE Products in the United States for personal use and not for resale during the applicable statute of limitations period.
>
> **Multi-State Consumer Protection Class:** All persons who purchased the PE Products in the State of Illinois or any state with similar laws[1] for personal use and not for resale during the applicable statute of limitations period.
>
> **Illinois Subclass**: All persons in the State of Illinois who purchased the Mucinex PE Products in the State of Illinois for personal use and not for resale during the applicable statute of limitations period.

---

[1] While discovery may alter the following, Plaintiff assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. §§ 501.201, et seq.); Illinois (815 ICLS §§ 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); New Jersey (N.J. Stat. §§ 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.); Washington (Wash. Rev. Code §§ 19.86.010, et seq.). *See Mullins v. Direct Digital, LLC*, No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014), aff'd, 795 F.3d 654 (7th Cir. 2015).

48. Excluded from the Classes are (a) any person who purchased the Mucinex PE Products for resale and not for personal or household use, (b) any person who signed a release of any Reckitt in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Reckitt or any entity in which a Reckitt has a controlling interest, (d) any legal counsel or employee of legal counsel for Reckitt, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

49. Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

50. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Class members are so numerous and geographically dispersed that joinder of all class members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative class members.

51. **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all class members and predominate over any questions affecting only individual class members. These common legal and factual questions include, but are limited to, the following:

a. Whether Reckitt made the "MAXIMUM STRENGTH" representations;

b. Whether Reckitt promoted the Mucinex PE Products with false and misleading statements of fact and material omissions;

c. Whether Reckitt's "MAXIMUM STRENGTH" representations are deceptive, unfair, or misleading to the reasonable consumer;

d. Whether Reckitt's actions and/or omissions violate applicable laws;

e. Whether Plaintiff and putative members of the Classes have suffered an ascertainable loss of monies or property or other value as a result of Reckitt's acts, omissions, or misrepresentations of material facts;

f. Whether Reckitt was unjustly enriched at the expense of Plaintiff and members of the putative Classes in connection with the Mucinex PE Products;

g. Whether Plaintiff and members of the putative Classes are entitled to monetary damages and, if so, the nature of such relief; and

h. Whether Plaintiff and members of the putative Classes are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

52. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the absent class members in that Plaintiff and the class members each purchased and used the Mucinex PE Products and each sustained damages arising from Reckitt's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes, and Plaintiff and all members of the putative Classes have been similarly affected by Reckitt's common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Reckitt's false and deceptive "MAXIMUM STRENGTH" representations about the Mucinex PE Products, as alleged herein.

53. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff does

not have any conflicts of interest or interests adverse to those of putative Classes.

54.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).**
Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm
described herein, for which they would have no remedy. Even if separate actions could be brought
by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and
expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and
adjudications that might be dispositive of the interests of similarly situated consumers,
substantially impeding their ability to protect their interests, while establishing incompatible
standards of conduct for Reckitt. Accordingly, the proposed Classes satisfy the requirements of
Fed. R. Civ. P. 23(b)(1).

55.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**
Reckitt has acted or refused to act on grounds generally applicable to Plaintiff and all members of
the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described
below, with respect to the members of the Classes as a whole.

56.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior
to any other available methods for the fair and efficient adjudication of the present controversy for
at least the following reasons:

a.   The damages suffered by each individual member of the putative Classes do not justify
     the burden and expense of individual prosecution of the complex and extensive
     litigation necessitated by Reckitt's conduct;

b.   Even if individual members of the Classes had the resources to pursue individual
     litigation, it would be unduly burdensome to the courts in which the individual
     litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d. Individual joinder of all members of the Classes is impracticable;

e. Absent a class, Plaintiff and members of the putative Classes will continue to suffer harm as a result of Reckitt's unlawful conduct; and

f. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Reckitt.

g. In the alternative, the Classes may be certified for the following reasons:

   (1) The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Reckitt;

   (2) Adjudications of claims of the individual members of the Classes against Reckitt would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative class members to protect their interests; and

   (3) Reckitt has acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (By Plaintiff on Behalf of the Illinois Subclass)

57. Plaintiff realleges paragraphs 1-56 above as if fully set forth herein.

58. Plaintiff brings this action on behalf of herself and the Illinois Subclass.

59. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/1, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

60. Plaintiff and the Illinois Sub-Class members were injured by Reckitt's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass members relied on Reckitt's misrepresentations, concealments and omissions when purchasing the Products, they were injured at the time of purchase.

