BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL NO. 3089 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF YOUSEFZADEH**

Plaintiff Sandra Yousefzadeh respectfully responds to the motion to transfer and consolidate proceedings. *See* Doc. 1; *see also Yousefzadeh v. Johnson & Johnson Consumer Inc.*, Case No. 2:23-cv-06825 (E.D.N.Y. September 13, 2023). Plaintiff supports coordination or consolidation, but she respectfully submits that the Eastern District of New York is the most appropriate and convenient transferee district for this nationwide litigation given the jurisdiction's experienced jurists, low case numbers for those jurists, and easy access for all parties. In the alternative, Plaintiff supports coordination or consolidation in the Northern District of California.

**I.      INTRODUCTION**

On September 12, 2023, The U.S. Food and Drug Administration's Nonprescription Drugs Advisory Committee concluded unanimously that oral phenylephrine, an active ingredient in many over-the-counter ("OTC") cough and cold products such as Sudafed PE, is ineffective.[1] Ms. Yousefzadeh filed suit on behalf of a New York state class the next day, as

---

[1] FDA Briefing Document, *Efficacy of Oral Phenylephrine as a Nasal Decongestant* (*available at:* https://www.fda.gov/media/171915/download) (Sept. 12, 2023).

did Plaintiffs on behalf of state or nationwide classes in twelve other jurisdictions. Eventually, thirty-seven actions followed.

Plaintiffs in all actions make the same basic allegations under state warranty and consumer protection laws: that they overpaid when they purchased phenylephrine because it does not do what the manufacturers promised. Accordingly, Plaintiff supports transfer and consolidation of all actions listed in the Schedule of Actions to an appropriate transferee forum. The appropriate forum is the U.S. District Court for the Eastern District of New York. In the alternative, Plaintiff supports coordination and transfer to the Northern District of California.

## II.     LEGAL STANDARD

Transfer and consolidation are proper if actions pending in different federal district courts share "one of more common questions of fact," provided that consolidation would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## III.     ARGUMENT

### A.     These actions are appropriate for transfer and coordination.

#### 1.     These actions involve common questions of fact.

Ms. Yousefzadeh respectfully submits that the first requirement for consolidation—that actions share common questions of fact—is not a close call. Each complaint is based on allegations that defendants' orally administered phenylephrine-containing products do not work as promised to relieve nasal decongestion. The complaints also allege similar legal theories and seek certification of similar classes and subclasses.

Phenylephrine's lack of efficacy, as a single-ingredient product and together with other ingredients, is the common denominator in all lawsuits before the Panel ("Actions"). *See*

Doc. 2 (Corrected Schedule of Actions). For that reason, discovery in each of these Actions will be substantially similar and involve the same documents and witnesses. The transferee judge, moreover, has numerous procedural tools at their disposal to account for any differences among the Actions, such as establishing separate tracks for brand-name versus generic products. *See In re: Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004). Put another way, "transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re: Oxycontin Antitrust Litig.,* 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004).[2]

### 2. Transfer and coordination serves not only the "convenience of the parties and witnesses" but also "promote(s) the just and efficient conduct of the action."

Consolidation will avoid duplicative discovery and prevent inconsistent pretrial rulings. First, centralization sidesteps tremendous discovery inefficiencies. This is because transfer and consolidation "ensure[s] that the actions are supervised by a single judge who,

