## BEFORE THE UNITED STATES
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL No. 3089 |

## INTERESTED PARTY RESPONSE OF PLAINTIFFS
## SHAWN L. THOMAS AND CHARLES GEOFFREY WOODS

Plaintiffs Shawn L. Thomas and Charles Geoffrey Woods, the plaintiffs in *Thomas et al. v. Kenvue Inc. et al.*, No. 23-cv-20895 (D.N.J.) (collectively the "Thomas Plaintiffs"), respectfully submit this response to Plaintiffs' Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. ECF No. 1. The Thomas Plaintiffs support centralization of the Related Actions,[1] which involve common questions of fact and law, pursuant to 28 U.S.C. § 1407 ("Section 1407"), and further agree that the District of New Jersey is best suited to handle this complex multidistrict litigation ("MDL") because it is the most central and convenient forum for adjudicating Plaintiffs' claims and it can provide the necessary judicial expertise and resources.

## I.      INTRODUCTION

To date, fifty-one Related Actions have been filed against Defendant Drug Manufacturers[2] in federal district courts across the country. The Related Actions are based on the Defendants'

---

[1] "Related Actions" refers to the fifty-one actions pending in federal district courts for which the Thomas Plaintiffs seek centralization in the District of New Jersey. The Related Actions are attached hereto as the List of Actions.

[2] "Drug Manufacturers" or "Defendants" refers to Albertsons Companies Inc.; Amazon.com, Inc.; Associated Wholesale Grocers, Inc.; Bayer Corp.; Bayer Healthcare LLC; Church & Dwight Co., Inc.; CVS Pharmacy, Inc.; GlaxoSmithKline LLC; GSK Consumer Healthcare; GSK plc; Haleon US Capital, LLC; Haleon, plc; Johnson & Johnson Consumer Inc.; Kenvue Inc.; McNeil Consumer Healthcare; Perrigo Co. plc; Pfizer Inc.; Procter & Gamble; Publix Super Markets, Inc.; Reckitt

fraudulent marketing and sales of common over-the-counter medications containing phenylephrine ("PE") for the treatment of congestion. Plaintiffs in the Related Actions allege that for over a decade the Defendants knowingly sold drugs containing PE for the supposed treatment of nasal decongestion despite knowing that PE is entirely ineffective at treating nasal congestion via oral administration.

The Thomas Plaintiffs support centralization of the Related Actions in the United States District of New Jersey pursuant to Section 1407. Centralization of the Related Actions is appropriate for the following reasons: (1) the Related Actions involve "one or more common questions of fact"; (2) transfer will aid the "convenience of [the] parties and witnesses"; and (3) transfer "will promote the just and efficient" adjudication of the Related Actions. 28 U.S.C. §1407(a). Moreover, transfer and centralization will eliminate the possibility of inconsistent pretrial rulings, including the certification of potentially overlapping classes against the same Defendants. Thus, the Related Actions should be centralized under Section 1407.

The District of New Jersey is the ideal forum in which to coordinate pretrial proceedings. Several of the Defendants that sold the most popular drugs at issue in the Related Actions, including Reckitt Benckiser LLC (Mucinex products), Kenvue Inc. (Sudafed, Tylenol Cold + Flu products, and Benadryl products), Johnson & Johnson Consumer Companies Inc. (same), and Bayer Corp. (Alka-Seltzer products) and Bayer Healthcare LLC (same), are headquartered in the District of New Jersey.

Centralization in the District of New Jersey is also appropriate because the District is geographically central and offers favorable docket statistics to ensure the speedy resolution of

---

Benckiser Pharmaceuticals Inc.; RB Health (US), LLC; Reckitt Benckiser LLC; Rite Aid Corp.; Sanofi-Aventis U.S. LLC; Target Corp.; Valu Merchandisers Co.; Walgreens Boots Alliance, Inc.; Walgreens, Inc.; Walmart, Inc.; and Wal-Mart Stores East, LP.

Plaintiffs' claims. Moreover, the judges in the District of New Jersey, including Judge Quraishi, who has been assigned to the Thomas Plaintiffs' case, have the experience and judicial resources to devote to this complex MDL.

