**BEFORE THE UNITED STATES JUDICIAL PANEL
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION** | **MDL No. 3089** |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS MICHELLE KASPARIE AND
KIMBERLY JAMES IN OPPOSITION TO MOTION BY THE *BARTON* PLAINTIFFS
FOR TRANSFER OF ACTIONS TO THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY AND IN SUPPORT OF TRANSFER OF ACTIONS
TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA FOR COORDINATED OR CONSOLIDATED PRE-TRIAL
PROCEEDINGS PURSUANT TO 28. U.S.C. § 1407**

In accordance with Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Michelle Kasparie ("Kasparie") and Kimberly James ("James") (collectively "*Kasparie* Respondents") respectfully submit this interested party response to the *Barton* Plaintiffs' Motion for Transfer of Actions pursuant to 28 U.S.C. § 1407 for Coordinating or Consolidated Pre-Trial Proceeding ("Motion"), *see* Dkt. 1. For the reasons set forth below, the *Kasparie* Respondents wholeheartedly support coordination and consolidation under 28 U.S.C. § 1407, but respectfully submit that the United States District Court for the Eastern District of Pennsylvania (under the guidance of the Honorable Kai Scott) is an excellent, highly appropriate and convenient transferee district for this nationwide litigation involving numerous defendants, including those headquartered in the Philadelphia Metropolitan area.

## I.    INTRODUCTION

These actions are brought on behalf of a putative class numbering in the millions of consumers who purchased Defendants' oral nasal decongestant products. Oral nasal decongestant

products sold over-the-counter in retail stores and online have been relied upon by American consumers over many years to treat nasal decongestion orally, without the need for or hassle involved in securing a doctor's prescription to secure drug products remedying their condition from a pharmacy.  One primary active ingredient that has been used by manufactures of such over-the-counter oral nasal decongestants is "phenylephrine," which drug companies, including Defendants, began increasingly relying upon after concerns were voiced in 2006 about the use of pseudoephedrine – an acknowledged effective active ingredient to treat nasal decongestion – as a basis for the manufacture of illegal methamphetamine products.

While the sale of oral nasal decongestant products using phenylephrine has sky-rocketed, with sales of over $1.8 billion in the United States in 2022 alone, members of the consumer public, including the *Kasparie* Respondents and other putative Class members who purchased Defendants' oral nasal decongestant products, often at a premium price, were unaware of a hidden undisclosed adverse truth: **phenylephrine** is **not effective** in treating and alleviating nasal decongestion when taken orally.

The lack of effectiveness of phenylephrine, when taken orally, was recently confirmed on September 12, 2023, by an FDA advisory panel.  Meanwhile, Defendants and drug companies comprising the oral nasal decongestant industry knew or had reason to know at all times material, that their oral nasal decongestant products were no more ineffective than a placebo.  Thus, while consumers have been duped for many years by "taking a drug that has no benefit" (according to the FDA advisory panel), Defendants have profited handsomely to the detriment, harm, and economic injury of Plaintiffs and putative Class members.  Had the *Kasparie* Respondents and other consumers known that these oral nasal decongestant products containing phenylephrine as their active ingredient were ineffective as a nasal congestion when taken orally, they would not have purchased them or, at the least, would have paid substantially less for them.

As of this filing, there are 51 putative class actions that have been filed in various United States District Courts covering 17 federal jurisdictions naming one or more of the various brand-name and generic manufacturers of oral nasal decongestant products using phenylephrine.  These

various putative class actions all allege violations of various consumer protection statutes enacted in different states and request similar, if not identical, economic damages and various forms of injunctive relief.

As noted previously, the *Kasparie* Respondents support the transfer of all of these related actions involving similar facts and claims, so that they may be assigned to a single, appropriate transferee forum for consolidation.  The underlying facts concerning the manufacture and sale of Defendants' oral nasal decongestant products using phenylephrine are uniform throughout the proposed classes of plaintiffs in the related actions filed in the various federal courts.

