BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: Oral Phenylephrine Marketing and Sales Practices Litigation | MDL No. 3089 |

INTERESTED PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TRANSFER
AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

I.   INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Interested Parties, Millard Adkins; Rosalyn Anderson; Eli Erlick; Donna Bailey; Rosalie Jackson; Recoa Russell; Frank Anderson; and Tina Haluszka ("Plaintiffs" or "Interested Parties" or "Adkins" or "Anderson") respectfully submit this brief as interested parties in support of Plaintiff Erin Barton's Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. The Interested Parties join in the motion for transfer to the Eastern District of Pennsylvania, or in the alternative the District of New Jersey, as opposed to only the District of New Jersey. The Interested Parties include Plaintiffs from the *Adkins* Complaint (New Jersey action) and *Anderson* Complaint (Pennsylvania action),[1] filed under CAFA in the Eastern District of Pennsylvania and District of New Jersey, along with similar class action and individual lawsuits filed in other federal courts[2] arising out of the September 12,

---

[1] *See Adkins, et al. v. The Procter & Gamble Company, et al.*, No. 2:23-cv-21051 (D.N.J), filed October 11, 2023, and *Anderson, et al. v. Reckitt Benckiser Pharmaceuticals Inc, et al.*, No. 2:23-cv-03899 (E.D. Pa.), filed October 11, 2023.

[2] As of _____, Interested Parties identified five additional related actions filed in federal court: (1) *Riccio v. Pfizer Inc.*, No. 1:23-cv-13843 (N.D. Ill.); (2) *De Priest v. Walgreen Co.*, No. 1:23-cv-14060 (N.D. Ill.); (3) *Hsieh v. Reckitt Benckiser LLC*, No. 1:23-cv-14404 (N.D. Ill.); (4) *Fong v. Johnson & Johnson Consumer Inc.*, No. 2:23-cv-02430 (D. Kan.); and (5) *Coyle v. GlaxoSmithKline, LLC*, No. 1:23-cv-07311 (E.D.N.Y.).

2023, FDA advisory panel which unanimously voted 16-0 finding that orally administered phenylephrine drugs ("PE Drugs") are not effective for treating nasal congestion.

The Defendants in the *Anderson* Complaint include The Procter & Gamble Co., an Ohio corporation, and GlaxoSmithKline LLC, a Delaware LLC. Generic brands included in the action include The Kroger Co., an Ohio corporation, Target Corporation, a Minnesota corporation, and Walmart Inc., a Delaware corporation. Each of the Defendants registered to do business in Pennsylvania individually or through their affiliates and consented to general jurisdiction in Pennsylvania pursuant to 42 Pa. Cons. Stat. § 5301(a)(2). *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023).

The Defendants in the *Adkins* Complaint include Reckitt Benckiser Pharmaceuticals Inc., Johnson & Johnson Consumer Inc.; Kenvue Inc.; Bayer Corporation; and GSK Consumer Health, Inc. d/b/a Haleon, which are principally based in New Jersey and thus New Jersey has general jurisdiction over these Defendants.

The Plaintiffs filed in two separate jurisdictions because personal jurisdiction was appropriate for the Defendants in two different states.

Defendants designed, manufactured, advertising, marketed, and distributed and sold PE Drugs which were advertised, marketed, warranted, and indicated as treating nasal congestion, despite being totally ineffective or worthless in treating nasal congestion. As a result, Defendants' PE Drugs were misbranded and worthless or were worth substantially less than plaintiff and class members paid for them.

The basis of Plaintiffs' claims is that the Defendants' PE Drugs marketed and sold for nasal congestion are not effective. Since these PE drugs cannot treat the indicated condition, these drugs

are adulterated, misbranded, not manufactured in accordance with FDA guidelines, and may not be distributed or sold in United States. 21 U.S.C. §§ 33 (a), 351(a)(2)(B). A drug is misbranded if:

a. "If its labeling is false or misleading in any particular";

b. "If any word, statement, or other information required … to appear on the label or labeling is not prominently placed thereon…in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use";

c. If the labeling does not contain, among other things, "the proportion of each active ingredient";

d. "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings … against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users";

e. "If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein";

f. "if it is an imitation of another drug";

g. "if it is offered for sale under the name of another drug";

h. "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof";

i. If the drug is advertised incorrectly in any manner; and/or

j. If the drug's "packaging or labeling is in violation of an applicable regulation."

Thus, by manufacturing and selling PE drugs, Defendants are liable to the Plaintiffs.

## II. ARGUMENT

### A. TRANSFER OF THE ACTIONS TO ONE COURT FOR COORDINATION OR CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407.

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the

3

just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.*; *see also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003). The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) (same); *In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (same).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a); *Ethicon Physiomesh*, 254 F. Supp. 3d at 1382 (transfer of related actions to a single district for pretrial proceedings "conserve[s] the resources of the parties, their counsel, and the judiciary."); *Capital One Customer Data Sec. Breach*, 396 F. Supp. 3d at 1365 (same). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *Plumbing Fixture Cases*, 298 F. Supp. at 493.

Consolidation of actions involving common factual questions makes sense when numerous judges will be asked to address similar pretrial matters and resolve similar pretrial motions involving similar fact patterns. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006). Notably, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

Here, there are already seven pending federal actions in five districts and many more to come. Inconsistent judicial rulings in litigation affecting millions of purchasers and users of PE Drugs are precisely the type of disorderly and chaotic action that consolidation and coordination under Section 1407 was intended to prevent. The transfer of the Actions to the same court for consolidated or coordinated proceedings is appropriate because common questions of fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent rulings on these issues impacting so many Plaintiffs across the United States.

