# U.S. District Court
## United States District Court - District of New Mexico (Albuquerque)
### CIVIL DOCKET FOR CASE #: 1:23-cv-00883-MLG-JMR

Chavez v. Johnson & Johnson Consumer, Inc. et al
Assigned to: District Judge Matthew L. Garcia
Referred to: Magistrate Judge Jennifer M. Rozzoni
Cause: 28:1332 Diversity-Fraud

Date Filed: 10/06/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Richard Chavez**
*on behalf of himself and all others similarly situated*

represented by **Brian S Colon**
Robles Rael & Anaya, P.C.
500 Marquette Avenue, N.W.
Suite 700
Albuquerque, NM 87102
505-242-2228
Fax: 505-242-1106
Email: bcolon@singletonschreiber.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert James Sanchez**
Singleton Schreiber
New Mexico
6501 Americas Parkway NE
Suite 670
ALBUQUERQUE, Ste 670
Albuquerque, NM 87110
505-230-4882
Email: rsanchez@singletonschreiber.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jacob Payne**
Singleton Schreiber, LLP
6501 Americas Parkway NE, Suite 670
Albuquerque, NM 87110
505-539-1314
Fax: 505-539-1314
Email: jacob.payne@state.nm.us
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Johnson & Johnson Consumer, Inc.**
*a New Jersey corporation*

**Defendant**

**GlaxoSmithKline Consumer Healthcare Holdings (US) LLC**
*a Delaware corporation*

**Defendant**

**RB Health (US) LLC**
*a Delaware corporation*

**Defendant**

**Bayer Healthcare LLC**
*a Delaware limited liability corporation*

**Defendant**

**The Procter & Gamble Company**
*an Ohio corporation*

**Defendant**

**Church & Dwight Co., Inc.**
*a Delaware corporation*

**Defendant**

**Walmart Inc.**
*a Delaware corporation*

**Defendant**

**Target Corporation**
*a Minnesota corporation*

**Defendant**

**CVS Pharmacy, Inc.**
*a Delaware corporation*

**Defendant**

**Walgreen Co.**
*an Illinois corporation*

**Defendant**

**Albertsons Companies Inc.**
*a Delaware corporation*

**Defendant**

**Amazon.com, Inc.**
*a Delaware corporation*

**Defendant**

**John Does 1-200**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/06/2023 | 1 | COMPLAINT against Albertsons Companies Inc., Amazon.com, Inc., Bayer Healthcare LLC, CVS Pharmacy, Inc., Church & Dwight Co., Inc., GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, John Does 1-200, Johnson & Johnson Consumer, Inc., RB Health (US) LLC, Target Corporation, The Procter & Gamble Company, Walgreen Co., Walmart Inc. ( Filing Fee - Online Payment), filed by Richard Chavez. (Attachments: # 1 Civil Cover Sheet) (Payne, Jacob) (Entered: 10/06/2023) |
| 10/06/2023 | | Filing and Administrative Fees Received: $ 402 receipt number ANMDC-9038986 re 1 Complaint, filed by Richard Chavez (Payment made via Pay.gov)(Payne, Jacob) (Entered: 10/06/2023) |
| 10/06/2023 | | United States Magistrate Judge John F. Robbenhaar and United States Magistrate Judge Jennifer M. Rozzoni assigned. (bc) (Entered: 10/06/2023) |
| 10/06/2023 | 2 | PLEASE TAKE NOTICE that this case has been randomly assigned to United States Magistrate Judge John F. Robbenhaar to conduct dispositive proceedings in this matter, including motions and trial. Appeal from a judgment entered by a Magistrate Judge will be to the United States Court of Appeals for the Tenth Circuit. **It is the responsibility of the case filer to serve a copy of this Notice upon all parties with the summons and complaint.** *Consent is strictly voluntary, and a party is free to withhold consent without adverse consequences. Should a party choose to consent, notice should be made no later than 21 days after entry of the Order setting the Rule 16 Initial Scheduling Conference.* For e-filers, visit our Web site at www.nmd.uscourts.gov for more information and instructions. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (bc) (Entered: 10/06/2023) |
| 10/10/2023 | 3 | REFUSAL TO CONSENT to Proceed before a U.S. Magistrate Judge (Payne, Jacob) [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 10/10/2023) |

| 10/11/2023 | 4 | PLEASE TAKE NOTICE that this case has been reassigned to United States District Judge Matthew L. Garcia as the trial judge. |
| | | Under D.N.M.LR-Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges. |
| | | ***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.* Kindly reflect this change in your filings.** |
| | | United States Magistrate Judge John F. Robbenhaar no longer assigned to this case. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (jg) (Entered: 10/11/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/17/2023 14:56:53 | | |
| **PACER Login:** | adbluth2020 | **Client Code:** | Phenylephrine - Pack and Jung |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00883-MLG-JMR |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| Richard Chavez, on behalf of himself and all others similarly situated, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Johnson & Johnson Consumer, Inc., a | ) | |
| New Jersey corporation; GlaxoSmithKline | ) | **JURY TRIAL DEMANDED** |
| Consumer Healthcare Holdings (US) LLC, | ) | |
| a Delaware corporation; RB Health (US) | ) | |
| LLC, a Delaware corporation; Bayer | ) | |
| Healthcare LLC, a Delaware limited | ) | |
| liability corporation; The Procter & | ) | |
| Gamble Company, an Ohio corporation; | ) | |
| Church & Dwight Co., Inc., a Delaware | ) | |
| corporation; Walmart Inc., a Delaware | ) | |
| corporation; Target Corporation, a | ) | |
| Minnesota corporation; CVS Pharmacy, | ) | |
| Inc., a Delaware corporation; Walgreen | ) | |
| Co., an Illinois corporation; Albertsons | ) | |
| Companies Inc., a Delaware corporation; | ) | |
| Amazon.com, Inc., a Delaware | ) | |
| corporation; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| John Does 1-200, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Richard Chavez ( "Plaintiff"), and by and through his undersigned counsel, hereby brings this action on behalf of himself and all others similarly situated, against Defendants, Johnson & Johnson Consumer, Inc.; GlaxoSmithKline Consumer Healthcare Holdings (US) LLC; RB Health (US) LLC; Bayer Healthcare LLC; The Procter & Gamble Company; Church & Dwight Co., Inc.; Walmart Inc.; Target Corporation; CVS Pharmacy, Inc.;

Walgreen Co.; Albertsons Companies Inc.; Amazon.com, Inc; and Does 1 through 200 (collectively, "Defendants"), and states;

## INTRODUCTION

1.      This is a class action for damages related to Defendants' wrongful conduct in connection with the marketing, advertising, promoting, distribution and sale of products containing phenylephrine—a purported decongestant used as an active ingredient in at least 250 products, including without limitation Sudafed Sinus Congestion, Tylenol Cold & Flu Severe, Nyquil Severe Cold & Flu, Theraflu Severe Cold Relief, Mucinex Sinus Max, and many others, including generic brands developed by major retailers like CVS, Walmart, Target and Walgreens (the "Phenylephrine Products").

2.      Defendants manufacture, test, promote, advertise, market, distribute and sell the Phenylephrine Products for the treatment of congestion and other associated cold and flu symptoms. Millions of New Mexicans, and hundreds of millions of Americans, spend hard-earned money to purchase these products for help relieving congestion and other associated cold and flu symptoms because they are told by the above-captioned Defendants that they work for that very purpose.

3.      For years, Defendants have advertised and marketed the Phenylephrine Products to unsuspecting consumers despite knowing that phenylephrine is ineffective for the treatment of nasal congestion and the other cold and flu symptoms for which Defendants promote its use. On or about September 12, 2023, the Federal Drug Administration, after careful study and consideration, announced publicly that phenylephrine is ineffective as a treatment for such symptoms.

4.      As a proximate result of Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Plaintiff and the putative class collectively suffered hundreds of millions of dollars in damages in reliance upon Defendants' knowingly false representations about the effectiveness of phenylephrine and the Phenylephrine Products.

5.      Plaintiff therefore demands judgment against Defendants and request, among

other things, compensatory damages, statutory damages, punitive damages, attorneys' fees, costs and all other available remedies and damages allowed by law.

## PARTIES

a. **Plaintiff**

6.      At all relevant times, Plaintiff **Richard Chavez** was and has been a resident and citizen of the State of New Mexico.

7.      On numerous occasions within the statutory time period, in reliance upon Defendants' intentionally false and fraudulent marketing, Plaintiff Richard Chavez purchased the Phenylephrine Products, and each of them, within the State of New Mexico for the treatment of cold and flu symptoms.

b. **Defendants**

8.      Defendant **Johnson & Johnson Consumer, Inc.** is a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Defendant Johnson & Johnson Consumer, Inc. is a wholly owned subsidiary of Johnson & Johnson, a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey (collectively "J&J"). At all times relevant to this complaint, Defendant J&J was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Tylenol, Sudafed, and Benadryl.

9.      Defendant **GlaxoSmithKline Consumer Healthcare Holdings (US) LLC** is a Delaware corporation with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, GlaxoSmithKline Consumer Healthcare Holdings (US) LLC is a wholly-owned subsidiary of GlaxoSmithKline PLC a public limited company organized under the laws of England and Wales (collectively "GSK"). At all times relevant to this complaint, Defendant GSK was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Robitussin, Theraflu, Contac, and Advil.

3

10.     Defendant **RB Health (US) LLC** is a Delaware limited liability corporation, with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, RB Health (US) LLC, is a wholly-owned subsidiary of Reckitt Benckiser Group PLC, a public limited company organized under the laws of England and Wales (collectively "Reckitt"). At all times relevant to this complaint, Reckitt, was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Mucinex.

11.     Defendant **Bayer Healthcare LLC** is a Delaware limited liability corporation with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Bayer Healthcare LLC is a wholly-owned subsidiary of Defendant is Bayer Corporation, an Indiana corporation with a principal place of business in the State of Pennsylvania (collectively "Bayer"). At all times relevant to this complaint, Defendant Bayer was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Alka-Seltzer.

12.     Defendant **The Procter & Gamble Company** ("Procter") is an Ohio corporation with headquarters and principal place of business in the State of Ohio. At all times relevant to this complaint, Defendant Proctor was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Dayquil and NyQuil.

13.     Defendant **Church & Dwight Co., Inc.** ("Church & Dwight") is a Delaware corporation with headquarters and principal place of business in the State of New Jersey. At all times relevant to this complaint, Church & Dwight was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Zicam.

14.     Defendant **Walmart Inc.** ("Walmart") is a Delaware corporation with headquarters and principal place of business in the State of Arkansas. At all times relevant to this complaint, Walmart was engaged in the business of manufacturing, marketing, testing,

promoting, selling, and/or distributing certain of the Phenylephrine Products.

15.     Defendant **Target Corporation** ("Target") is a Minnesota corporation with headquarters and principal place of business in the State of Minnesota. At all times relevant to this complaint, Target was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

16.     Defendant **CVS Pharmacy, Inc.** ("CVS") is a Delaware corporation with headquarters and principal place of business in the State of Rhode Island. At all times relevant to this complaint, CVS was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

17.     Defendant **Walgreen Co.** ("Walgreens") is an Illinois corporation with headquarters and principal place of business in the State of Illinois. At all times relevant to this complaint, Walgreens was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

18.     Defendant **Albertsons Companies Inc.** ("Albertsons") is a Delaware corporation with its principal place of business in the State of Idaho. At all times relevant to this complaint, Albertsons was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

19.     Defendant **Amazon.com, Inc.** ("Amazon") is a Delaware corporation with its principal place of business in the State of Washington. At all times relevant to this complaint, Amazon was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

20.     The true names and capacities of defendants Does 1 through 200 are currently unknown to Plaintiff who, therefore, sue these defendants under these fictitious names. These defendants are each directly and/or vicariously responsible, in some manner, for the harms alleged herein.  If/when Plaintiff learns these defendants' true names and capacities, Plaintiff will seek leave to amend this pleading accordingly.

21.      The true names and/or capacities, whether individual, corporate, partnership,

associate, governmental, or otherwise, of Defendants Does 1 through 200, inclusive, and each of them, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believe, and thereon allege, that each Defendant designated herein as a Doe caused injuries and damages proximately thereby to Plaintiff as hereinafter allege; and that each Doe defendant is liable to Plaintiff for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff, and damages sustained by Plaintiff. Plaintiff will amend this Complaint to allege the true names and capacities of said Doe Defendants when that same is ascertained.

### JURISDICTION & VENUE

22.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the class are citizens of a state different from Defendants.

23.     This Court has personal jurisdiction over Defendants, which are authorized to conduct and do conduct business in New Mexico. Defendants have engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, and/or selling the Phenylephrine Products to Plaintiff in New Mexico and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within the State to render exercise of jurisdiction by this Court permissible.

24.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because the Defendants transact substantial business in this District.

### CLASS ACTION ALLEGATIONS

25.     Pursuant to Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on his own behalf and on behalf of all other similarly

situated consumers in the United States as members of the following proposed Nationwide and New Mexico State classes. The proposed Classes are defined as follows:

a) **Nationwide Class:** During the fullest period allowed by law, all persons within the United States who purchased the Phenylephrine Products, or any of them, at any time and at any location (the "Class").

b) **New Mexico Subclass:** During the fullest period allowed by law, all persons who, while a resident of New Mexico, purchased the Phenylephrine Products at any location in New Mexico, including without limitation any online purchase made from New Mexico (regardless of the shipping address of the consumer) (the "New Mexico Subclass" or the "Subclass").

c) Nationwide class and New Mexico subclass members are collectively referred herein as "Class Members."

d) Like Plaintiff, all Class Members purchased the Phenylephrine Products based on the misrepresentations that said products were effective in the treatment of congestion and other associated cold and flu symptoms, and that such understanding was reasonable and was a material basis for the decision to purchase the Phenylephrine Products, which Defendants intended to foster through its various marketing activities in connection with the sale of the Phenylephrine Products

26.    Excluded from the Class and Subclass are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

27.    Excluded from the Class and Subclass are individuals who allege personal bodily injury resulting from the use of Phenylephrine Products.

28.    The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class and New Mexico Subclass.

29.     The proposed Class and New Mexico Subclass are so numerous that individual joinder of all their members is impracticable because members of the Class number in the tens or hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but are objectively ascertainable and will be determined through appropriate discovery.

30.     Defendants possess objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the damages suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies class members.

31.     Class Members may be notified of the pendency of this action by mail, publication and/or through the records of Defendants and third-party retailers and vendors.

32.     There are common questions of law and fact affecting Plaintiff and Class Members. Common legal and factual questions include, but are not limited to:

a)      Whether Defendants market and advertise the Phenylephrine Products in a way that is false or misleading.

b)      Whether by the misconduct set forth in this complaint, Defendants have engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

c)      Whether Defendants' conduct was committed knowingly and/or intentionally;

d)      Whether Defendants' conduct constitutes violations of the federal and/or state laws asserted herein;

e)      Whether Defendants had a duty to correct their fraudulent statements;

f)      Whether Plaintiff and Class members were harmed by Defendants' false statements;

g)      Whether Defendants were unjustly enriched by their conduct;

h)      Whether Plaintiff and Class members are entitled to punitive damages;

i)      Whether the Plaintiff and Class members are entitled to recover statutory attorney's fees;

j)      Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

33.     Plaintiff's claims are typical of the claims of the proposed Class and Subclass because Plaintiff and Class Members were harmed in the same manner by the same conduct.

34.     Plaintiff and Class Members have all sustained economic injury arising out of Defendants violations of common and statutory law alleged herein.

35.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass.

36.     Plaintiff's interests do not conflict with the interests of the Class and Subclass he seeks to represent. Plaintiff has retained counsel competent and experienced in prosecuting class actions, and Plaintiff intends to prosecute this action vigorously.

37.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members.

38.     Given the relatively small amount of damages at stake for any of the individual Class Members, individual litigation is not practicable.

39.     Individual Class Members will not wish to undertake the burden and expense of individual cases.

40.     In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system. Individualized ligation also presents the potential for inconsistent or contradictory judgments.

41.     In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

42.     Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

43.     In each case, Defendant used deceptive marketing and sales techniques aimed at the Class Members, causing harm to all Class Members as a result of such intentional conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

44.     Proposed class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the class and should be appointed lead counsel for the class.

## TOLLING OF STATUTE OF LIMITATIONS

a.     **Discovery Rule Tolling**

45.     As a result of the acts and omissions of Defendants, Plaintiff could not have discovered, through the exercise of reasonable due diligence, that the active ingredient in the Phenylephrine Products was ineffective, as has now been declared by the Federal Drug Administration. Thus, the applicable limitations periods did not begin to accrue until Plaintiff discovered, or through the exercise of reasonable diligence should have discovered, Defendants' wrongful acts and omissions.

b.     **Fraudulent Concealment Tolling**

46.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and misrepresentations about the effectiveness of phenylephrine and the Phenylephrine Products throughout the time period relevant to this action.

47.     Defendants are under a continuing duty to disclose the true character, quality, efficacy, safety issues and safety concerns of phenylephrine and the Phenylephrine Products to its users, including Plaintiff specifically. To date, Defendants have nevertheless failed to adequately and fully inform consumers about these matters, as discussed above.

48.     Plaintiff    reasonably    relied    upon    Defendants'    knowing,    affirmative

misrepresentations and/or active concealment when Plaintiff—and millions of similarly-situated New Mexicans and Americans—purchased the Phenylephrine Products based on the representations and advertisements touting the effectiveness of such products in the treatment of congestion and other associated cold and flu symptoms.

49.     Because Defendants actively concealed the true facts about the ineffectiveness of phenylephrine and the Phenylephrine Products, they are estopped from relying on any statutes of limitations defense.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Fraudulent Misrepresentation

50.     Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

51.     Plaintiff brings this claim individually and on behalf of the Class.

52.     At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

53.     Defendants willfully deceived Plaintiff and the public in general by making these intentional misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

54.     At the time the aforesaid misrepresentations were made, Defendants intended to induce Plaintiff to rely upon such misrepresentations.

55.     At the time Defendants made the above-described misrepresentations, Plaintiff and the public in general, reasonably believed them to be true. In reasonable and justified

reliance upon said misrepresentations, Plaintiff purchased the Phenylephrine Products.

56.      As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew were and are ineffective for their advertised purpose.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

57.      Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

58.      Plaintiff brings this claim individually and on behalf of the Class.

59.      At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant should have known that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

60.      Defendants recklessly or at least negligently deceived Plaintiff and the public in general by making these misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

61.      At the time the aforesaid misrepresentations were made, Defendants understood that their careless misrepresentations would induce Plaintiff to rely upon them.

62.      At the time Defendants made the above-described misrepresentations, Plaintiff and the public in general, reasonably believed them to be true.  In reasonable and justified reliance upon said misrepresentations, Plaintiff purchased the Phenylephrine Products.

63.      As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered serious financial harm, including the expenditure of substantial sums to purchase the

Phenylephrine Products, which Defendants knew or should have known were and are ineffective for their advertised purpose.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

64. Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

65. Plaintiff brings this claim individually and on behalf of the Class.

66. Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

67. At all times, New Mexico and other states have codified and adopted the Uniform Commercial Code governing the express warranty of merchantability.

68. Plaintiff and each member of the Class formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Phenylephrine Products. The terms of that contract include the cognitive health benefit promises and affirmations of fact made by Defendants through each of their marketing and advertising of the Phenylephrine Products as described herein. These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

69. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class Members.

70. At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective

against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

71.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the Phenylephrine Products that could provide the cognitive health benefits as represented and described above.

72.     As a result of Defendants' breach of their warranty, Plaintiff and the Class have been damaged in the amount of the purchase price of the Phenylephrine Products they purchased.

## FOURTH CAUSE OF ACTION

### Strict Liability-Design and Manufacturing Defect

73.     Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

74.     Plaintiff brings this claim individually and on behalf of the Class.

75.     At the time that the Phenylephrine Products left the control of the Defendants, the Phenylephrine Products were defective as a result of Defendants' design, manufacture, alteration, or modification. The defects included, but are not limited to, materials that are unsafe for human skin contact, and/or materials not identified on the Product itself.

76.     At all relevant times, Defendant knew and intended that the Phenylephrine Products would be purchased and used by members of the general public who would rely on Defendants to properly identify the relevant characteristics and usefulness of the Product.

77.     At the time of the incidents giving rise to this Complaint, the Phenylephrine Products were being used in a manner that was foreseeable by the Defendants and in a manner which the Phenylephrine Products were intended to be used.

78.     Defendants knew or should have known their manufacture or design of the Phenylephrine Products was defective, causing the Phenylephrine Products to fail to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

79.     In addition, the risks inherent in the design of the Phenylephrine Products outweighs any benefits of that design.

80.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered and continue to suffer serious harm.

## FIFTH CAUSE OF ACTION

### Violation of New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 *et seq.*)

### (On behalf of Plaintiff and the New Mexico Sub-Class Members)

81.     Plaintiff realleges and incorporates the allegations made above as if fully set forth below.

82.     Plaintiff asserts this Fifth Cause of Action on behalf of himself and all other similarly-situated persons in New Mexico that paid hard-earned money for the Phenylephrine Products based on Defendants' deceptive, false, unfair and unlawful marketing strategy touting the effectiveness of phenylephrine and the Phenylephrine Products for treatment of congestion and associated cold and flu symptoms.

83.     By engaging in the above-described conduct, Defendants, and each of them, acted in a manner that is unlawful, deceptive, unfair, and fraudulent, and have thus engaged in unfair business practices to the extreme detriment of Plaintiff, which conduct is prohibited under the New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 *et seq.* ("UPA")).

84.     Defendants have acted unfairly and deceptively, in violation of the UPA, by knowingly and fraudulently advertising to consumers, including Plaintiff, that phenylephrine and its Phenylephrine Products were effective against congestion and the associated cold & flu symptoms. This representation was likely to mislead consumers acting reasonably under the circumstances, and did mislead consumers acting reasonably under the circumstances, including Plaintiff.

85.     Defendants' conduct has caused Plaintiff and the Class to suffer harm, including through the payment of monies for the purchase of the Phenylephrine Products.

## Additional Allegations Regarding Punitive Damages

### (All Applicable Causes of Action)

86.     The acts and omissions of Defendants described herein consisted of oppression, fraud and/or malice and were done with advance knowledge, conscious disregard of the rights of others and/or ratification by Defendants' officers, directors and/or managing agents.

87.     Defendants' actions amounted to actual malice or reckless indifference to the likelihood of harm associated with their acts and omissions.

88.     Plaintiff is entitled to punitive damages because Defendants misled, misrepresented and/or withheld information and materials from consumers and the public at large, including Plaintiff, concerning the efficacy of phenylephrine and the Phenylephrine Products.

89.     Despite the fact that Defendants were or should have been in possession of evidence demonstrating the ineffectiveness of phenylephrine and the Phenylephrine Products, Defendants continued to market Phenylephrine Products by providing false and misleading information with regard to the efficacy of such products.

90.     Defendants failed to provide consumers, including Plaintiff, with available materials, information and warnings that would have ultimately dissuaded them from purchasing and consuming such products, thus depriving otherwise uninformed consumers from weighing the true risks and benefits of purchasing and ingesting the Phenylephrine Products.

91.     Defendants' conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

92.     Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the putative Class Members, prays for a judgment:

a. Certifying the Class and the New Mexico Subclass as requested herein, and appointing Plaintiff and their counsel to represent the Class and the New Mexico Subclass.

b. Awarding Plaintiff and the proposed Class Members damages;

c. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class Members;

d. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

e. Ordering Defendants to engage in a corrective advertising campaign;

f. Awarding punitive damages;

g. Awarding actual damages in favor of Plaintiff and all members of the proposed New Mexico Subclass;

h. Awarding the costs and expenses of this litigation to Plaintiff;

i. Awarding reasonable attorneys' fees and costs to Plaintiff as provided by law;

j. Awarding pre-judgment and post-judgment interest to Plaintiff; and

k. For such further relief as this Court deems necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully Submitted,


**SINGLETON SCHREIBER, LLP**


       */s/ Jacob Payne*

By:    BRIAN S. COLÓN, #14624
          bcolon@singletonschreiber.com
          ROBERT J. SÁNCHEZ #126404
          rsanchez@singletonschreiber.com
          JACOB PAYNE, #142971
          jpayne@singletonschreiber.com
          6501 Americas Parkway NE, Suite 670
          Albuquerque, New Mexico 87110
          Telephone: (505) 587-3473

          Attorneys for Plaintiff