BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL No. 3089 |

**THE MAXIMUM STRENGTH PLAINTIFFS' RESPONSE OF INTERESTED PARTIES OPPOSING TRANSFER OF THEIR ACTIONS**

**I.   INTRODUCTION**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs, Mohamad Tlaib, Tina Tuominen, and Rose Riccio[1] ("Maximum Strength Plaintiffs"), respectfully oppose the inclusion of their actions in this or any other MDL proceeding. For the reasons detailed below, they take no position on the transfer of the Movants' actions, which relate *solely* to the challenge of efficacy of the oral nasal decongestants containing phenylephrine hydrochloride ("PE") as the active ingredient, which is not an issue in their own actions.

To date, besides the Maximum Strength Plaintiffs' three actions against Proctor & Gamble, Johnson & Johnson, and GSK[2] ("Maximum Strength Actions"), there are presently at least 60 proposed nationwide and statewide classes in 19 different federal district court actions with claims challenging the efficacy of PE medicines ("Efficacy Actions") that have been tagged as potential

---

[1] Ms. Riccio is a plaintiff in two cases, *Riccio v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 1:23-cv-13843 (N.D. Ill.), and *Riccio v. RB Health (US), LLC*, 1:23-cv-13879 (N.D. Ill.). Counsel for defendant in the latter case has included it in its most recent Notice of Appearance. *See* D.E. # 130-1.

[2] In the first *Riccio* matter, Pfizer, Inc. was the originally named defendant, but the parties have stipulated to substitute GlaxoSmithKline Consumer Healthcare Holdings (US) LLC ("GSK"). In the second *Riccio* matter, which is not on the Schedule of Actions, Reckitt Benckiser Pharmaceuticals Inc. was the originally named defendant, but the parties have stipulated to substitute RB Health (US), LLC ("RB Health").

1

transfer cases to this proposed MDL. The Efficacy Actions seek to encompass more than 36 defendants and include claims that involve hundreds of different types of products. Notably, the Maximum Strength Actions have only been brought in one district court (the Northern District of Illinois), and each of the cases name only separate and distinct defendants.

The Efficacy Actions are based on the efficacy of PE in the identified oral nasal decongestant products, which according to recent FDA findings, is lacking. *See, e.g.*, *Audelo v. Johnson & Johnson Consumer Inc., et al*, 3:23-cv-24250, D.E. 1 at ¶ 1 (N.D. Fla.). This is the *sole basis* for each of the Movants' Efficacy Actions and the claims alleged therein. The Movants' incorrectly claim the Maximum Strength Actions also allege "substantially the same wrongful conduct on the part of the named defendants," in that the defendants knew that PE did not actually work as an oral nasal decongestant and sold the products anyway. Dkt. # 1-1, Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407, at p. 1.

Movants ignore that the Maximum Strength Actions are actually based on distinct factual and legal theories. The Maximum Strength Plaintiffs bring actions against only those defendants whose products are marketed as *Maximum Strength* nasal decongestants and pain relievers and contend that labeling these products as the strongest available on the market is misleading. Accordingly, the Maximum Strength Plaintiffs do not at all challenge the efficacy of any decongestant products, nor is proof that PE decongestants lack any efficacy an issue in the Maximum Strength Actions.

The factual allegations underlying the Maximum Strength Actions are starkly different. Each Maximum Strength Action alleges that the material misrepresentation is with respect to the phrase "MAX STRENGTH" or "MAXIMUM STRENGTH" as a marketing descriptor of the oral nasal-decongesting and pain-relieving effect of the relevant active ingredients. *See, e.g.*, *Tlaib v.*

*Proctor & Gamble Co.*, 1:23-cv-13840, D.E. 1 at ¶¶ 3-6 (N.D. Ill.); *Tuominen v. Johnson & Johnson, Inc.*, 1:23-cv-13796, D.E. 1 at ¶ 3-5 (N.D. Ill.); *Riccio v. Pfizer, Inc.*, 1:23-cv-13843, D.E. 1 at ¶¶ 3-5 (N.D. Ill.);[3] *Riccio v. RB Health (US) LLC*, 1:23-cv-13879, D.E. 11 at ¶¶ 3-5 (N.D. Ill.). Further, this "maximum" strength representation is not limited to PE. In fact, each of the Maximum Strength Actions allege that certain of the products at issue also contain the same inaccurate "MAX STRENGTH" or "MAXIMUM STRENGTH" representation for acetaminophen, because the dosage is actually in line with a regular strength, not extra strength, dosage of that active ingredient. *See, e.g.*, *Tlaib*, at ¶¶ 6-10; *Tuominen*, at ¶¶ 5-10; *Riccio*, at ¶¶ 5-11.

Because the Maximum Strength Plaintiffs' claims do not involve common questions of fact with the Movants' limited efficacy claims, lumping them together for purposes of transfer would be inappropriate under 28 U.S.C. § 1407(a). It is of no consequence whether or to what extent similar legal theories, *i.e.*, violations of state consumer protection laws, are pleaded in all the complaints.

**II.  BACKGROUND**

The Maximum Strength Actions all seek redress from the defendants for a very specific economic injury that is different from Movants' PE efficacy claims that they seek to consolidate: that putting "MAX STRENGTH" or "MAXIMUM STRENGTH" on the packaging of these PE and acetaminophen products is misleading. Specifically, the products are marketed as *Maximum Strength* using the following phrases (or similar phrases), "Nasal congestion," "Sinus congestion," "Nasal/Sinus congestion & Sinus pressure," "Sinus pressure," "Sinus pressure & Congestion," "Sinus pain & pressure," "Headache," "Sinus Headache," "Pain Reliver," "Body Aches" and/or

---

[3] An amended pleading will be filed in this action to name GlaxoSmithKline Consumer Healthcare Holdings (US) LLC.

"Fever Reducer." *See, e.g.*, *Tlaib*, at ¶ 1; *Tuominen*, at ¶ 1; *Riccio*, at ¶ 1. In fact, stronger oral nasal decongestants are available. *See, e.g.*, *Tlaib*, at ¶ 29; *Tuominen*, at ¶ 43; *Riccio*, at ¶ 28. The Maximum Strength Plaintiffs allege a reasonable consumer would believe the active ingredients in these products provide the strongest oral nasal decongestant relief available on the market; in fact, they do not, and the Maximum Strength claims do not require proof that PE lacks any efficacy, as alleged in the Efficacy Actions. *See, e.g.*, *Tlaib*, at ¶¶ 6, 25-6; *Tuominen*, at ¶ 5; *Riccio*, at ¶ 24. The Maximum Strength Plaintiffs seek damages for being economically injured by the defendants' false *Maximum Strength* representations and equitable relief to prevent future misrepresentations, while the Movants seek to consolidate a markedly different case, claiming damages and equitable relief because oral PE medicines do not work. *See, e.g.*, Hernandez v. Kenvue, Inc. et al., N.D. Cal. 4:23-cv-04817, at ¶ 5 (PE "is ineffective at providing nasal decongestion relief when it is taken orally"). This lack-of-efficacy claim is decidedly different than the *Maximum Strength* claim.

### III.  ARGUMENT

The Maximum Strength Plaintiffs do not challenge the creation of an MDL for the Movants' lack-of-efficacy claims in the Efficacy Actions; we take no position on whether an MDL should be created for those cases *only*. However, the Maximum Strength Plaintiffs do oppose transfer of their Maximum Strength Actions because, contrary to the Movants' assertions, the two groups of cases do <u>not</u> involve common issues and as such, transfer of these cases will not benefit the parties, witnesses, and courts. *See, e.g.*, *In re: Pre-Filled Propane Tank Antitrust Litig.*, 53 F. Supp. 3d 1383 (U.S. Jud. Pan. Mult. Lit. 2014) (supporting centralization but opposing inclusion of their case "that does not advance the same theories of liability or propose substantially the same class definition."); *see also In re: Welding Fume Productions Liability Litig.*, 560 F. Supp. 2d 1356, 1357 (J.P.M.L. 2008) (granting motion to vacate conditional transfer order).

Movants claim that "each case will turn on issues relating to the purported efficacy of the compound phenylephrine." D.E. # 1-1, at p 3. The Maximum Strength Actions are *not* based on that question of fact or whether that question of fact supports misrepresentation claims. Thus, the purpose of a Section 1407 transfer is not met for any Maximum Strength Actions.

### A. Efficacy of Oral Nasal Decongestants Is Not at Issue in the Maximum Strength Actions.

The factual allegations in the Maximum Strength Actions are materially different than the factual allegations in the Efficacy Actions for several reasons.

First, the *only* misrepresentation alleged in the Efficacy Actions is that PE has no efficacy. The Efficacy Actions each allege the same gravamen as below, albeit worded slightly differently:

> These Products are manufactured, sold and distributed by Defendants and have been found by the U.S. Food and Drug Administration ("FDA") to lack efficacy. The Products' lack of efficacy in [sic] was not disclosed to Plaintiff prior to Plaintiff's purchase of the Products and Plaintiff would not have purchased the Products had he known they did not work as advertised.

*Audelo* at ¶ 1. Contrast that with the Maximum Strength Actions, when boiled down to the essence, allege the products misrepresent that they provide the *Maximum Strength* relief for both pain relief and nasal decongesting:

> When consumers purchase decongestants, the strength of the ingredients are important purchasing considerations, especially for consumers seeking a "Maximum Strength" product.

*Tuominen* at ¶ 3.

> P&G's alleged conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Vicks PE Products are "MAX STRENGTH" oral nasal decongestant products. P&G omitted from Plaintiff and class members that the Vicks PE Products are not "MAX STRENGTH" oral nasal decongestant products because other decongestant products exist in the market that are stronger as decongestants.

*Tlaib* at ¶ 42.

> Plaintiff paid an increased cost for the Products, which were worth less than represented because the statements were not true and were highly misleading. The "MAXIMUM STRENGTH" representation on the Products' packaging, was part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the Products, or would not have purchased them on the same terms, if she knew the "MAXIMUM STRENGTH" representations were untrue and/or misleading.

*Riccio* at ¶ 38. There are no remotely similar claims in the Efficacy Actions that the "maximum strength" relief misrepresentation is misleading.

Second, and relatedly, the misrepresentation in the Maximum Strength Actions is not limited to PE alone, but also to acetaminophen, the active ingredient for pain relief, because in fact the products include a regular strength dose of acetaminophen such that there is no basis to claim they offer a *Maximum Strength* dose. *Tlaib* at ¶¶ 6-10; *Tuominen* at ¶¶ 5-12; *Riccio* at ¶¶ 7-12; *Riccio* at ¶¶ 8-12. Contrast the Movants' Efficacy Actions whose claims are *solely* based on PE. *See generally, e.g.*, *Audelo v. J&J et al.*, No. 23-24250 (N.D. Fla.). There are no claims regarding acetaminophen or any other active ingredient in any of the Efficacy Actions. *Id*.

 B.   **The Maximum Strength Actions and the Movants' Efficacy Actions Do Not Involve Common Questions of Fact or Law.**

Transfer is only appropriate when actions involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The Maximum Strength Actions should be excluded from any transfer order by the Panel because those actions involve different central issues of fact (whether the defendants mispresent the *Maximum Strength* of the medications) than the Efficacy Actions (whether the PE oral nasal decongestant lacks any efficacy).

The Panel has a long history of denying consolidation of cases that involve different factual questions. In *In re: Zicam Cold Remedy Marketing & Sales Practices Litigation*, the Panel

6

correctly refused to consolidate cases against a medicine that involved different allegations of wrongdoing. 655 F. Supp. 2d 1371, 1373 (U.S. Jud. Pan. Mult. Lit. 2009).

> Unlike the other actions in this docket, the Northern District of Illinois *Hohman* action centers on allegations that defendants possess no scientific evidence to support their claims regarding the efficacy of eight Zicam products. *Hohman* does not include the issue of whether the three Zicam products involved in the other actions cause anosmia. With respect to *Hohman,* we are persuaded that any factual questions that the action may share with the other actions are insufficient to warrant transfer at the present time.

*Id.* The Panel determined that while many of the tagged cases warranted centralization because of "sufficient common questions of fact," the *Hohman* case did not. *Id.* The scenario presented to the Panel in *In re: Zicam* closely matches what is occurring here, where the Efficacy Actions present a uniform theory potentially justifying centralization, but the Maximum Strength Actions present "insufficient" shared factual questions, if any. *Id.*

When it is apparent some cases up for transfer and consideration allege materially different wrongdoing by common defendants, the Panel has discretion and should apply that discretion to decide not to coordinate cases with "factual dissimilarities" into one uniform MDL proceeding. *See In re Starbucks Corp. Mktg. & Sales Pracs. Litig.*, 222 F. Supp. 3d 1348, 1349 (U.S. Jud. Pan. Mult. Lit. 2016).

> On the basis of the papers filed and the hearing session held, we conclude that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. . . . These factual dissimilarities likely will result in discovery, pretrial motions, and class certification issues that are not shared across the beverage categories. Moreover, the central allegation—misrepresentation of the fluid ounces in Starbucks made-to-order beverages—does not appear complex.

*Id. See also In re Pharmacy Ben. Plan Administrators Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) ("while these five actions [each involving a different pharmacy benefit plan and pharmacy benefit manager servicing each plan under different contracts] clearly share common

7

legal questions and, perhaps, a few factual questions, unique questions of fact predominate over any common questions of fact."). The Panel correctly found, as it should here, that when cases present different theories, "informal cooperation among the parties and the involved courts should be sufficient to minimize duplicative discovery and the risk of inconsistent pretrial rulings." *In re Starbucks*, 222 F. Supp. 3d at 1349. Although the Maximum Strength Plaintiffs are confident that discovery, pretrial motion practice, and ultimately trial on the merits will not significantly overlap with the issues central to the Efficacy Actions. And should there be any overlap in discovery, the most efficient way to proceed with these two different groups of cases is for the Maximum Strength Actions to be informally coordinated with the Efficacy Actions going forward. Such informal coordination will be efficient because all of the Maximum Strength Actions are in one district court and involve one set of proposed class counsel.

Also, when cases involve "various additional defendants" and significantly different allegations of wrongdoing, it would not be convenient for the parties and witnesses to be subjected to one global MDL involving the different cases. *See In re: Teamster Car Hauler Prod. Liab. Litig.*, 856 F. Supp. 2d 1343 (U.S. Jud. Pan. Mult. Lit. 2012).

> After considering the argument of counsel, the Panel is not persuaded that Section 1407 centralization would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation. While plaintiffs in each action allege that trailers manufactured by Cottrell were defective and caused them injury, the defects alleged and injuries suffered vary among these actions, and various additional defendants are named based on different theories of liability.

*Id.* Like that case, the Maximum Strength Actions allege an entirely different defect: the misbranding of the products as *Maximum Strength*. The mere commonality in defendants named in the Efficacy Actions is no reason to centralize the Maximum Strength Actions together with the Efficacy Actions.

Here, while both groups of cases do involve PE, the Maximum Strength Actions and Efficacy Actions allege very different wrongdoing, and do not involve all of the defendants in the Efficacy Actions. Thus, it would not be convenient for the parties and witnesses to be subject to one global MDL involving the two distinct groups of cases. After all, the central determination of whether oral nasal decongestants containing PE are efficacious will not bear on the central determination of whether the defendants to the Maximum Strength Actions are liable for using "MAXIMUM STRENGTH" or "MAX STRENGTH" to market PE oral nasal decongestants and acetaminophen for pain relief.

C. **The Scope of the Movants' Efficacy Actions is Substantially Different than the Maximum Strength Actions.**

Transfer is not appropriate when cases allege different factual and legal theories regarding different products and different defendants such that the proposed classes involve different class members. For example, in *In re: Testofen Mktg. & Sales Practices Litigation*, the Panel looked at cases involving different pharmaceutical products and against different defendants. 96 F. Supp. 3d 1371, 1372 (U.S. Jud. Pan. Mult. Lit. 2015). Because the marketing and sales practices would differ between the cases, the Panel denied centralization. *Id.*

> But the scope of the two actions before the Panel are substantially different. *Ryan* alleges a broad scheme to defraud consumers that encompasses 22 products and 17 defendants, and alleges that the GNC and Gencor companies played substantial roles in the alleged misrepresentations. In contrast, *Carney* involves three products in a single product line (Test X180) manufactured by one defendant, Force Factor, LLC. On the record before the Panel, the limited overlap with respect to the marketing and sales practices of defendant Force Factor does not warrant centralization.

*Id.*

It should be readily apparent to the Panel that the Maximum Strength Plaintiffs only seek to hold the defendants they separately sued in different actions for mislabeling their products as *Maximum Strength*. Plaintiff Tlaib sued Proctor & Gamble; Plaintiff Tuominen sued Johnson &

9

Johnson; and Plaintiff Riccio separately sued Pfizer, which has been substituted with GSK, and Reckitt Benckiser, which has been substituted with RB Health. Each case involves distinct products. And the marketing and sales of the products sold by each defendant will be the separate focus of each case. Movants simply overlooked that there is no overlap between any of the actions that would support transfer and centralization by ignoring the gravamen of the Maximum Strength Actions compared to the Efficacy Actions. Thus, the Movants ignored that there is no convenience to the parties and witnesses or a basis to claim the just and efficient conduct of the actions will be promoted by transferring the Maximum Strength Actions with the Efficacy Actions. 28 U.S.C. § 1407(a). Each Maximum Strength Action against a single defendant should be litigated independently.

The scope of the Maximum Strength Actions is different than the scope of the Efficacy Actions for two reasons. First, the Maximum Strength Actions alleging mispresenting as *Maximum Strength* the defendants' oral nasal decongestant and pain relief products have only been brought in one district court, the Northern District of Illinois. Each of these cases name a separate and distinct defendant that markets a *Maximum Strength* product. The Panel should decline to include the Maximum Strength Actions in any MDL proceeding for that reason alone. Second, the putative class members in the Maximum Strength Actions include consumers who purchased PE and/or PE with acetaminophen products because of the false *Maximum Strength* representation on the labels. The putative class members in the Efficacy Actions, on the other hand, include consumers who purchased various products containing PE that they claim lack any efficacy for nasal decongestion.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs in the Maximum Strength Actions respectfully request that their two actions not be centralized in this or any other MDL proceeding.

Dated: October 25, 2023

Respectfully submitted,

By: */s/ Jeff Ostrow*

Jeff Ostrow
Jonathan M. Streisfeld
Kenneth J. Grunfeld
Kristen Lake Cardoso
Daniel Tropin
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Email:  ostrow@kolawyers.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Melissa S. Weiner
Ryan J. Gott
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Email: mweiner@pwfirm.com
           rgott@pwfirm.com

*Attorneys for Plaintiffs Mohamad Tlaib, Tina Tuominen, and Rose Riccio*