BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

**IN RE:** Oral Phenyledrine Marketing and        MDL No. 3089
Sales Practices Litigation

**RESPONSE OF FOUR PLAINTIFFS
IN SUPPORT OF THE MOTION FOR CENTRALIZATION
IN THE NORTHERN DISTRICT OF CALIFORNIA**

Darrell Grimsley, Jr., Van Gandy, Joy Taylor, and Anthony Coleman,[1]

plaintiffs in two actions, urge the Panel to centralize all actions in the Northern

District of California.

They join other parties who have advanced the Northern District of

California as their first or second choice. (Yousefzadeh's response, doc. 140;

Pack, Jung, *et al.*'s response, doc. 194.)

**I.**      **Centralization is warranted because of the common legal questions, which turn in part on a single regulatory record, and because of the common scientific evidence.**

The dozens of overlapping actions, and their breadth—asserting multistate

or nationwide class actions over wrongdoing in a billion-dollar product category—

is a good enough reason to warrant centralization. But aside from that, there are

other strong reasons to centralize these actions now.

One of them has to do with the judicial labor involved with the federal

preemption defense, which could have an effect on all of the state-law fraud and

---

[1] Both actions have been amended since these parties filed their notice of related actions. One new plaintiff joined each action and in the *Grimsley* action, the defendant informed plaintiffs they had named the wrong entity. However, the core allegations did not change. The current styles are: *Taylor and Coleman v. Procter & Gamble Co.*, N.D. Cal. No. 3:23-cv-4909; *Grimsley, Jr. and Gandy v. Reckitt Benckiser, LLC and RB Health (US) LLC*, N.D. Fla. 3:23-cv-24588.

warranty claims presented in these actions. Every defendant will argue at the outset that the Food and Drug Act preempts these state-law claims. This is an important argument that should be resolved (and rejected) right up front. The presence of this question makes MDL treatment particularly necessary. Consider that:

- Federal preemption is likely to be raised as a defense to all state-law claims, no matter how those state-law claims are denominated. It's a common question that arises in every action in this MDL.

- Resolution of the federal preemption defense will turn on facts, such as the status of the federal monograph applicable to oral phenylephrine and the FDA's conduct in considering how to regulate oral phenylephrine—the regulatory record. These facts will be the same in each action in this MDL, so it is worth having one court once consider them rather than duplicating work.

- There are no, or few, facts that are unique to any one defendant's conduct or position that could affect consideration of the preemption defense. Without much variation, if such claims are preempted as to Company A, they will be preempted as to Companies B, C, and D. Thus, there is little reason to consider federal preemption separately in separate courts.

- The legal analysis that follows from these facts should be the same in any district, and the Judiciary would benefit from centralization so it can conduct that analysis consistently.

Another body of fact also is common to each action in this MDL, and that is the state of the science of oral phenylephrine—the body of studies that do or do not demonstrate efficacy and safety of the drug. Plaintiffs will rely on these studies to establish that they have wasted their money on an ineffective drug. Defendants will attempt to show the opposite. Obviously, the available scientific evidence is a core set of facts in each action, and all parties will benefit by having a single transferee forum get up to speed on that science. (Judicial familiarity with the

science will also come from inspecting the regulatory record and conducting the preemption analysis—another reason centralization in a single district is efficient.)

The Panel should not be misled by any defendants who argue that their products have unique characteristics—novel labeling, formulations, dosing, or unique packaging—that distinguish them from other defendants'. Some defendant may argue that an "all-industry MDL" is not appropriate, or would tie a single judge up in knots trying to keep everything straight.

Whatever minor distinctions may exist among defendants, the core science questions about efficacy, and core legal questions about preemption, would swamp them. Any concern that different manufacturers are situated differently can be handled through ordinary case management tools such as creating separate tracks or groups. And no matter how various manufacturers may have marketed the drug, it is the same compound.

Centralization is plainly warranted.

## II.   The Northern District of California is an appropriate forum for this MDL.

Plaintiffs Taylor and Coleman filed their action in the Northern District of California. At least five other plaintiffs, Pack, Jung, McPhee, Vorise, and Chavez also filed there. This district is a good choice for this MDL and the Panel should transfer all related actions here.

The Northern District of California has extensive MDL experience, reflecting the business-heavy docket in this important district. Judges in this district regularly attract and resolve complex litigation, and the district has efficiently resolved 106 MDLs out of a total of 1,587 MDLs that have concluded as

of September 30, 2021.[2] While the Northern District of California carries a heavy caseload, it has only one judicial vacancy,[3] and only 8.6% of civil cases are over three years old.[4]

The judge assigned to Plaintiff Taylor's action, Judge Jacqueline Corley, is an excellent choice for this litigation. She was confirmed in 2022 as an Article III district judge, but unlike many new judges, she already has significant MDL experience. That's because, as a magistrate judge alongside Judge Breyer, she oversaw key matters in the "Volkswagen clean diesel" MDL—which *also* involved nationwide class action allegations of a fraudulently labeled, federally-regulated consumer product. Aside from the Volkswagen MDL, Judge Corley has presided over MDLs including Juul Labs, Facebook, Autozone, and multiple other antitrust and class actions. Respondents recognize that the Panel's concern is finding the right district, not the right judge, but Judge Corley is an excellent potential transferee judge.

Additionally, the Panel has recognized the Northern District of California as a conveniently accessible forum. *In re: Roundup Prod. Liab. Litig.*, 214 F. Supp. 3d at 1348 ("has the necessary judicial resources and expertise to efficiently manage this litigation"); *In re Compression Labs., Inc., Patient Litig.*, 360 F. Supp. 2d 1367,

---

[2] JPML, *Multidistrict Litigation Terminated Through September 30, 2021*, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/ JPML%20FY%202021%20Report%20Cumulative%20Terminated%20MDLs.pdf.
[3] Administrative Office, *Current Judicial Vacancies*, *available at* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies.
[4] Administrative Office, *United States District Courts – National Judicial Caseload Profile*, *available at* https://www.uscourts.gov/sites/default/files/ fcms_na_distprofile0630.2022_0.pdf.

1368–69 (J.P.M.L. 2005) ("an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require").

The Panel should not feel compelled to center this MDL in manufacturers' home court. For one, there is no single center of gravity that contains all manufacturers or their operations. These actions will likely involve dozens of corporate entities—the manufacturers—as well as dozens of pharmacy and retail defendants. Nor is there a center for the marketing or use of oral phenylephrine; it is marketed nationwide, and there are no regional variations in who purchases it. Finally, given the rise of electronic document platforms, the location of documents and witnesses weighs less than in other MDLs. (In fact, given the Bay Area's status as a center for biotech and drug development, there is good reason to believe a number of expert witnesses will be located in the Northern District of California.)

Accordingly, respondents urge the Panel to select the Northern District of California for centralization.

Dated: October 25, 2023

Respectfully submitted,

/s/ William F. Cash III

William F. Cash III
**LEVIN PAPANTONIO
RAFFERTY**
316 S. Baylen Street #600
Pensacola, Florida 32502
Phone: 850-435-7059
bcash@levinlaw.com

*Counsel for Darrell Grimsley, Jr., Van Gandy, Joy Taylor, and Anthony Coleman*