BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: Oral Phenylephrine Marketing and           MDL No. 3089
Sales Practices Litigation

### INTERESTED PARTY RESPONSE IN SUPPORT OF TRANSFER AND CONSOLIDATION IN THE SOUTHERN DISTRICT OF FLORIDA

Plaintiff Hector Valdes respectfully submits this interested party response to the *Barton* plaintiffs' Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings ("Motion").  Plaintiff agrees that transfer and consolidation of all actions is appropriate under § 1407, and submits that the Southern District of Florida is the most appropriate and convenient transferee district for this nationwide litigation.  The Southern District of Florida is one of the largest and most efficient federal districts in the country, with an experienced judiciary that has successfully presided over some of the country's most complex MDLs and class-action proceedings.  It is a metropolitan destination with a robust visitor infrastructure that will be equally accessible to all of the widely-dispersed parties, witnesses and attorneys.  And, it will be particularly convenient for the most critical witnesses – the University of Florida scientists whose decades of research uncovered the fraud that is the core of this case.

### BACKGROUND

Phenylephrine is a compound found in popular over-the-counter ("OTC") oral medications that purportedly act as decongestants – the "Decongestant Products" – including branded products such as Tylenol Sinus + Headache, Theraflu, and Nyquil Severe Cold & Flu + Congestion, as well as in countless generic products.  Last year alone, nearly $1.8 billion in sales of phenylephrine-containing "decongestants" were made in the United States across more than 250 products, accounting for approximately 80% of the market for OTC decongestants.

Unknown to the public, but known to the manufacturers in this lucrative market, phenylephrine taken orally is ineffective. It provides no relief for congestion, and is no better than a placebo, like a sugar pill, as a decongestant when taken orally.  As one pharmacist who led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

On September 11-12, 2023, the U.S. Food and Drug Administration held a Non-prescription Drug Advisory Committee meeting to discuss the effectiveness of oral phenylephrine as an active ingredient in OTC cough and cold products.  The Committee concluded in a 16-0 vote that the current peer-reviewed scientific data did not support that the recommended dosage of orally-administered phenylephrine is effective as a nasal decongestant.  Central to the Committee's conclusion was decades of research conducted by two University of Florida pharmacists, Leslie Hendeles, Pharm. D. and Randy Hatton, Pharm. D.[1]

In the wake of this startling revelation, numerous putative class actions have been filed in nineteen (19) federal district courts across the United States.[2]  The actions name various manufacturers of both branded and generic Decongestant Products, who are similarly geographically dispersed throughout the country.  The plaintiffs in all actions bring various claims under state law, including claims for breach of warranty, unjust enrichment, fraud, and violations of consumer protection laws.  And, all of the claims are premised on the same basic allegations:

---

[1]*FDA Panel Rules Popular Nasal Decongestant is Ineffective,* University of Florida College of Pharmacy, September 26, 2023, https://pharmacy.ufl.edu/2023/09/26/fda-panel-rules-popular-nasal-decongestant-is-ineffective/, last visited October 17, 2023.
[2]Southern, Middle and Northern Districts of Florida; Eastern, Central and Northern Districts of California; Northern District of Illinois; Eastern District of New York; District of New Jersey; Eastern District of Pennsylvania; Southern District of Ohio; Eastern District of Louisiana; District of Kansas; Western District of Missouri; District of Minnesota; District of Oregon; District of Rhode Island; Western District of Washington; Western District of Arkansas; and, District of New Mexico.

plaintiffs overpaid for the Decongestant Products because phenylephrine is ineffective as a nasal decongestant and the products therefore did not do what the manufacturers promised.

## ARGUMENT

**A. Transfer and Consolidation of All Actions is Appropriate Under 28 U.S.C. § 1407.**

Plaintiff agrees with the *Barton* plaintiffs that coordination and consolidation is appropriate. As noted in the *Barton* application, transfer and centralization is appropriate when: (1) the cases involve common questions of fact; (2) transfer will serve the convenience of the parties and witnesses; and, (3) transfer will promote the just and efficient conduct of the actions. *See* 28 U.S.C. § 1407; *In re Nifedipine,* 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

Here, all related actions are based on allegations that defendants' Decongestant Products did not work as advertised to relieve nasal decongestion, are premised upon similar legal theories, and seek certification of similar classes and/or subclasses. This Panel has consistently consolidated cases like these because they involve common questions. *See, e.g., In re: Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1374 (J.P.M.L. 2015) (certain herbal supplements); *In re Viagra (Sildenafil Citrate) Products Liab. Litig.,* 224 F. Supp. 3d 1330 (J.P.M.L. 2016) (drugs with same mechanisms); *In re: Fluoroquinolone Products Liab. Litig.*, 122 F. Supp. 3d 1378 (J.P.M.L. 2015) (drug products containing same antibiotic).

Furthermore, formal coordination is necessary to prevent duplication of discovery and other pretrial matters, and to eliminate the possibility of inconsistent rulings (including on *Daubert* challenges and motions for class certification). *See In re Hair Relaxer Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL 3060, 2023 WL 1811836, at *2 (J.P.M.L. Feb. 6, 2023) (centralization to minimize duplication of discovery and pretrial practice and to prevent inconsistent rulings). Transfer under § 1407 will place all related actions "before a single judge who can formulate a

3

pretrial program…leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re: Oxycontin Antitrust Litig.*, 314 F. Supp. 2d 1388, 1390 (J.P.M.L. 2004).

### B. The Southern District of Florida is the Most Appropriate Transferee District.

Selection of the most appropriate forum for centralization of multidistrict litigation under § 1407 is based on a balancing of several factors, none of which is dispositive: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; (6) the experience, skill and caseload of available judges. *See* Manual of Complex Litigation (Fourth) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977). Here, the first four (4) factors are neutral and do not favor any particular jurisdiction,[3] and the remaining factors weigh heavily in favor of the Southern District of Florida. The Southern District of Florida is well-equipped to handle the litigation, is equally convenient and accessible to the widely-dispersed parties, witnesses and attorneys, and will be particularly convenient for the experts from the University of Florida, whose research will be at the center of this case.

### *1. The Southern District Will be Most Convenient for the Parties, Witnesses, and Counsel.*

An important factor in the transfer analysis is whether the transferee "district offers an accessible metropolitan location that is geographically convenient for many of this docket's litigants and counsel." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1373 (J.P.M.L.

---

[3] The related actions currently pending are dispersed across nineteen (19) judicial districts across the country, ranging from New York to California and from Washington State to Florida, and no judicial district stands out as having a disproportionately high number of cases. No discovery has occurred in any of the actions and none of the actions have progressed, as it is known that the Panel will be considering consolidation. Furthermore, there is no site of the occurrence of common facts. The various defendants are alleged to have marketed and sold ineffective Decongestant Products. Those defendants are dispersed across various states, and hence their wrongful acts occurred in various states. Moreover, the products were marketed and sold all over the country.

2005). The Southern District of Florida is a leading travel destination with multiple airports, including Miami International Airport, which served 50.6 million passengers in 2022[4] and has ample non-stop flights to cities across the U.S.[5] It also has a highly-developed visitor infrastructure, including for business travel, and offers varied and abundant lodging, conference facilities and meeting spaces, as well as court-reporting and related office-support and supply services. Thus, given that the parties, witnesses, and counsel in the related actions are dispersed throughout the United States, the Southern District of Florida will be relatively and equally convenient to most, if not all, participants.

Furthermore, the convenience of nonparty witnesses is often cited as the most significant factor in any transfer analysis. *See* 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) (discussing transfer under § 1404). Indeed, the location of key or material witnesses is more important than the raw number of witnesses, and generally outweighs considerations regarding less important witnesses. *See id.* (collecting cases); *see also In re Preferential Drug Products Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (transferring to district where "key pharmaceutical witnesses" and other potential sources of discovery were located); *In re Air Crash Disaster at John F. Kennedy Intern. Airport on June 24, 1975*, 407 F. Supp. 244 (J.P.M.L. 1976) (transferring to district where most of the anticipated key witnesses on issue of liability resided and where tape recordings and other relevant documents were located).[6] Here, the most critical nonparty witnesses are the two University of Florida pharmacists, Leslie Hendeles, Pharm. D. and Randy Hatton,

---

[4] *MIA Breaks Records in 2022,* CBS News Miami, February 6, 2023, https://www.cbsnews.com/miami/news/mia-breaks-records-in-2022-becomes-busiest-airport-in-florida/, last visited October 16, 2023.
[5] *Miami International Airport*, Greater Miami Convention & Visitors' Bureau, https://www.miamiandbeaches.com/plan-your-trip/transportation/miami-international-airport, last visited October 16, 2023.
[6] "Since the advent of electronic discovery, most courts have recognized that the physical location of relevant documents is no longer a significant factor in the transfer inquiry." *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1264 (N.D. Fla. 2019) (internal quotation omitted).

Pharm. D., whose decades of research led the Non-prescription Drug Advisory Committee to conclude that the current peer-reviewed scientific data did not support that the recommended dosage of orally-administered phenylephrine is effective as a nasal decongestant.

### 2. *The Southern District of Florida Has the Resources and Judicial Expertise to Efficiently Conduct this Litigation.*

One of key considerations in selecting a transferee district for an MDL is the relative size, resources, and caseload conditions in the competing forums. *See*, *e.g.*, *In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, 509 F. Supp. 3d 1370, 1374 (J.P.M.L. 2020) (transferring to district "with the capacity to efficiently manage these cases"); *In re Refined Petroleum Products Antitrust Litig.*, 528 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007) (transferring to district that "enjoys favorable caseload conditions"). The Southern District of Florida is one of the largest and busiest in the nation in terms of filings.[7] Yet it is consistently one of the most efficient federal districts in the country, with an average median time from filing to disposition for civil cases of 3.6 months during the period of June 30, 2018 through June 30, 2022 (as compared to the national average of 9.5 months for the same period).[8] And as of June 30, 2023, the Southern District had a median time from filing to trial for civil cases of 24 months and 313 pending cases per Judgeship (as compared to national medians of 35.7 months from filing to trial and 1,022 pending cases per Judgeship).[9]

Another critical consideration is the availability of an experienced judiciary, capable of efficiently managing the complex proceedings associated with MDLs and class actions. *See In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) (transferring to district

---

[7]Table 4.2, U.S. District Courts—Civil Cases Filed, by District, During the 12-Month Periods Ending June 30, 1990, and September 30, 1995 through 2022, https://www.uscourts.gov/sites/default/files/data_tables/jff_4.2_0930.2022.pdf, last accessed October 17, 2023.
[8]United States District Courts --- National Judicial Caseload Profile, June 30, 2018 through June 30, 2023, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf, last accessed October 17, 2023.
[9]*Id.*

with "a jurist with multidistrict litigation experience and the ability to steer this complicated litigation on an efficient and prudent course"); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Products Liab. Litig.*, 273 F. Supp. 3d 1377, 1379 (J.P.M.L. 2017) (transferring to district with "a jurist well-versed in the nuances of complex and multidistrict litigation who can steer this matter on a prudent course").  The Southern District of Florida has a diverse bench, with numerous judges who are highly capable of managing an MDL of this complexity and magnitude, and who have repeatedly demonstrated their abilities to do so.  *See, e.g. In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Practices & Products Liab. Litig.*, 568 F. Supp. 3d 1412 (J.P.M.L. 2021) (centralizing MDL proceedings in the Southern District of Florida); *In re Mednax Services, Inc., Customer Data Sec. Breach Litig.,* 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021) (same); *In re Zantac (Ranitidine) Products Liab. Litig.*, 437 F. Supp. 3d 1368, 1370 (J.P.M.L. 2020) (same); *In re: Takata Airbag Products Liab. Litig.*, 84 F. Supp. 3d 1371, 1373 (J.P.M.L. 2015) (same); *In re: Air Crash Near Rio Grande, Puerto Rico, On Dec. 3, 2008*, 787 F. Supp. 2d 1361, 1362 (J.P.M.L. 2011) (same); *In re: Listerine Total Care Mouthwash Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1354, 1355 (J.P.M.L. 2011) (same); *In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333 (J.P.M.L. 2009) (same); *In re: Brican Am. LLC Equip. Lease Litig.*, 731 F. Supp. 2d 1358, 1360 (J.P.M.L. 2010) (same); *In re Trasylol Products Liab. Litig.*, 545 F. Supp. 2d 1357, 1358 (J.P.M.L. 2008) (same).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court transfer and consolidate all actions in this matter before the United States District Court for the Southern District of Florida.

Dated this 25th day of October, 2023.

        Respectfully submitted,

        BUCKNER + MILES
        2020 Salzedo Street, Suite 302
        Coral Gables, Florida 33134
        Telephone: (305) 964-8003
        Facsimile: (786) 523-0485

        s/ David M. Buckner
        David M. Buckner, Esq. (FL Bar No. 60550)
        david@bucknermiles.com
        Seth Miles, Esq. (FL Bar No. 385530)
        seth@bucknermiles.com
        Brett E. von Borke, Esq. (FL Bar No. 44802)
        vonborke@bucknermiles.com

        Kevin B. Love
        Fla. Bar. No. 993948
        klove@cridenlove.com
        CRIDEN & LOVE, P.A.
        7301 S.W. 57th Court, Suite 515
        South Miami, FL 33143
        Telephone: (305) 357-9000
        Facsimile: (305) 357-9050

        *Counsel for Plaintiff Hector Valdes*
        *No. 1:23-cv-23939 (S.D. Fla.)*