**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL NO. 3089 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS LATEEF MURDOCK, *ET AL.* TO
MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR
<u>COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

Plaintiffs Lateef Murdock, Lorette Kenney, Gwen Lewi, Marcel Perez Pirio, Layne Barter,

Jose Cortez Hernandez, Robert Lundin, Jaedon Daniels, Mychael Willon, Amy Weinberg, Dimitri

Lamdon, Elie El Rai, Tatyana Dekhtyar, Olivia Rodesta, and Lauren Debeliso (collectively

"Plaintiffs") respectively submit this interested party response to the Motion for Transfer of

Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings by

Counsel for Movant ("Motion"). *See* Doc. 1. For the reasons set forth in the Motion, Plaintiffs

support coordination or consolidation under 28 U.S.C. § 1407 and respectively submit that the

United States District Court for the Eastern District of Louisiana (under the guidance of the

Honorable Eldon E. Fallon) is the most appropriate and convenient transferee district for this

nationwide litigation. In the alternative, Plaintiffs respectfully request that the action be

consolidated in the United States District Court for the Northern District of California.

## I.      INTRODUCTION

On September 11 and 12, 2023, the Food and Drug Administration's Drug Advisory Non-

Prescription Committee ("FDA Committee") met to discuss and review the efficacy of over-the-

counter ("OTC") oral phenylephrine as a nasal decongestant. Many OTC medicines, including

phenylephrine, are sold because they contain an ingredient that the FDA generally recognizes as

safe and effective ("GRASE") when used as recommended on the product labeling. Phenylephrine

is found in many of the most common OTC cold and flu medications, including Sudafed PE Sinus Congestion, Vicks DayQuil and NyQuil Severe Cold and Flu, Benadryl Allergy D Plus Sinus, Mucinex Sinus-Max, Robitussin Peak Cold Nighttime Nasal Relief, and Theraflu. The FDA Committee unanimously found that oral phenylephrine was no more effective than a placebo at relieving congestion, reasoning that "the current scientific data do not support that the recommended dosage of orally administered phenylephrine is effective as a nasal decongestant."[1] The FDA Committee's unanimous conclusion that phenylephrine is not effective as a nasal decongestant has sparked the filing of multiple putative class action lawsuits ("Actions.")[2]

Consolidation and transfer is appropriate where, as here, common questions of fact and law abound, transfer will further the convenience of the parties and witnesses, promote the just and efficient conduct of these actions and serve the goals of judicial economy, thereby advancing the overall interest of the Court. Questions of law and fact will undoubtedly overlap between all filed Actions because they arise from a common factual core—the inefficacy of oral phenylephrine— and they assert similar legal theories and factual allegations. As a result, discovery in all Actions is likely to overlap. Discovery conducted in each of these Actions will be substantially similar and will involve the same documents and witnesses vis-à-vis named defendants.

Absent consolidation, there will inevitably be duplication in discovery and other pretrial matters, potentially inconsistent pretrial rulings (including rulings on *Daubert* challenges and class certification motions), and duplication of work for the parties, counsel, and courts. Formal

---

[1] Press Release, Food and Drug Administration, FDA Clarifies Results of Recent Advisory Committee Meeting on Oral Phenylephrine (Sept. 14, 2023), https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-results-recent-advisory-committee-meeting-oral-phenylephrine

[2] The "Actions" include all pending lawsuits against companies that have marketed and sold oral phenylephrine as a nasal decongestant, including those listed and defined in the Schedule of Actions filed on September 18, 2023, and all subsequently filed tag-along cases.

consolidation of all Actions will alleviate many of these concerns. *See In re: Cooper Tire & Rubber Co. Tires Prods. Liab. Litig*., No. 1393, 2001 WL 253115, at *1 (J.P.M.L. Feb. 23, 2001) (centralization under Section 1407 granted where "[m]otion practice and relevant discovery will overlap substantially in each action."); *In re: Cuisinart Food Processor Antitrust Litig*., 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities"). Accordingly, Plaintiffs agree that the consolidation and transfer of the Actions is appropriate. However, Plaintiffs submit that the appropriate forum and transferee judge for this multi-district litigation is the U.S. District Court for the Eastern District of Louisiana before the Honorable Eldon E. Fallon. Judge Fallon currently presides over at least one of the related Actions[3]. In the alternative, Plaintiffs respectfully request that the Actions be consolidated in the United States District Court for the Northern District of California before the Honorable Jacqueline Scott Corley.

## II.   LEGAL STANDARD

Transfer and consolidation is proper if actions pending in different federal district courts involve similar questions of fact to the extent that consolidation pretrial proceedings would "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

## III.   ARGUMENT

### A. These Actions are Appropriate for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407(a)

28 U.S.C. § 1407 directs the Panel to transfer federal civil actions for pretrial coordination or consolidation where: (1) the cases involve "common questions of fact"; (2) the transfer is

---

[3] *Coppock v. Procter & Gamble and Target Corporation*, Case No. 2:23-cv-05353 (E.D. La.)

convenient for the parties and witnesses; and (3) the transfer "promote[s] the just and efficient conduct" of the cases. 28 U.S.C. § 1407(a).

Common questions of fact exist and may be presumed, where two or more complaints assert comparable allegations against similar defendants based on similar transactions and events. *See In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales, Practices, and Products Liab. Litig.*, 704 F. Supp. 2d 1379, 1381 (J.P.M.L. 2010). Here, each Action involves a common question of fact – the ineffectiveness of oral phenylephrine, which is falsely advertised to relieve nasal decongestion in violation of various statutes and common law. Additionally, the Actions allege similar legal theories and seek certification of similar classes and/or subclasses.

Further, where consolidation will necessarily avoid the risk of duplicative, redundant, and costly discovery proceedings, it is favored. *See In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.,* 330 F. Supp. 3d 1378, 1379 (J.P.M.L. 2016). Generally speaking, the purpose of Section 1407 is "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)); *see also* DAVID F. HERR, MULTIDISTRICT LITIGATION MANUAL § 5:16 (2010) (same).

Here, while there are multiple products at issue, they all involve common questions of fact, share the same Defendants, the same theory of liability, and the same factual allegations. All Actions involve the same core of lay and expert witnesses and document discovery. Moreover, none of the Actions have made substantial progress toward trial, making this the optimal time to order transfer. Transferring these cases under 28 U.S.C. § 1407 would enhance the convenience and efficiency of this litigation. Failing to transfer would almost certainly lead to inconsistent and

conflicting rulings — particularly with respect to discovery and other pretrial matters. Thus, the Panel should issue an order transferring all Actions to one judicial district for pretrial coordination or consolidation.

### B. This Panel Should Consolidate All Actions in the Eastern District of Louisiana Before Judge Eldon E. Fallon

In determining the most prudent transferee court, the Panel is to weigh numerous factors, most importantly caseload, accessibility/convenience, and the judge's qualifications. *See, e.g., In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.,* No. 3040, 2022 WL 3134131, at *2 (J.P.M.L. Aug. 3, 2022) (selecting district because "centrally located and easily accessible"); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.,* No. 3037, 2022 WL 3134144, at *2 (J.P.M.L. Aug. 5, 2022) (selecting district because judge "skilled jurist who is well-versed in the nuances of complex, multidistrict litigation"); *In re Veeco Instruments Inc. Sec. Litig.*, 387 F. Supp. 2d 1365, 1366 (J.P.M.L. 2005) (selecting district because "more favorable caseload statistics"). These factors weigh in favor of transfer to the Eastern District of Louisiana.

While Plaintiffs acknowledge that the Actions filed throughout the country have been assigned to capable jurists, the magnitude and complexity of this litigation support that it be centralized before a jurist with experience in complex multidistrict consumer protection and fraud litigation. Plaintiffs are confident that that jurist is the Honorable Eldon E. Fallon, who presides over the *Coppock* matter and sits in a district with the capacity to handle this litigation. Judge Fallon is a well-respected jurist who has successfully presided over some of the largest and most complex MDLs in this country's history. *See, e.g., In re: Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005) (MDL 1657). Judge Fallon currently presides over two (2) MDLs that are winding down following settlements in 2019. *See In re: Chinese-Manufactured Drywall Prods. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) (MDL 2047); and *In re: Xarelto*

*(Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 2d 1402 (J.P.M.L. 2014) (MDL 2592). Thus, the Eastern District of Louisiana, and Judge Fallon in particular, have the experience and capacity to efficiently manage the litigation. *See, e.g.*, *In re Erie COVID-19 Business Interruption Protection Insurance Litig.*, 509 F. Supp. 3d 1370 (J.P.M.L. 2020) (transferring to a district with the "capacity to efficiently manage . . . cases"); *In re Paxil Prods. Liab. Litig.,* 296 F. Supp. 2d 1374, 1375 (J.P.M.L. 2003) (transferring to a "judge with the time and experience to steer this complex litigation on a prudent course").

The Panel has also considered the parties' support in determining the best transferee court. *See, e.g., In re: Xarelto,* 65 F. Supp. 2d at 1405 (noting that the transferee district has the support of a number of plaintiffs); *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F. Supp. 2d 1355, 1356 (J.P.M.L. 2006) (relying on the fact that the transferee district was "the preferred transferee forum of several responding parties" in deciding to transfer the MDL to that district); *In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015) (noting that "[n]umerous plaintiffs support centralization in this district, both in the first instance and in the alternative."). Here, counsel in the *Coppock*[4] and *Baughman*[5] cases, pending in the Eastern District of Louisiana and Central District of California, respectively, have filed a joint response supporting the transfer of the Actions to the Eastern District of Louisiana before Judge Fallon.

Additionally, the technological infrastructure in the Eastern District of Louisiana has more than adequately accommodated litigants in complex civil cases for years. Without a doubt, the Eastern District of Louisiana will be able to easily accommodate out-of-town lawyers, parties, and witnesses should the need arise to appear in person. Moreover, the Eastern District of Louisiana is

---

[4] *Coppock v. Procter & Gamble and Target Corporation*, Case No. 2:23-cv-05353 (E.D. La.)
[5] *Baughman v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 2:23-cv-07737 (C.D. Cal.).

one of the most convenient and readily accessible locations for any litigation. It is centrally located and has reasonable accommodation for those traveling to the court.

The Eastern District of Louisiana is a more appropriate and convenient transferee forum than the District of New Jersey favored by the Movants for several reasons.

First, the District of New Jersey docket is more congested. As of June 30, 2023, the District of New Jersey had an average of 3,732 pending civil cases per judgeship[6]. The Eastern District of Louisiana had an average of 482 pending civil cases per judgeship.

Second, the District of New Jersey has twelve (12) active multi-district litigations, including two (2) that were transferred there by the Panel in just the past nine months. *See In re: Insulin Pricing Litig.*, MDL No. 3080, -- F. Supp. 3d --, 2023 WL 5065090 (J.P.M.L. Aug. 3, 2023) and *In re: Samsung Customer Data Security Breach Litig.*, MDL No. 3055, -- F. Supp. 3d --, 2023 WL 1811247 (J.P.M.L. Feb. 1, 2023). Comparatively, there are a total of five (5) active multi-district litigations in the Eastern District of Louisiana.

Third, the Eastern District of Louisiana is a more convenient forum for the parties and their counsel, who are located in different regions of the country. In support of the District of New Jersey, the Movants contend that because New Jersey is the headquarters of *some* of the named defendants, relevant documents and witnesses will likely be found there. *See* Doc. 1-1, at 11. But, as noted above, even *more* named defendants (brand and generic manufacturers) are located in districts *other* than New Jersey, so relevant documents and witnesses will be scattered in various locations. And, as a practical matter, the physical location of documents is no longer a significant

---

[6] *United States District Courts—National Judicial Caseload Profile*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2023.pdf (last visited Oct. 24, 2023) (stats as of June 2023).

factor in weighing transferee districts because, in an era of electronic documents, this factor assumes much less importance than it did formerly.

Fourth, the Movants contend that the District of New Jersey is "geographically convenient" for this litigation, noting that major airports and airlines service the region. *Id*. at 12. The same is true of the Eastern District of Louisiana, located in New Orleans. General questions of travel accessibility are not a factor here. Because the Eastern District of Louisiana is truly a "geographically central forum," it is more geographically convenient for parties and counsel in disparate regions. *See In re: Xarelto,* 65 F. Supp. 2d at 1405 (noting that the Eastern District of Louisiana "provides a geographically central forum for this nationwide litigation").

### C. In the Alternative, the Phenylephrine Actions Should be Consolidated in the Northern District of California Before Judge Jaqueline Scott Corley

As an alternative, the Panel should consolidate the Actions before the Honorable Jaqueline Scott Corley in the Northern District of California for the reasons discussed below.

### 1. Docket Congestion and Trial Delays Favor Transfer to the Northern District of California

Transfer to New Jersey will further burden severely congested dockets, an important factor the Panel considers when deciding the most prudent transferee forum. *See, e.g., Veeco*, 387 F. Supp. 2d at 1366 (deciding on a district partially because it had "more favorable caseload statistics than [the alternate district]."); *In re Xybernaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (same); *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 1335, 2000 U.S. Dist. LEXIS 5551, at *3 (J.P.M.L. Apr. 26, 2000) (same). Judges in the Northern District of California have a much lower caseload per judge, averaging **989** pending cases, compared to a whopping **3,732** pending cases per judge in the District of New Jersey.[7]

---

[7] *United States District Courts—National Judicial Caseload Profile*, UNITED STATES COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2023.pdf (last visited Oct. 24, 2023) (stats as of June 2023).

More importantly, however, it takes substantially less time on average to bring cases to trial in the Northern District of California than any other proposed transferee district. In fact, it takes *less than three years* to bring a case to trial in the Northern District of California, while New Jersey takes *more than four years*, and the Eastern District of New York takes more than *five years* to get to trial.[8]

Focusing on Judge Corley's caseload, according to a Lexis Nexis search,[9] she currently has 214 cases. Judge Corley's caseload is far less than the average district court judges in the District of New Jersey (averaging 3,732 cases) and the Eastern District of New York (averaging 869 cases).[10] Therefore, transfer to the Northern District of California, particularly Judge Corley, will efficiently distribute judicial resources and avoid overburdening other districts.

Finally, Judge Corley is assigned to one of the pending Actions – *Taylor v. Procter & Gamble Company*, Case No. 3:23-cv-04909 (N.D. Cal.). Therefore, Judge Corley is already familiar with the nature of the Actions.

### 2.   The Northern District of California Is Accessible to All Parties

The convenience of the parties is a factor that the JPML often considers in choosing an appropriate transferee forum. *See In re: Lead Contaminated Fruit Juice Products Mktg. & Sales Practices Litig.*, 777 F. Supp. 2d 1353, 1355 (J.P.M.L. 2009).

San Francisco, California, is a convenient forum accessible by flight from all across the United States. The Northern District of California is serviced by three international airports: San Francisco International Airport, Oakland International Airport, and Norman Y. Mineta San Jose International Airport. The Northern District of California is also an easily accessible metropolitan

---

[8] *Id.* (stats revealing time to trial of 34.7 months in N.D. Cal. versus 50.2 months in D. N.J., 51.4 months in D. Nev., and 44.4 months in S.D.N.Y.).
[9] These searches included all open or unknown cases from the date the judge was appointed to their current position to the present.
[10] *See* n.2, *supra*.

location with widely available lodging and public transportation. San Francisco has an abundance of affordable hotel accommodations, meeting spaces, and other amenities. These accommodations are within walking distance to the courthouse. Additionally, as the most populous state in the county with nearly forty (40) million residents, it is likely that a significant portion of the overall putative nationwide class members will be California residents. The convenience of the parties favors coordination and centralization in the Northern District of California should the Panel decide against consolidating the Actions in the Eastern District of Louisiana.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request an Order consolidating these Actions in the Eastern District of Louisiana before Judge Eldon E. Fallon or, in the alternative, in the Northern District of California before Judge Jaqueline Scott Corley.


Dated: October 25, 2023                    Respectfully submitted,

                                           **CLARKSON LAW FIRM, P.C.**

                                           _/s/ Glenn A. Danas_
                                            Glenn A. Danas

                                           Ryan J. Clarkson
                                           Glenn A. Danas
                                           Shireen M. Clarkson
                                           Zarrina Ozari
                                           22525 Pacific Coast Highway
                                           Malibu, CA 90265
                                           Tel: (213) 788-4050
                                           Fax: (213) 788-4070
                                           Email:  rclarkson@clarksonlawfirm.com
                                                   gdanas@clarksonlawfirm.com
                                                   sclarkson@clarksonlawfirm.com
                                                   zozari@clarksonlawfirm.com

*Counsel for Plaintiffs Lateef Murdock, Lorette Kenney, Gwen Lewi, Marcel Perez Pirio, Layne Barter, Jose Cortez Hernandez, Robert Lundin, Jaedon Daniels, Mychael Willon, Amy Weinberg, Dimitri Lamdon, Elie El Rai, Tatyana Dekhtyar, Olivia Rodesta, and Lauren Debeliso*