BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: ) | **MDL Docket No. 3089** |
| ) | |
| **IN RE: ORAL PHENYLEPHRINE** ) | |
| **MARKETING AND SALES** ) | |
| **PRACTICES LITIGATION** ) | |

### INTERESTED PARTY RESPONSE OF PLAINTIFFS REYES AND PAGE TO MOTION TO TRANSFER UNDER 28 U.S.C. §§ 1407

Pursuant to 28 U.S.C. § 1407 and JPML Rule 6.2(e), Rebecca Lynn Reyes, Plaintiff in the case styled *Reyes v. The Procter & Gamble Company et al.*, Case No. 23-cv-00623-DRC, filed in the U.S. District Court for the Southern District of Ohio, and Martha A. Page, Plaintiff in the case styled *Page v. RB Health (US) LLC et al.*, Case No. 23-cv-20962-MEF-CLW, in the U.S. District Court of New Jersey, submit this response to the pending Motion for Transfer of Actions to the District of New Jersey Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (ECF No. 1). Plaintiffs Reyes and Page support transfer and centralization of the related actions and subsequent tag-along actions for coordinated or consolidated pretrial proceedings, but respectfully submit that the Northern District of California would be the most appropriate and convenient transferee forum. In the alternative, Plaintiffs support coordination or consolidation in the Western District of Washington which does not currently serve as an MDL venue.

**A.    The Related Actions Should Be Transferred to and Consolidated Before One Court for Pretrial Proceedings**

The Panel may transfer civil actions to a single district court for coordinated pretrial proceedings upon a determination that (1) the cases involve one or more common questions of fact; and (2) the transfer will serve "the convenience of parties and witnesses and will promote

the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Panel has received well-reasoned briefing addressing these factors, and there does not appear to be any dispute that the Related Actions should be consolidated. *See, e.g,* Dkt No. 1. Therefore, in the interest of judicial economy, Plaintiffs will not repeat uncontested consolidation arguments, and will proceed to the issue of the proper transferee court.

**B.      The Northern District of California Is an Appropriate Forum for This Litigation**

In selecting the transferee court, the Panel considers several factors including, "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill and caseloads of available judges." *Manual for Complex Litigation, Fourth* § 20.131 (2004; *see also* David F. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* §§ 6:1-6:22 (2015). Two of the Panel's most heavily weighted considerations are (1) the location of the parties, witnesses, and documents and (2) the convenience of the parties. *See In re Potash Antitrust Litig., No. II*, 588 F. Supp. 2d 1364 (J.P.M.L. Dec. 2, 2008). Another consideration is where (or whether) a "center of gravity" of the litigation exists. *See, e.g., In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on Apr. 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. Aug. 10, 2010). However, where there is a "geographic dispersal of current and anticipated constituent actions" an important additional consideration in advancing the aims of Section 1407 is selecting a "an available transferee judge with prior, successful experience in the management of Section 1407 litigation." *See In re Educational Testing Service PLT 7-12 Test Scoring Litigation*, No. 1643, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004).

As of the time of this filing, there are over seventy actions pending in twenty-two jurisdictions and no district stands out as the geographic center of the litigation. Further, there are

not materially more cases in any jurisdiction, no case has progressed beyond the pleading stage, and no one district contains the majority of the common facts. Given this set of circumstances, the Northern District of California is an appropriate transferee forum. Moreover, the Northern District of California has both the capacity and experience to handle this MDL litigation.

The Northern District of California is currently handling 17 MDL cases.[1] Having concluded 106 MDLs as of 2021, the District has a proven ability to manage MDLs in an efficient and expeditious manner.[2] In addition, this Panel has previously recognized, that the Northern District of California "is an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require." *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005); *see also In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376-77 (J.P.M.L. 2002) (noting that "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services.").

The docket conditions of the Northern District of California are notably advantageous as well. The median time from filing to disposition of civil matters within the District is just over seven months, significantly shorter than many districts in the nation.[3] In the past 12 months,

---

[1] U.S. J.P.M.L.*, MDL Statistics Report – Distribution of Pending MDL Dockets by District* (Oct. 16, 2023), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-16-2023.pdf.

[2] U.S. J.P.M.L., *Multidistrict Litigation Terminated Through Sept. 30, 2021*, https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Report%20Cumulative%20Terminated%20MDLs.pdf.

[3] *U.S. District Courts—Median Time Intervals from Filing to Disposition of civil Cases Terminated, by District and Method of Disposition*, US Courts, (Mar. 31, 2023), https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2023/03/31.

ending in June 2023, the District has terminated 8,063 cases.[4] Lastly, the District currently has only one judicial vacancy for which a nominee is currently pending confirmation.

As of the time of this filing, there are five related actions pending in the Northern District of California including, *Taylor v. The Proctor & Gamble Company* (Case No. 3:23-cv-04909) (filed Sept. 25, 2023), over which Judge Jacqueline Scott Corley presides.[5] Judge Corley has significant experience with multidistrict litigation including having presided over *In re Qualcomm Antitrust Litigation*, No. 17-md-02773 (N.D. Cal.). Additionally, Judge Corley oversaw discovery disputes and other pretrial proceedings as a U.S. Magistrate Judge for several cases in the Norther District of California including, *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 18-md-02843, *In re JUUL Labs Inc., Marketing, Sales Practices, and Product Liability Litigation*, No. 19-md-02913, and *In re AutoZone, Inc. Wage and Hour Employment Practices Litigation*, No. 10-md-02159. For the above reasons, Plaintiffs urge the Panel to select the Northern District of California for centralization under the guidance of Judge Corley or one of the many other experienced jurists in the District.

C.   **Alternatively, Plaintiffs Support the Western District of Washington**

In the alternative to the Northern District of California, Plaintiffs support the Western District of Washington.[6] As outlined above, given the lack of any geographic center of the litigation, the Western District of Washington is likewise an appropriate and convenient forum.

---

[4] *U.S. District Courts—Judicial Caseload Profile*, US Courts (June 30, 2023), fcms_na_distprofile0630.2023.pdf (uscourts.gov).

[5] Other related actions pending in the Northern District of California are: *Hernandez v. Kenvue, Inc., et al.*, No. 23-cv-4817-JCS (filed Sept. 19, 2023); *Jones v. Reckitt Benckiser Pharmaceuticals, Inc., et al.*, No. 23-cv-4807-SK (filed Sept. 19, 2023); *Nelson v. Kenvue, Inc., et al.*, No. 23-cv-4875 (filed Sept. 22, 2023); *McPhee v. Johnson & Johnson Consumer, Inc., et al.*, No. 23-cv-5128-KAW (filed Oct. 6, 2023).

[6] Two related actions have been filed in the Western District of Washington: *Carrigan v. Johnson & Johnson, et al.*, No. 23-cv-1481 (filed Sept. 22, 2023) and *Thompson v. Reckitt Benckiser, LLC*, No. 23-cv-1606 (filed Oct. 19, 2023).

The docket conditions of the Western District of Washington are also advantageous: the median time from filing to disposition of civil matters within the District is under seven months[7] and the District has no judicial vacancies. Currently, there are no pending MDLs in the District.

As with *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002), "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *Id.* at 1375; *see also In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing a transferee forum in an "accessible metropolitan location"). Seattle, Washington is an easily accessible forum, as it is served by the Seattle-Tacoma International Airport, which is less than fifteen miles from the proposed transferee courthouse. Because plaintiffs, counsel, class members, experts, and witnesses are likely to be located across the country, this accessible transportation will serve to minimize cost and inconvenience to all parties.

Finally, the judges of Western District of Washington have the experience, skill, and caseload appropriate to oversee the instant action. Because the District has no MDL cases currently pending, it "is not currently overtaxed with other multidistrict dockets; and . . . possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require." *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 173 F. Supp. 2d. 1377, 1380 (J.P.M.L. 2001) (transferring fourteen pending actions to the Western District of Washington for coordinated or consolidated pretrial proceedings). Likewise, having concluded several MDLs, the District has a proven ability to

---

[7] *U.S. District Courts—Median Time Intervals from Filing to Disposition of civil Cases Terminated, by District and Method of Disposition*, US Courts, (Mar. 31, 2023), https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2023/03/31.

manage MDLs in an efficient and expeditious manner. *See, e.g.*, *In re: Park-West Galleries, Inc. Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1378 (J.P.M.L. 2009) (transferred for coordination in Western District of Washington); *In re Phenylpropanolamine*, 173 F. Supp. 2d. 1377 (same). The Western District of Washington thus has the judicial resources to oversee the instant action.

For these reasons, Plaintiffs alternatively support transfer to the Western District of Washington for centralization.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully requests, pursuant to 28 U.S.C. § 1407, that the Panel enter an Order transferring these related actions for coordination and pretrial proceedings, as well as any subsequently filed actions containing similar allegations, to the U.S. District Court for the Northern District of California, or, in the alternative, the U.S. District Court for the Western District of Washington.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 25, 2023 | **KELLER ROHRBACK L.L.P.** |
|  | */s/ Cari Campen Laufenberg* |
|  | Cari Campen Laufenberg |
|  | Derek Loeser |
|  | KELLER ROHRBACK L.L.P. |
|  | 1201 Third Avenue, Suite 3200 |
|  | Seattle, WA 98101 |
|  | Tel: (206) 623-1900 |
|  | Fax: (206) 623-3384 |
|  | claufenberg@kellerrohrback.com |
|  | dloeser@kellerrohrback.com |
|  | ***Counsel for Plaintiff Rebecca Lynn Reyes and Martha A. Page*** |