**<u>Exhibit 4</u>**

**<u>Docket Sheet and Complaint</u>**
***<u>Valdes v. McNeil Consumer Healthcare, et al.</u>***,
**<u>No 1:23-cv-23939 (S.D. Fla.)</u>**

JB

# U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:23−cv−23939−JEM

Valdes v. McNeil Consumer Healthcare et al
Assigned to: Judge Jose E. Martinez
Cause: 28:1332 Diversity

Date Filed: 10/13/2023
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Hector Valdes**
*on behalf of himself and all others
similarly situated*

represented by **Brett Elliott von Borke**
Buckner and Miles, P.A.
2020 Salzedo Street, Suite 302
33134
Coral Gables, FL 33133
305−964−8003
Email: vonborke@bucknermiles.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin Bruce Love**
Criden & Love PA
7301 SW 57th Court
Suite 515
South Miami, FL 33143
305−357−9000
Fax: 357−9050
Email: klove@cridenlove.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Seth Eric Miles**
Buckner + Miles
3350 Mary Street
Miami, FL 33133
305−964−8003
Fax: 786−523−0485
Email: seth@bucknermiles.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Buckner**
Buckner and Miles, P.A.
2020 Salzedo Street
Suite 302
Coral Gables, FL 33134
305−964−8003
Fax: 786−523−0485
Email: David@bucknermiles.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**McNeil Consumer Healthcare**

**Defendant**

**Procter & Gamble Company**

**Defendant**

GlaxoSmithKlein LLC

**Defendant**

**Kenvue, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/13/2023 | 1 | COMPLAINT against All Defendants. Filing fees $ 402.00 receipt number AFLSDC–16993894, filed by Hector Valdes. (Attachments: # 1 Civil Cover Sheet)(Buckner, David) (Entered: 10/13/2023) |
| 10/13/2023 | 2 | Clerks Notice of Judge Assignment to Judge Jose E. Martinez. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Jacqueline Becerra is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (nwn) (Entered: 10/16/2023) |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.

HECTOR VALDES, on behalf of himself
and all others similarly situated,

      Plaintiffs,

v.

MCNEIL CONSUMER HEALTHCARE,
PROCTER & GAMBLE COMPANY,
GLAXOSMITHKLINE LLC, and KENVUE, INC.,

      Defendants.

## CLASS ACTION COMPLAINT

Plaintiff Hector Valdes ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, allege as follows:

## INTRODUCTION

1.      Plaintiff seeks damages and equitable relief, individually and on behalf of all other Class members, for Defendants' sales of products to be taken orally containing phenylephrine, a compound that purportedly acts as a decongestant, but that Defendants have long known does not. Defendants sold these phenylephrine-containing "decongestants" anyway, generating billions of dollars in sales in the last year alone.

2.      Phenylephrine is one of two compounds found in nasal decongestants administered orally and offered for sale on store shelves. The other compound is pseudoephedrine. While pseudoephedrine is effective as a decongestant, purchasing pseudoephedrine is often inconvenient

for a consumer because pseudoephedrine has been used as an ingredient in illicit methamphetamine laboratories, products containing it are usually placed behind store counters or in locked cabinets, and purchasers are sometimes forced to leave personal information every time they purchase it or are otherwise limited in the number of pseudoephedrine-containing medications they can buy. Consumers are naturally attracted to a decongestant that could be purchased without inconvenience.

3.      By contrast, phenylephrine-containing products have no such restrictions and are not subject to an inconvenient buying process. Phenylephrine is found in many popular over-the-counter oral medications that purportedly act as decongestants—the "Decongestant Products"—including such popular products produced by Defendants as Tylenol Sinus + Headache (Kenvue[1]/McNeil); Theraflu (GlaxoSmithKline); Nyquil Severe Cold & Flu + Congestion (Procter & Gamble Company); and DayQuil Cold and Flu (Procter & Gamble Company).

4.      Last year alone, nearly $1.8 billion in sales of phenylephrine-containing "decongestants" were made in the United States across more than 250 products, accounting for approximately 80% of the market for over-the-counter decongestants.

5.      Unknown to the public, but known to the manufacturers in this lucrative market, phenylephrine taken orally is ineffective. It provides no relief for congestion, and is no better than a placebo, like a sugar pill, as a decongestant when taken orally.

6.      Since at least 2007, scientific studies using modern testing methodologies and rigors have, time and again, shown that phenylephrine taken orally is ineffective. However, rather

---

[1] As noted below, Kenvue is a company, founded in February 2022, that prior to a spin-off had served as the Consumer Healthcare division of Johnson & Johnson. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Kenvue.

than acknowledge the truth of these studies, manufacturers, like Defendants, have continued to market and sell their products with phenylephrine as an effective decongestant medicine.

7. As one pharmacist who led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

8. This fact did not stand in the way of Defendants continuing to sell phenylephrine products and charging a premium price for those ineffective products.

9. Had Plaintiff known that the phenylephrine-containing products were entirely ineffective as a nasal decongestant, he would not have purchased them, or would have paid substantially less for them.

10. Accordingly, Plaintiff, on behalf of himself and all other purchasers of Defendants' phenylephrine products, seek to hold Defendants accountable for their deceptions, breaches of warranties, and violations of consumer protection statutes. Defendants knew these products were ineffectual yet marketed and sold them anyway.

## **PARTIES**

11. Plaintiff Valdes is a resident and citizen of Miami Springs, Florida. In early 2023, Plaintiff purchased Tylenol Sinus + Headache, a product manufactured by Defendants Kenvue/McNeil and containing phenylephrine for purported decongestant relief.

12. Plaintiff has also in the past purchased other Decongestant Products in the past year, including NyQuil Severe Cold & Flu (Procter & Gamble), DayQuil Cold & Flu (Procter & Gamble), and Theraflu ExpressMax Severe Cold & Cough (GlaxoSmithKline). All of Plaintiff's relevant purchases were in Miami-Dade County, Florida.

13. Defendant Kenvue, Inc., is an American consumer health company, and formerly the consumer healthcare division of Johnson & Johnson. Kenvue is headquartered in Skillman, New Jersey. It wholly owns Defendant McNeil Consumer Healthcare. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Defendant Kenvue.

14. Defendant McNeil Consumer Healthcare is wholly owned by Defendant Kenvue, with headquarters in Fort Washington, Pennsylvania. McNeil manufactures and markets numerous Decongestant Products, including but not limited to Tylenol Sinus + Headache, a purported decongestant containing phenylephrine.

15. Defendant GlaxoSmithKline, LLC is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania. GlaxoSmithKline is a wholly-owned subsidiary of GlaxoSmithKline PLC, a public limited company registered in England and Wales. GlaxoSmithKline is a biopharmaceutical company that, among other Decongestant Products, manufactures and markets Theraflu.

16. Defendant Procter & Gamble Company is an American multinational consumer goods corporation headquartered in Cincinnati, Ohio. Among other Decongestant Products, Procter & Gamble manufactures and markets Nyquil and DayQuil.

## JURISDICTION & VENUE

17. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has supplemental jurisdiction over the state law

claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

18.  This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District, including Miami-Dade County. Defendants have each purposefully availed themselves of the benefits and protections of the Southern District of Florida by continuously and systematically conducting substantial business in Florida. Each of the Defendants markets and distributes its products in Florida.

19.  Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District – specifically in Miami-Dade County. Defendants maintain key business operations in this District, and market and sell their products, including Decongestant Products, in this District.

## FACTUAL ALLEGATIONS

### The Market for Decongestants

20.  The market for products that purportedly relieve nasal congestion is worth over $2 billion annually and includes over 250 products.

21.  The two leading ingredients used to provide relief from nasal congestion are phenylephrine and pseudoephedrine. These active ingredients are sold as the only active ingredient in some products, and as one of the active ingredients in multi-symptom products.

22.  Pseudoephedrine-based products are useful as decongestants. However, due to the misuse of pseudoephedrine as a base for the production of illegal methamphetamines, since 2006 federal law has made products containing pseudoephedrine, while available "over the counter" in the sense that they can, for the most part, be bought without a doctor's prescription, inconvenient to buy. The products are usually behind a pharmacy counter in locked containers, consumers are

limited in the amount that they can purchase, and purchasers are often required to provide personal identification and other information to track the amount of the substance being purchased.

23.     Accordingly, the best-selling products in the decongestant market have been those that use phenylephrine, which account for approximately 80% of the market for over-the-counter decongestants. In the last year alone, nearly $1.8 billion of phenylephrine-based purported decongestants were sold.

***The Truth About Phenylephrine***

24.     The problem—until recently unknown to the public, but well-known to Defendants—is that phenylephrine does not work when taken orally. While sold as a decongestant, it provides no better relief than a placebo.

25.     Scientists have long reported that phenylephrine is ineffective. As Leslie Hendeles, PharmD and Randy Hatton, PharmD succinctly stated in the Journal of Allergy and Clinical Immunology in May 2006, "Phenylephrine ... is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver ... Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[2]

26.     Scientific studies using modern testing methodologies (using good clinical practices) and rigors have, time and again, shown that phenylephrine is ineffective. On September 11 and September 12, 2023, the FDA held a non-prescription Drug Advisory Committee Meeting

---

[2] Leslie Handeles PharmD and Randy Hatton, Pharm D, Oral phenylephrine: *An ineffective replacement for pseudoephedrine?*, 118 J. Allergy and Clinical Immunology 1 (May 1, 2006), citing Bickerman HA. *Physiologic and pharmacologic studies on nasal airway resistance,* Presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association. Washington, DC. December 8, 1971, available at https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5.

to discuss the efficacy of oral phenylephrine as a nasal decongestant. The Advisory Committee explained that multiple studies have shown phenylephrine is no better than a placebo.

27.     For example, the committee described a study conducted by Johnson and Johnson from 2017 to 2018 to evaluate an oral phenylephrine product (Defendant Kenvue was until this year part of Johnson & Johnson). As explained by the panel, the trial "suggest[ed] no beneficial effect [of phenylephrine] when compared with placebo."[3]

28.     This was hardly surprising.  In 2015, Meltzer, et al., conducted a dose-response study relating to the treatment of nasal congestion. The study subjects were given various combinations of commercially available oral phenylephrine tablets and a placebo. The "commercially available" tablet was reported in an editorial published in the same journal as the study to have been Johnson and Johnson's (now Kenvue's) Sudafed PE.[4] The results of the study were unequivocal. As the authors put it, "we failed to identify a dose for [phenylephrine] ... that was significantly more effective than placebo in relieving nasal congestion."[5]

29.     Nevertheless, Johnson & Johnson—and now freshly spun-off Kenvue—through its subsidiary Defendant McNeil continued to manufacture and sell its phenylephrine products, including Sudafed PE and Tylenol Sinus + Headache.

30.     Defendants, as manufacturers of the phenylephrine-based products, were each aware of the studies suggesting that phenylephrine is ineffective as a nasal decongestant.

---

[3] *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 52, available at https://www.fda.gov/media/171915/download.
[4] Hatton and Hendeles, *Over the Counter Oral Phenylephrine: A Placebo for Nasal Congesion*, J. Allergy Clin. Immunol Prac. (Sept/Oct. 2015).
[5] Meltzer, et al., *Oral Phenylephrine HCI for Nasal Congestion in Seasonal Allergic Rhinitis: A randomized, Open-label, Placebo-controlled Study*, 3 J. Allergy Clin. Immunol Pract 6 (Sept/Oct 2015). Available at https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2815%2900252-4.

31.     As one pharmacist who led the examination of the efficacy of phenylephrine summarized it, "if you have a stuffy nose and you take this medicine, you will still have a stuffy nose."

## **TOLLING OF ALL APPLICABLE STATUTES OF LIMITATIONS**

### *Discovery Rule Tolling*

32.     Plaintiff and the other Class members had no way of knowing about Defendants' deception concerning their Decongestant Products. As consumers, they reasonably believed that the products offered for sale as decongestants were capable of acting as decongestants.

33.     Within the time period of any applicable statutes of limitations, Plaintiff and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Decongestant Products were ineffective.

34.     Plaintiff and the other Class members did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge about the ineffectiveness of their Decongestant Products; nor would a reasonable and diligent investigation have disclosed that Defendants concealed such information about the products' efficacy, which was only known by Plaintiff and the other Class members after the FDA decision in September 2023.

35.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule for the claims asserted herein.

### *Fraudulent Concealment Tolling*

36.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time-period relevant to this action.

37.     Rather than disclose the truth about their Decongestant Products, Defendants falsely represented these products as ones that would relieve congestion.

*Estoppel*

38.     Defendants were under a continuing duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of their Decongestant Products.

39.     Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of their Decongestant Products.

40.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

41.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

42.     Plaintiff seeks to represent the following Classes:

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue (the "Kenvue Nationwide Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of Florida (the "Kenvue Florida Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline (the "GSK Nationwide Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of Florida (the "GSK Florida Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble (the "Procter & Gamble Nationwide Class").*

*All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Florida (the "Procter & Gamble Florida Class").*

43.     Excluded from the Classes are the Defendants, and any of the Defendants' members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and the Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

44.     This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

45.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.     *Numerosity*: Rule 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes that there are hundreds of thousands of members of the Classes based on the size of the market for decongestant products and Defendants' share of that market, but the precise number of Class members is unknown to Plaintiff.

47.     *Commonality and Predominance*: Rule 23(a)(2) and (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

    a.   When Defendants knew that phenylephrine was ineffective as a decongestant;

    b.   Whether Defendants sold Decongestant Products as effective;

    c.   What measures Defendants took to conceal the true nature of their Decongestant Products;

    d.   Defendants' duty to disclose the true nature of their Decongestant Products;

10

    e.    Whether Plaintiff and the other Class members overpaid for Defendants'
Decongestant Products; and

    f.    Whether Plaintiff and the other Class members are entitled to equitable and
injunctive relief.

48.    *Typicality*: Rule 23(a)(3): Plaintiff's claims are typical of the other Class members'
claims because, among other things, all Class members were comparably injured through
Defendants' wrongful conduct as described above. Plaintiff suffered damages as a direct proximate
result of the same wrongful practices in which Defendants engaged.

49.    *Adequacy*: Rule 23(a)(4): Plaintiff is an adequate Class Representatives because his
interests do not conflict with the interests of the other members of the Classes he seeks to represent;
Plaintiff has retained counsel competent and experienced in complex class action litigation; and
Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and
adequately protect the Class's interests.

50.    *Declaratory Relief*: Federal Rule of Civil Procedure 23(b)(2): Defendants have
acted or refused to act on grounds generally applicable to Plaintiff and the other members of the
Classes, thereby making declaratory relief appropriate, with respect to each Class as a whole.

51.    *Superiority*: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to
any other available means for the fair and efficient adjudication of this controversy and no unusual
difficulties are likely to be encountered in managing this class action. The damages or other
financial detriment suffered by Plaintiff and the other Class members are relatively small compared
to the burden and expense that would be required to individually litigate their claims against
Defendants, so it would be impracticable for the members of the Classes to individually seek
redress for Defendants' wrongful conduct. Even if Class members could afford individual

litigation, such litigation creates a potential for inconsistent or contradictory judgments. It increases the delay and expense to all parties and the court system. By contrast, a class action is suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CLAIMS FOR RELIEF

### COUNT ONE
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (All Defendants)

52.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-51, as if fully set forth herein.

53.    Plaintiff brings this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

54.    At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose.[6]

55.    Defendants were at all times a "merchant" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

---

[6] *See* e.g., Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84- 2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75¬2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2¬314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, *et seq.*; R.I. Gen Laws § 6A-2-314; S.C. Code Ann. § 36¬2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2¬314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

56.     The Decongestant Products are and were "goods" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

57.     Defendants were obligated to provide Plaintiff and the other Class members Decongestant Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold, and conformed to the standards of the trade.

58.     Defendants impliedly warranted that the Decongestant Products were of merchantable quality and fit for that purpose.

59.     Defendants breached their implied warranties, because their Decongestant Products were not of merchantable quality or fit for their ordinary purpose.

60.     Defendants' breaches of implied warranties were a direct and proximate cause of Plaintiff's and the other Class members' damages.

## COUNT TWO
## FRAUD BY OMISSION OR CONCEALMENT
### (All Defendants)

61.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-51, as if fully set forth herein.

62.     Plaintiff brings this claim on behalf of the Nationwide Classes or, in the alternative, the State Classes (the "Class," for purposes of this Count).

63.     Defendants intentionally and knowingly falsely concealed, suppressed and/or omitted material facts including as to the standard, quality, or grade of the Decongestant Products. Due to their fraudulent conduct, Plaintiff and the other Class members have suffered actual damages.

64.     Defendants knew that phenylephrine is ineffective when consumed orally.

65.     Defendants were obligated to inform Plaintiff and the other members of the Class of the effectiveness of phenylephrine due to their exclusive and superior knowledge of the

13

Decongestant Products. Plaintiff and other Class members also expressly reposed trust and confidence in Defendants because the nature of their dealings as a healthcare entity and with Plaintiff and other members of the Class as their consumers.

66.     Plaintiff and the other Class members would not have purchased the Decongestant Products but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Decongestant Products and existence of the Decongestant Products, or would have paid less for the Decongestant Products.

67.     Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.

68.     Defendants acted with malice, oppression, and fraud.

69.     Plaintiff and the other Class members reasonably relied on Defendants' knowing, affirmative, and active false concealment and omissions. As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Decongestant Products, Plaintiff and the other Class members have suffered actual damages in an amount to be determined at trial.

### COUNT THREE
### UNJUST ENRICHMENT
### (All Defendants)

70.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-51, as if fully set forth herein.

71.     Plaintiff brings this claim on behalf of the nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

72.     There are no material differences in the elements of the unjust enrichment cause of action in the various states. In all states, the focus of an unjust enrichment claim is whether the

defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Florida law applies to those claims.

73. Defendants' efforts include, but are not limited to, providing point-of-sale materials and coupons to entice Plaintiff and the other Class members to purchase Decongestant Products.

74. It would be inequitable for Defendants to insulate themselves from liability on this unjust enrichment claim by asserting that retail sales by their retailers cuts off any relationship between the Plaintiff and the Classes and Defendants because Plaintiff and the other Class members cannot seek a remedy directly from Defendants' retailers based on Defendants' sale of the Decongestant Products.

75. Plaintiff and all other Class members conferred a benefit on Defendants by purchasing Decongestant Products.

76. Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of Decongestant Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that Decongestant Products were effective for providing congestion relief when in fact they were not, which caused injuries to Plaintiff and all Class members because they paid a price premium due to Defendants' deception.

77. Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and all Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT FOUR
### Violation of Fla Stat. §501.204(1)
### (All Defendants)

78.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-51, as if fully set forth herein.

79.     Plaintiff brings this claim on behalf of themselves and the Florida Classes (the "Class," for purposes of this Count) and against Defendants.

80.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

81.     In construing FDUTPA, "due consideration and great weight shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. §501.204(2).

82.     Plaintiff and the Florida Class members are "[c]onsumers" and "[i]nterested part[ies] or person[s]" as defined by FDUTPA. Fla. Stat. §501.203(6)-(7).

83.     Defendants' actions set forth herein occurred while engaging in "[t]rade or commerce" as defined by FDUTPA. Fla. Stat. §501.203(8).

84.     Defendants' conduct, as set forth herein, constitutes unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices under FDUTPA.

85.     As alleged in more detail herein, at the time Defendants advertised and sold the Decongestant Products, they knew that the Decongestant Products did not work.

86.     Plaintiff and the other Florida Class members were therefore induced to purchase the Decongestant Products under false pretenses.

87.     Plaintiff and the other Florida Class members had no way of knowing that the Decongestant Products did not work.

88.     Defendants knowingly and intentionally manufactured and sold the Decongestant Products with the intent to mislead reasonable consumers, including Plaintiff and the other Florida Class members.

89.     Defendants knew or should have known that their conduct violated FDUTPA.

90.     Defendants owed Plaintiff and the other Florida Class members a duty to disclose the true nature of their Decongestant Products, because Defendants:

>    (a)    possessed exclusive knowledge that they were manufacturing, selling, and distributing products throughout the United States that did not perform as advertised; and/or

>    (b)    intentionally concealed the foregoing from Plaintiff and the other Florida Class members.

91.     Defendants' unfair, unconscionable, or deceptive acts or practices were likely to, and did in fact, deceive ordinary, reasonable consumers, including the Florida Class members, about the quality and efficacy of the Decongestant Products, and the true value of the Decongestant Products.

92.     Defendants' violations present a continuing risk to the Florida Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

93.     Defendants had an ongoing duty to all their customers to refrain from unfair, unconscionable, and deceptive acts and practices under FDUTPA.

94.     All purchasers of the Decongestant Products suffered ascertainable loss and actual damages as a result of Defendants' deceptive, unconscionable, and unfair acts and practices made in the course of Defendants engaging in trade or commerce through loss of money or property at the time of purchase in form of the full or partial retail price paid for the Decongestant Products.

95.     As a direct and proximate result of Defendants' violations of FDUTPA, Plaintiff and the Florida Class members have suffered injury-in-fact and/or actual damages.

96.     As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and the Florida Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages, reasonable attorneys' fees and costs, an Order enjoining Defendants' deceptive and unfair conduct, and all other appropriate relief available under FDUTPA.

97.     Plaintiff, individually and on behalf of the Florida Classes, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully request that the Court enter judgement in their favor and against Defendants, as follows:

1.     Certification of the proposed Classes with Plaintiff as class representative;

2.     Appointment of Plaintiff's counsel as Class Counsel;

3.     Injunctive relief, including, but not limited to:

    a.   Requiring Defendants to make full disclosure of the efficacy of their Decongestant Products;

    b.   Disgorgement of their profits from the sales of their Decongestant Products;

c. Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

d. An order requiring Defendants to pay both pre- and post-judgment interest on all amounts awarded;

e. An award of costs and attorneys' fees; and

f. Such other further relief as may be appropriate.

Dated this 13th day of October, 2023.

Respectfully submitted,

BUCKNER + MILES
2020 Salzedo Street, Suite 302
Coral Gables, Florida 33134
Telephone: (305) 964-8003
Facsimile: (786) 523-0485

s/ David M. Buckner
David M. Buckner, Esq. (FL Bar No. 60550)
david@bucknermiles.com
Seth Miles, Esq. (FL Bar No. 385530)
seth@bucknermiles.com
Brett E. von Borke, Esq. (FL Bar No. 44802)
vonborke@bucknermiles.com

Kevin B. Love
Fla. Bar. No. 993948
klove@cridenlove.com
CRIDEN & LOVE, P.A.
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050

*Attorneys for Plaintiffs*