## Exhibit 5

## Docket Sheet and Complaint
## *DeRosa v. Walgreens Boots Alliance, Inc.,*
## No 1:23-cv-14558 (N.D. Ill.)

HARJANI

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:23–cv–14558

Derosa v. Walgreens Boots Alliance, Inc.
Assigned to: Honorable Robert W. Gettleman
Demand: $9,999,000
Cause: 15:2301 Magnuson–Moss Warranty Act

Date Filed: 10/05/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Anthony Derosa**
*, individually and on behalf of all others
similarly situated*

represented by  **Elizabeth A. Fegan**
Fegan Scott, LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
312–741–1019
Fax: Not a member
Email: beth@feganscott.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Walgreens Boots Alliance, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/05/2023 | 1 | COMPLAINT – *Class Action Complaint* filed by Anthony Derosa; Jury Demand. Filing fee $ 402, receipt number AILNDC–21192703.(Fegan, Elizabeth) (Entered: 10/05/2023) |
| 10/05/2023 | 2 | CIVIL Cover Sheet (Fegan, Elizabeth) (Entered: 10/05/2023) |
| 10/05/2023 | 3 | ATTORNEY Appearance for Plaintiff Anthony Derosa by Elizabeth A. Fegan (Fegan, Elizabeth) (Entered: 10/05/2023) |
| 10/05/2023 | | CASE ASSIGNED to the Honorable Robert W. Gettleman. Designated as Magistrate Judge the Honorable Sunil R. Harjani. Case assignment: Random assignment. (Civil Category 1). (mek,) (Entered: 10/05/2023) |
| 10/05/2023 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post–trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (mek,) (Entered: 10/05/2023) |
| 10/06/2023 | | SUMMONS Issued as to Defendant Walgreens Boots Alliance, Inc. (mek,) (Entered: 10/06/2023) |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY DEROSA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:23-cv-14558 |
| v. | <u>JURY TRIAL DEMANDED</u> |
| WALGREENS BOOTS ALLIANCE, INC., | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Anthony DeRosa ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Walgreens Boots Alliance, Inc. ("Walgreens"), by and through his attorneys, and alleges as follows based on information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

## INTRODUCTION

1. In 2022, nearly $1.8 billion in sales of products containing phenylephrine were made in the United States.[1]

2. Phenylephrine ("PE") is an ingredient found in over-the-counter oral medications to treat, *inter alia*, nasal congestion.

3. On September 12, 2023, the Food and Drug Administration ("FDA") found that orally administered PE medications are not effective for treating nasal congestion.[2]

4. Defendant sells its own Walgreens-branded orally administered PE products (the

---

[1] Cailley Lapara, *Common Nasal Decongestant Doesn't Actually Work, According to FDA Advisors*, TIME (Sept. 12, 2023, 4:00 PM), https://time.com/6313449/nasal-decongestant-phenylephrine-efficacy-fda/.

[2] https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-results-recent-advisory-committee-meeting-oral-phenylephrine.

"Products").

5.    Defendant advertised, designed, distributed, marketed, and sold the Products as effective decongestants when it knew or should have known that PE taken orally is ineffective and provides no relief for nasal congestion. For years, scientific studies using modern testing methods have consistently demonstrated that phenylephrine taken orally is ineffective.

6.    Defendant's claims about its Products were false, misleading, and contrary to scientific evidence.

7.    Had Plaintiff and Class Members known that the Products were ineffective, they would not have purchased them, or would have paid substantially less for them.

8.    Accordingly, Walgreens has engaged in unfair, unlawful and unconscionable practices, and Plaintiff and Class Members have been injured as a result.

9.    This case arises out of Plaintiff and Class Members' purchase of Defendant's Products and seeks damages, restitution, and equitable relief.

**JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over Defendant by virtue of it transacting and doing business in this district. Defendant has purposefully availed itself of the benefits and protections of this district by continuously and systematically conducting substantial business in

this District. Defendant markets and distributes its products in this district.

12.     This Court also has personal jurisdiction over the Defendant because its headquarters is in this District.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

**Plaintiff Anthony DeRosa**

14.     Plaintiff Anthony DeRosa is a resident and citizen of California who currently resides in Long Beach, California.

15.     Since 2015, Plaintiff has purchased Walgreens-branded oral decongestants (the Products) over twenty times.

16.     In 2023 alone, Plaintiff purchased the Products no less than four times.

17.     On or around September 2023, Plaintiff visited Walgreens' website for effective nasal decongestants. He found Walgreens-branded Mucus Relief PE Sinus Congestion Tablets, which promised nasal congestion relief, nasal and/or sinus drainage, backed by Defendant's "100% satisfaction guarantee[]."[3]

18.     Plaintiff visited a Long Beach area Walgreens and purchased Mucus Relief PE Sinus Congestion Tablets. As the below image indicates, Walgreens promises that its medication will "clear[] nasal and sinus congestion":

---

[3]     https://www.walgreens.com/store/c/walgreens-mucus-relief-pe-sinus-congestion-tablets/ID=prod5833250-product?criteria=Recently%20viewed%20items&product=511704&position=1 (last visited Oct. 2, 2023).



## Drug Facts

### Active ingredients (in each immediate-release tablet)

| | Purpose |
|---|---|
| Guaifenesin 400 mg. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Expectorant |
| Phenylephrine HCl 10 mg. . . . . . . . . . . . . . . . . . . . . . . . . . | Nasal decongestant |

### Uses
- helps loosen phlegm (mucus) and thin bronchial secretions to rid the bronchial passageways of bothersome mucus and make coughs more productive
- temporarily relieves nasal congestion due to the common cold, hay fever or other upper respiratory allergies
- promotes nasal and/or sinus drainage ■ temporarily relieves sinus congestion and pressure

### Warnings
**Do not use** if you are now taking a prescription monoamine oxidase inhibitor (MAOI) (certain drugs for depression, psychiatric or emotional conditions, or Parkinson's disease), or for 2 weeks after stopping the MAOI drug. If you do not know if your prescription drug contains an MAOI, ask a doctor or pharmacist before taking this product.

**Ask a doctor before use if you have** ■ heart disease ■ high blood pressure ■ thyroid disease ■ diabetes
- difficulty urinating due to an enlarged prostate gland
- persistent or chronic cough such as occurs with smoking, asthma, chronic bronchitis, or emphysema
- cough accompanied by too much phlegm (mucus)

**When using this product do not exceed recommended dosage.**

**Stop use and ask a doctor if** ■ you get nervous, dizzy or sleepless ■ cough comes back or worsens
- symptoms do not improve within 7 days, come back or occur with fever, rash or persistent headache. These could be signs of a serious condition.

**If pregnant or breast-feeding,** ask a health professional before use.
**Keep out of reach of children.** In case of overdose, get medical help or contact a Poison Control Center right away.

### Directions
- adults and children 12 years of age and older: take 1 tablet every 4 hours, with a full glass of water, while symptoms persist. Do not exceed 6 tablets in 24 hours.
- children under 12 years of age: do not use

### Other information
- store at 25°C (77°F); excursions permitted between 15°-30°C (59°-86°F)
- see end flap for expiration date and lot number

4

19.     Based on Defendant's advertisement that the medication treated nasal and sinus congestion, Plaintiff purchased the product to provide decongestant relief.

20.     Had Plaintiff known that the medication he purchased was not effective, he would not have purchased the medication, or would have paid substantially less for it.

21.     Plaintiff has suffered an ascertainable loss as a result of Defendant's misrepresentations associated with the Products.

**Defendant Walgreens Boots Alliance, Inc.**

22.     Defendant Walgreens Boots Alliance, Inc. ("Walgreens") is the largest retail health, pharmacy, and daily living store with approximately 13,000 locations.[4]

23.     Defendant is a Delaware corporation that is headquartered and has its principal place of business in Deerfield, Illinois, which is in this District. Additionally, Defendant engages in continuous and substantial business in this District.

24.     Defendant advertises, designs, distributes, manufactures, markets, and sells over-the-counter orally administered decongestants containing phenylephrine ("PE Drugs"). Of those, it sells its own branded oral decongestants (the "Products").

## FACTUAL ALLEGATIONS

### A.   PE Drugs are Wholly Ineffective

25.     More than 80% of over-the-counter oral decongestant medications contain PE. PE is the only oral nonprescription medication for nasal congestion available without purchase restrictions. Thus, consumers nationwide repeatedly rely on oral PE medications.[5]

26.     Phenylephrine was first used in the 1930s but was not rigorously tested in clinical

---

[4] About Us, Walgreens Boots Alliance, https://www.walgreensbootsalliance.com/about-us (last visited Oct. 2, 2023).
[5] Statement on the Sept. 11-12, 2023, Meeting of the FDA NDAC to Evaluate the Efficacy of Oral PE, Consumer Healthcare Products Association, (Sept. 7, 2023), https://www.chpa.org/news/2023/09/statement-sept-11-12-2023-meeting-fda-ndac-evaluate-efficacy-oral-pe.

trials that regulators require today for medications. Several research and scientific studies have found the ingredient to be ineffective at relieving congestion, and the FDA found that "oral phenylephrine formulations are safe but ineffective at standard or even higher doses."[6]

27. Further, "the [FDA] also found that research from decades ago didn't meet current clinical trial design standards and included inconsistent results."[7]

28. The results of scientific studies of phenylephrine have repeatedly demonstrated that it is ineffective as an oral nasal decongestant. In May 2006, researchers found in a study titled "Oral phenylephrine: An ineffective replacement for pseudoephedrine?"[8] that individuals who took medicines with phenylephrine fared no better than those who received a placebo.

29. In 2007, three professors at the University of Florida, Leslie Hendeles (PharmD, Professor, Department of Pharmacy and Pediatrics), Randy C. Hatton (PharmD FCCP BCPS, Co-Director, Drug Information and Pharmacy Resource Center, College of Pharmacy Clinical Professor), and Almut G. Winterstein (Ph.D., Assistant Professor, Department of Pharmacy Healthcare Administration) filed a Citizens Petition with the FDA concerning PE Drugs.[9] The result of the 2007 Citizens Petition was that the FDA voted that "new studies on response to higher doses were required."

30. In 2015, another Citizens Petition was filed by two professors at the University of Florida. The petition asked the FDA to remove PE medications both individually and in

---

[6] Jared S. Hopkins, *Decongestant in Cold Medicines Found Ineffective*, WALL ST. JOURNAL (Sept. 12, 2023, 3:31 PM), https://www.wsj.com/health/healthcare/decongestant-cold-medicine-ineffective-f68df3f7.
[7] *Id.*
[8] Leslie Handeles, PharmD and Randy Hatton, PharmD, *Oral phenylephrine: An ineffective replacement for pseudoephedrine?*, 118 J. Allergy and Clinical Immunology 1 (May 1, 2006), citing Bickerman HA, Physiologic and pharmacologic studies on nasal airway resistance presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association, Washington, DC, December 8, 1971, available at https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext#bib5.
[9] https://www.regulations.gov/docket/FDA-2007-P-0108/document.

combination drug products from the over-the-counter market.[10]

31.     On September 12, 2023, the FDA Advisory Panel on the Division of Nonprescription Drugs recommended that PE Drugs not be sold due to lack of efficacy.[11]

**B.  Defendant Markets and Sells Ineffective PE Drugs**

32.     Defendant Walgreens is the largest retail and pharmacy store nationwide.

33.     Defendant advertises, designs, distributes, manufactures, markets, and sells over fifty of its Walgreens-branded over-the-counter PE medications, collectively known as the Products.[12] Among the Products are oral decongestant Mucus Relief PE Sinus Congestion Tablets.

34.     Defendant knew or should have known of the plethora of research and scientific studies suggesting that phenylephrine is not effective as an oral decongestant.

35.     Defendant had a duty to disclose to Plaintiff and the Class the true character, nature, and quality of its Products.

36.     Defendant knowingly, affirmatively, and actively concealed the true nature, character, and quality of its Products.

## CLASS ALLEGATIONS

37.     Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All persons in the United States who purchased a Walgreens branded orally administered product containing phenylephrine that stated the ingredient phenylephrine was a nasal decongestant.

---

[10] https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf.
[11] https://www.fda.gov/media/171915/download.
[12] *See* Walgreens- Cough, Cold & Flu, Walgreens, https://www.walgreens.com/store/c/productlist/walgreens-cough,-cold-&-flu/N=360549-118 (last visited Oct. 2, 2023).

38.     In the alternative, Plaintiff brings this class action on behalf of the following State Subclass:

**The California Class**

All persons in the state of California who purchased a Walgreens branded orally administered product containing phenylephrine that stated the ingredient phenylephrine was a nasal decongestant.

39.     Excluded from the Class(es) are: (a) Defendant; (b) Defendant's affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

40.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information is in the sole possession of Walgreens and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Defendant's records.

41.     **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.     When Defendant became aware that phenylephrine was ineffective as a decongestant;

b.     Whether Defendant owed a duty to Plaintiff and the Class to disclose the true nature of its Products;

c.     Whether Defendant sold the Products as effective decongestants;

d.     Whether Defendant committed common law fraud;

e.     Whether Defendant was unjustly enriched by its conduct; and

8

       f.    Whether Defendant violated various California consumer protection statutes.

42.    **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out of Walgreens' statements, and unlawful, unfair, and deceptive acts and practices.

43.    **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

44.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Walgreens' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

45.    Walgreens has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with

9

respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
#### (on behalf of the Class)

46.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

47.     Plaintiff brings this cause of action on behalf of himself and the Class.

48.     Defendant expressly warranted through its advertising, labeling, and statements that the phenylephrine in its Products would act as a decongestant.

49.     Defendant's representations and written warranty are an express warranty within the meaning of the Uniform Commercial Code. U.C.C. § 2-313.

50.     All fifty States, except Louisiana, including the District of Columbia and Puerto Rico, have codified and adopted U.C.C. § 2-313.[13]

51.     The Products fail to conform to Defendant's representations that formed part of the basis of the bargain because they are ineffective as nasal decongestants.

---

[13] Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code § 2-313; D.C. Code § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Iowa Code § 554.2313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55- 2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36- 2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2- 313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2- 313.

52. Defendant breached this express warranty when it advertised, distributed, marketed, and sold its Products as decongestants because phenylephrine is not effective as a decongestant.

53. Plaintiff and Class Members purchased the Products from Defendant.

54. Plaintiff and the Class Members did not know that the phenylephrine in Defendant's Products is ineffective. Had Plaintiff or the Class Members known, they would not have purchased the Products, or would have paid substantially less for them.

55. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class have been injured and sustained damages.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (on behalf of the Class)

56. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

57. Plaintiff brings this cause of action on behalf of himself and the Class.

58. All fifty States, except Louisiana, including the District of Columbia and Puerto Rico, have codified and adopted U.C.C. § 2-314.[14]

---

[14] Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code § 2-314; D.C. Code § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Iowa Code § 554.2314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Neb. U.C.C. § 2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

59.     Defendant is and was at all relevant times a "merchant" within the meaning of Article 2 of the U.C.C.

60.     The Products are and were "goods" within the meaning of Article 2 of the U.C.C.

61.     Defendant was obligated to provide Plaintiff and Class Members Products that were of merchantable quality, reasonably fit for the purpose for which they were sold, and conformed to the standards of the trade.

62.     Defendant impliedly warranted that its Products were fit for their ordinary purpose, effective in treating nasal and/or sinus congestion.

63.     Defendant's Products are unmerchantable, not fit for their ordinary purpose, and fail to conform to standards generally applicable for such drugs because they are ineffective in treating nasal congestion.

64.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have been injured and sustained damages.

<u>**COUNT III**</u>
**FRAUD**
**(on behalf of the Class)**

65.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

66.     Plaintiff brings this cause of action on behalf of himself and the Class.

67.     Defendant made affirmative misrepresentations concerning a presently existing or past fact. For example, Defendant made affirmative statements concerning the efficacy of the Products to consumers, which consumers would not have known were false and misleading until as early as September 12, 2023.

68.     As a result, Plaintiff and the Class were fraudulently induced to purchase the Products even though they were wholly ineffective.

69.     These affirmative misrepresentations were made by Defendant with knowledge of their falsity, and with the intent that Plaintiff and the Class rely upon them.

70.     These affirmative misrepresentations were material.

71.     But for these misrepresentations, Plaintiff and the Class would not have purchased the Products or would have paid substantially less for them.

72.     Plaintiff and the Class reasonably relied on these affirmative misrepresentations and suffered damages as a result.

## COUNT IV
### NEGLIGENCE
### (on behalf of the Class)

73.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

74.     Plaintiff brings this cause of action on behalf of himself and the Class.

75.     Defendant had a duty to Plaintiff and the Class to exercise reasonable care in the advertising, branding, manufacturing, marketing, and selling of the Products.

76.     Defendant had a duty to ensure that the Products were effective for the purposes identified and not misbranded.

77.     Defendant had a duty to Plaintiff and the Class because they were the foreseeable users of the Products and victims of Defendant's fraudulent and/or misleading conduct.

78.     Defendant knew or should have known that the Products were ineffective for treating the purposes identified and were misbranded. For example, Defendant failed to notice or

blatantly ignored decades of research and scientific studies suggesting that PE medications were ineffective.

79.     But for Defendant's conduct, Plaintiff and the Class would not have purchased the Products or would have paid substantially less for them.

80.     As a direct and proximate result of Defendant's misconduct, Plaintiff and the Class have suffered damages.

## COUNT V
## NEGLIGENT MISREPRESENTATION
### (on behalf of the Class)

81.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

82.     Plaintiff brings this cause of action on behalf of himself and the Class.

83.     Defendant had or undertook a duty to represent the efficacy of the Products truthfully and accurately.

84.     Defendant had a duty to exercise reasonable care in making representations and/or statements concerning the Products.

85.     Defendant breached its duty and failed to exercise reasonable care when it misrepresented the true nature of the Products. Specifically, Defendant's statements concerning the efficacy of the Products were false when Defendant made them.

86.     Defendant knew or should have known that its statements alleged herein were materially false and/or misleading.

87.     Defendant's misrepresentations were material.

88.     Defendant knew or should have known that its misrepresentations would induce Plaintiff and the Class to purchase the Products.

89.     But for Defendant's misrepresentations, Plaintiff and the Class would not have purchased the Products or would have paid substantially less for them.

90.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered damages.

**COUNT VI**
**FRAUDULENT CONCEALMENT**
**(on behalf of the Class)**

91.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

92.     Plaintiff brings this cause of action on behalf of himself and the Class.

93.     Defendant made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to consumers the true nature of the Products – that the Products were ineffective as decongestants – which was not readily discoverable until as early as September 12, 2023. As a result, Plaintiff and the Class members were fraudulently induced to purchase Defendant's Products even though they were ineffective for the purposes identified.

94.     These omissions were made by Defendant with knowledge of their falsity and with the intent that Plaintiff and the Class rely upon them.

95.     Plaintiff and the Class reasonably relied upon these omissions and suffered damages as a result.

**COUNT VII**
**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(on Behalf of the California Class)**

96.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

15

97. Plaintiff brings this cause of action on behalf of himself and the California Class.

98. Defendant is a person as defined in California Civil Code § 1761(c).

99. Plaintiff and the California Class Members are consumers as defined in California Civil Code § 1761(d).

100. Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and the California Class that the Products were effective in treating the indications identified when they were not. These acts and practices violate, at a minimum, the following sections of the CLRA:

    a. Misrepresenting the source, sponsorship, approval or certification of goods or services (§ 1770(a)(2));

    b. Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have (§ 1770(a)(5));

    c. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another (§ 1770(a)(7)); and

    d. Advertising goods and services with the intent not to sell them as advertised (§ 1770(a)(9)).

101. Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

102. Defendant knew that the Products were ineffective for the purposes identified, were misbranded, and were not suitable for their intended use.

103. Defendant had a duty to Plaintiff and the California Class to disclose the true nature of the Products because:

      a.    Defendant was in a superior position to know the true state of facts concerning the efficacy of its Products;

      b.    Plaintiff and the California Class could not reasonably have been expected to learn or discover that the Products were ineffective until as early as September 12, 2023; and

      c.    Defendant actively concealed the true nature of the Products by asserting to Plaintiff and the California Class that its Products were effective.

104.    In failing to disclose the true nature of the Products, Defendant knowingly and intentionally concealed material facts and breached its duty to disclose.

105.    These facts are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Products. Had Plaintiff and the California Class known that the Products were ineffective, they would not have purchased them or would have paid substantially less for them.

106.    On October 3, 2023, Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) and seeks only injunctive relief at this time. After the 30-day notice period expires, Plaintiff will amend this Complaint to seek monetary damages under the CLRA.

107.    Plaintiff and the California Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

108.    Therefore, Plaintiff and the California Class seek all relief available under the CLRA.

<u>**COUNT VIII**</u>
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, et seq.)**
**(on Behalf of the California Class)**

109.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

110.     Plaintiff brings this cause of action on behalf of himself and the California Class.

111.     California Business and Professions Code § 17500 states:

> It is unlawful for any . . . corporation . . . with intent directly or
> indirectly to dispose of real or personal property . . . to induce the
> public to enter into any obligation relating thereto, to make or
> disseminate or cause to be made or disseminated . . . from this state
> before the public in any state, in any newspaper or other publication,
> or any advertising device, . . . or in any other manner or means
> whatever, including over the Internet, any statement . . . which is
> untrue or misleading, and which is known, or which by the exercise
> of reasonable care should be known, to be untrue or misleading.

112.     Defendant caused to be made or disseminated through California and the United

States, through advertising, branding, marketing and other publications, statements that were false

and/or misleading, and which were known, or which by the exercise of reasonable care should

have been known to Defendant, to be false and/or misleading to consumers, including Plaintiff and

the California Class.

113.     Defendant violated § 17500 because the statements, misrepresentations, and

omissions regarding the efficacy of its Products were material and likely to deceive a reasonable

consumer.

114.     Plaintiff and the California Class have suffered an injury in fact, including the loss

of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In

purchasing the Products, Plaintiff and the other California Class members relied on Defendant's

misrepresentations and/or omissions with respect to efficacy of the Products, specifically that they

are effective in treating congestion. Defendant's representations were false and/or misleading

because several research and scientific studies as well as the FDA found that PE medications,

including the Products made and sold by Defendant, were wholly ineffective as decongestants.

Had Plaintiff and the California Class known this, they would not have purchased the Products

and/or paid as much for them. Accordingly, Plaintiff and the California Class overpaid for the Products and did not receive the benefit of their bargain.

115.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the course of Defendant's businesses. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

116.     Plaintiff, individually and on behalf of the California Class, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the California Class any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT IX**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200)**
**(on Behalf of the California Class)**

117.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

118.     Plaintiff brings this cause of action on behalf of himself and the California Class.

119.     The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

120.     Defendant engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally misrepresenting to Plaintiff and the California Class that the Products are effective in treating congestion. Defendant should have disclosed the true nature of the Products

because it was in a superior position to know the true facts related to the Products, and Plaintiff and the California Class could not reasonably be expected to learn or discover the true facts related to the Products.

121.    These acts and practices have deceived Plaintiff, the California Class, and are likely to deceive the public. In misrepresenting and/or misleading the efficacy of the Products to Plaintiff and the California Class, Defendant breached its duties to disclose true and accurate facts, violated the UCL, and caused injuries to Plaintiff and the Class. These misrepresentations were material.

122.    The injuries suffered by Plaintiff and the California Class are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class should have reasonably avoided.

123.    Defendant's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

124.    Plaintiff, individually and on behalf of the California Class, seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**COUNT X**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(on Behalf of the Nationwide Class Or, Alternatively, the California Class)**

125.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

126.    Plaintiff brings this cause of action on behalf of himself and the California Class.

127.    Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

128.    Defendant is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

129.    The Products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

130.    The warranties described above are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

131.    Defendant breached the express warranties by:

      a.    Providing warranties with the purchase of the Products that they were effective decongestants;

      b.    Advertising, distributing, marketing, and selling its Products as effective decongestants; and

      c.    Refusing and/or failing to honor the express warranties by providing refunds to Plaintiff and the Class for the purchase of the Products.

132.    Plaintiff and the Class relied on the existence and length of the express warranties in deciding whether to purchase the Products.

133.    Defendant breaches its implied warranties by selling the Products that are not fit for their ordinary purpose of treating nasal and/or sinus congestion because, *inter alia*, the phenylephrine contained in the Products has been deemed ineffective in treating congestion.

134.    Defendant's breach of the express and implied warranties has deprived Plaintiff and the Class of the benefit of their bargain.

135.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

136.    Defendant has been afforded a reasonable opportunity to cure its breach of the warranties and/or Plaintiff and the Class members were not required to do so because affording

Defendant a reasonable opportunity to cure its breach of warranties would have been futile. Defendant was also on notice of the ineffectiveness of its Products from numerous research and scientific studies suggesting that PE medications, including the Products, are ineffective as decongestants, as well as a unanimous FDA advisory panel vote finding that PE medications are wholly ineffective.

137.    As a direct and proximate cause of Defendant's breach of the warranties, Plaintiff and the Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

### COUNT XI
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF EXPRESS WARRANTY
### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))
### (on Behalf of the California Class)

138.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

139.    Plaintiff brings this cause of action on behalf of himself and the California Class.

140.    Plaintiff and the California Class members who purchased the Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

141.    The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

142.    Defendant is a "manufacturer" of the Products within the meaning of Cal. Civ. Code § 1791(j).

143. Defendant made express warranties to Plaintiff and the Class within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above. Specifically, Defendant expressly warranted through its advertising, labeling, and statements that the phenylephrine in its Products would act as a decongestant when in fact phenylephrine is ineffective for such purposes.

144. Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff and the California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of the Products, or the overpayment or diminution in value of the Products.

145. Pursuant to Cal. Civ. Code § 1794, Plaintiff and the California Class members are entitled to costs and attorneys' fees.

**COUNT XII**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -**
**BREACH OF IMPLIED WARRANTY**
**(Cal. Civ. Code §§ 1791.2 & 1792)**
**(On Behalf of the California Class)**

146. Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

147. Plaintiff brings this cause of action on behalf of himself and the California Class.

148. Plaintiff and the other California Class members who purchased the Products in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

149. The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

150. Defendant is a "manufacturer" of the Products within the meaning of Cal. Civ. Code § 1791(j).

151. Defendant impliedly warranted to Plaintiff and the California Class that the Products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 and 1792.

152.    However, the Products do not have the quality that a reasonable consumer would expect.

153.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; … and (4) conform to the promises or affirmations of fact made on the container or label."

154.    The Products would not pass without objection in the trade because they are ineffective as decongestants.

155.    The Products are not fit for the ordinary purpose for which they are used because of their lack of efficacy.

156.    The Products do not conform to the advertisements, promises, or affirmations of fact made by Defendant that the Products provide congestion relief.

157.    Defendant breached the implied warranty of merchantability by advertising, branding, designing, distributing, manufacturing, and selling the Products despite their lack of efficacy. Defendant's conduct caused Plaintiff and the California Class to not receive the benefit of their bargain and renders the Products worthless.

158.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the California Class received goods whose ineffective condition substantially impairs their value to Plaintiff and the Class. Plaintiff and the California Class have been damaged as a result of the diminished value of the Products.

159.    Plaintiff and the California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of the Products, or the overpayment or diminution in value of the Products.

160.    Pursuant to Cal. Civ. Code § 1794, Plaintiff and the California Class are entitled to costs and attorneys' fees.

### COUNT XIII
### UNJUST ENRICHMENT
### (on behalf of the Class)

161.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

162.    Plaintiff brings this cause of action on behalf of himself and the Class.

163.    This claim is brought in the alternative to Plaintiff's contract-based claims.

164.    Plaintiff and the Class conferred a direct benefit on Defendant by purchasing its Products.

165.    Defendant knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

166.    Defendant had knowledge that these benefits were conferred upon them.

167.    Defendant has been and continues to be unjustly enriched at the expense of Plaintiff and the Class, and its retention of these benefits under the circumstances would be inequitable.

168.    Therefore, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

A.     Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.     Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C.     Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.     Award pre-judgment and post-judgment interest on such monetary relief;

E.     Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Walgreens to issue refunds of the purchase price of the Products to any member of the class who requests a refund;

F.     Award reasonable attorney's fees and costs; and

G.     Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Dated: October 5, 2023             Respectfully submitted,

By: */s/ Elizabeth A. Fegan*
      Elizabeth A. Fegan
      FEGAN SCOTT LLC
      150 S. Wacker Dr., 24th Floor
      Chicago, IL 60606
      Telephone: (312) 741-1019
      Facsimile: (312) 264-0100
      beth@feganscott.com

      Joseph G. Sauder
      Joseph B. Kenney
      **SAUDER SCHELKOPF LLC**
      1109 Lancaster Avenue
      Berwyn, PA 19312
      Tel: 888.711.9975
      Facsimile: 610.421.1326
      jgs@sstriallawyers.com
      jbk@sstriallawyers.com
      *Attorneys for Plaintiff*