## Exhibit 12

## Docket Sheet and Complaint
## *Jones v. Bayer Corporation, et al.,*
## No 2:23-cv-21411 (D.N.J.)

Query    Reports    Utilities    Help    Log Out

## U.S. District Court
### District of New Jersey [LIVE] (Newark)
### CIVIL DOCKET FOR CASE #: 2:23-cv-21411-ES-JBC

JONES v. BAYER CORPORATION et al
Assigned to: Judge Esther Salas
Referred to: Magistrate Judge James B. Clark
Cause: 28:1332 Diversity-Fraud

Date Filed: 10/24/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**JANET JONES**

represented by **ALEX M. KASHURBA**
CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
361 W. LANCASTER AVENUE
HAVERFORD, PA 19041
610-642-8500
Email: amk@chimicles.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BAYER CORPORATION**

**Defendant**

**HALEON US CAPITAL LLC**

**Defendant**

**JOHNSON & JOHNSON CONSUMER INC.**

**Defendant**

**KENVUE INC.**

**Defendant**

**THE PROCTER & GAMBLE COMPANY**

**Defendant**

**RECKITT BENCKISER PHARMACEUTICALS,
INC.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/24/2023 | 1 | COMPLAINT against BAYER CORPORATION, HALEON US CAPITAL LLC, JOHNSON & JOHNSON CONSUMER INC., KENVUE INC., RECKITT BENCKISER PHARMACEUTICALS, INC., THE PROCTER & GAMBLE COMPANY ( Filing and Admin fee $ 402 receipt number BNJDC-14817039) with JURY DEMAND, filed by JANET JONES. (Attachments: # 1 Civil Cover Sheet)(KASHURBA, ALEX) (Entered: 10/24/2023) |
| 10/25/2023 | | CLERK'S QUALITY CONTROL MESSAGE - Please be advised, pursuant to Fed. R. Civ. P. 7.1(a)(2), unless the Court orders otherwise, in any action filed or removed to this Court, in which jurisdiction is based upon diversity under 28 U.S.C. 1332(a), a party or intervenor must file a disclosure statement naming and identifying the citizenship of every individual or entity whose citizenship is attributed to that party or intervenor. A party, intervenor or proposed intervenor must file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the Court. Click here to complete the Diversity Disclosure Statement, once complete, file it using the event Diversity Disclosure Statement. (sm) (Entered: 10/25/2023) |
| 10/25/2023 | | Case assigned to Judge Esther Salas and Magistrate Judge James B. Clark. (jr) (Entered: 10/25/2023) |

| Transaction Receipt | | | |
|---|---|---|---|
| 10/25/2023 18:47:48 | | | |
| **PACER Login:** | cb091600 | **Client Code:** | 024262.00072.11718 |
| **Description:** | Docket Report | **Search Criteria:** | 2:23-cv-21411-ES-JBC Start date: 1/1/1980 End date: 10/25/2023 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET JONES, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>BAYER CORPORATION, HALEON US CAPITAL LLC, JOHNSON & JOHNSON CONSUMER INC., KENVUE INC., THE PROCTER & GAMBLE COMPANY, and RECKITT BENCKISER PHARMACEUTICALS, INC.,<br><br>        Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Janet Jones ("Plaintiff"), individually and on behalf of all others similarly situated (proposed "Class Members"), brings this action against Defendants Bayer Corporation, Haleon US Capital LLC, Johnson & Johnson Consumer, Inc., Kenvue Inc., The Procter & Gamble Company, and Reckitt Benckiser Pharmaceuticals, Inc., ("Defendants") and alleges as follows based on her personal knowledge as to her own acts and on investigation conducted by counsel as to all other allegations:

### INTRODUCTION

1. On September 12, 2023, an FDA advisory panel unanimously voted 16-0 finding that orally administered phenylephrine ("PE") is not effective for treating nasal congestion.[1]

2. Defendants designed, manufactured, advertised, marketed, distributed, and sold orally administered PE-containing drugs which were advertised, marketed, warranted, and

---

[1] https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-results-recent-advisory-committee-meeting-oral-phenylephrine

indicated as treating nasal congestion ("PE Drugs") despite PE being totally ineffective and worthless in treating nasal congestion when taken orally.

3.      PE indicated as an orally administered nasal decongestant is worthless, non-merchantable, not fit for its ordinary purpose, and not effective for treating the indications identified.

4.      As a result, Defendants' PE Drugs were misbranded and worthless or worth substantially less than what Plaintiff and Class Members paid for them.

5.      Defendants' claims were false, misleading, and contrary to scientific evidence, leading Plaintiff and Class Members to purchase PE Drugs which were ineffective and worthless for treating nasal congestion.

6.      This case arises out of Plaintiff's and Class Members' purchase of Defendants' PE Drugs. Plaintiff and Class Members have been injured as a result and are entitled to damages, restitution, and equitable relief.

## **PARTIES**

### I.      **PLAINTIFF**

7.      Plaintiff Janet Jones is a resident of Phoenixville, Pennsylvania. She purchased PE Drugs frequently seeking relief from congestion caused by severe seasonal allergies. Within the last year, Plaintiff Jones purchased the following PE Drugs:

- Mucinex Fast-Max and Mucinex Sinus-Max (designed, manufactured, advertised, marketed, distributed, and sold by Defendant Reckitt Benckiser Pharmaceuticals, Inc.)

- Vicks DayQuil Cough Congestion and Vicks NyQuil Severe Cold & Flu, (designed, manufactured, advertised, marketed, distributed, and sold by Defendant The Procter & Gamble Company).

- Theraflu (designed, manufactured, advertised, marketed, distributed, and sold by Defendant Haleon US Capital LLC)

- Alka-Seltzer Plus Cold & Flu (designed, manufactured, advertised, marketed, distributed, and sold by Defendant Bayer Corporation)

- Tylenol Cold & Flu Severe (designed, manufactured, advertised, marketed, distributed, and sold by Defendants Johnson & Johnson Consumer Inc. and Kenvue Inc.).

8.    All of the above PE Drugs were purchased in Pennsylvania. These PE Drugs were ineffective in relieving Plaintiff Jones' congestion.

## II.    DEFENDANTS

9.    Defendant Bayer Corporation ("Bayer") is an Indiana corporation with its principal place of business located at 100 Bayer Blvd., Whippany, New Jersey 07981. Bayer is the American subsidiary of Bayer AG, a multinational pharmaceutical company headquartered in Leverkusen, Germany. Defendant Bayer Corporation designed manufactured, advertised, marketed, distributed, and sold the PE Drug Alka-Seltzer Plus Cold & Flu. Its corporate agent is listed as the Corporation Service Company located at 251 Little Falls Drive, Wilmington, DE 19808.

10.    Defendant Haleon US Capital LLC (formerly GSK Consumer Healthcare Capital US LLC and hereinafter referred to as "Haleon") is the American subsidiary of Haleon plc.[2] Haleon plc is a British multinational consumer healthcare company headquartered in Weybridge, England. Defendant Haleon US Capital LLC designed manufactured, advertised, marketed, distributed, and sold the PE Drug Theraflu. Its registered agent is listed as Corporation Service Company located at 251 Little Falls Drive, Wilmington, DE 19808. It has a principal place of business located at 184 Liberty Corner Road, Warren, New Jersey 07059.

---

[2] Upon information and belief, GlaxoSmithKline's Consumer Healthcare business was spun off into Haleon plc in 2022. GSK transferred all liabilities and assets associated with the PE Drug Theraflu to Haleon plc and its subsidiaries.

11.     Defendant Johnson & Johnson Consumer Inc., ("JJCI") is a subsidiary of the parent company Kenvue Inc.[3] Defendant Johnson & Johnson Consumer Inc., designed manufactured, advertised, marketed, distributed, and sold the PE Drug Tylenol Cold & Flu Severe. Upon information and belief, it is believed that Defendant JJCI now operates as Defendant Kenvue Inc. Its principal place of business is located at 199 Grandview Road, Skillman, New Jersey 08558.

12.     Kenvue Inc., is a Delaware corporation and an American consumer health company that was formerly the consumer healthcare division of the conglomerate Johnson & Johnson. In May 2023, Johnson & Johnson transferred all assets and liabilities of its Consumer Health Business to Defendant Kenvue Inc., which included the brand "Tylenol." Defendant Kenvue Inc., designed manufactured, advertised, marketed, distributed, and sold the PE Drug Tylenol Cold & Flu Severe after May 2023. Its principal place of business is located at 199 Grandview Road, Skillman, New Jersey 08558.

13.     Defendant Procter & Gamble Company ("P&G") is an American multinational consumer goods company headquartered in Cincinnati, Ohio. Defendant The Procter & Gamble Company designed manufactured, advertised, marketed, distributed, and sold the PE Drugs Vicks DayQuil Cough Congestion and Vicks NyQuil Severe Cold & Flu. Its registered agent is listed as CT Corporation System located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

14.     Defendant Reckitt Benckiser LLC ("Reckitt") is a Delaware limited liability corporation with its principal place of business located at 399 Interpace Parkway, P.O. Box 225, Parsippany, New Jersey 07054. Reckitt is a wholly owned subsidiary of Reckitt Benckiser Group PLC, a public limited company registered in England and Wales. Defendant Reckitt Benckiser

---

[3] In May 2023, Johnson & Johnson transferred all liabilities and assets of the Consumer Health Business to Kenvue, which included the brand Tylenol. Therefore, all assets and liabilities associated with the PE Drug Tylenol are now owned by Defendant Kenvue.

LLC manufactured, advertised, marketed, distributed, and sold the PE Drugs Mucinex Fast-Max and Mucinex Sinus-Max. Reckitt sells the PE Drugs nationwide, including in Pennsylvania.

## JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different states.

16.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendants, and (4) there are more than 100 Class Members. This Court has general personal jurisdiction over Defendants because Defendants  are residents of this state.

17.    Venue is proper in this district pursuant to 28  U.S.C. § 1391(b)(1) because Defendants are residents of this district.888

## FACTUAL ALLEGATIONS

### III.    PE DRUGS

18.    Phenylephrine ("PE") is a specific alpha-1 adrenergic receptor agonist that works by temporarily constricting blood vessels.

19.    PE is an over-the-counter (OTC) ingredient marketed in both single ingredient and combination products. It has been available in the United States more than 75 years as well as globally.

20.    The PE drugs at issue in this case are produced in two forms:

   a.    Phenylephrine hydrochloride

   b.    Phenylephrine bitartrate

21.     Phenylephrine hydrochloride was first approved on August 23, 1994. *See* FR Doc. 94-20456.

22.     Phenylephrine bitartrate was first approved on August 1, 2006. *See* 71 FR 43358.

23.     PE has largely been approved for the temporary relief of nasal congestion due to the common cold, hay fever, or other respiratory allergies, or allergic rhinitis under the cough, cold, allergy, bronchodilator, and anti-asthmatic drug products monograph ("final monograph" or "CCABADP").

## IV.     EFFICACY OF ORALLY ADMINISTERED PE FOR NASAL DECONGESTION

24.     On May 1, 2006, two professors at the University of Florida, Dr. Leslie Hendeles, PharmD Professor, Pharmacy and Pediatrics, and Dr. Randy Hatton, PharmD FCCP BCPS Clinical Professor, Department of Pharmacotherapy and Translational Research College of Pharmacy published a letter in Journal of Allergy and Clinical Immunology titled: "Oral phenylephrine: An ineffective replacement for pseudoephedrine?"[4] The letter questions the effectiveness of PE for nasal congestion based upon the results of multiple double blind, placebo-controlled studies, that show PE was no more effective than placebo in reducing nasal airway resistance. Moreover, the letter notes that the studies relied on by the FDA to approve PE were unpublished, manufacturer-sponsored studies conducted by commercial testing laboratories.

25.     On February 1, 2007, three professors from the University of Florida, Leslie Hendeles (PharmD, Professor, Department of Pharmacy and Pediatrics), Randy C. Hatton (PharmD FCCP BCPS, Co-Director, Drug Information and Pharmacy Resource Center, College of Pharmacy Clinical Professor) and Almut G. Winterstein (PhD, Assistant Professor, Department

---

[4] https://www.jacionline.org/article/S0091-6749(06)00633-6/fulltext

of Pharmacy Healthcare Administration) filed a Citizens Petition with the FDA concerning PE Drugs.[5]

26.     Specifically, the Petition requested the dosage of oral phenylephrine (PE) be re-evaluated and that approval for use in children under twelve years old be withdrawn.[6] The Petition further stated that there was no data on the safety of PE in children under twelve years old.[7]

27.     As a result of the 2007 Citizens Petition, the FDA's Nonprescription Drugs Advisory Committee met on December 14, 2007, and concluded that the products could continue to be sold, but 9 of 12 of the committee members voted that "new studies on response to higher doses were required."[8] Further, a member of the Division of Nonprescription Drug Products expressed a preference for subjective symptom scores over objective measurement of nasal airway resistance to support the use of PE for temporary relief of nasal congestion.[9]

28.     Schering-Plough Pharmaceuticals responded to the recommendations of the Committee and the Division by conducting a multicenter, phase 2, parallel trial among 539 adults with seasonal allergic rhinitis. The results of the study revealed no significant differences between placebo and active treatment groups.[10]

29.     Another manufacturer, McNeil Consumer Healthcare, conducted a pharmacokinetic, safety and cardiovascular tolerability study of PE. Similarly, this study revealed no difference in safety endpoints between placebo and 10, 20 and 30 mg of PE even though

---

[5] https://www.regulations.gov/docket/FDA-2007-P-0108/document
[6] https://www.regulations.gov/docket/FDA-2007-P-0108/document
[7] https://www.regulations.gov/docket/FDA-2007-P-0108/document
[8]     https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf
[9]     https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf
[10]     https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf

systemic exposure increased disproportionately with dose. According to the petitioners, "This is noteworthy since both the relief of congestion and systemic endpoints such as change in blood pressure and pulse are mediated by alpha adrenergic stimulation. The absence of a significant effect on the latter at the higher doses suggest that the concentrations reached are not sufficient to stimulate alpha adrenergic receptors."[11]

30.     On November 4, 2015, yet another Citizens Petition was filed by two professors at the University of Florida, Dr. Leslie Hendeles, PharmD Professor, Pharmacy and Pediatrics, and Dr. Randy Hatton, PharmD FCCP BCPS Clinical Professor, Department of Pharmacotherapy and Translational Research College of Pharmacy. The petition asked the FDA "to remove oral phenylephrine from the Final Monograph for OTC nasal decongestant products." Specifically, the petition asked the FDA to remove Phenylephrine and to remove phenylephrine bitartrate (PEB), "both individually and in combination drug products in an effervescent dosage form."[12]

31.     According to the 2015 Citizens Petition, "Two additional studies published in 2009 provide further evidence of the absence of a decongestant effect from the FDA-approved nonprescription dose of 10 mg. Horak et al conducted a 3-way crossover, placebo-controlled study of the nasal decongestant effect of single doses of PE 12 mg, pseudoephedrine 60 mg or placebo among 39 grass-sensitive adults exposed to grass pollen in the Vienna Challenge Chamber. PE was not significantly different from placebo in the mean change in subjective nasal congestion scores whereas pseudoephedrine, a positive control in the study, decreased congestion significantly greater than placebo and PE.

---

[11]     https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf
[12]     https://truthinadvertising.org/wp-content/uploads/2023/02/Hatton-Hendeles-2015-Citizens-Petition-re-oral-phenylephrine.pdf

32.     The 2015 Citizens Petition was further supported by the American Academy of Allergy, Asthma & Immunology.[13]

33.     On information and belief, at this time, Defendants did not do additional testing and quality oversight of their PE Drugs to ascertain the true effectiveness for treating nasal congestion, or deliberately suppressed or avoided doing so. Had they done so and disclosed the results, the data would lead to the same inexorable conclusion reached on September 12, 2023, by an FDA Advisory Panel: PE administered orally is not effective for treating nasal congestion at all.

34.     On September 12, 2023, the FDA Advisory Panel on the Division of Nonprescription Drugs recommended that PE Drugs not be sold due to lack of efficacy.[14]

35.     In the FDA's Briefing Document regarding the hearing that took place on September 11-12, 2023, the FDA notes that it has been reviewing the clinical studies on the efficacy of PE since the 2007 Citizens Petition.[15]

36.     The Advisory Panel concluded:

> In accordance with the effectiveness standard for determining that a category of over-the-counter (OTC) drugs is generally recognized as safe and effective that is set forth in 21 CFR § 330.10(a)(4)(ii), which defines effectiveness as: "a reasonable expectation that, in a significant proportion of the target population, the pharmacological effect of the drug, when used under adequate directions for use and warnings against unsafe use, will provide clinically significant relief of the type claimed", we have now come to the initial conclusion that orally administered PE is not effective as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours).[16]

---

[13]     https://college.acaai.org/wp-content/uploads/2022/05/oral-phenylephrine-final-statement-insupport-of-citizens-petition-05-4-22.pdf

[14] https://www.fda.gov/media/171915/download

[15] *Id.*

[16] *Id.*

37.     The Advisory Panel met for two days on September 11-12, 2023. During this meeting, FDA scientists presented the results of five studies conducted over the past two decades on the effectiveness of oral phenylephrine. All the studies concluded that the decongestant was no more effective than a placebo. The Advisory Panel further reevaluated the initial findings which supported PE Drugs' use and found that the results were inconsistent, did not meet modern study design standards and further that these studies may have data integrity issues:

> "In conclusion, we do believe that the original studies were methodologically unsound and do not match today's standard. By contrast, we believe the new data are credible and do not provide evidence that oral phenylephrine is effective as a nasal decongestant," said Dr. Peter Starke, an FDA official who led the review of phenylephrine.[17]

38.     At the conclusion of the meetings, members voted unanimously (16-0) that PE drugs were ineffective, paving the way for the drugs to be removed from the market.

39.     Following this vote by the Advisory Panel, the FDA will now need to decide whether PE Drugs can still be sold and whether drugs should lose their designation as Generally Recognized as Safe and Effective (GRASE).

## V.     MISBRANDED DRUGS ARE ILLEGAL AND WORTHLESS

40.     Any drug not manufactured in accordance with cGMPs is deemed "adulterated" or "misbranded" and may not be distributed or sold in the United States. See 21 U.S.C. §§ 331(a), 351(a)(2)(B). States have enacted laws adopting or mirroring these federal standards.

41.     A drug is misbranded[18]

    a.      "If its labeling is false or misleading in any particular";

---

[17]        https://www.nbcnews.com/health/health-news/fda-panel-says-common-counter-decongestantphneylephrine-doesnt-work-rcna104424
[18] 21 U.S.C. § 352

b. "If any word, statement, or other information required … to appear on the label or labeling is not prominently placed thereon…in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use";

c. If the labeling does not contain, among other things, "the proportion of each active ingredient";

d. "Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings … against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users";

e. "If it purports to be a drug the name of which is recognized in an official compendium, unless it is packaged and labeled as prescribed therein";

f. "if it is an imitation of another drug";

g. "if it is offered for sale under the name of another drug";

h. "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof";

i. If the drug is advertised incorrectly in any manner; and/or

j. If the drug's "packaging or labeling is in violation of an applicable regulation."

42. The manufacture and sale of any misbranded drug is prohibited under federal law. 21 U.S.C. § 331(g). The introduction into commerce of any misbranded drug is also prohibited. 21 U.S.C. § 331(a).

43. Similarly, the receipt in interstate commerce of any misbranded or misbranded drug is also unlawful. 21 U.S.C. § 331(c).

44. As articulated in this Complaint, Defendants' sale of PE Drugs that were not effective for treating the indications identified were misbranded in violation of the above-cited reasons.

11

45.     References to federal law in this Complaint are not an attempt to enforce it, but to demonstrate that Plaintiffs' state-law tort claims do not impose any additional obligations on any Defendants, beyond what is already required of them under federal law.

46.     A manufacturer must give adequate directions for the use of a pharmaceutical drug so that a "layman can use a drug safely and for the purposes for which it is intended," 21 C.F.R. § 201.5, and conform to requirements governing the appearance of the label, 21 C.F.R. § 801.15..

47.     "Labeling" encompasses all written, printed or graphic material accompanying the drug or device, and therefore broadly includes nearly every form of promotional activity, including not only "package inserts" but also advertising. 65 FR 14286.

48.     Because the labels on Defendants' PE drugs indicate that PE can be used to treat nasal congestion, the subject drugs were misbranded.

49.     It is unlawful to introduce a misbranded drug into interstate commerce. Thus, the PE Drugs ingested by Plaintiff were unlawfully distributed and sold.

## VI.     PLAINTIFF AND CLASS MEMBERS HAVE BEEN INJURED BY DEFENDANTS' CONDUCT

50.     Each Defendant made and breached express and implied warranties and made affirmative misrepresentations and omissions to consumers about their PE Drugs.

51.     Plaintiff and Class Members' causes of action accrued on the date the FDA announced that PE was not effective at treating the indications identified in Defendants' PE Drug labeling and packaging, that is, September 12, 2023.

52.     Alternatively, any statute of limitations or prescriptive period is equitably tolled because of fraudulent concealment. Each Defendant affirmatively concealed from Plaintiff and Class Members its unlawful conduct. Each Defendant affirmatively strove to avoid disclosing their

knowledge of the ineffectiveness of their respective PE Drugs for treating the indications identified, and that such products were misbranded.

53.     For instance, Defendants did not reveal to the public that their PE Drugs were not effective at treating the indications identified, despite their superior knowledge and position as the manufacturer or seller of the PE Drugs.

54.     To the contrary, Defendants continued to represent and warrant that their PE Drugs were effective for treating the indications identified, principally nasal decongestion.

55.     Because of this, Plaintiff and Class Members did not discover, nor could they have discovered through reasonable and ordinarily diligence, Defendants' deceptive, fraudulent, and unlawful conduct alleged herein. Defendants' false and misleading explanations, or obfuscations, lulled Plaintiff and Class Members into believing that the prices paid for their PE Drugs were appropriate for what they believed to be non-misbranded drugs despite their exercise of reasonable and ordinary diligence.

56.     As a result of each Defendants' affirmative and other acts of concealment, any applicable statute of limitations affecting the rights of Plaintiff and Class Members has been tolled. Plaintiff and Class Members exercised reasonable diligence by among other things promptly investigating and bringing the allegations contained herein. Despite these or other efforts, Plaintiff and Class Members were unable to discover, and could not have discovered, the unlawful conduct alleged herein at the time it occurred or at an earlier time so as to enable this complaint to be filed sooner.

## **CLASS ALLEGATIONS**

57.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23.

58.     The proposed Class is defined as follows:

**Nationwide Class:** All individuals and entities in the United States and its territories and possessions who paid any amount of money for any Defendants' PE Drugs (intended for personal or household use).

**Pennsylvania Subclass:** All individuals and entities in Pennsylvania who paid any amount of money for PE Drugs (intended for personal or household use).

**New Jersey Subclass**: All individuals and entities in New Jersey who paid any amount of money for PE Drugs (intended for personal or household use).

59.     The proposed Class excludes the following: Defendants, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case.

60.     The definition of the proposed Class may be modified, changed, or expanded based upon discovery and further investigation.

61.     *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. The proposed Class may be ascertained through business records.

62.     *Commonality*: Questions of law or fact common to the proposed Class include, without limitation:

a.      Whether the PE Drugs are defective;

b.      Whether a reasonable consumer would consider the misbranding of the PE Drugs to be material;

c.      Whether Defendants knew or should have known that the PE Drugs were misbranded;

d.      Whether Defendants failed to disclose that the PE Drugs were misbranded;

e.      Whether Defendants concealed that the PE Drugs were misbranded;

f.      Whether Defendants engaged in unfair or deceptive trade practices;

g.      Whether Defendants breached an express warranty;

h.      Whether Defendants breached an implied warranty;

14

i.      Whether Defendants engaged in fraud;

j.      Whether Defendants breached a duty of care; and

k.      Whether Defendants were unjustly enriched.

63.    *Typicality*: Plaintiff's claims are typical of the claims of Class Members. Plaintiff and Class Members were injured and suffered damages in substantially the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

64.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and have no interests antagonistic to those of the proposed Class. Plaintiff's counsel is experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

65.    *Predominance and superiority*: Questions of law or fact common to Class Members predominate over any questions affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the proposed Class is impracticable and the amount at issue for each Class Member would not justify the cost of litigating individual claims. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

66. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

67. Defendants have acted, and refused to act, on grounds generally applicable to the proposed Class, thereby making appropriate final equitable relief with respect to the proposed Class as a whole.

68. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (on behalf of the Class)

69. All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

70. Defendants represented and warranted through its advertising, labeling, and other statements that its PE Drugs were fit for their ordinary purpose, effective in treating their listed indications, including nasal congestion, and not misbranded.

71. Defendants' representations and written warranty are an express warranty within the meaning of U.C.C. § 2-313.

72. All fifty States and the District of Columbia and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann.

§ 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 §

2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-

2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. §

104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55- 2-

313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio

Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. §

2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-

2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-

313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code

§ 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-

313.

73.     The PE Drugs fail to conform to Defendants' representations that formed part of the

basis of the bargain because they are ineffective in treating nasal congestion.

74.     Defendants breached the warranty because they are unwilling or unable to provide

a remedy for the ineffectiveness and misbranding of the PE Drugs within a reasonable time.

75.     Defendants' breach deprived Plaintiff and Class Members of the benefit of the

bargain.

76.     Defendants' attempt to disclaim or limit the warranty is unconscionable and

unenforceable under the circumstances here because Defendants knowingly and deceptively sold

ineffective and misbranded PE Drugs without informing consumers.

77.     A gross disparity in bargaining power existed between Defendants and purchasers

of the PE Drugs.

78.     The essential purpose of the warranty failed because Plaintiff and Class Members are unable to reasonably obtain a workable remedy, so Plaintiff and Class Members are entitled to a remedy that is not limited by the terms of the warranty. U.C.C. § 2-719(2).

79.     Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

80.     Plaintiff and Class Members were the intended third-party beneficiaries of a Defendants' contracts with suppliers, manufacturers, resellers, and distributors of the PE Drugs as Plaintiff and Class Members were the intended end users of the PE Drugs.

81.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**(on behalf of the Class)**

82.     All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

83.     Defendants impliedly warranted that its PE Drugs were fit for their ordinary purpose, effective in treating their listed indications, including nasal congestion, and not misbranded.

84.     Defendants' sale of the PE Drugs created an implied warranty within the meaning of U.C.C. § 2-314.

85.     All fifty States and the District of Columbia and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314;

Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp.

Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code

Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-

314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-

314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314;

N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55- 2-314; N.Y.

U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code

Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R.

Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36- 2-314; S.D.

Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2- 314; Utah Code

Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash.

Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2- 314.

86.     The PE Drugs are unmerchantable, not fit for their ordinary purpose, and do not

conform to standards generally applicable for such drugs because they are ineffective in treating

nasal congestion.

87.     Defendants breached the warranty because they are unwilling or unable to provide

a remedy for the ineffectiveness and misbranding of the PE Drugs within a reasonable time.

88.     Defendants' breach deprived Plaintiff and Class Members of the benefit of the

bargain.

89.     Defendants' attempt to disclaim or limit the warranty is unconscionable and

unenforceable under the circumstances here because Defendants knowingly and deceptively sold

ineffective and misbranded PE Drugs without informing consumers.

90. A gross disparity in bargaining power existed between Defendants and purchasers of the PE Drugs.

91. The essential purpose of the warranty failed because Plaintiff and Class Members are unable to reasonably obtain a workable remedy, so Plaintiff and Class Members are entitled to a remedy that is not limited by the terms of the warranty. U.C.C. § 2-719(2).

92. Plaintiff and Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

93. Plaintiff and Class Members were the intended third-party beneficiaries of a Defendants' contracts with suppliers, manufacturers, resellers, and distributors of the PE Drugs as Plaintiff and Class Members were the intended end users of the PE Drugs.

94. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

## COUNT III
### MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301 *et seq.*
### (on behalf of the Class)

95. All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

96. Defendants expressly and impliedly warranted the PE Drugs and breached these warranties, as alleged above.

97. Defendants' breach of these warranties is a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

98. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

99.     Plaintiff and Class Members are entitled to an award of damages and attorneys' fees and costs pursuant to 15 U.S.C. § 2310(d)(2).

**COUNT IV**
**FRAUD**
**(on behalf of the Class)**

100.     All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

101.     Defendants represented to Plaintiff and Class Members that the PE Drugs were effective for treating nasal congestion and were not misbranded.

102.     The PE Drugs are unable to treat nasal congestion as Defendants represented and are therefore of a substantially lesser quality and value than Defendants represented.

103.     Defendants knew that the PE Drugs could not conform to their representations because PE is ineffective in treating nasal congestion.

104.     Defendants mispresented, concealed, and omitted material information concerning the effectiveness of PE.

105.     The facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the PE Drugs or pay a lower price.

106.     Defendants mispresented, concealed, and omitted material information concerning the effectiveness of the PE Drugs in order to induce Plaintiff and Class Members to purchase the PE Drugs at a substantially higher price than what they would have paid.

107.     Plaintiff and Class Members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the PE Drugs.

108.    Plaintiff and Class Members would not have purchased the PE Drugs if they knew that PE was not effective in treating nasal congestion, or they would have only paid substantially less.

109.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

**COUNT V**
**NEGLIGENT MISREPRESENTATION AND OMISSION**
**(on behalf of the Class)**

110.    All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

111.    Defendants had a duty to Plaintiff and Class Members to accurately represent the effectiveness of the PE Drugs in treating nasal congestion.

112.    Defendants represented to Plaintiff and Class Members that the PE Drugs were effective for treating nasal congestion and were not misbranded.

113.    The PE Drugs are unable to treat nasal congestion as Defendants represented and are therefore of a substantially lesser quality and value than Defendants represented.

114.    Defendants knew that the PE Drugs could not conform to their representations because PE is ineffective in treating nasal congestion.

115.    Defendants mispresented, concealed, and omitted material information concerning the effectiveness of PE.

116.    The facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the PE Drugs or pay a lower price.

117. Defendants mispresented, concealed, and omitted material information concerning the effectiveness of the PE Drugs in order to induce Plaintiff and Class Members to purchase the PE Drugs at a substantially higher price than what they would have paid.

118. Defendants failed to exercise reasonable care in misrepresenting, concealing, and omitting material information concerning the effectiveness of the PE Drugs, thereby breaching their duties to Plaintiff and Class Members.

119. Plaintiff and Class Members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the PE Drugs.

120. Plaintiff and Class Members would not have purchased the PE Drugs if they knew that PE was not effective in treating nasal congestion, or they would have only paid substantially less.

121. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

## COUNT VI
### NEGLIGENCE
**(on behalf of the Class)**

122. All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

123. Defendants had a duty to Plaintiff and Class Members to accurately represent the effectiveness of the PE Drugs in treating nasal congestion.

124. Defendants represented to Plaintiff and Class Members that the PE Drugs were effective for treating nasal congestion and were not misbranded.

125. The PE Drugs are unable to treat nasal congestion as Defendants represented and are therefore of a substantially lesser quality and value than Defendants represented.

126.     Defendants knew that the PE Drugs could not conform to their representations because PE is ineffective in treating nasal congestion.

127.     Defendants mispresented, concealed, and omitted material information concerning the effectiveness of PE.

128.     The facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the PE Drugs or pay a lower price.

129.     Defendants mispresented, concealed, and omitted material information concerning the effectiveness of the PE Drugs in order to induce Plaintiff and Class Members to purchase the PE Drugs at a substantially higher price than what they would have paid.

130.     Defendants failed to exercise reasonable care in misrepresenting, concealing, and omitting material information concerning the effectiveness of the PE Drugs, thereby breaching their duties to Plaintiff and Class Members.

131.     Plaintiff and Class Members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the PE Drugs.

132.     Plaintiff and Class Members would not have purchased the PE Drugs if they knew that PE was not effective in treating nasal congestion, or they would have only paid substantially less.

133.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

**COUNT VII**
**NEGLIGENCE PER SE**
**(on behalf of the Class)**

134.    All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

135.    Defendants had a duty to Plaintiff and Class Members to accurately represent the effectiveness of the PE Drugs in treating nasal congestion.

136.    Defendants' duties arise out of, inter alia, the following state statutes enforcing the efficacy and branding of drugs:

a.    Alabama Code §§ 20-1-24 and -27(1);

b.    Alaska Statutes § 17.20.290(a)(1);

c.    Arizona Statutes §§ 32-1965(1), (2) and -1966(3);

d.    Arkansas Code § 20-56-215(1);

e.    California Health and Safety Code §§ 111295 and 111400;

f.    Colorado Statutes §§ 25-5-403(1)(a),(b) and -414(1)(c);

g.    Title 16, Delaware Code §§ 3302 and 3303(2);

h.    District of Columbia Code § 48-702(2);

i.    Florida Statutes §§ 499.005(1) and .006(3);

j.    Georgia Code § 26-3-3(1);

k.    Hawaii Revised Statutes §§ 328-6(1) and 14(1)(B)(ii);

l.    Idaho Code § 37-115(a);

m.    Chapter 410, Illinois Statutes §§ 620/3.1 and 14(a)(2)(B);

n.    Iowa Code §§ 126.3(1) and .9(1)(c);

o.    Kentucky Statutes § 217.175(1);

25

p.      Maryland Code, Health–General §§ 21-216(c)(5)(2) and -256(1);

q.      Massachusetts General Laws chapter 94 §§ 186 and 190;

r.      Minnesota Statutes §§ 151.34(1) and .35(1);

s.      Missouri Statutes § 196.015(1);

t.      Montana Code §§ § 50-31-305(3) and -501(1);

u.      Nebraska Revised Statutes §§ 71-2461(2) and -2481;

v.      Nevada Statutes § 585.520(1);

w.      New Hampshire Revised Statutes §§ 146:1(I) and :4(V);

x.      New Mexico Statutes §§ 26-1-3(A) and -10(A);

y.      New York Education Law § 6811;

z.      North Dakota Century Code §§ 19-02.1-02(1) and .1-13(3);

aa.     Ohio Code § 3715.52(A)(1);

bb.     Oklahoma Statutes title 63 § 1-1402(a);

cc.     Title 35, Pennsylvania Statutes § 780-113(a)(1);

dd.     Title 21, Rhode Island General Laws § 21-3-3(1);

ee.     South Carolina Code §§ 39-23-30(a)(2)(B) and -80(A)(1);

ff.     South Dakota Code §§ 39-15-3 and -10;

gg.     Title 18, Vermont Statutes § 4052(1);

hh.     Virginia Code § 54.1-3457(1);

ii.     West Virginia Code §§ 16-7-1 and -2(a)(3); and

jj.     Wyoming Statutes §§ 35-7-111(a)(i)–(iv), (vi) and -116.

137.     Defendants violated these statutes by representing to Plaintiff and Class Members that the PE Drugs were effective for treating nasal congestion and were not misbranded.

138.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(on behalf of the Class)**

139.     All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

140.     Defendants represented to Plaintiff and Class Members that the PE Drugs were effective in treating nasal congestion.

141.     The PE Drugs fail to conform to Defendants' representations and were therefore of a substantially lesser quality and value than Defendants represented.

142.     Defendants knew or should have known that the PE Drugs could not conform to their representations.

143.     Defendants mispresented, concealed, and omitted material information concerning the effectiveness of PE.

144.     The facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the PE Drugs or pay a lower price.

145.     Defendants mispresented, concealed, and omitted material information concerning the effectiveness of the PE Drugs in order to induce Plaintiff and Class Members to purchase the PE Drugs at a substantially higher price than what they would have paid.

146.     Plaintiff and Class Members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the PE Drugs.

147.     Plaintiff and Class Members would not have purchased the PE Drugs if they knew that PE was not effective in treating nasal congestion, or they would have only paid substantially less.

148.     Plaintiff and Class Members conferred substantial benefits on Defendants by purchasing misbranded and ineffective PE Drugs at a premium without receiving a product that conformed to Defendants' representations.

149.     Defendants knowingly and willingly accepted and enjoyed these benefits.

150.     Defendants' retention of these benefits would be inequitable.

151.     As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been injured and sustained damages.

## <u>COUNT IX</u>
## VIOLATIONS OF STATE CONSUMER PROTECTION LAWS
### (on behalf of the Class)

152.     All preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

153.     Defendants represented to Plaintiff and Class Members that the PE Drugs were effective for treating nasal congestion and were not misbranded.

154.     The PE Drugs are unable to treat nasal congestion as Defendants represented and are therefore of a substantially lesser quality and value than Defendants represented.

155.     Defendants knew that the PE Drugs could not conform to their representations because PE is ineffective in treating nasal congestion.

156.    Defendants mispresented, concealed, and omitted material information concerning the effectiveness of PE.

157.    The facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the PE Drugs or pay a lower price.

158.    Defendants mispresented, concealed, and omitted material information concerning the effectiveness of the PE Drugs in order to induce Plaintiff and Class Members to purchase the PE Drugs at a substantially higher price than what they would have paid.

159.    Plaintiff and Class Members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the PE Drugs.

160.    Plaintiff and Class Members would not have purchased the PE Drugs if they knew that PE was not effective in treating nasal congestion, or they would have only paid substantially less.

161.    Defendants' conduct violates state consumer protection statutes as follows:

   a.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

   b.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*;

   c.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

   d.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

   e.    Defendants violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;

   f.    Defendants violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

g.  Defendants violated the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*;

h.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

i.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

j.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

k.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

l.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

m.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq.*;

n.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

o.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

p.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS 505/1, *et seq.*;

q.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

r.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code Ann. § 714H, *et seq.*;

s.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

t.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

u.  Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

v.      Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

w.     Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

x.      Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

y.      Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Mich. Stat. § 445.901, *et seq.*;

z.      Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Minn. Stat. § 325F.67, *et seq.*;

aa.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

bb.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq.*;

cc.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Mont. Code § 30-14-101, *et seq.*;

dd.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

ee.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

ff.     Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

gg.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

hh.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

ii.     Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

jj.     Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

kk.     Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

ll.      Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

mm.    Defendants engaged in unfair competition or unfair or deceptive acts or  practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

nn.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, et seq.;

oo.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, et seq.;

pp.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, et seq.;

qq.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, et seq.;

rr.      Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, et seq.;

ss.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, et seq.;

tt.      Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

uu.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, et seq.;

vv.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2451, et seq.;

ww.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, et seq.;

xx.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, et seq.;

yy.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, et seq.;

zz.     Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, et seq.;

aaa.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*; and

bbb.    Defendants engaged in unfair competition or unfair or deceptive acts or practices in violation of 23 L.P.R.A. § 1001, *et seq.*, the applicable statute for the Commonwealth of Puerto Rico. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have been injured and sustained damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment as follows:

a.      An order certifying this action as a class action;

b.      An order appointing Plaintiff as Class Representatives, and appointing undersigned counsel as Class Counsel to represent the Class;

c.      A declaration that Defendants are liable under each and every one of the above-enumerated causes of action;

d.      An order awarding compensatory damages, restitution, or refund of all funds acquired by Defendants from Plaintiffs and Class Members as a result of Defendants' unlawful conduct as described above, including actual, statutory, and punitive damages to the extent permitted by law in an amount to be proven at trial;

e.      An order awarding appropriate preliminary and final injunctive relief against the conduct of Defendants as described above;

f.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class Members;

g.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

h.      Such other and further relief as this Court may deem just, equitable, or proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  October 24, 2023

Respectfully submitted,

By:    */s/ Alex M. Kashurba*
      Steven A. Schwartz
      Alex M. Kashurba (NJ Bar No. 140712014)
      Alison G. Gushue (NJ Bar No. 034112006)
      Anthony A. Geyelin
      Marissa N. Pembroke
      CHIMICLES SCHWARTZ KRINER
      & DONALDSON-SMITH LLP
      361 W. Lancaster Avenue
      Haverford, PA 19041
      (610) 642-8500
      sas@chimicles.com
      amk@chimicles.com
      agg@chimicles.com
      aag@chimicles.com
      mnp@chimicles.com

      *Attorneys for Plaintiffs*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Janet Jones

**DEFENDANTS**

BAYER CORPORATION, HALEON US CAPITAL LLC, JOHNSON & JOHNSON CONSUMER INC., KENVUE INC., THE PROCTER & GAMBLE COMPANY, and RECKITT BENCKISER PHARMACEUTICALS, INC.,

**(b)** County of Residence of First Listed Plaintiff    Chester Cty., PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Morris Cty., NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Chimicles Schwartz Kriner & Donaldson-Smith LLP
361 W. Lancaster Avenue, Haverford, PA 19041
610-642-8500

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Product Liability | |      28 USC 157 |      3729(a)) |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &      Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|      & Enforcement of Judgment |      Slander      Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |      Liability    ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|      Student Loans | ☐ 340 Marine      Injury Product | |      New Drug Application | ☐ 470 Racketeer Influenced and |
|      (Excludes Veterans) | ☐ 345 Marine Product      Liability | | ☐ 840 Trademark |      Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle    ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards |      Act of 2016 |      (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending |      Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |      Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |      Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal      Property Damage |      Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |      Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -      Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |      Exchange |
| |      Medical Malpractice |      Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |      Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |      Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/      Sentence | |      or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** |      26 USC 7609 |      Act/Review or Appeal of |
| |      Employment    **Other:** | ☐ 462 Naturalization Application | |      Agency Decision |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |      Other    ☐ 550 Civil Rights |      Actions | |      State Statutes |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)

Brief description of cause:
Violations of state consumer protection and common laws for unlawful sale of consumer product

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*    JUDGE   Hon. Kevin McNulty    DOCKET NUMBER 2:23-cv-20743-KM-JSA

2:23-cv-20370-KM-JSA

DATE
October 24, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Alex Kashurba*

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
    United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
    United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
    Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
    Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
    Original Proceedings.  (1) Cases which originate in the United States district courts.
    Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
    Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
    Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
    Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
    Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
    Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
    **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
    Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
    Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.