# EXHIBIT 1

***EFILED***
Case Number 2023LA001311
Date: 9/21/2023 12:25 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

## IN THE CIRCUIT COURT OF MADISON COUNTY
## STATE OF ILLINOIS

| | |
|---|---|
| DARYL MEANS, an individual, on behalf of himself and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>Johnson & Johnson Holdco (NA), Inc.; GlaxoSmithKline LLC; Reckitt Benckiser LLC; Bayer Healthcare LLC; The Procter & Gamble Company; Walmart, Inc.; Walgreen Co.; Target Corporation; CVS Pharmacy, Inc.; Amazon.com, Inc.; Amazon.com Services LLC; DOES 1-20,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _2023LA001311_

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff DARYL MEANS, by and through his undersigned counsel, and hereby brings this action on behalf of himself and all others similarly situated, and in support thereof, states:

## INTRODUCTION

1.      This is a class action for damages and injunctive relief related to Defendants' wrongdoing in connection with the marketing, manufacturing, distribution, and sale of over-the-counter cold medicines containing Phenylephrine.

2.      Phenylephrine is a purported decongestant used in at least 250 different products, including Nyquil Severe Cold & Flu, Tylenol Cold & Flu Severe, Sudafed Sinus Congestion, Mucinex Sinus Max, and many others, as well as generic brands developed and sold by retailers like Walmart, Walgreens, Target, and CVS (the "Phenylephrine Products").

1

3.      Defendants manufacture, test, promote, advertise, market, distribute and sell the Phenylephrine Products for the treatment of congestion and other associated cold and flu symptoms. Millions of Illinoisans, and hundreds of millions of Americans, purchase these products for help relieving congestion and other associated cold and flu symptoms because they are told by the above-captioned Defendants that they work for that purpose.

4.      For years, Defendants have advertised and marketed the Phenylephrine Products to unsuspecting consumers despite knowing that phenylephrine is ineffective for the treatment of nasal congestion and the other cold and flu symptoms for which Defendants promote its use. On or about September 12, 2023, the Federal Drug Administration ("FDA"), after careful study and consideration, announced publicly that phenylephrine is *ineffective* as a treatment for such symptoms.

5.      As a proximate result of Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Plaintiff and all class members collectively suffered hundreds of millions of dollars in damages in reliance upon Defendants' knowingly false representations about the effectiveness of phenylephrine and the Phenylephrine Products.

6.      Plaintiff and the Class members therefore demand judgment against Defendants and request, among other things, compensatory damages, punitive damages, attorneys' fees, costs, injunctive relief, and all other available remedies and damages allowed by law.

## PARTIES

7.      At all relevant times, Plaintiff Daryl Means was and has been a resident of the Madison County, State of Illinois.

8.      On numerous occasions within the statutory time period, in reliance upon Defendants' intentionally false and fraudulent marketing, Plaintiff purchased the Phenylephrine

Products, and each of them, within Madison County, State of Illinois, for treatment of cold and flu symptoms.

9.      Defendant Johnson & Johnson Holdco (NA), Inc., is a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Defendant Johnson & Johnson Holdco (NA), Inc., is a wholly owned subsidiary of Johnson & Johnson, a New Jersey corporation, with headquarters and a principal place of business in the State of New Jersey (collectively "J&J"). Upon information and belief, Johnson & Johnson Holdco (NA), Inc., was previously named Johnson & Johnson Consumer Inc. At all times relevant hereto, Defendant J&J was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Tylenol, Sudafed, and Benadryl.

10.      Defendant GlaxoSmithKline LLC is a Delaware corporation with headquarters and a principal place of business in the State of Pennsylvania. Upon information and belief, GlaxoSmithKline LLC is a wholly owned subsidiary of GlaxoSmithKline PLC a public limited company organized under the laws of England and Wales (collectively "GSK"). At all times relevant hereto, Defendant GSK was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Robitussin, Theraflu, Contac, and Advil.

11.      Defendant Reckitt Benckiser LLC is a Delaware limited liability corporation, with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Reckitt Benckiser LLC, is a wholly owned subsidiary of Reckitt Benckiser Group PLC, a public limited company organized under the laws of England and Wales (collectively "Reckitt"). At all times relevant hereto, Reckitt was engaged in the business of manufacturing, marketing,

testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Mucinex.

12.     Defendant Bayer Healthcare LLC is a Delaware limited liability corporation with headquarters and a principal place of business in the State of New Jersey. Upon information and belief, Bayer Healthcare LLC is a wholly owned subsidiary of Bayer Corporation, an Indiana corporation with a principal place of business in the State of Pennsylvania (collectively "Bayer"). At all times relevant hereto, Defendant Bayer was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Alka-Seltzer.

13.     Defendant The Procter & Gamble Company ("Proctor") is an Ohio corporation with headquarters and principal place of business in the State of Ohio. At all times relevant hereto, Defendant Proctor was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products, including but not limited to, Dayquil and NyQuil.

14.     Defendant Walmart Inc. ("Walmart") is a Delaware corporation with headquarters and principal place of business in the State of Arkansas. At all times relevant hereto, Walmart was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

15.     Defendant Target Corporation ("Target") is a Minnesota corporation with headquarters and principal place of business in the State of Minnesota. At all times relevant hereto, Target was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

16.     Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with headquarters and principal place of business in the State of Rhode Island. At all times relevant hereto, CVS was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

17.     Defendant Walgreen Co. ("Walgreens") is an Illinois corporation with headquarters and principal place of business in the State of Illinois. At all times relevant hereto, Walgreens was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

18.     Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business in the State of Washington and Amazon.com Services LLC is a Delaware Limited Liability Company with its principal place of business in the State of Washington (collectively "Amazon"). At all times relevant hereto, Amazon was engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing certain of the Phenylephrine Products.

19.     The true names and capacities of defendants Does 1 through 20 are currently unknown to Plaintiff who, therefore, sues these Defendants under these fictitious names. These defendants are each directly and/or vicariously responsible, in some manner, for the harms alleged herein. If/when Plaintiff learns these Defendants' true names and capacities, Plaintiff will seek leave to amend this Petition accordingly.

20.     The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of Defendants DOES 1 through 20, inclusive, and each of them, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believe, and thereon alleges, that each Defendant designated herein as a DOE caused injuries and damages proximately thereby to Plaintiff and the class as

hereinafter allege; and that each DOE Defendant is liable to Plaintiff and the class for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff and the class, and damages sustained by them. Plaintiff will amend this Petition to allege the true names and capacities of said DOE Defendants when ascertained.

## JURISDICITON AND VENUE

21.     This Court has jurisdiction over this matter because it is a civil matter in which more than $50,000.00 is in controversy.

22.     Venue is proper in this Circuit because Plaintiff is a resident of the Madison County, purchased the Phenylephrine Products in the Madison County, and was first harmed by the Phenylephrine Products in the Madison County.

## GENERAL ALLEGATIONS

23.     The main active ingredient in the Phenylephrine Products is phenylephrine hydrochloride, or "PE." In 1994, the FDA issued a final monograph establishing conditions under which OTC nasal decongestant drug products are generally recognized as safe and effective ("GRASE") and not misbranded. Phenylephrine is included in the final monograph as an OTC oral nasal decongestant.

24.     Defendants marketed PE as an effective decongestant that should be used to relieve nasal congestion and sinus pressure associated with colds, allergies, and other respiratory conditions. According to Defendants, phenylephrine works by constricting blood vessels in the nasal passages, which reduces swelling and congestion.

25.     However, Defendants knew that these representations concerning phenylephrine's efficacy at treating nasal congestion were false.

6

26.     In 2007, the consumer advocacy group Public Citizen filed a petition with the U.S. Food and Drug Administration (FDA) regarding phenylephrine. The petition requested that the FDA re-evaluate the safety and efficacy of phenylephrine as a nasal decongestant and take regulatory action.

27.     Defendants deceived Plaintiff and the public in general by making these intentional misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products. Public Citizen expressed concerns that phenylephrine, the active ingredient in many OTC decongestant products, was not as effective as another decongestant called pseudoephedrine. The petition argued that the switch from pseudoephedrine to phenylephrine in many cold and allergy medications had not been supported by adequate scientific evidence demonstrating the latter's effectiveness in relieving nasal congestion.

28.     Public Citizen also raised concerns about the potential side effects and safety of phenylephrine, suggesting that its use might lead to increased blood pressure in some individuals.

29.     The FDA reviewed the concerns raised by the Public Citizen petition regarding the safety and efficacy of phenylephrine as a nasal decongestant. The FDA concluded that, based on the available data at the time of its review in 2007, phenylephrine could be considered effective as a nasal decongestant when used at the recommended doses.

30.     Thus, in 2007, the FDA concluded that orally administered PE was Generally Recognized as Safe and Effective (GRASE).

31.     The FDA's GRASE determination allowed Defendants to market the Products as an OTC or "over-the-counter" medication. This was an important designation to Defendants as it allowed them to market the Products to consumers without requiring a doctor's prescription,

7

making it more accessible for self-treatment, and allowing Defendants to make billions of dollars in OTC sales.

32.     However, on September 11th and 12th, 2023, the FDA issued a new report detailing its updated review of the efficacy of phenylephrine, based on the studies it initially reviewed in 2007 and additional studies obtained since its initial review. A copy of the FDA's report is attached as Exhibit 1.

33.     The FDA's 2023 findings are based on rigorous scientific research and evaluation. At its initial 2007 Nonprescription Drugs Advisory Committee ("NDAC") meeting and review, the FDA reviewed clinical effectiveness data for oral doses between 5mg and 40mg in a total of 14 studies, of which 7 reported positive measurable efficacy results.

34.     During its initial 2007 Nonprescription Drugs Advisory Committee ("NDAC") meeting and review, the FDA reviewed clinical effectiveness data for oral doses between 5mg and 40mg in a total of 14 studies, of which 7 reported positive measurable efficacy results.

35.     However, in its re-analysis of these studies in 2023, the FDA found significant problems with the 2007 studies:

> [w]hen considering the studies through a modern drug review lens, all of the studies (both positive and negative) were highly problematic in both design and methodology. All used a highly variable endpoint (NAR) to study a drug in the setting of a highly variable disease state (the common cold) that is no longer used as a primary endpoint to evaluate congestion in pivotal trials. Further, all the positive studies (and most of the negative studies) were unpublished and therefore never peer-reviewed. Six of the seven positive studies came from a single study center (funded by the manufacturer of Neo-Synephrine), were very small in size, and (except in one instance) the results could not be duplicated at two other study centers (also funded by the same manufacturer) that used as similar study design and methodology.

(Exhibit 1).

36.     Thus, the FDA found that the original studies had data integrity issues and that the results of some 2007 studies could not be replicated in other studies at other locations.

37.     Due to the flaws in methodology and design of the previous studies, the FDA now believes that the studies evaluated for the efficacy of phenylephrine in 2007 are "unacceptable as continued support for the efficacy of monographed doses or oral PE." Exhibit 1.

38.     Since 2007, several additional large clinical trials have been conducted regarding the efficacy of phenylephrine, providing evidence of the absence of a decongestant effect from the OTC approved doses of 10 mg.[1] These studies show that the Phenylephrine Products are no more effective than placebo in decreasing nasal congestion and, thus, lack efficacy.

39.     On September 12, 2023, an FDA panel unanimously declared that phenylephrine, the active ingredient in the Phenylephrine Products, is an ineffective decongestant.

40.     At least since 2018, if not earlier, Defendants knew or should have known that their marketing claims regarding the Phenylephrine Products' efficacy were false and misleading.

41.     Plaintiff and the class members purchased the Phenylephrine Products in reliance on Defendants' false and deceptive marketing claims. Plaintiff and the class members acted as reasonable consumers in light of all the circumstances.

## CLASS ACTION ALLEGATIONS

---

[1] See, e.g., Gelotte, CK and BA Zimmerman, 2015, Pharmacokinetics, safety, and cardiovascular tolerability of phenylephrine HCl 10, 20, and 30 mg after a single oral administration in healthy volunteers, Clin Drug Investig, 35(9):547-558; Day, JH, MP Briscoe, JD Ratz, M Danzig, and R Yao, 2009, Efficacy of loratadine-montelukast on nasal congestion in patients with seasonal allergic rhinitis in an environmental exposure unit, Ann Allergy Asthma Immunol, 102(4):328-338; Horak, F, P Zieglmayer, R Zieglmayer, P Lemell, R Yao, H Staudinger, and M Danzig, 2009, A placebo-controlled study of the nasal decongestant effect of phenylephrine and pseudoephedrine in the Vienna Challenge Chamber, Ann Allergy Asthma Immunol, 102(2):116-120; Meltzer, EO, PH Ratner, and T McGraw, 2015, Oral phenylephrine HCl for nasal congestion in seasonal allergic rhinitis: A randomized, open-label, placebo-controlled study, J Allergy Clin Immunol Pract, 3(5):702-708; Meltzer, EO, PH Ratner, and T McGraw, 2016, Phenylephrine hydrochloride modified-release tablets for nasal congestion: a randomized, placebo-controlled trial in allergic rhinitis patients, Ann Allergy Asthma Immunol, 116(1):66-71.

42.     Pursuant to 735 ILCS 5/2-801, Plaintiff brings this class action on his own behalf and on behalf of all other similarly situated consumers in the United States as members of the following proposed Illinois class, to be defined as follows:

a. During the fullest period allowed by law, all persons who, while a resident of Illinois, purchased any of the Phenylephrine Products at any location in Illinois, including without limitation any online purchase made from Illinois (the "Class").

b. Excluded from the class are assigned judges and members of their families within the first degree of consanguinity, Defendants, and their subsidiaries, affiliates, officers, and directors.

43.     Like Plaintiff, all Class members purchased the Phenylephrine Products based on the misrepresentations that said products were effective in the treatment of congestion and other associated cold and flu symptoms, and that such understanding was reasonable and was a material basis for the decision to purchase the Phenylephrine Product, which Defendants intended to foster through its various marketing activities in connection with the sale of the Phenylephrine Products.

44.     The proposed Class is so numerous that individual joinder of all its members is impracticable because members of the Class number in the tens or hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but are objectively ascertainable and will be determined through appropriate discovery.

45.     Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions.

46.     Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses. Plaintiff's claim is typical of every member of the Class.

47.     There are common questions of law and fact affecting Plaintiff and the Class members. These include, but are not limited to:

      a.   Whether Defendants marketed and advertised the Phenylephrine Products in a way that was false or misleading.

      b.   Whether by the misconduct set forth herein, Defendants have engaged and continue to engage in any unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission of any material fact in connection with the sale or advertisement of the Phenylephrine Products in violation of 815 ILCS 505/1 *et seq.*

      c.   Whether Defendants' conduct constitutes violations of the laws asserted herein.

      d.   Whether Defendants' made intentional or negligent misrepresentations about the Phenylephrine Products.

      e.   Whether Class members were harmed by Defendants' misconduct and, if so, to what extent.

      f.   Whether the Class is entitled to recover statutory attorney's fees.

      g.   Whether an injunction is necessary to prevent Defendants from continuing to market and sell the Phenylephrine Products that lack efficacy.

48.     These common questions of law and/or fact predominate over any questions affecting only individual Class members.

49.     A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually

impossible for Plaintiff and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

50.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

51.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, including continuing to market and sell Phenylephrine Products that lack efficacy, and requiring Defendants to provide a full refund of the purchase price of the Products to Plaintiff and the Class members.

## COUNT I

### Violation of the Consumer Fraud Deceptive Business Practices Act

### 815 ILCS §§ 505/1 *et seq.*

### (On Behalf of the Plaintiff and the Class Against All Defendants)

52.     Plaintiff incorporates by reference and realleges every allegation contained above as though fully set forth herein.

53.     Plaintiff and the Class members defined herein are each a "person" as defined by 815 ILCS 505(1)(c). Likewise, each of the Defendants are a "person" under that provision.

54.     The Defendants made numerous "advertisements" as defined by 815 ILCS 505/1(a) in print, radio, television, packaging, and other forms regarding the purported efficacy of the Phenylephrine Products for treating congestion.

55.     The Defendants made numerous "sales" of the Phenylephrine Products as defined by 815 ILCS 505/1(d).

56.     The Phenylephrine Products are "merchandise" as defined by 815 ILCS 505/1(b).

57.     The Defendants committed unfair or deceptive acts or practices in connection with the sale and advertisement of the Phenylephrine Products, including by using or employing deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of material fact with the intent that others would rely upon the concealment, suppression, or omission of such material fact in violation of 815 ILCS 505/2.

58.     As a direct and proximate result of Defendants' violations of 815 ILCS 505/2, Plaintiff and the Class members have or will suffer ascertainable loss of money and/or property and seek relief pursuant to 815 ILC 505/10a.

59.     Plaintiff and the Class seek their reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c).

## COUNT II

### Negligent Misrepresentation

### (On Behalf of the Plaintiff and the Class Against All Defendants)

60.     Plaintiff incorporates by reference and realleges every allegation contained above as though fully set forth herein.

61.     At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiffs the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products.

62.     Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant should have known that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

63.     Defendants negligently deceived Plaintiff and the Class members by making these misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

64.     At the time the aforesaid misrepresentations were made, Defendants understood that their careless misrepresentations would induce Plaintiff and the Class members to rely upon them.

65.     At the time Defendants made the above-described misrepresentations, Plaintiff and the Class members reasonably believed them to be true. In reasonable and justified reliance upon said misrepresentations, Plaintiffs purchased the Phenylephrine Products.

66.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew or should have known were and are ineffective for their advertised purpose.

### COUNT III

**Breach of Express Warranty**

**(On Behalf of the Plaintiff and the Class Against All Defendants)**

14

67.     Plaintiff incorporates by reference and realleges every allegation contained above as though fully set forth herein.

68.     Section 2-313 of the Uniform Commercial Code provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description. 810 ILCS 5/2-313.

69.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased the Phenylephrine Products. The terms of those contracts include the cognitive health benefit promises and affirmations of fact made by Defendants on the Phenylephrine Products' labels and packages as described above. These representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendants on the other.

70.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class Members.

71.     At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff and the Class members the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

15

72.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class members by not providing the Phenylephrine Products that could provide the cognitive health benefits as represented and described above.

73.     As a result of Defendants' breach of their warranty, Plaintiff and the Class members have been damaged in the amount of the purchase price of the Phenylephrine Products they purchased.

## COUNT IV

### Strict Liability Design and Manufacturing Defect

### (On Behalf of the Plaintiff and the Class Against All Defendants)

74.     Plaintiff incorporates by reference and realleges every allegation contained above as though fully set forth herein.

75.     At the time that the Phenylephrine Products left the control of the Defendants, the Phenylephrine Products were defective as a result of Defendants' design, manufacture, alteration, or modification. The defects included, but are not limited to, materials that are unsafe for human consumption, and/or materials not identified on the Product itself.

76.     At all relevant times, Defendant knew and intended that the Phenylephrine Products would be purchased and used by members of the general public who would rely on Defendants to properly identify the relevant characteristics and usefulness of the Product.

77.     At the time of the incidents giving rise to this Complaint, the Phenylephrine Products were being used in a manner that was foreseeable by the Defendants and in a manner which the Phenylephrine Products were intended to be used.

78.     Defendants knew or should have known their manufacture or design of the Phenylephrine Products was defective, causing the Phenylephrine Products to fail to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

79.     In addition, the risks inherent in the design of the Phenylephrine Products outweigh any benefits of that design.

80.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class mebmers have suffered and continue to suffer serious harm.

<u>**COUNT V**</u>

**Fraudulent Misrepresentation**

**(On Behalf of the Plaintiff and the Class Against All Defendants)**

81.     Plaintiff incorporates by reference and realleges every allegation contained above as though fully set forth herein.

82.     At all relevant times, Defendants had the duty and obligation to truthfully represent to Plaintiff and the Class members the facts concerning the ineffectiveness of phenylephrine and the Phenylephrine Products.

83.     Instead, Defendants aggressively (and falsely) advertised the effectiveness of phenylephrine and the Phenylephrine Products, despite the fact that each such Defendant knew that phenylephrine and the Phenylephrine Products were entirely ineffective against congestion and the associated cold & flu symptoms the Phenylephrine Products were advertised to treat.

84.     Defendants willfully deceived Plaintiff and the Class members by making these intentional misrepresentations regarding the efficacy of phenylephrine and the Phenylephrine Products.

85.     At the time the aforesaid misrepresentations were made, Defendants intended to induce Plaintiff and the Class members to rely upon such misrepresentations.

86.     At the time Defendants made the above-described misrepresentations, Plaintiff and the Class members reasonably believed them to be true.

87.     In reasonable and justified reliance upon said misrepresentations, Plaintiff and the Class members purchased the Phenylephrine Products.

88.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class members suffered serious financial harm, including the expenditure of substantial sums to purchase the Phenylephrine Products, which Defendants knew were and are ineffective for their advertised purpose.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually, and on behalf of the proposed Class, prays the Court grant the following relief:

    a.  Enter an order certifying this action as a class action and appointing Daryl Means as the representative of the Class.

    b.  Enter an order appointing Benjamin Schmickle, Sophie Zavaglia, and Benjamin McIntosh of SWMW Law, LLC, as counsel of the Class.

    c.  In the event the Class is certified, enter judgment in favor of Plaintiff and members of the Class in the sum of the purchase price of the Phenylephrine Products.

    d.  Enter judgment awarding class counsel reasonable attorney's fees and all expenses of this action to be paid by Defendants, and to require Defendants to pay the costs and expenses of class notice and administration.

e. Enter judgment awarding Plaintiff a reasonable service award for serving as the representatives of the classes.

f. Enter a judgment of permanent injunction against Defendants prohibiting Defendants from selling the Phenylephrine Products to Illinois consumers.

**PLAINTIFF DEMANDS TRIAL BY JURY OF 12.**

Respectfully Submitted,
SWMW LAW, LLC

By:    */s/ Benjamin S. McIntosh*
Benjamin R. Schmickle, #6270568
Sophie A. Zavaglia, #6315854
Benjamin S. McIntosh, #6325759
ben@swmwlaw.com
sophie@swmwlaw.com
ben.mcintosh@swmwlaw.com
Attorneys for Plaintiff
63701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 – Facsimile

### *3:23cv3494, Means V. Johnson & Johnson Holdco (Na), Inc. Et Al*

US District Court Docket

United States District Court, Illinois Southern

(East St. Louis)

**This case was retrieved on 10/26/2023**

## Header

**Case Number:** 3:23cv3494
**Date Filed:** 10/25/2023
**Assigned To:** Magistrate Judge Mark A. Beatty
**Nature of Suit:** Product Liability (365)
**Cause:** Petition for Removal- Product Liability
**Lead Docket:** None
**Other Docket:** Circuit Court of Madison County,
2023LA001311
**Jurisdiction:** Diversity

**Class Code:** Open
**Statute:** 28:1441
**Jury Demand:** Plaintiff
**Demand Amount:** $0
**NOS Description:** Product Liability

## Participants

| Litigants | Attorneys |
| --- | --- |
| Daryl Means<br>an individual, on behalf of himself and all others similarly situated |<br>**Plaintiff** | Benjamin Stephen McIntosh<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>SWMW Law, LLC<br>701 Market Street Suite 1000<br>St. Louis, MO  63101<br>USA<br>314-480-5180 Fax: 314-932-1566<br>Email:Ben.Mcintosh@swmwlaw.Com |
| JOHNSON & JOHNSON HOLDCO (NA), INC.<br>**Defendant** | |
| Glaxosmithkline LLC<br>**Defendant** | |
| Reckitt Benckiser LLC<br>**Defendant** | |
| Bayer Healthcare LLC<br>**Defendant** | Eric M. Roberts<br>ATTORNEY TO BE NOTICED<br>DLA Piper LLP (US) - Chicago<br>444 West Lake Street Suite 900<br>Chicago, IL  60606<br>USA<br>312-368-2167 Fax: 312-251-2859<br>Email:Eric.Roberts@dlapiper.Com |
| The Procter & Gamble Company<br>**Defendant** | |
| Walgreen Co.<br>**Defendant** | |
| Target Corporation<br>**Defendant** | |

3:23cv3494, Means V. Johnson & Johnson Holdco (Na), Inc. Et Al

## Litigants                                    ## Attorneys

CVS Pharmacy, Inc.
**Defendant**

Amazon.com, Inc.
**Defendant**

AMAZON.COM SERVICES LLC
**Defendant**

Does 1-20
**Defendant**

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 10/25/2023 | NOTICE OF REMOVAL  from Circuit Court of Madison County, case number 2023LA001311 ( Filing fee $ 402 receipt number AILSDC-5218326), filed by Bayer Healthcare LLC. (Attachments: # 1 Exhibit 1 - State Court Complaint, # 2 Exhibit 2 - Service, # 3 Exhibit 3 - State Court Docket, # 4 Civil Cover Sheet)(Roberts, Eric) (Entered: 10/25/2023) | |
| 2 | 10/25/2023 | NOTICE of Appearance by Eric M. Roberts on behalf of Bayer Healthcare LLC (Roberts, Eric) (Entered: 10/25/2023) | |
| 3 | 10/25/2023 | Federal Rule of Civil Procedure 7.1 Disclosure Statement by Bayer Healthcare LLC identifying Corporate Parent Bayer AG, Other Affiliate Bayer Healthcare Pharmaceuticals Inc., Other Affiliate Schering Berlin Inc., Other Affiliate Bayer Corporation, Other Affiliate Bayer Pharma AG, Other Affiliate Bayer World Investments B.V., Other Affiliate Bayer US Holding LP, Other Affiliate Bayer Solution B.V., Other Affiliate Bayer Medical Care Inc., Other Affiliate Bayer CropScience AG, Other Affiliate NippoNex Inc., Other Affiliate Bayer West Coast Corporation, Other Affiliate Bayer Essure Inc., Other Affiliate Bayer Consumer Care Holdings LLC, Other Affiliate MiraLAX LLC, Other Affiliate Bayer East Coast LLC, Other Affiliate Bayer Samson I LLC, Other Affiliate Bayer Samson II LLC, Other Affiliate Bayer HealthCare US Funding LLC., Other Affiliate Bayer HealthCare Holdings LLC., Other Affiliate Bayer Intellectual Property GmbH for Bayer Healthcare LLC. (Attachments: # 1 Exhibit A)(Roberts, Eric) (Entered: 10/25/2023) | |
| 4 | 10/26/2023 | NOTICE OF INITIAL ASSIGNMENT TO A U.S. MAGISTRATE JUDGE: This case has been randomly assigned to United States Magistrate Judge Mark A. Beatty pursuant to Administrative Order 347. The parties are advised that their consent is required if the assigned Magistrate Judge is to conduct all further proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. 636(c) and Federal Rule of Civil Procedure 73. As set forth in Administrative Order No. 347, each party will be required to file a Notice and Consent to Proceed Before a Magistrate Judge Jurisdiction form indicating consent or non-consent to the jurisdiction of the assigned Magistrate Judge. If all parties do not consent to the Magistrate Judge's jurisdiction, the case will be randomly assigned to a district judge for all further proceedings and the parties cannot later consent to reassignment of the case to a magistrate judge. The parties are further advised that they are free to withhold consent without adverse substantive consequences. Within 21 days of this Notice, the following party or parties must file the attached form indicating consent to proceed before the assigned Magistrate Judge or an affirmative declination to consent: Bayer Healthcare LLC. A link regarding the magistrate | |

3:23cv3494, Means V. Johnson & Johnson Holdco (Na), Inc. Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | judges in this district is attached for your convenience: https://www.ilsd.uscourts.gov/documents/BenefitsofConsent.pdf. All future documents must bear case number 3:23-CV-3494-MAB. Refer to Civil/Removal Case Processing Requirements, found on the ILSD website, for further service information. Consent due by 11/16/2023 (clw) (Entered: 10/26/2023) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**