BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION | MDL DOCKET NO. 3089 |

**MOVANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED AND <u>CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

Dated:  November 1, 2023

Defendants and the responding Plaintiffs all agree that the Phenylephrine actions should be centralized. To date over 65 Phenylephrine actions have been filed in federal courts across the United States, with the clear prospect of many more to come. A sufficient number of common factual issues also exist such that transfer and centralization, pursuant to 28 U.S.C. § 1407, is the most efficient means to litigate these cases against the several named Defendants going forward. Given that the litigation of these cases is still in the early stages, now is also the opportune time for transfer and centralization to occur.

Reiterating the point that Movants made in their opening brief (ECF No. 1), the District of New Jersey is the most appropriate venue to which these cases should be transferred and centralized. Indeed, the facts remain that: (a) many of the Defendants are headquartered in New Jersey; (b) New Jersey is where key evidence and witnesses will be located; (c) New Jersey is otherwise conveniently located; and (d) the District of New Jersey has ample judicial resources to handle the proposed MDL. Moreover, and not insignificantly, based on the foregoing facts, the District of New Jersey is a venue where relevant decisions on issues pertinent to this litigation were made and where trials can be conducted against the predominant defendants without any *Lexecon* issues.[1]

Defendants disagree, and argue that the District of New Jersey's docket is purportedly congested and that the proceedings should be transferred to either the Southern or Eastern Districts of New York. However, Defendants' "congestion" argument (their *sole* substantive argument against the District of New Jersey) inaccurately assesses the actual caseload of each judge in New Jersey and ignores that the District of New Jersey filled *six* judicial vacancies in the last three years, with two more candidates awaiting floor votes in the Senate. Further, given that the

---

[1] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

significant MDLs in the District are mass tort litigations (at least two of which are resolved),[2] Defendants' presentation of the statistical picture also fails to reflect the reality on the ground—where a significant number of actions pending in the District of New Jersey are consolidated before two judges for pre-trial proceedings. A fair assessment of the District of New Jersey's current caseload thus further militates in favor of transferring and centralizing these actions there.

## ARGUMENT

**I.  Transfer for Consolidation or Coordination of Pretrial Proceedings Is Proper.**

All parties agree consolidation and coordination of pretrial proceedings is proper here. These related actions share the same core factual question: is Phenylephrine ineffective as an oral decongestant? Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other issues, and conserve the resources of the parties, their counsel, and the judiciary.

Moreover, the actions sought to be centralized are all recently-filed, no significant progress has been made in any of them, and the actions have been filed in numerous districts across the United States. Centralization thus serves the convenience of the parties and witnesses and promotes the just and efficient conduct of the actions. Finally, centralization of this consumer-related litigation aligns with the Panel's recent decisions ordering the centralization of similar cases. *See In re Philips Recalled CPAP, Bi-Level Pap, & Mech. Ventilator Prod. Liab. Litig.*, 568 F. Supp. 3d 1408, 1410 (J.P.M.L. 2021).

---

[2] *See In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practice and Products Liability Litigation* (MDL 2738); *In re: Proton Pump Inhibitor Products Liability Litigation* (MDL 2789); *In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation* (MDL 2973); *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation* (MDL 2875); and *In re: Allergan Biocell Textured Breast Implant Products Liability Litigation* (MDL 2921).

**II. The Panel Should Centralize the Related Actions in the District of New Jersey.**

**A. Responding Defendants Fail to Show That the Southern and/or Eastern Districts of New York Are Superior to New Jersey as Transferee Fora.**

Defendants' first argument for centralization in New York City—that some "evidence and witnesses are located in or near New York," ECF No. 24, at 14 ("Br.")—only supports New Jersey as the better transferee forum. For example, Defendants tout that New York *State* is the headquarters of Defendants Pfizer and Price Chopper Foods, *id.*, but fail to mention that Pfizer and Price Chopper Foods did not join Defendants' response brief, and that the location of Price Chopper Foods referenced by Defendants is in Schenectady, New York—*i.e.*, upstate New York, approximately 160 miles from *both* Manhattan and New Jersey and in a district that no party has proposed for centralization (the Northern District of New York).

Next, Defendants argue that New York City is convenient because five Defendants are headquartered in the District of New Jersey, which is nearby. *Id*. Oddly and without irony, Defendants appear to argue that multiple Defendants' location in New Jersey supports centralization in New York, but that somehow those same Defendants' location *in New Jersey* does nothing to support *New Jersey* as the appropriate forum. This argument makes little sense. Based on Defendants' logic, New Jersey is obviously a more convenient forum for Defendants and potential witnesses: it is where the most Defendants are headquartered (more than in any district proposed by Defendants or any other Plaintiff) and is otherwise convenient to other Defendants (such as those headquartered in, *e.g.*, Philadelphia). When assessing the appropriateness of potential transferee districts, the Panel often values the central location of documents and witnesses, as that location typically provides the most convenient forum for the litigation. Here, multiple Defendants' New Jersey headquarters are where crucial decisions regarding the sale of oral decongestants using Phenylephrine were made, demonstrating that it is the locus of operative

facts and the geographically central location for this nationwide litigation. This weighs heavily toward centralization there.[3]

Defendants' other arguments for New York City should be afforded little weight. Defendants argue, without citation to evidence, that eighteen Plaintiffs reside in "New York," but do not elaborate on whether such Plaintiffs live in the Southern or Eastern Districts of New York, or even in one of the more far-flung districts of New York. Br. at 14. In any event, the vast amount of factual discovery will concern Defendants' actions, not those of a handful of consumer Plaintiffs. With respect to the Southern District of New York, while Defendants recognize that no Phenylephrine cases are pending in the Southern District of New York, they contend the absence of a single filed action in that District (out of the more than 65 already filed) should not block centralization there. Br. at 16. But that rationale should only apply where, unlike here, no single location stands out as the geographic and evidentiary focal point for this nationwide docket. *See*

---

[3] *See, e.g., In re Samsung Customer Data Sec. Breach Litig.*, No. MDL 3055, 2023 WL 1811247, at *2 (J.P.M.L. Feb. 1, 2023) (transferring litigation to District of New Jersey where defendant had its headquarters, and "where common witnesses and other evidence likely will be found"); *In re FTX Cryptocurrency Exch. Collapse Litig.*, No. MDL 3076, 2023 WL 3829242, at *3 (J.P.M.L. June 5, 2023) (transferring actions to district from which "[a] significant part of FTX's conduct allegedly emanated . . ., where it had its U.S. headquarters"); *In re Equifax. Inc.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017) (transferring actions to Northern District of Georgia, where main defendant is headquartered as "relevant documents and witnesses thus likely will be found there."); *In re Vytorin/Zetia Mktg.*, 543 F Supp. 2d 1378 (J.P.M.L 2008) (centralizing cases in District of New Jersey because two of defendants had corporate headquarters in New Jersey, and thus, relevant discovery could be found there, and transfer to that district enjoyed support of defendants and several plaintiffs); *In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 96 F. Supp. 3d 1381, 1383 (J.P.M.L. 2015) (selecting District of New Jersey as transferee district where defendants "are headquartered . . . and thus many witnesses and relevant documents are likely to be found there"); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F Supp. 2d 1405 (J.P.M.L 2008) (finding District of Maine was appropriate transferee district because, among other reasons, defendant had its headquarters in that district, and thus relevant documents and witnesses would be found there); *In re Wash. Mut., Inc.*, 536 F Supp. 2d 1377 (J.P.M.L 2008) (centralizing litigation in Western District of Washington where defendant was headquartered and witnesses and documents were located).

*In re Acetaminophen - ASD/ADHD Prod. Liab. Litig.*, 637 F. Supp. 3d 1372, 1376 (J.P.M.L. 2022). New Jersey is just such a focal point.

Defendants contend the convenience for Plaintiffs' counsel weighs in favor of centralization in one of the requested New York Districts, because, in 29 of the constituent cases, Plaintiffs' counsel have offices in "New York," and 13 Defendants' counsel have offices in New York City. Br. at 14-15. Even those numbers are misleading: less than half of the Plaintiffs' counsel with offices in New York have offices in New York City, and litigation by a lawyer based in New York City in one of the courts sitting in the District of New Jersey (a PATH or NJ Transit train ride away) can scarcely be described as "inconvenient." In any event, this Court has

> long held that the convenience of counsel "is not by itself a factor to be considered under Section 1407 in the Panel's decision whether to order transfer or in the selection of a transferee forum for a group of actions. Only if the inconvenience of counsel would impinge on the convenience of the parties or witnesses would the convenience of counsel become a factor to be considered by the Panel."

*In re DirectBuy, Inc., Mktg. & Sales Pracs. Litig.*, 682 F. Supp. 2d 1349, 1350–51 (J.P.M.L. 2010) (quoting *In re Anthracite Coal Antitrust Litig.,* 436 F. Supp. 402, 404 (J.P.M.L.1977)).

Defendants also argue that centralization in New York is also favored because of easy access by air or rail, but this is equally true for centralization in New Jersey, which has a major international airport, with direct, frequent, and economical flights available from almost all major cities in the United States, as well easy access via Amtrak and local train services. *See Johnson & Johnson*, 220 F. Supp. 3d at 1359 (transferring actions to District of New Jersey because district "is a convenient and accessible forum for this nationwide litigation"); *Marrone v. Teleservices Grp., Inc.*, No. 02–CV–5763, 2008 WL 2228990, at *3 (E.D.N.Y. May 28, 2008) ("defendants and any non-party witnesses will not be inconvenienced in light of proximity between New Jersey and the Eastern District. At most, any witnesses will have to travel approximately sixty (60) miles"); *cf. In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003)

(selecting transferee district based, in part, on its geographic centrality); *Columbus McKinnon Corp. v. SST Casting, Inc.*, No. 08-CV-1672, 2009 WL 1563922, at *7 (W.D.N.Y. June 3, 2009) ("Defendants' claims of inconvenience are greatly exaggerated[. . . .] [b]ecause Buffalo is easily accessible by air or other means, . . . . And because New York and Ohio are essentially border states, this Court finds that the commute is not as inconvenient as alleged").  The Martin Luther King Building & U.S. Courthouse of the District of New Jersey is within a nine-minute drive (barring traffic conditions) of Newark Liberty Airport ("EWR"), which offers regular flights to the places where the parties in the Related Actions are located. EWR is one of the largest airports in the United States.  As of 2021, EWR served 43.4 million passengers, which made it the 23rd busiest airport by passenger traffic in the world.

> **B.  The District of New Jersey Has the Resources, Judicial Expertise, and Favorable Caseload to Conduct Efficient Pretrial Proceedings.**

The District of New Jersey offers the judicial expertise, resources, and favorable caseload to conduct efficient pretrial proceedings. *See In re Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (transferring actions to an "experienced transferee judge who has a caseload favorable to accepting this assignment"); *In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) (assigning MDL to judge with no other pending MDLs despite defendants' request for MDL to be centralized elsewhere).  Indeed, there are numerous capable district judges in the District of New Jersey who would be outstanding candidates for this MDL, including Judges Michael E. Farbiarz, Julien X. Neals, and Zahid N. Quraishi, each confirmed within the past three years and none of whom is currently assigned an MDL.

Defendants do not challenge the expertise of the District of New Jersey in handling MDLs, but, rather, endeavor to provide statistics to portray the District of New Jersey as lacking in resources relative to the two districts that they propose, the Eastern and Southern Districts of New

York. However, the District of New Jersey has resources on par with, if not superior to, the courts that Defendants propose. Moreover, the statistics Defendants present in support of their argument are misleading. First, Defendants' arguments with respect to case disposition, Br. at 17, fail to support transfer to either the Southern or Eastern Districts of New York, and are, in fact, neutral. For the twelve-month period ending June 30, 2023, the median time from filing to disposition for civil cases was 6.0 months in the Southern District of New York, 5.2 months in the Eastern District of New York, and 10.8 months in the District of New Jersey.[4] The moving Defendants argue that these figures disfavor New Jersey. Br. at 17. Yet there is no significant difference in congestion in these courts. Defendants overlook that, for that same time period, the median time from filing to *trial* in civil cases was 47 months in the Southern District of New York, 63.8 months in the Eastern District of New York, and 56.5 months in the District of New Jersey.[5] The relative proximity of these pending-to-trial time periods indicates that this factor does not militate for or against transfer to one of the New York Districts.

Second, Defendants overlook that "[t]he more appropriate metric is instead weighted filings per judge, a figure that accounts for the fact that different types of civil and criminal actions take different amounts of time to resolve." *Est. of Bentley v. Marriott Int'l Inc.*, No. 3:15-CV-1412-B, 2015 WL 5836256, at *5 (N.D. Tex. Oct. 2, 2015) (footnote omitted).[6] For the year ending

---

[4] *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023) (available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last visited Oct. 31, 2023).

[5] "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (citations omitted).

[6] *See also* Admin. Office of U.S. the Courts, Explanation of Selected Terms, https://www.uscourts.gov/sites/default/files/explanation-of-selected-terms-september-2014_0.pdf

7

June 30, 2023, the District of New Jersey has fewer "weighted filings" per judge (454) than the Southern (534) and Eastern Districts of New York (584). *See* United States Courts, Federal Court Management Statistics, June 2023, District Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf (last accessed Oct. 31, 2023); *see also Navajo Nation v. Urb. Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1260 (D.N.M. 2013) (district with lower number of weighted filings per judge is less congested court).

Third, equally unavailing is Defendants' argument that purportedly lower judicial caseloads for the Southern and Eastern Districts of New York weigh against a transfer to the District of New Jersey. Br. at 15, 17. Defendants argue that the latter has 3,732 cases per judge, *id.* at 15-16, 17, while the Southern and Eastern Districts of New York have 626 and 869 cases per judge, respectively, *id.* at 15, 17. But Defendants' representation is deceptive because it fails to account for the fact that in the District of New Jersey there are two large MDLs, *Johnson & Johnson Talcum Powder Products Marketing, Sales Practice and Products Liability Litigation* (MDL 2738, filed in 2016) and *Proton Pump Inhibitor Products Liability Litigation* (MDL 2789, filed in 2017), pending before *two* judges, and totaling 52,995 and 12,826 cases each, respectfully.[7]

---

(last accessed Oct. 31, 2023) (explaining that term "weighted filings" "account[s] for the different amounts of time district judges require to resolve various types of civil and criminal actions. . . . . Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed . . .; and cases demanding relatively little time from judges receive lower weights . . . .").

[7] In addition, there are three other MDL's pending in New Jersey with well over 4,000 associated cases. These three litigations include *In re Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation* (MDL 2973) (1,968 cases, historically), *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation* (MDL 2875) (1,385 cases, historically), and *In re Allergan Biocell Textured Breast Implant Products Liability Litigation* (MDL 2921) (1,253 cases, historically). *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2023.pdf.

Those approximately 65,000 cases, pending before two of the District's 17 active Article III judges, account for the purported "disparity" in "pending cases" statistics for the proposed transferee districts, impact general statistics regarding the amount of time from filing to resolution, and give the appearance that many more cases are pending in this District than actually are.[8] *See Kimball Hosp., Inc. v. World Master Craftsmen, Inc.*, No. 322CV00164MPBMJD, 2023 WL 5804346, at *9 (S.D. Ind. Aug. 7, 2023) (holding that docket congestion factor did not militate for or against transfer where "the difference [in weighted filings per judgeship between two districts] . . . is likely attributable to a large MDL pending in the Southern District of Indiana"); *cf. United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 84-85 (D.D.C. 2011) (treating relative congestion of dockets as neutral factor in transfer analysis, noting that these statistics "do not . . . reflect the differences in the caseloads carried by different individual judges in each district," and that "[a]ny disparities between the lengths of time from filing to trial may also reflect differences other than congestion, such as differences in the types of cases that are likely to be tried in each district and the level of discovery and pre-trial motion practice required in those cases"). When those MDLs are removed from the total "pending cases" figures, the number of cases pending before each judge in New Jersey no longer favors the New York Districts. Moreover, it has recently been reported that the largest defendant in *Proton Pump* has reached a settlement, and the *Fosamax* MDL (over 500 cases alone) is over and on appeal.

Finally, Defendants put great stock in the number of MDLs pending in each of the New York Districts they propose, in the first instance, and New Jersey. In doing so, however,

---

[8] Defendants plainly acknowledged the impact the many cases associated with the *3M Earplug* litigation had on the case averages for the Northern District of Florida (Br. at 20 n.12) when this consideration did not meaningfully change the analysis per judgeship. In contrast, Defendants did no such calculation in regards to New Jersey and the number of MDL-associated cases pending before that District per judgeship.

9

Defendants again overlook significant underlying facts. Of the twelve MDLs currently pending in New Jersey, only five have more than 1,000 associated actions, with these MDLs pending before only three of the 17 New Jersey judgeships. The remaining seven MDLs have only 102 associated cases among them, an average of approximately fifteen cases for each MDL. The Southern District of New York, in contrast, brings an average of over 100 associated cases to the eleven judges currently assigned an MDL, and the Eastern District has an average of more than 360.[9]

In sum, the New York Districts and the District of New Jersey each have pending MDLs; nothing regarding the Southern or Eastern District of New York's caseload relative to the District of New Jersey's supports transfer to either district.

### III. ALTERNATIVELY, THE PANEL SHOULD CENTRALIZE THE PROCEEDINGS IN THE EASTERN DISTRICT OF NEW YORK

In the alternative, to the extent that the Panel concludes that these cases should be centralized in the Eastern or Southern District of New York, the Movants respectfully submit that centralization in the Eastern District would be more appropriate than the Southern District. There are fewer MDLs present pending in that District than there are pending in the Southern District, eight of the responding Plaintiffs support the Eastern District of New York as an alternative to the District of New Jersey, and five of the responding Plaintiffs argue in favor of centralization in the Eastern District of New York. Case NYE/1:23-cv-07395, Doc. 8; Case MDL No. 3089, Doc. 221. Furthermore, the thirteen responding Defendants support centralization in the Eastern District of New York. ECF No. 9. For the reasons set forth in the responding Plaintiffs' briefs, the moving Plaintiffs agree that, in the alternative to the District of New Jersey—which moving Plaintiffs

---

[9] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2023.pdf.

respectfully aver is preferable—the Eastern District of New York would be an appropriate transferee venue for this litigation.

## CONCLUSION

For the above-stated reasons, as well as for the reasons set forth in the Movant's opening brief, the Panel should transfer the Actions set forth on the Schedule of Actions, the Notices of Action, and all subsequently filed tag-along cases, for coordinated or consolidated pretrial proceedings before a United States District Court in the District of New Jersey. Alternatively, the Actions should be transferred and consolidated or coordinated in the Eastern District of New York.

Dated: November 1, 2023

          Respectfully submitted,

/s/ James E. Cecchi
James E. Cecchi
Donald A. Ecklund
Jordan M. Steele
**CARELLA, BYRNE, CECCHI,**
  **BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com
decklund@carellabyrne.com
jsteele@carellabyrne.com

/s/ Adam J. Levitt
Adam J. Levitt
John E. Tangren
Daniel R. Schwartz
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dschwartz@dicellolevitt.com

/s/ Christopher A. Seeger
Christopher A. Seeger
David R. Buchanan
Scott A. George
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sgeorge@seegerweiss.com

/s/ Stuart A. Davidson
Stuart A Davidson
Paul J. Geller
**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Telephone: (561) 750-3000
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com

*Counsel for Movants*