**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE ORAL PHENYLEPHRINE MARKETING AND SALES PRACTICES LITIGATION** | **MDL No. 3089** |

**REPLY MEMORANDUM OF JOHNSON & JOHNSON CONSUMER INC.
IN SUPPORT OF MOTION FOR TRANSFER OF *TUOMINEN V. JOHNSON &
JOHNSON CONSUMER INC.* PURSUANT TO 28 U.S.C. § 1407**

## INTRODUCTION

90 interested parties (77 plaintiffs and 13 defendants) have spoken up to support centralization of the more than 70 consumer class actions challenging the efficacy of oral phenylephrine ("PE") as a nasal decongestant.  Three plaintiffs (represented by the same counsel and with similar complaints), however, including Plaintiff Tina Tuominen, oppose the inclusion in the proposed MDL of their actions challenging the efficacy of oral PE as a nasal decongestant. Tuominen specifically opposes the inclusion of her action against Johnson & Johnson Consumer Inc. ("JJCI") in the proposed MDL.  If Tuominen's action is not centralized, it risks opening the floodgates to copycat claims and other attempts at creative pleading to avoid MDL treatment.  That should not be permitted.  The MDL should centralize *all* consumer claims challenging whether products containing oral PE were properly labeled and marketed as effective nasal decongestants, including those of Tuominen.

Tuominen argues that her claims challenging PE's efficacy with respect to two of JJCI's decongestant products should not be consolidated with other plaintiffs' claims challenging PE's efficacy because she "do[es] not at all challenge the efficacy of any decongestant product." Response at 2.[1]  But Tuominen mischaracterizes her own complaint, which repeatedly alleges that oral PE is ineffective, *see* Compl. ¶¶ 2, 6, 7, 44, and prominently features the FDA advisory committee's September 2023 conclusion that PE is not effective as a nasal decongestant, *see id.*

---

[1] In this reply memorandum, "Response" refers to the Maximum Strength Plaintiffs' Response of Interested Parties Opposing Transfer of Their Actions (ECF No. 220).  "Compl." refers to the Complaint, *Tuominen v. Johnson & Johnson Consumer Inc.*, Case No. 1:23-cv-13796 (N.D. Ill.) (ECF No. 1).  "Defendants' Response" refers to the Response of Defendants in Support of Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 (ECF No. 230).  Tuominen filed the Response together with two other plaintiffs raising similar claims, Mohamad Tlaib and Rose Riccio. Response at 1.  Because Tlaib and Riccio's lawsuits were not included in the original motion to transfer (*see* ECF No. 1-2), those actions are not presently before the Panel.

¶¶ 2, 27.  Her action therefore raises the same factual and legal questions at issue in the other actions in this proposed MDL.

Tuominen nevertheless argues that her claims are different because they are styled as challenges to the truthfulness of the phrase "maximum strength" on the labels of two JJCI products. Response at 2.  Tuominen's claims that the "maximum strength" language is deceptive are based primarily on her allegation of PE's inefficacy.  *See* Compl. ¶ 5.  To the extent those claims may raise distinct factual issues from other claims focused solely on the efficacy of oral PE, any such distinct factual issues can be easily managed by the transferee court.  There is no basis for carving out Tuominen's claims, and her case should be centralized under 28 U.S.C. § 1407 along with all other consumer class actions challenging the labeling and marketing of PE containing products.

## ARGUMENT

### I.  TUOMINEN'S ACTION CHALLENGING THE EFFICACY OF PRODUCTS CONTAINING ORAL PHENYLEPHRINE SHOULD BE CENTRALIZED WITH THE OTHER ACTIONS

This Panel may centralize two or more civil cases for coordinated pretrial proceedings when (i) transfer "will promote the just and efficient conduct of such actions," (ii) the cases "involv[e] one or more common questions of fact," and (iii) transfer will further "the convenience of parties and witnesses."  28 U.S.C. § 1407(a).  As Defendants explained in their joint response in support of transfer, the requirements for centralization are readily met.  All of the actions listed in the initial motion to transfer, and all cases identified as potential tag-along actions, present overlapping legal and factual questions stemming from the contention that PE is not effective as a

nasal decongestant, making centralization convenient and efficient.  *See* Defendants' Response at 8-14.[2]  That is no less true for Tuominen's suit.

Tuominen argues that her suit should not be included with other actions challenging the efficacy of PE because, she contends, her claims "do not at all challenge the efficacy of any decongestant products, nor is proof that PE decongestants lack any efficacy an issue in" her case. Response at 2.  Instead, she argues, she challenges only the use of "Maximum Strength" on the packaging of the products at issue.  *See id.* at 3.

But Tuominen's intention to prove that the JJCI products at issue are not "maximum strength" decongestants *because* their active ingredient—PE—is allegedly ineffective for nasal decongestion is readily apparent from the face of her complaint.  Her complaint is littered with allegations that PE is "ineffective" as an "active oral nasal decongestant."  Compl. ¶ 5; *see also, e.g.*, *id.* ¶ 6 (alleging that "studies have shown phenylephrine hydrochloride is no more effective than a placebo.").  She contends that the "maximum strength" labels are "misleading because nasal decongestants that are actually effective . . . are available."  *Id.* ¶ 7; *see also id.* ¶ 44 ("[JJCI] omitted from the products' labeling the fact that there are other, non-prescription products available in the market that are effective decongestants . . . .").  And this theory explains why her complaint prominently alleges that an FDA advisory committee "has determined [PE] to be no more effective as a nasal decongestant than a placebo"—and why, like the other actions in this proposed MDL, her complaint comes on the heels of that advisory committee meeting.  *Id.* ¶¶ 2, 27.  In short, Tuominen intends to prove factually that PE is ineffective in service of her theory

---

[2] The existence of "common questions of fact" among the cases to be centralized does not mean that any of those cases is amenable to class treatment.  *See* Defendants' Response at 12 n.7.  JJCI does not concede that the requirements of class certification are met in Tuominen's action or any other action in the proposed MDL.

that the JJCI products she challenges are not, in fact, the "maximum strength" nasal decongestants available.

Tuominen's action should therefore be centralized for the same reasons as the other consumer class actions in this proposed MDL. Because her suit challenges PE's efficacy, it presents the same threshold legal questions under the doctrines of preemption and primary jurisdiction. *See* Defendants' Response at 8-11.

Tuominen's action also raises factual questions that justify centralization with the other actions challenging PE's efficacy. It raises questions, for instance, regarding the significance of the FDA advisory committee's conclusion that oral PE is ineffective; the weight of competing scientific studies; the regulatory history of PE; the labeling requirements for PE under current regulations; and what action, if any, the FDA takes in response to the advisory committee's determination. *See id.* at 12-13. For these reasons, centralization would serve the convenience of parties and witnesses by reducing duplicative discovery and motion practice. *See id.* at 13-14.

Tuominen also argues that centralization is unwarranted because she alleges that the "maximum strength" labels are deceptive for "starkly different" reasons from the alleged ineffectiveness of PE. Response at 2 (citing Compl. ¶¶ 3-5). But as the allegations she cites make clear, her core theory is that the JJCI products at issue are not "maximum strength" because PE is "inferior" to pseudoephedrine and "ineffective" as an "oral nasal decongestant ingredient" (Compl. ¶ 5)—the same factual theory underlying the other actions in the proposed MDL. Tuominen also contends her case is "materially different" because "the products include a regular strength dose of acetaminophen such that there is no basis to claim they offer a *Maximum Strength* dose." Response at 5-6. This added argument about acetaminophen dosages does not justify opening the floodgates for enterprising plaintiffs to pick and choose among the various claims on the same or

4

similar product labels when the core of the challenge is the same, defeating the purpose of an MDL proceeding.[3]

As this Panel has consistently held, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Katz Interactive Call Processing Pat. Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007); *accord, e.g.*, *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015); *see also In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1346 (J.P.M.L. 2007) (centralizing actions because "[r]egardless of any differences among the actions, all actions arise from the same factual milieu, raising common factual questions"). That some individual cases may present "individualized factual issues" does not "negate the efficiencies to be gained by centralization." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (J.P.M.L. 2022). Tuominen's heavy reliance on the Panel's exclusion of the *Hohman* matter from *In re: Zicam Cold Remedy Marketing & Sales Practices Litigation* shows how comparatively weak her argument is here. Response at 6-7 (citing 655 F. Supp. 2d 1371 (J.P.M.L. 2009)). The multidistrict litigation created there centered on personal injury claims ("whether the product caused anosmia"), and the *Hohman* case was about product efficacy, and did "not include the issue of whether the [products'] caused anosmia." *Id.* at 1372-73. Here, all of the actions proposed for the MDL, including Tuominen's, challenge product efficacy.[4]

---

[3] As noted *supra* at n.1, Tuominen is one of three plaintiffs (with four lawsuits) currently seeking to exclude themselves from any MDL. Each case has been noticed as related by various defendants who support their transfer to an MDL, and while these other complaints also purport to challenge "maximum strength" claims, they too rely on extensive allegations that PE is ineffective.

[4] The other cases cited by Tuominen in the Response are readily distinguishable and addressed differences far more material than those presented here. For example, in *In re Welding Fume Products Liability Litigation*, 560 F. Supp. 2d 1356 (J.P.M.L. 2008), cited in the Response, the Panel vacated a conditional transfer order including a case in an MDL addressing "neurological injuries allegedly caused by exposure to manganese" because the case at issue addressed a (continued…)

In any event, any issues specific to Tuominen's "maximum strength" claims—to the extent they actually differ from the efficacy claims—can be easily managed by the transferee judge.  For instance, "[t]he transferee judge can address unique issues using separate discovery tracks for each defendant or platform and employ separate motion tracks, to the extent necessary." *In re Soc. Media*, 637 F. Supp. 3d at 1378.  And once common issues are resolved, a transferee judge has discretion to suggest remand for resolution of any remaining individual issues.  *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013).  There is thus no reason to carve out Tuominen's substantially overlapping "maximum strength" claims from this proposed MDL.[5]

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Response (ECF No. 230), *Tuominen v. Johnson & Johnson Consumer Inc.*, Case No. 1:23-cv-13796 (N.D. Ill.), should be centralized for pretrial proceedings in the Southern or Eastern District of New York.

---

completely different injury (laryngeal cancer) allegedly caused by exposure to a completely different material.  *Id.* at 1357.

[5] If this Court agrees with Tuominen that her claims "do not at all challenge the efficacy" of PE, Response at 2, then she will be precluded in later phases of her case from asserting that PE is ineffective.  *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel).

Dated: November 1, 2023

Respectfully submitted,

_/s/ Hannah Y. Chanoine_____

Hannah Y. Chanoine
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone: (212) 326-2128
hchanoine@omm.com

*Counsel for Defendant*
*Johnson & Johnson Consumer Inc.*