BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ORAL PHENYLEPHRINE LITIGATION | ) ) ) ) | MDL Docket No: 3089 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF JOHN COYLE TO THE MOTION FOR TRANSFER OF ACTIONS FOR CONSOLIDATED AND COORDINATED PRE-TRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

## I.   PRELIMINARY STATEMENT

Pursuant to Rule 6.2(e) of the Rules of the Judicial Panel on Multidistrict Litigation, Plaintiff John Coyle ("Plaintiff") submits his Interested Party Response to the Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings that was filed by Movants Barton, Gallo, Buscaglia, and Catanese ("Movants").[1]

Your undersigned's law firm represents Plaintiff in a class action lawsuit pending in the Eastern District of New York who is seeking recovery against GLAXOSMITHKLINE LLC; JOHNSON & JOHNSON CONSUMER COMPANIES, INC.; JOHNSON & JOHNSON CONSUMER INC. (f/k/a McNeil-PPC, Inc.); KENVUE INC.; and RECKITT BENCKISER LLC (collectively, "Defendants"), for injuries he and the proposed class sustained as a result of Defendants' fraudulent, deceptive, misleading, and/or otherwise unlawful acts and/or omissions regarding the sale of over-the-counter pharmaceutical products containing phenylephrine ("PE") directed to be taken orally. Specifically, Plaintiff alleges that Defendants represented to him, the proposed class, and the public at large that their oral PE products were effective as nasal decongestants and worked as advertised. Defendants' representations were false, misleading,

---

[1] *See* Movants' Motion for Consolidation and Transfer, MDL 3089 [Dkt. 1].

1

deceptive and/or otherwise unlawful because Defendants were aware or should have been aware that their oral PE products were no more effective than a placebo.

In addition to Plaintiff's action, Defendants, as well as other manufacturers of oral PE products, have been named as defendants in substantially similar class actions in which it is alleged that their oral PE products are ineffective (collectively referred to as "PE manufacturers"). The present motion seeks to consolidate all related class actions against PE manufacturers into one MDL.

For the reasons set forth herein, Plaintiff supports Movants' consolidation request and agrees that transfer and consolidation is warranted. Indeed, an MDL would likely be the most efficient and most appropriate course of action for the Panel because it would: (1) promote the just and efficient conduct of these actions; (2) prevent inconsistent pretrial rulings and duplicative discovery; and (3) conserve the resources of the judiciary, the parties and their counsel.

As to the most appropriate venue for this litigation to be centralized for pretrial proceedings, Plaintiff respectfully submits that this venue is the Eastern District of New York, as acknowledged by the PE manufacturers in their Response in Support of Motion for Transfer of Actions [Dkt. 230, pp. 14-17]. Specifically, (1) at least five actions are pending in the Eastern District of New York; (2) the Eastern District of New York is not inundated with MDLs, with only two pending, which is significantly lower than when compared to the other venues that have been proposed, especially the Southern District of New York which has 13 pending; and (3) the Eastern District of New York is a convenient and accessible location for the parties and witnesses, especially the PE manufacturers, many of which are located in New York and New Jersey or have counsel with offices located in New York. In the Eastern District of New York, two skilled jurists with MDL experience stand out as the appropriate jurists to oversee this complex action: the Honorable Judge Nicholas G.

Garaufis and the Honorable Judge Brian M. Cogan.

Alternatively, Plaintiff agrees with Movants that the United States District Court for the District of New Jersey would be an appropriate venue.

Plaintiff respectfully disagrees with the PE manufacturers that an appropriate venue for this litigation is the United States District Court for the Southern District of New York, especially given that no actions are currently filed there and it already has 13 MDLs.

## II. BACKGROUND AND FACTUAL CLAIMS

The PE manufacturers marketed and sold PE products as nasal decongestants and represented that they were effective as nasal decongestants and worked as advertised. Because of these representations, consumers, such as the Plaintiff, purchased their PE products, especially because it was easier to purchase the PE products over the counter as opposed to nasal decongestants containing pseudoephedrine, which could only be purchased behind store counters and typically required them to provide personal identification information.

Recently, on September 11, 2023 and September 12, 2023, a Drug Advisory Committee with the U.S. Food and Drug Administration ("FDA") held a meeting to "discuss the effectiveness of oral phenylephrine as an active ingredient in over-the-counter (OTC) cough and cold products that are indicated for the temporary relief of congestion," and concluded that "orally administered PE is not effective as a nasal decongestant at the monographed dosage as well as up to 40 mg." As support for its finding above, the Advisory Committee referred to studies as far back as 1993 that supported "that oral phenylephrine is no more effective than a placebo."[2] At the conclusion of the

---

[2] *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 37, available at https://www.fda.gov/media/171915/download., (demonstrating that orally ingested PE failed to provide any benefit over the placebo); *Id.* at 38, (reporting "no difference in nasal decongestion scores for PE when compared to a placebo); Meltzer, EO, PH Ratner, and T McGraw, 2016, Phenylephrine hydrochloride modified-release tablets for nasal congestion: a randomized,

3

September 2023 meeting, the committee agreed by a 16-0 vote that scientific data does not support that oral PE is effective as a nasal decongestant.[3]

Plaintiff alleges that the PE manufactures knew or should have known at all relevant times that their oral PE products were ineffective as nasal decongestants. Nevertheless, they continued to unlawfully manufacturer, market and sell their oral PE products as effective nasal decongestants. The PE manufacturers' representations were false, deceptive, misleading and otherwise unlawful and they were unjustly enriched at the expense of consumers. Indeed, PE products accounted for approximately 80% of the market for over-the-counter nasal decongestants, with nearly $1.8 billion in sales made in the United States.

As of this filing, Plaintiff is aware of approximately eighty (80) putative class actions filed in twenty-five (25) different federal jurisdictions against various brand-name and generic manufacturers of products containing phenylephrine. Given the volume of actions filed and the overlapping nature of the facts and issues involved, consolidation and coordination of all oral PE actions into one MDL is undoubtedly warranted.

### III.   ARGUMENT

**A.   MULTIDISTRICT CONSOLIDATION IS APPROPRIATE**

Under 28 U.S.C. § 1407, the Judicial Panel may consolidate numerous cases if the moving party sufficiently demonstrates that (1) the lawsuits contain common questions of fact, (2)

---

placebo-controlled trial in allergic rhinitis patients, Ann Allergy Asthma Immunol, 116(1):66-71 (reporting on a Merck study demonstrating that, despite the higher dose, PE was no more effective than a placebo); *NDAC Briefing Document* at 53, (citing a Johnson and Johnson study evaluating an oral phenylephrine product finding "no beneficial effect of either PE treatment when compared to a placebo.")

[3] Final Summary Minutes of the NDAC meeting, September 11-12, 2023. Available at: https://www.fda.gov/media/172701/download.

consolidation would best serve the convenience of the parties and witnesses, and (3) consolidation promotes just and efficient conduct of such actions. See 28 U.S.C. § 1407. Plaintiff herein submits that these factors have been demonstrated, and, thus, centralization and coordination of pretrial proceedings against all PE manufacturers is warranted.

First, each of the oral PE actions contain common allegations regarding oral PE and its lack of efficacy. All of these actions are based upon the same or substantially similar underlying facts:

- the PE manufacturers are responsible for the design, research, manufacturing, testing, marketing, promotion, advertising, distribution and/or sale of oral PE products;

- science supports that oral PE is no more effective than a placebo;

- at all relevant times, the PE manufacturers knew or should have known that their oral PE products did not work as marketed, promoted, advertised, distributed and/or sold; and

- all plaintiffs have suffered economic damages as a result of the PE manufacturers' oral PE products.

The PE manufacturers' knowledge of the ineffectiveness of their oral PE products will be a central issue to all of these matters, especially given the conclusions reached at the recent Non-Prescription Drugs Advisory Committee Meeting. Additionally, the scientific studies showing lack of efficacy will be central to establishing the timeline of pharmacological awareness for all the PE manufacturers involved in the litigation. Further, the PE manufacturers will likely raise common defenses to the allegations against them that their oral PE products were ineffective at all relevant times. Thus, the "common factual issues" are not simply a majority but an overwhelming majority of the issues in play. *In re Park W. Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385 (J.P.M.L. 2012) ("Discovery and other pretrial proceedings will focus on the same series of events. Pretrial motions likely will be similar in these actions").

To this end, while this litigation does concern multiple PE manufacturers, this does not

mean that the commonality of fact consideration has not been met. Indeed, as the PE manufacturers acknowledge in their Response, these actions touch on common factual questions because "all Actions were triggered by the Advisory Committee's vote that phenylephrine is not effective as a nasal decongestant when consumed orally," such that issues of product labeling and scientific studies and their weight will be common to all PE manufacturers. *See* Response of Defendants, pp. 12-13. Their position is in accordance with other decisions by the Panel centralizing claims against multiple defendant manufacturers on an "industry-wide basis," especially where, as here, a number of plaintiffs used more than one product offered by competing manufacturers. *In re Hair Relaxer Mktg., Sales Practices, & Products Liab. Litig.*, 2023 WL 1811836 (J.P.M.L 2023)(noting that women using hair relaxers typically use different product lines, and as such, declining to centralize the litigation "would not resolve the complexities presented by managing cases involving multiple defendants and products. . . ."); *see also In Re Androgel Prods. Liab. Litig.,* 24 F.Supp.3d 1378 (J.P.M.L 2014); *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 261 F.Supp.3d 1351 (J.P.M.L. 2017).

Second, consolidation before one court would prevent inconsistent and repetitive judicial rulings and issues, would eliminate duplicative discovery, would be more convenient to the parties, witnesses and their counsel, and would conserve the resources of the judiciary, the parties and their counsel. The actions against all PE manufacturers are based upon similar allegations, potentially leading to similar—or in some cases identical—discovery issues, including issues relating to science and PE studies. Consolidation into one MDL would eliminate duplicative discovery regarding these issues and would conserve the resources of the parties, witnesses, and their counsel.

The parties will likely engage in substantially similar, if not identical, motion practice

regarding many of these issues and it is common sense to allow the MDL judge to rule once on the motion as opposed to a multitude of times. All actions are expected to focus on similar practices by all the PE manufacturers, and, as such, consolidation into one MDL will allow for the resolution of the overlapping issues to be streamlined. *In re Janus Mut. Funds Inv. Litig.*, 310 F.Supp.2d 1359 (J.P.M.L.2004).

Third, the need for centralization is evidenced by the fact that there are already approximately 80 related oral PE actions on file in at least approximately 25 district courts around the country that will ultimately result in separate scheduling orders and motion practice should a MDL not be created. It would be inefficient and uneconomical to have any sort of informal coordination of these separate proceedings that are pending in different district courts, before different judges, and/or on different scheduling tracks, in large part because of the sheer number of cases at issue. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F. Supp. 2d 1354, 1356 (J.P.M.L. 2014)(granting centralization after previously denying centralization noting that the number of involved actions, districts and judges had grown considerably to over 226 actions, 40 districts and 100 judges such that it would be highly difficult, if not impossible, to coordinate effectively on an informal basis); *see also In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2014)(rejecting informal coordination argument finding that "the considerable growth in the litigation over the past few months" which included 51 actions pending in 22 districts demonstrated that informal coordination would not be practicable or effective).

MDL centralization of related actions such as the ones at issue was instituted precisely for the purpose of avoiding conflicting issues and duplicative discovery, and to promote efficiency and significant financial savings, all of which would surely result if these actions are not

7

consolidated.

Lastly, the fact that almost all plaintiffs' counsel and PE manufacturers are in favor of centralization and coordination supports that economy and efficiency would be served if these actions were consolidated.

**B.   THE MOST APPROPRIATE VENUE FOR THIS LITIGATION IS THE EASTERN DISTRICT OF NEW YORK**

Assuming centralization is appropriate – which we submit that it is – the question presented then becomes one of determining the proper venue for transfer of these cases. To this end, while no one particular venue holds a specific nexus, Plaintiff submits that the most appropriate venue for this litigation would be the United States District Court for the Eastern District of New York, as supported by the PE manufacturers as well as Plaintiffs Sandra Yousefzadeh, Robyn Cronin, Chioma Ozuzu, Rachel Parker, Richard Scoffier, Archanatep Boonparn, Harold Nyanjom, Natasha Hernandez, Jordan Nelson, Regina Peralta and Kristin Depaola.[4] While neither the PE manufacturers nor the other plaintiffs supporting the Eastern District of New York have advocated for a particular judge, and while the Eastern District of New York is home to numerous jurists capable of managing this MDL, Plaintiff submits that Judge Nicholas G. Garaufis, the judge assigned to his action and one other, is a knowledgeable MDL jurist who has the experience to steer this matter on a prudent course, as is the Honorable Judge Brian M. Cogan.

---

[4] *See* Interested Party Response of Plaintiff Yousefzadeh [Dkt. 140]; Interested Party Response of Plaintiffs Cronin and Ozuzu [Dkt. 207]; Interested Party Response of Plaintiffs Rachel Parker, Richard Scoffier, Archanatep Boonparn and Harold Nyanjom [Dkt. 217]; Interested Party Response of Plaintiffs Natasha Hernandez, Jordan Nelson and Regina Peralta [Dkt. 221]; Interested Party Response of Plaintiff Kristin DePaola [Dkt. 229]; Response of Defendants [Dkt. 230].

1. **The Eastern District of New York Currently has Five Actions Pending**

As identified above, your undersigned is currently aware of five actions filed in the Eastern District of New York, two of which have been assigned to Judge Nicholas G. Garaufis. Four of the five actions have been assigned to judges presiding at the Brooklyn courthouse. This factor lends support to the Eastern District of New York, Brooklyn Division, as an appropriate venue for this MDL.

2. **The Respective Caseload and History of Speedy and Effective Resolution Favors the Eastern District of New York**

The Eastern District of New York appears to be greatly positioned to provide an efficient location for these cases. According to judicial statistics, each Eastern District of New York judge had approximately 610 civil filings for the 12-month period ending on June 30, 2023. The average length of time from filing to disposition was an extremely efficient 5.2 months.[5]

Furthermore, there are only two MDL's currently pending in the Eastern District of New York, and as the Panel recently recognized, it is a "relatively underutilized transferee district." *In re: Exactech Polyethylene Orthopedic Products Liability Litigation* (MDL-3044), 637 F.Supp.3d 1381 (J.P.M.L. 2022). Thus, your undersigned submits that the Eastern District of New York is ready and able to take on a new MDL.

3. **Judge Garaufis and Judge Cogan are Skilled Jurists with the Necessary MDL Experience to Oversee this Complex Litigation**

Judge Nicholas G. Garaufis is currently assigned to two of the five actions pending in the Eastern District of New York, and Plaintiff submits that his knowledge and MDL experience make him an appropriate jurist to oversee this MDL. Indeed, the Panel has previously found him to be an experienced and "skilled jurist who is well-versed in the nuances of complex and multidistrict

---

[5] U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023), *available at* https://tinyurl.com/ye2w25r5.

litigation" and who has the ability to steer an MDL on a prudent course. *Id.; see also In re Am. Express Anti-Steering Rules Antitrust Litig.*, 764 F. Supp. 2d 1343, 1344 (J.P.M.L. 2011). And while Judge Garaufis is currently presiding over the *Exactech* products liability MDL, said MDL is just over one year old and is relatively small when compared to other MDLs with less than 900 cases currently pending. Indeed, when considering the size of recent MDLs, namely *In Re: 3m Combat Arms Earplug Products Liability Litigation*, with over 300,000 consolidated actions and *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.* with over 50,000 consolidated actions, it would not appear that these 900 actions are overly burdensome.

Should the Panel be inclined to send this litigation to the Eastern District of New York, your undersigned submits (as we have in the past) that in addition to Judge Nicholas G. Garaufis, the Eastern District of New York has a wealth of highly competent and skilled jurists, including Judge Brian M. Cogan.

Judge Cogan has been sitting in the United States District Court since 2006 and he, like Judge Garaufis, has experience with complex MDLs, including an MDL such as this one, and has been lauded for his efficient case management in the past. By way of example, the Panel has previously assigned Judge Cogan three MDLs: (1) *In re Vitamin C Antitrust Litigation*, MDL 1738; (2) *In re Air Crash Near Peixoto de Azeveda, Brazil*, MDL-1844; and (3) *In re Bayer Corp. Combination Aspirin Prods. Marketing and Sales Practices Litig.*, MDL-2023. While presiding over these three prior MDL's, Judge Cogan effectively managed the litigations to their respective resolutions in an incredibly efficient manner.

Notably, the *Bayer Corp. Combination Aspirin Prods.* MDL that Judge Cogan oversaw involved substantially similar allegations to those at issue here. There, the plaintiffs filed class action complaints asserting causes of action for consumer fraud, breach of implied warranty and

unjust enrichment alleging that the defendants' combination aspirin products were ineffective. Similarly, here, the plaintiffs assert various causes of action against the PE manufacturers, including for consumer fraud, breach of implied warranty and unjust enrichment, and they allege that the PE manufacturers' products were ineffective. Thus, the fact that in the *Bayer Corp. Combination Aspirin Prods.* MDL Judge Cogan faced and addressed many of the same legal issues that will likely arise here lends further support to Judge Cogan as an excellent alternative and an appropriate jurist to manage this MDL if the Panel were inclined to transfer to the Eastern District of New York. In short, it could only benefit the just and efficient management of this litigation to be centralized before a Court and judge with experience in the complex legal and scientific issues accompanying this case.

In sum, numerous complex mass actions have historically been adjudicated in the Eastern District of New York, and your undersigned submits this venue appears ready to handle another. This fact is underscored by the aforementioned 5.2-month average time for disposition.

Because of the numerous judicial resources, highly competent and experienced district court judges and magistrate judges, as well as access to Court-appointed Special Masters that are readily available to any judge in the Eastern District of New York, and the exceptional Clerk's office, we submit that the Eastern District of New York would serve as an excellent transferee court.

    **4. The Eastern District of New York Is the Most Convenient and Highly Accessible Venue for All Parties and Witnesses**

New York is unequivocally one of the most central travel hubs in the nation. On this point, New York maintains three airports that are each less than 15 miles from the Eastern District of New York courthouse.[6] Additionally, Pennsylvania Station, located in midtown Manhattan, is a

---

[6] These airports include, John F. Kennedy International Airport (11.01 miles from the Eastern

major hub for Amtrak trains for the entire Eastern Seaboard. Judge Garaufis and Judge Cogan conveniently preside at the accessible Brooklyn courthouse. Downtown Brooklyn is home to a Marriot Hotel complex as well as numerous other hotels that are steps from the Eastern District courthouse.[7] Furthermore, numerous thoroughfares and at least six different subway lines provide easy transport from Manhattan to Brooklyn. The Panel has repeatedly recognized the Eastern District of New York as a convenient and easily accessible forum for transfer. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* 289 F. Supp. 3d 1332, 1334 (J.P.M.L. 2018) (the Eastern District of New York "presents a convenient and accessible forum . . . supported by both plaintiffs and defendant"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 435 F. Supp. 2d 1342, 1344 (J.P.M.L. 2006) (recognizing Eastern District of New York as "easily accessible" in light of defendants' presence and business conduct within the forum).

Additionally, the PE manufacturers support the transfer and consolidation of the pending actions into the Eastern District of New York. [Dkt. 230].[8]  *See e.g.  In Re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litig.* (finding consolidation in the Eastern District of New York appropriate where the defendant supported the Eastern District of New York as a potential venue); *In Re: Elmiron (Pentosan Polysulfate Sodium) Prods. Liab. Litig.* (finding consolidation appropriate where the defendants did not oppose consolidation within the District).

And while location of documents and witnesses have become less important given today's

---

District of New York courthouse), LaGuardia Airport (9.38 miles from the Eastern District of New York courthouse), and Newark International Airport (14.39 miles from the Eastern District of New York courthouse).

[7]  In addition, lower Manhattan (Wall Street area) has well over 10 hotels ranging from the Four Seasons to the Holiday Inn, none of which are more than three miles from the Eastern District of New York courthouse.

[8] Response of Defendants [Dkt. 230].

technology, should the Court be inclined to focus on such, PE manufacturers Pfizer and Price Chopper Foods are both located in New York making the Eastern District of New York an appropriate venue as advocated by the PE manufacturers. Additionally, at least five other PE manufacturers are headquartered in New Jersey which is very close by. *See* Response of Defendants, at p. 14. Further, at least 13 defendants' counsel have offices in New York as does your undersigned and other plaintiffs' counsel. *Id.* at pp. 14-15.

Therefore, in the interest of time, convenience, and economy, Plaintiff submits that the Eastern District of New York is undeniably one of the most appropriate forums in which these actions should be coordinated and centralized.

### C. THE DISTRICT OF NEW JERSEY IS ALSO AN APPROPRIATE VENUE FOR THIS MDL

Should the Panel be inclined to send this litigation to a District other than the Eastern District of New York, Plaintiff supports the District of New Jersey, as supported by Movants.

#### 1. The District of New Jersey Currently has 19 Actions Pending

Your undersigned is currently aware of 19 actions filed in the District of New Jersey split among 11 Judges. This factor lends support to the District of New Jersey as an appropriate venue for this MDL. *See In Re DePuy Orthopaedics, Inc.*, 753 F.Supp.2d 1378, 1380 (J.P.M.L. 2010) (transferring to the Northern District of Ohio because, among other things, several potential tag-along actions were already pending there).

#### 2. The Respective Caseload and History of Speedy and Effective Resolution Favors the District of New Jersey

The District of New Jersey would also be an efficient location for these cases. The District of New Jersey currently has 12 MDLs before it with six of them located in Newark. According to judicial statistics, each District of New Jersey judge had only 494 civil filings for the 12-month

13

period ending on June 30, 2023. The average length of time from filing to disposition was an efficient 10.8 months.[9]

### 3. The District of New Jersey is a Convenient and Highly Accessible Venue for All Parties and Witnesses

As noted above, five PE manufacturers are headquartered in New Jersey and two others are headquartered in New York. At least one PE manufacturer, Johnson & Johnson ("J&J"), has repeatedly taken the position that the District of New Jersey is an easily accessible and convenient location for MDLs, especially for them since its principal places of business is located in New Jersey. To illustrate, in *In Re Xarelto Products Marketing and Sales Practice Litigation* (MDL-2592), J&J advocated for centralization in the District of New Jersey and argued that: (1) the District of New Jersey was better suited to meet the goals of any MDL proceeding, over the venues advocated by the plaintiffs; (2) the District of New Jersey was a convenient location that had sufficient available resources to handle an MDL proceeding; (3) the District of New Jersey should be considered a strong candidate for transfer since J&J and its subsidiaries had their principal places of business located there and, thus, the District of New Jersey offered a distinct advantage of proximity to many witnesses and documents; (4) the District of New Jersey is located in a major metropolitan area that can accommodate counsel and courthouses; and (5) the relative congestion of the District of New Jersey's docket weighed in favor of transfer to the District of New Jersey.[10]

While we recognize that positions change and neither J&J nor its counsel are bound to the positions they advocated in the aforementioned MDL, centralization of this MDL to the District of New Jersey is as appropriate now as it was then – perhaps more so given the number of actions filed and the fact that many of the PE manufacturers are headquartered in New York and New

---

[9] U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023), *available at* https://tinyurl.com/ye2w25r5.
[10] Annexed hereto as Exhibit B is a copy of said response, see pp.17-20.

Jersey.

### D. THE SOUTHERN DISTRICT OF NEW YORK IS NOT AN APPROPRIATE VENUE FOR THIS MDL

As an alternative to the Eastern District of New York, the PE manufacturers have advocated for the Southern District of New York. Respectfully, Plaintiff does not believe that the Southern District of New York is an appropriate venue, especially not over the Eastern District of New York or the District of New Jersey.

First, there are no related actions currently pending in the Southern District of New York unlike all three of the transferee venues offered above.

Second, while the Southern District of New York is surely a convenient venue for your undersigned as well as the defense attorneys with offices in New York, the fact is the Southern District of New York is very busy with MDLs (13) as well as many underlying civil and criminal cases.

Third, according to judicial statistics, the time that a case is seen through to trial within the district is 47.0 months for the 12-month period ending on June 30, 2023, with the time period from filing to trial increasing from 29.8 months for the period ending on June 30, 2021, and 44.4 months for the period ending on June 30, 2022.[11]

Thus, given the docket of the Southern District of New York, as well as the above factors, it simply does not make sense to transfer this MDL to a busy courthouse where no related actions are pending.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff herein respectfully requests that the Panel grant the

---

[11] U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023), *available at* https://tinyurl.com/ye2w25r5.

present motion for consolidation and centralization via a multidistrict litigation to the Eastern District of New York, before Judge Nicholas G. Garaufis or Judge Brian M. Cogan; or in the alternative the District of New Jersey; and grant such other and further relief as it may deem just and appropriate under the circumstances.

Dated: November 2, 2023

>*/s/ Virginia E. Anello*
>Virginia E. Anello (VA-8197)
>**DOUGLAS & LONDON, P.C.**
>59 Maiden Lane, 6th Floor
>New York, New York 10038
>Ph: (212) 566-7500
>Fax: (212) 566-7501
>vanello@douglasandlondon.com
>
>*Attorneys for the Plaintiff John Coyle*