61. Reckitt does business in Illinois, sells and distributes the Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Products in Illinois and elsewhere in the United States.

62. The Products purchased by Plaintiff and the Illinois Subclass members were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

63. Reckitt engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat.

505/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Reckitt as set forth above concerning its Products, which has caused damage and injury to Plaintiff and the Illinois Subclass Members. Plaintiff and the Illinois Subclass members were injured by Reckitt's unfair and deceptive acts at the time of purchasing the Products.

64.     Reckitt's marking of Mucinex PE Products violates this prohibition by deceiving consumers into believing Mucinex PE is a "MAXIMUM STRENGTH" decongestant or pain reliever/fever reducer.

65.     Reckitt engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act.

66.     Reckitt engaged in misleading and deceptive advertising that represented that the Mucinex PE Products were "MAXIMUM STRENGTH." Reckitt chose to package and market the products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe Reckitt's false and misleading "MAXIMUM STRENGTH" representations and omissions.

67.     Reckitt's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

68.     Reckitt intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

69.     Reckitt's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass members at the time of purchase.

70.     Plaintiff and the Illinois Subclass members would not have purchased, or would have paid less for, the Products but for Reckitt's material misrepresentations as described in this

Complaint.

**COUNT II**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(By Plaintiff on Behalf of the Illinois Subclass)**

71. Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

72. Plaintiff brings this action on behalf of herself and the Illinois Subclass.

73. The Illinois Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, et seq., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

74. 815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

75. Reckitt's marking of Mucinex PE Products violates this prohibition by deceiving consumers into believing Mucinex PE is a "MAXIMUM STRENGTH" decongestant or pain reliever/fever reducer.

76. Reckitt engaged in fraudulent and/or deceptive conduct, which creates a likelihood of confusion or of misunderstanding in violation of the Act

77. Reckitt engaged in misleading and deceptive advertising that represented that the Mucinex PE Products were "MAXIMUM STRENGTH." Reckitt chose to package and market the

products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe Reckitt's false and misleading "MAXIMUM STRENGTH" representations and omissions.

78. Reckitt intended that Plaintiff and each of the other Illinois Subclass members would reasonably rely upon the material omissions concerning the true nature of the Reckitt PE Products.

79. Reckitt's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and each of the other Illinois Subclass members to be deceived about the true nature of the products.

80. Reckitt's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

81. Reckitt's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass Members at the time of purchase.

82. Plaintiff and the Illinois Subclass Members would not have purchased, or would have paid less for, the Products but for Reckitt's material misrepresentations as described in this Complaint.

83. Reckitt intended Plaintiff and the Illinois Subclass members to rely on its deceptive acts when purchasing the Products.

**COUNT III**
**VIOLATION OF STATE CONSUMER PROTECTION ACTS**
**(By Plaintiff on Behalf of the Multi-State Consumer Protection Class )**

84. Plaintiff incorporates paragraphs 1-56 as if fully set forth herein.

85. Plaintiff brings this cause of action on behalf of herself and the Multi-State

Consumer Protection Class.

86.    Plaintiff and Multi-State Consumer Protection Class members have been injured as a result of Reckitt's violations of the state consumer protection statutes listed above in paragraph 47 and footnote 1, which also provide a basis for redress to Plaintiff and Multi-State Consumer Class Members based on Reckitt's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

87.    Reckitt's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

88.    Reckitt violated the Multi-State Consumer Class states' consumer protection, unfair trade practices, and deceptive acts laws through its misleading and deceptive advertising that represented that the Mucinex PE products were "MAXIMUM STRENGTH." Reckitt chose to package and market the Products in this way to impact consumer choices and gain market dominance, as it knew or should have known that all consumers who purchased the products would be impacted by its omissions and would reasonably believe Reckitt's false and misleading "MAXIMUM STRENGTH" representations and omissions.

89.    Reckitt's misrepresentations were material to Plaintiff and Multi-State Consumer Class members' decision to purchase the Products or pay a premium for the Products.

90.    Reckitt made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

91.    As a result of Reckitt's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Consumer Class members paid a premium for the Products.

92. As a result of Reckitt's violations, Reckitt has been unjustly enriched.

93. Pursuant to the alleged consumer protection, unfair trade practices, and deceptive acts laws, Plaintiff and Multi-State Consumer Class members are entitled to recover compensatory damages, restitution, punitive, and special damages, including but not limited to statutory or treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiff, on Behalf of the Nationwide Class, or in the Alternative, the Illinois Subclass)**

94. Plaintiff realleges paragraphs 1-56 above as if fully set forth herein.

95. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class, and/or the Illinois Subclass against Reckitt. It is alleged in the alternative to the extent there is no adequate remedy at law.

96. Plaintiff and the putative class members conferred a benefit on Reckitt when they purchased the Mucinex PE Products. By its wrongful acts and omissions described herein, including selling the Mucinex PE Products containing the "MAXIMUM STRENGTH" representations, which did not conform to the promises or affirmations of fact made on the label, Reckitt was unjustly enriched at the expense of Plaintiff and the putative class members.

97. Plaintiff's detriment and Reckitt's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

98. Reckitt has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative class members under circumstances in which it would be unjust for Reckitt to be permitted to retain the benefit. It would be inequitable for Reckitt to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Mucinex PE Products.

99.     Reckitt has been unjustly enriched in retaining the revenues derived from class members' purchases of the Mucinex PE Products, which retention of such revenues under these circumstances is unjust and inequitable because Reckitt marketed, advertised, distributed, and sold the Mucinex PE Products, and Reckitt misrepresented the nature of the products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Mucinex PE Products with "MAXIMUM STRENGTH" representations, which caused injuries to Plaintiff and the Classes because they would not have purchased the Mucinex PE Products based on the same representations if the true facts concerning the Mucinex PE Products had been known.

100.    Plaintiff and the putative class members have been damaged as a direct and proximate result of Reckitt's unjust enrichment because they would not have purchased the Mucinex PE Products on the same terms or for the same price had they known the true nature of the Mucinex PE Products and the misstatements regarding the strength of the Mucinex PE Products' active ingredients.

101.    Reckitt either knew or should have known that payments rendered by Plaintiff and the putative class members were given and received with the expectation that the "MAXIMUM STRENGTH" representations made by Reckitt in advertising, on Reckitt's website, and on the Mucinex PE Products' labels and packaging were true. It is inequitable for Reckitt to retain the benefit of payments under these circumstances because the "MAXIMUM STRENGTH" representations are not true.

102.    Plaintiff and the putative class members are entitled to recover from Reckitt all amounts wrongfully collected and improperly retained by Reckitt.

103.    As a direct result of Reckitt's wrongful conduct and unjust enrichment, Plaintiff and the putative class members are entitled to restitution of, disgorgement of, and/or imposition

of a constructive trust upon all profits, benefits, and other compensation obtained by Reckitt for their inequitable and unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A. Declaring that this action is properly maintained as a class action, certifying the proposed Classes, appointing as Class Representatives and appointing Plaintiff's counsel as Class Counsel;

B. Directing that Reckitt bear the costs of any notice sent to the Classes;

C. Declaring that Reckitt must disgorge, for the benefit of the Classes, all or part of the ill-gotten profits they received from the sale of the Mucinex PE Products, or order Reckitt to make full restitution to Plaintiff and the members of the Classes;

D. Awarding restitution and other appropriate equitable relief;

E. Granting an injunction against Reckitt to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

F. Granting an Order requiring Reckitt to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "MAXIMUM STRENGTH" representations regarding the Mucinex PE Products;

G. Ordering a jury trial and damages according to proof;

H. Awarding Plaintiff and members of the Classes compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

I. Enjoining Reckitt from continuing to engage in the unlawful and unfair

business acts and practices as alleged herein;

J. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Classes;

K. Awarding civil penalties, prejudgment interest, and punitive damages as permitted by law; and

L. Ordering such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: September 19, 2023

Respectfully submitted,

By: */s/ Gary Klinger*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Jeff Ostrow
Jonathan M. Streisfeld
Kristen Lake Cardoso
Daniel Tropin*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Email:  ostrow@kolawyers.com
        streisfeld@kolawyers.com
        cardoso@kolawyers.com
        tropin@kolawyers.com

Melissa S. Weiner
Ryan J. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Email: mweiner@pwfirm.com
        rgott@pwfirm.com

Erin Ruben
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com

J. Hunter Bryson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com

Karl Amelchenko*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: kamelchenko@milberg.com

Jimmy Mintz*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Ave., 2nd Floor
Coral Gables, FL 33134
Telephone: (786) 876-8200
Email: jmintz@milberg.com

*Attorneys for Plaintiff*

**Applications for admission forthcoming*