---

[2] Ms. Yousefzadeh notes that the Panel has not hesitated to centralize litigation on an industry-wide basis if, as here, the litigation involves several putative class actions filed across the country, concerns products manufactured by common defendants, and alleges the same or similar harm. *See*, *e.g*., *In re: Walgreens Herbal Supplements Mktg. and Sales Pract. Litig*., 109 F. Supp. 3d 1373 (J.P.M.L. 2015) (rejecting arguments for separate MDLs and finding that "a single MDL encompassing all four retailers is necessary to ensure the just and efficient conduct of this litigation."); *In re: Automotive Wire Harness Sys. Antitrust Litig.,* 867 F.Supp.2d 1349, 1350 (J.P.M.L.2012) (centralizing three proposed dockets concerning different types of automotive products in a single MDL because each proposed docket shared significant factual issues and "stem[med] from the same government investigation"); *In re: Fluoroquinolone Prods. Liab. Litig.*, 122 F.Supp.3d 1378 (J.P.M.L. 2015) (centralizing actions involving different defendants and different drugs where the allegations involved the same alleged misconduct and same injury); *In re: Androgel Prods. Liab. Litig*., 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (centralizing all-testosterone replacement therapy actions); *In re: Incretin Mimetics Prods. Liab. Litig*., 968 F. Supp. 2d 1345 (J.P.M.L. 2013) (centralizing actions against competing defendants which manufactured four similar diabetes drugs that allegedly caused pancreatic cancer).

from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re: Resource Exploration Inc. Sec. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L. 1980).

Second, consolidation decreases the likelihood of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re: Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly concerning questions of class certification).

### B. This Panel should transfer the Actions to the Eastern District of New York.

The Panel balances several, non-dispositive factors when selecting an appropriate transferee court. *See* Manual of Complex Litigation (Fourth) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977). The factors include:

- Where the largest number of cases is pending;
- Where discovery has occurred;
- Where cases have progressed furthest;
- The site of the occurrence of the common facts;
- Where the cost and inconvenience will be minimized; and
- The experience, skill and caseload of available judges.

*Id*.

#### 1. The first five factors point slightly towards the northeast but are otherwise neutral.

As of the time of this filing, twenty-eight groups of attorneys have filed fifty Actions in seventeen different federal jurisdictions:

2860767.11

| Jurisdiction Where Action is Filed | Number of Groups of Attorneys per District |
|---|---|
| Northern District of Illinois | 6 |
| Eastern District of New York | 4 |
| Northern District of California | 3 |
| District of New Jersey | 3 |
| Eastern District of Pennsylvania | 3 |
| Southern District of Ohio | 3 |
| Northern District of Florida | 3 |
| Eastern District of Louisiana | 2 |
| District of Kansas | 2 |
| Western District of Missouri | 1 |
| Central District of California | 1 |
| Eastern District of California | 1 |
| Middle District of Florida | 1 |
| District of Minnesota | 1 |
| District of Oregon | 1 |
| District of Rhode Island | 1 |
| Western District of Washington | 1 |

No district stands out as the geographic center of this litigation: there are not materially more cases in any jurisdiction, discovery has not advanced in any case, no case has progressed beyond the pleadings, and no one district contains a majority of the common facts. This said, six of the primary defendants are in New Jersey and Pennsylvania in equal numbers, and the seventh is in Ohio, so the first five factors point slightly towards the northeast over other regions.[3]

---

[3] Defendants Johnson & Johnson Consumer Inc., Kenvue, Inc. McNeil Consumer Healthcare, and Sanofi-Aventis U.S. LLC are headquartered in New Jersey; Defendant Procter & Gamble is headquartered in Ohio; Defendants GlaxoSmithKline LLC, Bayer Healthcare LLC, and Church & Dwight Co., are headquartered in Pennsylvania. Many of the generic manufacturing defendants, however, are from Illinois and points west: Walgreen Co. (Illinois); Target Corporation (Minnesota); Albertsons Companies Inc. (Idaho); Rite Aid Corporation (Pennsylvania); Amazon (Washington); Associated Wholesale Grocers, Inc. and Valu Merchandisers Co. (Kansas); and Rickitt Benckiser LLC (New Jersey).

### 2. Judicial size, caseload, and accessibility all heavily favor the Eastern District of New York.

Given that the first five factors are essentially neutral, the most important factors in this case are the size, caseload, and geographic location of jurisdictions. Those factors weigh heavily in favor of the Eastern District of New York.

The Eastern District of New York has fifteen Article III Judges and only two pending MDLs (with fewer than 750 constituent cases),[4] despite having a sophisticated judiciary that has capably managed many of this country's largest MDLs in the past.[5] Perhaps of even greater importance, the Eastern District of New York has a fairly low number of pending non-MDL civil cases per judgeship (869), which means that it has the bandwidth to handle this case efficiently.[6] The Eastern District of New York, moreover, is arguably the most accessible district in the county: accessible by three major high-volume airports and frequent train service from around the northeast. *Accord In re Insurance Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L. 2005) (valuing a district that "offers an accessible metropolitan location that is geographically convenient for many of this docket's litigants and counsel"). No district is better suited to this litigation.

---

[4] United States Judicial Panel on Multidistrict Litigation, *MDL Statistics Report - Distribution of Pending MDL Dockets by District* (*available at*: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2023.pdf) ("MDL Statistics"), at 3.

[5] *See, e.g., In re Visa/Mastercard Antitrust Litig.,* 295 F. Supp. 2d 1379 (J.P.M.L. 2003); *In re Zyprexa Prod. Liab. Litig.,* 542 F. Supp. 2d 1358 (J.P.M.L. 2008); *In re: Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.,* 609 F. Supp. 2d 1379 (J.P.M.L. 2009); *In re: Propecia (Finasteride) Prod. Liab. Litig.*, 856 F. Supp. 2d 1334 (J.P.M.L. 2012).

[6] United States District Courts, *National Judicial Caseload Profile* (*available at*: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf) ("Judicial Caseload"), at 10.

### 3. In the alternative, the Panel should consolidate the Actions in the Northern District of California.

Ms. Yousefzadeh asks that, in the event the Panel does not consolidate this case in the Eastern District of New York, that the Panel consolidate the Actions in the Northern District of California. It has a lighter caseload than many other proposed districts and highly experienced, sophisticated jurists.

The Northern District of California currently has sixteen pending MDLs, with fewer than 12,000 constituent cases. MDL Statistics, at 1. As of June 30, 2023, the Northern District of California had 989 pending non-MDL civil cases per judgeship—higher than the Eastern District of New York, but much lower than other proposed districts for this action. Judicial Caseload, at 66. Judges in the Northern District have resolved ninety-four MDLs since 1992; nine of those MDLs were marking and sales MDLs that involved consumer fraud allegations similar to these Actions.[7] These factors make the Northern District of California a highly favorable district for centralization.

## IV. CONCLUSION

Plaintiff respectfully requests an Order consolidating these Actions in the Eastern District of New York, or, in the alternative, in the Northern District of California.

---

[7] *In Re: Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation* (MDL No. 1699); *In Re: Wachovia Corp. "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation* (MDL No. 2015); *In Re: Conseco Life Insurance Co. Life trend Insurance Marketing and Sales Practices Litigation* (MDL No. 2124); *In Re: Apple Inc. iPhone 4 Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2188); *In Re: Bank of America Credit Protection Marketing and Sales Practices Litigation* (MDL No. 2269); *In Re: Coca-Cola Products Marketing and Sales Practices Litigation (No. II)* (MDL No. 2555); *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (MDL No. 2672); *In Re: Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2777); *In Re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation* (MDL No. 2913).

2860767.11

October 11, 2023 By: */s/  Jason L. Lichtman*

                Jonathan D. Selbin
                Jason L. Lichtman
                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                250 Hudson Street, 8th Floor
                New York, NY 10013
                212.355.9500
                jselbin@lchb.com
                jlichtman@lchb.com

                Darren T. Kaplan
                KAPLAN GORE LLP
                1979 Marcus Ave. Ste 210
                Lake Success, NY 11042
                212.999.7370
                dkaplan@kaplangore.com

                *Counsel for Plaintiff Sandra Yousefzadeh,*
                *E.D.N.Y.*, No. 2:23-cv-6825