Accordingly, the Thomas Plaintiffs respectfully request that the Panel centralize the Related Actions in the District of New Jersey.

## II.   ARGUMENT

### A.   Transfer and Centralization Is Appropriate Under 28 U.S.C. § 1407

Centralization under 28 U.S.C. § 1407(a) is appropriate when: (1) the cases involve one or more common questions of fact; (2) transfer would serve the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of the actions. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (May 2023 Update) ("The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."). Centralization of the Related Actions is favored by all of these factors.

The existence of common factual questions among the Related Actions is a threshold requirement for centralization under Section 1407. *See In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979) (finding transfer "necessary in order to avoid duplication of discovery and prevent inconsistent pretrial rulings" where the actions involved the same key factual inquiry). Where the actions involve common questions, like they do here, absolute uniformity of claims is not required. *See In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970) ("Of course, the applicability of different legal principles will not prevent the transfer of an action under section 1407 if the requisite common questions of fact exist."); *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) ("[T]ransfer under Section 1407 does not

require a complete identity or even majority of common factual issues as a prerequisite to transfer.").

Here, common factual questions abound in the Related Actions. All of the Related Actions arise from the same operative facts—that Defendants deceptively sold drugs containing PE as effective decongestants despite knowing that these drugs did not actually treat congestion. Moreover, the Related Actions assert substantially similar overlapping claims for common law fraud, negligence, and violations of various state statutes. The Related Actions will thus necessarily focus on common questions of fact and law, including, *inter alia*: whether Defendants knew that PE was ineffective at treating congestion; whether Defendants failed to disclose that their products containing PE did not effectively treat congestion; whether Defendants deceptively marketed and sold their products containing PE as effective at treating congestion; whether Plaintiffs and members of the putative Classes overpaid for Defendants' products containing PE; whether Plaintiffs and members of the putative Classes are entitled to equitable relief, including injunctive relief; and whether Plaintiffs and members of the putative Classes are entitled to monetary damages, and, if so, the nature and amount of such relief.

In addition to arising under the same common set of facts and asserting common claims and legal theories, the Related Actions bring claims on behalf of overlapping nationwide Classes. Thus, centralization of the Related Actions is necessary to prevent inconsistent pretrial rulings and overlapping Class determinations. *See In re U.S. Fin. Sec. Litig.*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) ("[T]he prevalence of common factual issues and similar class allegations necessitates transfer of all actions to a single district for coordinated or consolidated pretrial proceedings under Section 1407 in order to prevent duplication of discovery and eliminate the possibility of inconsistent or overlapping class determinations."); *In re Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F.

Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [defendant's] officers and employees and duplicative document discovery regarding the alleged scheme.").

### B.   The Panel Should Centralize the Related Actions in the District of New Jersey

When determining the most appropriate forum for centralization of multidistrict litigation under Section 1407, the Panel considers, *inter alia*, "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (May 2023 Update). Based on these factors, the District of New Jersey is the best forum for centralization of the Related Actions: multiple defendants have headquarters in or near the District, it is centrally located with respect to the parties, counsel, and witnesses, and the District has the resources and expertise to efficiently handle pretrial proceedings.

### 1.   The District of New Jersey Is the Most Appropriate Forum

The District of New Jersey is the most appropriate forum for consolidated or coordinated pre-trial proceedings for the Related Actions. *See In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) (noting the transferee district is a "geographically central forum" with an experienced judge with the "ability to manage this litigation efficiently").

Critically, many of the Defendants that sold some of the most popular drugs at issue in the Related Actions, including Reckitt Benckiser LLC (Mucinex products), Kenvue Inc. (Sudafed, Tylenol Cold + Flu products, and Benadryl products), Johnson & Johnson Consumer Companies Inc. (same), and Bayer Corp. (Alka-Seltzer products) and Bayer Healthcare LLC (same), are headquartered in the District of New Jersey. This Panel has previously recognized that the presence of defendants' headquarters within a district is a basis for transferring the litigation to that forum because when "defendants maintain headquarters within the district, [that] implies that relevant

documents and witnesses will likely be found there." *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004). Notably, Defendant Reckitt Benckiser LLC is named in eighteen of the Related Actions, Defendant Kenvue Inc. is named in seventeen of the Related Actions, Defendant Johnson & Johnson Consumer Companies Inc. is named in twenty-one of the Related Actions, Bayer Corp. (Alka-Seltzer products) is named in three of the Related Actions, and Bayer Healthcare LLC is named in four of the Related Actions. These pharmaceutical company Defendants named in numerous Related Actions conduct substantial business in New Jersey. Indeed, given the significant presence of large pharmaceutical companies in the District of New Jersey, the Panel has previously transferred multiple cases involving pharmaceutical companies there, including: *In re Insulin Pricing Litig.*, 2023 WL 5065090, at *3 (J.P.M.L. Aug. 3, 2023); *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345 (J.P.M.L. 2016); *In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1355 (J.P.M.L. 2017); *In re Desloratadine Pat. Litig.*, 502 F. Supp. 2d 1354 (J.P.M.L. 2007).

Additionally, eight Related Actions are already pending in the District of New Jersey. In particular, the Thomas Plaintiffs' case, which is pending in the District of New Jersey, has been assigned to the Honorable Zahid N. Quraishi. Judge Quraishi does not have any MDLs pending and possesses the knowledge and judicial resources to devote to this litigation.[3] The Honorable Michael Farbiarz also presides in the District of New Jersey and, similarly, is a capable judge who possesses the judicial resources to efficiently manage this litigation and currently has no pending MDLs.[4] The Panel often considers the respective caseloads of the proposed transferee district

---

[3] *See Pending MDL Dockets by District*, J.P.M.L. (Sept. 15, 2023), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2023.pdf.
[4] *Id.*

courts and each district's ability to move the actions forward. *See In re Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (assigning MDL to a jurisdiction where assignment to a judge with a favorable caseload was possible). This weighs in favor of assigning the MDL to Judge Quraishi, Judge Farbiarz or to another one of the many experienced judges in the District of New Jersey. *See In re CitiFinancial Servs. Inc. Prescreened Offer Litig.*, 474 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2007) (assigning judge with "favorable caseload conditions").

## 2. Cost and Inconvenience Will Be Minimized in the District of New Jersey

The District of New Jersey is also a functional "central," convenient location with respect to the parties, counsel, and witnesses. *See In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013) (considering whether a prospective transferee district "provides a geographically central forum for this nationwide litigation, and is equally convenient" for the parties). As discussed, several of the Defendants are headquartered in the District of New Jersey. Moreover, for those Defendants not headquartered in New Jersey, several are headquartered nearby. Specifically, two Defendants have headquarters within driving distance of the District of New Jersey in the neighboring state of Pennsylvania, as Defendant McNeil Healthcare's headquarters is in Fort Washington, Pennsylvania and GlaxoSmithKline's U.S. headquarters is in Philadelphia. Further, Defendant Procter and Gamble's headquarters is in Cincinnati, Ohio, which is also reasonably nearby the District of New Jersey.

Additionally, many major airports are conveniently located near the District of New Jersey. For instance, the Philadelphia International Airport ("PHL airport") is located only forty-one miles from the Trenton, NJ courthouse (where Judge Quraishi sits), or a forty-five-minute drive, and has "[t]wenty-seven airlines, including all major domestic carriers, [which] offer nearly 323 daily

departures to more than 120 destinations worldwide."[5] The PHL airport is also American Airlines' primary hub for the Northeastern United States.[6] The PHL airport provides easy, convenient access to the United States District Court for the District of New Jersey in Trenton, New Jersey, and is more than capable of accommodating the parties, attorneys, and witnesses in this litigation. Providing additional travel options, the Newark Airport is located in the District of New Jersey and is conveniently located near the Newark courthouse (where Judge Farbiarz sits). The Newark Airport has thirty-one airlines, and offers an average of 811 domestic flights daily.[7]   Thus, centralizing the Related Actions in the District of New Jersey will minimize cost and inconvenience.

### 3.    The District of New Jersey Has the Resources, Judicial Expertise, and Favorable Caseload to Conduct Efficient Pretrial Proceedings

The District of New Jersey offers the judicial expertise, resources, and favorable caseload to conduct efficient pretrial proceedings. *See In re Battlefield Waste Disposal Litig*., 655 F. Supp. 2d at 1375 (considering experience and caseload of transferee judge); *In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) (selecting transferee judge with no other pending MDLs).

The District of New Jersey has a favorable caseload and neither Judge Quraishi nor Judge Farbiarz is currently presiding over any multidistrict litigation.[8] *See, e.g.*, *In re Refined Petroleum Prods. Antitrust Litig.*, 528 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007) (transferring to a district with

---

[5] *About Us*, PHL, https://www.phl.org/about/about-us (last visited Oct. 11, 2023).

[6] *Philadelphia International Airport*, WIKIWAND, https://www.wikiwand.com/en/Philadelphia _International_Airport (last visited Oct. 11, 2023).

[7] *See August 2023 Traffic Report: EWR*, PORT AUTHORITY OF NY AND NJ (Oct. 5, 2023), https://www.panynj.gov/content/dam/airports/statistics/statistics-general-info/monthly-2023/ EWR_AUG_2023.pdf (listing 810.8 daily domestic flights).

[8] *See Pending MDL Dockets by District*, J.P.M.L. (Sept. 15, 2023), https://www.jpml.uscourts.gov/ sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2023.pdf.

"favorable caseload conditions"). Moreover, the Panel has previously recognized that the District of New Jersey is an ideal transfer forum for litigation concerning drugs and pharmaceutical companies. *See, e.g.*, *In re Insulin Pricing Litig.*, 2023 WL 5065090, at *3 (J.P.M.L. Aug. 3, 2023); *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345 (J.P.M.L. 2016); *In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1355 (J.P.M.L. 2017); *In re Desloratadine Pat. Litig.*, 502 F. Supp. 2d 1354 (J.P.M.L. 2007). The District of New Jersey has the resources, capability, and MDL experience to handle this multidistrict litigation.

Additionally, the District of New Jersey has demonstrated its ability to manage pretrial proceedings in its cases expeditiously. In the twelve months ending March 31, 2022, the median time from filing to disposition of civil matters in the District of New Jersey was 8.4 months.[9] As such, transfer of the Related Actions to the District of New Jersey would facilitate their efficient resolution. *See In re Refined Petroleum Prods. Antitrust Litig.*, 528 F. Supp. 2d at 1367 (transferring to a district with "favorable caseload conditions").

## III.     CONCLUSION

Accordingly, the Thomas Plaintiffs respectfully request that the Related Actions, and any related actions subsequently filed, be transferred and coordinated or consolidated for pretrial proceedings in the District of New Jersey pursuant to 28 U.S.C. § 1407.

Dated: October 11, 2023                     **KESSLER TOPAZ**
                                             **MELTZER & CHECK, LLP**

                                             */s/ Melissa L. Yeates*
                                             Joseph H. Meltzer
                                             Melissa L. Yeates

---

[9] *Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics*, U.S. COURTS (March 31, 2022*)*, https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2022/03/31.

Jordan E. Jacobson
280 King of Prussia Road
Radnor, PA  19087
Tel:  610-667-7706
Fax:  610-667-7056
jmeltzer@ktmc.com
myeates@ktmc.com
jjacobson@ktmc.com

James E. Cecchi
Donald A. Ecklund
Jordan M. Steele
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
jsteele@carellabyrne.com

Adam J. Levitt
John E. Tangren
Daniel R. Schwartz
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dschwartz@dicellolevitt.com

Paul J. Geller
Stuart A. Davidson
**ROBBINS GELLER RUDMAN
& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Telephone: (561) 750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
Christopher A. Seeger
David R. Buchanan
Scott A. George
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor

Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sgeorge@seegerweiss.com

*Counsel for Plaintiffs Shawn L. Thomas, Charles Geoffrey Woods and the Putative Classes*
Case No. 3:23-cv-20895, D.N.J.