Discovery conducted in the various related actions will thus be substantially similar and involve the same documents and witnesses vis-à-vis named respective Defendants.  Questions of law and fact will undoubtedly overlap given the common factual core in the cases, all of which assert similar legal theories, albeit perhaps with different state consumer statutes and plaintiff specific factual allegations.  Moreover, the issue of whether the putative class of potentially several million or more persons who have purchased the subject oral nasal decongestant phenylephrine products have suffered damages is a common factual issue present in all of the related actions.

A Section 1407 transfer and consolidation or coordination is prudent under the circumstances.  This is precisely the type of situation that was previously embraced by the Panel in *In re Oxycontin* where it concluded that "transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pre-trial program that ensures that pre-trial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties."  *In re Oxycontin Antitrust Litigation*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004) (centralizing litigation). The purpose of centralizing these cases is to promote the just and efficient litigation of the related actions, avoid inconsistent rulings on key and fundamental issues, and prevent duplicative discovery or other inefficiencies that would threaten to drain judicial resources.

Federal judges are well equipped to manage centralization in cases where there are substantial complexities.  It is often a truism that the more complicated and voluminous situations

3

confirm the strength of centralization, where skilled judges can work with experienced counsel to move otherwise seemingly complex and overwhelming cases to an efficient and just resolution. And, as shown below, the Eastern District of Pennsylvania would provide the most appropriate forum for centralization of these related actions.

## II.    LEGAL STANDARD AND ARGUMENT

### A.    TRANSFER OF THE ACTIONS TO ONE COURT FOR COORDINATION OR CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407

The appropriateness of transfer to one District Court of the related actions under 28 U.S.C. § 1407 has been well articulated and supported in the *Barton* Motion.  Dkt. 1.  In the interest of brevity, the appropriateness of such transfer is summarized herein without elaboration.

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.; see also In re Nifedipine Antitrust Litig.*, 266 F. Supp. 2d 1382 (J.P.M.L. 2003). The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig*., 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) (transfer to a single district for pretrial proceedings "conserve[s] the resources of the parties, their counsel, and the judiciary."); In re *Capital One Customer Data Sec. Breach*, 396 F. Supp. 3d 1364, 1365 (same). Consolidation is especially important in multidistrict litigations where "the potential

for conflicting, disorderly, chaotic" action is greatest. *See Plumbing Fixture Cases*, 298 F. Supp. at 493; *see also In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006). As stated in *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007): "Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands."[1]

Here, given the numerous pending federal actions in multiple districts and more to be filed, potentially inconsistent judicial rulings in litigation affecting millions of purchasers of oral phenylephrine nasal decongestant products is precisely the type of disorderly and chaotic action that consolidation and coordination under Section 1407 would prevent. Transfer would further serve the convenience of the parties and witnesses, promote efficiency, eliminate duplicative discovery, reduce litigation costs, and conserve resources and time of parties and the courts.

**B.   THE EASTERN DISTRICT OF PENNSYLVANIA IS THE APPROPIATE FORUM FOR TRANSFER AND COORDINATION OR CONSOLIDATION**

The Eastern District of Pennsylvania is an appropriate and ideal transferee forum for the litigation. First, at least two of the Defendants – McNeil Consumer Healthcare and GlaxoSmithKline, LLC – have principal offices in the District. Philadelphia provides excellent mass transportation systems and is easily accessible by Amtrak, with convenient train service to the City all along the Eastern Seaboard and westward to Western Pennsylvania, Ohio and beyond. As the sixth largest city by population in the United States, it offers a multitude of hotel accommodations, restaurants, and medical facilities for travelers. Philadelphia is also serviced by

---

[1] The Panel often centralizes cases involving common questions related to the efficacy of a drug product. *See e.g. In re Viagra* (sildenafil citrate) *Prod. Liab. Litig.* 224 F. Supp. 3d 1330 (J.P.M.L. 2016); *In re Pradaxa* (*dabigatron exilate*) *Prod. Liab. Litig.*, 883 F. Supp. 2d 1355 (J.P.M.L. 2012); *In re Accutane Prod. Liab. Litig.*, 343 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004).

the Philadelphia International Airport, a large international airport with routes to and from every corner of the country and beyond. The infrastructure is certainly in place to host this MDL.

The Eastern District of Pennsylvania also has extremely capable staff with a long history of successfully managing high-profile multidistrict litigation. *See, e.g. In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,856 F. Supp. 2d 1378 (J.P.M.L. 2012); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (J.P.M.L. 1994). Moreover, the Eastern District of Pennsylvania's docket and case profile demonstrates that it has the capacity to handle this litigation with conditions that are more favorable than those of the District of New Jersey. As of June 30, 2023, the Eastern District of Pennsylvania had 6,415 total cases compared to 8,604 for the District of New Jersey, and a "Median Time Interval" from filing to disposition of all cases of 7.7 months versus 10.8 months for the District of New Jersey. Case statistics reporting "Court Action" are also more favorable for the Eastern District of Pennsylvania, with its number of cases "During or After Pretrial" totaling 1161 versus the District of New Jersey's 3200, and its "Median Time Interval" just 10.8 months versus 20.7 months for the District of New Jersey. Reported "During Trial" case statistics are also more favorable for the Eastern District of Pennsylvania, with 69 total cases versus 110 for the District of New Jersey, and a "Median Time Interval" from filing to disposition of 25.4 months compared to 36.2 months – almost an entire year faster in the Eastern District of Pennsylvania in comparison.[2]

The *Kasparie* Action has been assigned to the Honorable Kai Scott, an excellent jurist with a distinguished record of public service. Judge Scott was a trial attorney for the Defender Association of Philadelphia, an Assistant Public Defender, Trial Unit Chief for the Defender's Office of the Eastern District of Pennsylvania, and a Judge of the Court of Common Pleas of

---

[2] *See* United States District Court – Judicial Caseload Profile, Table C-5 entitled "*U.S. District Courts – Median Time Intervals from filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-month Period Ending June 30, 2023.*"

Philadelphia County, Pennsylvania.  Judge Scott was appointed to the federal bench in 2022, and thereafter received her judicial commission in January 2023.  While this would be Judge Scott's first MDL assignment, it is clear that she can and would handle such an assignment with considerable management abilities, great skill and efficiency.  However, if for any reason Judge Scott is not assigned, the Eastern District of Pennsylvania is also blessed with many other excellent jurists, including District Judges who have successfully supervised MDL and other complex litigation.  In addition to Judge Scott, as the Panel knows well, the Eastern District of Pennsylvania is blessed with an abundance of highly regarded, efficient, competent, and experienced Judges from which the Panel could choose to assign the cases in the event that it finds this District to be the most appropriate forum.

## III.    CONCLUSION

For these reasons, the *Kasparie* Respondents respectfully request that the Panel grant transfer and coordination or consolidation under 28 U.S.C. § 1407, of transfer all the related actions to the Eastern District of Pennsylvania, under the guidance of the Honorable Kai Scott.


Dated: October 13, 2023                              Respectfully submitted,

                                                                       /s/ Stephen R. Basser

                                                                       **BARRACK, RODOS & BACINE**

                                                                       Stephen R. Basser
                                                                       Samuel M. Ward
                                                                       sbasser@barrack.com
                                                                       sward@barrack.com
                                                                       One America Plaza
                                                                       600 West Broadway, Suite 900
                                                                       San Diego, CA 92101
                                                                       Telephone: (619) 230-0800
                                                                       Facsimile: (619) 230-1874

                                                                       **BARRACK RODOS & BACINE**

                                                                       Jeffrey W. Golan
                                                                       Jeffrey A. Barrack

Andrew J. Heo
jgolan@barrack.com
jbarrack@barrack.com
aheo@barrack.com
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

**EMERSON FIRM, PLLC**

John G. Emerson
jemerson@emersonfirm.com
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659

*Attorneys for Plaintiffs, Michelle Kasparie and
Kimberly James*