        **1.    The Actions Involve Common Factual Questions.**

Here, all of the Actions, and any tag-along actions, will require a determination of whether PE drugs are ineffective, entitling millions of purchasers and users to economic damages for the losses sustained. Section 1407 does not require a majority of common factual issues as a condition of transfer only that there are common questions presented. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them

5

without entanglement in a litigation that they consider to be much broader in scope, we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."). In this case, the facts surrounding Defendants in the manufacture, marketing, and sale of their PE Drugs applies equally to all Plaintiffs.

The fact that the Actions are based on various state law claims for damages does not preclude consolidated or coordinated discovery, because the central issues—whether the recalled PE Drugs are ineffective and worthless—will be the same across all cases. *See, e.g.*, *In re National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) ("Although individualized factual issues may arise in each action, such issues do not – especially at this early stage of litigation – negate the efficiencies to be gained by centralization. The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims. The alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent rulings and inefficient pretrial proceedings."); *In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) ("While there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."). The Panel and transferee courts have routinely dealt with complexities, including Plaintiffs with varied claims and injuries. *See, e.g.*, *Checking Account Overdraft*, 626 F. Supp. 2d at 1335; *National Prescription Opiate*, 290 F. Supp. 3d at 1379; *c.f. In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 793 F. Supp. 1098, 1099-1100 (J.P.M.L. 1992) (transfer and centralization of claims against multiple defendants by plaintiffs claiming different injuries); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1997 WL 186325, at *1-2 (E.D. Pa. Apr. 16, 1997)

(more than 2,000 civil actions including claims of different types of injuries caused by products manufactured by dozens of defendants).

What is important and relevant to the Panel's decision is that transfer and consolidation or coordination will provide a consistent and uniform resolution to the common factual issues, which will facilitate the efficient adjudication of all the Actions even considering any differences that may exist. "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (Jud.Pan.Mult.Lit.1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *Ins. Brokerage Antitrust*, 360 F. Supp. 2d at 1372; *see also Checking Account Overdraft*, 626 F. Supp. 2d at 1335. The common questions of fact that are implicated here weigh heavily in favor of consolidation and coordination.

      **2.**      **Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.**

According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

      1.      The elimination of duplicative discovery;

      2.      The avoidance of conflicting rules and schedules;

      3.      The reduction of litigation cost; and

      4.      The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131.

In this litigation, there are currently seven pending actions in five different districts but those numbers are sure to rise rapidly.[3] Each Action involves virtually identical factual questions regarding Defendants' conduct, and overlapping issues exist concerning Plaintiffs' damages. Consolidation or coordination will eliminate the likelihood of duplicative discovery and proceedings that might result in inconsistent rulings and will prevent judicial resources from being needlessly wasted. *See In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *see also In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings); *In re A.H. Robins Co. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (concluding that transfer was necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings).

Without transfer, coordination, and/or consolidation of the Actions and tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense. Further, different federal courts, in duplicating rulings on the same issues, could make contradictory findings.

---

[3] Seven actions are more than enough to warrant transfer and coordination or consolidation in light of the questions at issue here. *See, e.g.*, Manual for Complex Litigation (Fourth) § 20.131 ("As few as two cases may warrant multidistrict treatment …"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (transferring and consolidating two cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues); *In re: Park West Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (transfer ordered where three actions were pending in three districts); *In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, 2017 WL 2391963, at *2 (J.P.M.L. June 1, 2017) (transfer ordered where twelve to fourteen actions (including tag-alongs) were pending in nine districts).

Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

> **B.    THE EASTERN DISTRICT OF PENNSYLVANIA IS THE APPROPRIATE FORUM FOR TRANSFER AND COORDINATION OR CONSOLIDATION.**

In this nationwide case affecting millions of purchasers and users of PE drugs, the Eastern District of Pennsylvania is an appropriate and ideal transferee district for the litigation. The Eastern District of Pennsylvania is a geographically centralized and accessible forum for many of the Plaintiffs who have been affected by the recall of PE drugs, especially those residing from Massachusetts through Georgia. *See id.* (focusing on the Southern District of Ohio's geographic location and convenience). Philadelphia is easily accessible by Amtrak from all of those locations and as the sixth largest city in the United States, it has ample accommodations for business travelers. Philadelphia is also serviced by Philadelphia International Airport, a large international airport with routes to every corner of the country and beyond. The infrastructure is certainly in place to host this MDL.

Further, the Eastern District of Pennsylvania has capable staff with a long history of successfully managing high-profile multidistrict litigation. *See, e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L. 2012); *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. 2012); *Orthopedic Bone Screw*, 1997 WL 186325, at *1-2. The Eastern District of Pennsylvania's docket demonstrates that the court has the capacity to handle this

litigation. As of December 31, 2020, the Eastern District of Pennsylvania had 10,123 pending cases with a median time from filing to disposition of 6 months.[4]

In the alternative, Interested Plaintiffs propose the District of New Jersey. New Jersey is a convenient forum for this litigation as well and is home to multiple Defendants.

### III.     CONCLUSION

For these reasons, Interested Parties f respectfully requests that the Panel grant its motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Actions to the Eastern District of Pennsylvania or, in the alternative, the District of New Jersey.

Dated: October 16, 2023                              Respectfully submitted,

*/s/ Charles E. Schaffer*
Charles E. Schaffer
Michael M. Weinkowitz
Nicholas J. Elia
**LEVIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com
mweinkowitz@lfsblaw.com
nelia@lfsblaw.com

D. Aaron Rihn
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel: (844) 383-0565
arihn@peircelaw.com
*Attorneys for Interested Parties Adkins & Anderson*

---

[4] *See* United States District Court – Judicial Caseload Profile, at 16, https://www.courts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf.