## Exhibit 1

### Docket Sheet and Complaint
### *Silva v. Reckitt Benckiser LLC, et al.*, No 1:23-cv-24112 (S.D. Fla.)

CLOSED,LMR

## U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:23–cv–24112–CMA

Silva v. Reckitt Benckiser LLC et al
Assigned to: Chief Judge Cecilia M. Altonaga
Cause: 28:1332 Diversity–Product Liability

Date Filed: 10/26/2023
Date Terminated: 10/30/2023
Jury Demand: Plaintiff
Nature of Suit: 367 Personal Injury: Health
Care/Pharmaceutical Personal Injury
Product Liability
Jurisdiction: Diversity

**Plaintiff**

**Joanne Silva**
*on behalf of herself and all others*
*similarly situated*

represented by  **Cristina M. Moreno**
Moreno
U.S. Attorney's Office
99 NE 4th Street
Miami, FL 33132
305–961–9180
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Brian Cosgrove**
Leon Cosgrove LLP
255 Alhambra Circle – 8th Floor
Miami, FL 33134
305–740–1975
Fax: 305–437–8158
Email: scosgrove@leoncosgrove.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Eduardo Leon**
Leon Cosgrove, LLC
255 Alhambra Circle
Suite 800
Coral Gables, FL 33134
305 740–1977
Email: dleon@leoncosgrove.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Reckitt Benckiser LLC**

**Defendant**

**McNeil Consumer Healthcare**

**Defendant**

**Procter & Gamble Company**

**Defendant**

**GlaxoSmithKline LLC**

**Defendant**

**Kenvue, Inc.**

**Defendant**

**Walgreens Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/26/2023 | 1 | COMPLAINT against GlaxoSmithKline LLC, Kenvue, Inc., McNeil Consumer Healthcare, Procter & Gamble Company, Reckitt Benckiser LLC, Walgreens Inc.. Filing fees $ 402.00 receipt number AFLSDC−17027274, filed by Joanne Silva. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s), # 3 Summon(s), # 4 Summon(s), # 5 Summon(s), # 6 Summon(s), # 7 Summon(s))(Leon, Derek) (Entered: 10/26/2023) |
| 10/26/2023 | 2 | Clerks Notice of Judge Assignment to Chief Judge Cecilia M. Altonaga. |
| | | Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Lisette M. Reid is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (nan) (Entered: 10/27/2023) |
| 10/27/2023 | 3 | Summons Issued as to GlaxoSmithKline LLC, Kenvue, Inc., McNeil Consumer Healthcare, Procter & Gamble Company, Reckitt Benckiser LLC, Walgreens Inc.. (nan) (Entered: 10/27/2023) |
| 10/30/2023 | 4 | Administrative Order Closing Case. Signed by Chief Judge Cecilia M. Altonaga on 10/30/2023. *See attached document for full details.* (ps1) (Entered: 10/30/2023) |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.

JOANNE SILVA, on behalf of
of herself and all others Moreno similarly
situated,

   Plaintiff,

v.

RECKITT BENCKISER LLC,
MCNEIL CONSUMER HEALTHCARE,
PROCTER & GAMBLE COMPANY,
GLAXOSMITHKLINE LLC, KENVUE, Inc. and
WALGREENS INC.,

   Defendants.

_____/

## CLASS ACTION COMPLAINT

  Plaintiff Joanne Silva ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, alleges as follows.

## INTRODUCTION

  1. Plaintiff seeks damages and equitable relief, individually and on behalf of all other Class members, for Defendants' sales of oral pharmaceutical products containing phenylephrine, a compound that Defendants marketed as a decongestant. Defendants have long known that phenylephrine does not act as a decongestant, but Defendants sold their phenylephrine-containing products as "decongestants" anyway and generated billions of dollars in sales in the last year alone.

1

2.      Phenylephrine is one of two compounds found in oral pharmaceutical products marketed as nasal decongestants. Phenylephrine is found in many popular over-the-counter oral medications that purportedly act as decongestants—the "Decongestant Products"—including such popular products produced by Defendants as Mucinex Sinus Max (Reckitt Benckiser), Sudafed PE (Kenvue /McNeil Consumer Healthcare), Tylenol Cold & Flu Severe (Kenvue/McNeil); Benadryl Allergy Plus (Kenvue/McNeil); Theraflu (GlaxoSmithKline); Nyquil Severe Cold & Flu (Procter & Gamble Company); along with more generic Decongestant Products produced and sold by Defendant Walgreens.

The other compound marketed as a nasal decongestant is pseudoephedrine, but it is only available behind the pharmacy counter because pseudoephedrine has been misused as an ingredient in illicit methamphetamine laboratories. As a result, although pseudoephedrine is an effective decongestant, purchasing it is more inconvenient for a consumer: pseudoephedrine is subject to quantity limits, may only be retrieved by a pharmacist, and then consumers are typically required to provide identification and sign their name at the pharmacy pay station.

3.      Many consumers are naturally attracted to a decongestant that they can purchase without this inconvenience. Products containing phenylephrine are available on store shelves and are easily accessible to consumers seeking a decongestant. In addition, unlike pseudoephedrine, phenylephrine-containing products are not subject to quantity restrictions and there is no requirement to provide personal information to a pharmacist. Instead, a consumer can simply grab a phenylephrine-containing product off the shelf and purchase it.

4.      Oral pharmaceutical products containing phenylephrine are popular among consumers because they offer convenient relief from the congestion that accompanies the common cold, flu, and allergies. In 2022 alone, phenylephrine-containing "decongestants" amounted to

nearly $1.8 billion in retail store sales in the United States — over three-times the amount generated by retail sales for pseudoephedrine-containing products.[1] These sales accounted for between 70-80% of the market for over-the-counter decongestants.[2]

5.　　However, unknown to the public, but known to the manufacturers in this lucrative market, oral pharmaceutical products containing phenylephrine are ineffective at relieving congestion. When taken orally, phenylephrine is no better than a placebo, or a sugar pill, and provides no relief for congestion.

6.　　Since at least 2007, scientific studies meeting modern testing standards and rigors have shown, time and again, that phenylephrine taken as an oral medication is ineffective at relieving congestion. As summarized by one pharmacist who led a study on the efficacy of phenylephrine: "If your problem is a stuffy nose and you take medicine that has phenylephrine, you will still have a stuffy nose.[3]"

7.　　However, Defendants and other drug manufactures ignored the findings of these studies, and continued to market and sell their phenylephrine-containing products as "decongestants." Despite having access to information showing that the Decongestant Products were ineffective at relieving congestion, Defendants continued charging a premium price for them

---

[1] *Oral Phenylephrine as a Nasal Decongestant in the Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic (CCABA) OTC Monograph*, at p 115-117, FDA NONPRESCRIPTION DRUGS ADVISORY COMMITTEE MEETING SEPT. 11-12 2023. https://www.fda.gov/media/171971/download (last visited Oct. 19, 2023)

[2] *Id*. at p 117.

[3] A Martínez & Allison Aubrey, *Popular nasal decongestant doesn't relieve congestion, FDA advisers say*, NPR HEALTH MORNING EDITION, SEPT. 13, 2023. https://www.npr.org/2023/09/13/1199168449/popular-nasal-decongestant-doesnt-relieve-congestion-fda-advisers-say (last visited on Oct. 19, 2023).

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

on the premise that these products offered convenient, effective relief from congestion. By doing so, Defendants captured enormous profits at the expense of unsuspecting consumers.

9.    Believing that Defendants' Decongestant Products offered relief from congestion, Plaintiff purchased these products and paid a premium price for them. Had Plaintiff known that Defendants' Decongestant Products were entirely ineffective at relieving congestion, Plaintiff would not have purchased them, or she would have paid substantially less for them.

10.    Accordingly, Plaintiff, on behalf of herself and all other purchasers of Defendants' Decongestant Products, seeks to hold Defendants accountable for their deceptions, breaches of warranties, and violations of consumer protection statutes.

## PARTIES

11.    Plaintiff Silva is a resident and citizen of Miami-Dade County, Florida. In October 2022, Silva had sinus congestion associated with a cold and purchased Sudafed PE to relieve the congestion. Sudafed PE is an oral pharmaceutical product manufactured by Defendants Kenvue/McNeil that contains phenylephrine.  Defendants Kenvue/McNeil market Sudafed PE as a decongestant. The Sudafed PE was ineffective in relieving Silva's congestion.

12.    On other occasions, Silva has also attempted to relieve the discomfort caused by congestion by purchasing other Decongestant Products, including Tylenol Cold & Flu Severe (Kenvue/McNeil), NyQuil Severe Cold & Flu (Procter & Gamble), Theraflu Severe Cold Relief (GlaxoSmithKline), and Mucinex Sinus Max (Reckitt). None of these products were effective in relieving Silva's congestion. All of Silva's relevant purchases were in Florida.

13.    Defendant Reckitt Benckiser LLC ("Reckitt") is a Delaware limited liability corporation with its headquarters and principal place of business located in Parsippany, New Jersey. Reckitt is a wholly-owned subsidiary of Reckitt Benckiser Group PLC, a public limited

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

company registered in England and Wales. Among other Decongestant Products, Reckitt manufacturers and markets Mucinex products containing phenylephrine which it claims purports to act as decongestants.

14.     Defendant Kenvue, Inc. is an American consumer health company, and formerly the consumer healthcare division of Johnson & Johnson. Kenvue is headquartered in Skillman, New Jersey. It wholly owns Defendant McNeil Consumer Healthcare. On information and belief, all assets and liabilities associated with the Decongestant Products that had been manufactured, marketed, and/or sold by Johnson & Johnson are now owned by Defendant Kenvue.

15.     Defendant McNeil Consumer Healthcare is wholly owned by Defendant Kenvue, with headquarters in Fort Washington, Pennsylvania. McNeil manufactures and markets numerous Decongestant Products, including but not limited to Sudafed PE, a purported decongestant containing phenylephrine.

16.     Defendant Walgreens, Inc. is an Illinois corporation that operates the second-largest pharmacy store chain in the United States. It is headquartered and has its principal place of business in Deerfield, Illinois. Walgreens sells generic versions of purported decongestants containing phenylephrine under a Walgreens brand.

17.     Defendant GlaxoSmithKline, LLC is a Delaware corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania. GlaxoSmithKline is a wholly-owned subsidiary of GlaxoSmithKline PLC, a public limited company registered in England and Wales. GlaxoSmithKline is a biopharmaceutical company that, among other Decongestant Products, manufactures and markets Theraflu.

18.     Defendant Procter & Gamble Company is an American multinational consumer goods corporation headquartered in Cincinnati, Ohio. Among other Decongestant Products, Procter & Gamble manufactures and markets Nyquil.

## JURISDICTION & VENUE

19.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Defendants by virtue of their transacting and doing business in this District. Defendants have each purposefully availed themselves of the benefits and protections of the Southern District of Florida by continuously and systematically conducting substantial business in Florida. Each of the Defendants markets and distributes its products in Florida.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants maintain key business operations in this district, and market and sell their products, including Decongestant Products, in this District.

## FACTUAL ALLEGATIONS

### *The Market for Decongestants*

22.     The market for pharmaceutical products that purportedly relieve nasal congestion is worth over $2 billion annually and includes over 250 products.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

23. The two leading ingredients marketed as providing relief from nasal congestion are phenylephrine and pseudoephedrine. In single-symptom pharmaceutical products, one of these two ingredients is listed as the sole active ingredient for that product. In multi-symptom pharmaceutical products, one of these two ingredients is listed as among the product's active ingredients.

24. Pseudoephedrine-containing products are effective decongestants; however, these products are subject to inconvenient regulations because these products have been misused to produce illegal methamphetamines. Even though many pseudoephedrine-containing products are available without a prescription, since 2005, federal and state laws have required that pharmacies oversee the dispensation of pseudoephedrine-containing products. These products must be maintained in locked areas behind the pharmacy counter rather than on the store shelf. In addition, these products are subject to quantity limits and purchasers must typically show pharmacy personnel a form of identification and sign a verification at the pharmacy pay station when purchasing these products, which then logs and tracks the amount of pseudoephedrine purchased by a particular customer.

25. By contrast, products containing phenylephrine are not subject to these federal and state regulations. These products are genuinely sold "over the counter" and do not require that a consumer wait at a pharmacy to obtain them. In addition, phenylephrine-containing products are not subject to quantity restrictions and there is no requirement to provide personal information to a pharmacy. Instead, a consumer seeking a decongestant can simply grab a phenylephrine-containing product off the shelf and purchase it.

26. Unsurprisingly, the best-selling "decongestants" have been the conveniently accessible phenylephrine-containing products. They account for approximately 80% of the market

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

for over-the-counter decongestants. In 2022 alone, pharmaceutical products containing phenylephrine resulted in nearly $1.8 billion in sales in the United States.

***The Truth About Phenylephrine***

27.     The problem is that phenylephrine does not provide any relief from congestion when taken orally. Although marketed and sold as a decongestant, oral pharmaceutical products containing phenylephrine provide no better relief than a placebo. Until recently, the public was unaware of these medical findings, and consumers continued purchasing these products because Defendants- who have long known that phenylephrine was ineffective- continued marketing and selling them as a decongestant.

28.     Scientists in the medical community have long-reported that phenylephrine is ineffective. As Leslie Hendeles, PharmD and Randy Hatton, PharmD succinctly stated in the Journal of Allergy and Clinical Immunology in May 2006, "Phenylephrine ... is unlikely to provide relief of nasal congestion. It has poor oral bioavailability because of extensive first-pass metabolism in the gut and liver ... Moreover, in a randomized, double blind, placebo-controlled, crossover study of 3 oral decongestants in 20 patients with chronic nasal stuffiness, phenylephrine was no more effective than placebo in reducing nasal airway resistance."[4]

29.     Scientific studies meeting modern clinical-testing standards and rigors have, time and again, shown that phenylephrine is ineffective at providing relief from congestion. These studies were brought to light on September 11 and 12, 2023, when the FDA held a non-prescription

---

[4] Leslie Handeles PharmD and Randy Hatton, Pharm D, Oral phenylephrine: *An ineffective replacement for pseudoephedrine?*, 118 J. Allergy and Clinical Immunology 1 (May 1, 2006), citing Bickerman HA. *Physiologic and pharmacologic studies on nasal airway resistance,* Presented at a conference sponsored by the Scientific Development Committee of the Proprietary Association. Washington, DC. December 8, 1971, available at https://www.jacionline.org/ article/S0091-6749(06)00633-6/fulltext#bib5.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Drug Advisory Committee Meeting to discuss the efficacy of oral phenylephrine as a nasal decongestant. During the meeting, the Advisory Committee highlighted the many studies that have shown that phenylephrine is no better than a placebo.

30.     For example, the committee described a study conducted in 2017 and 2018 to evaluate the effectiveness of an oral phenylephrine product that was sponsored by Johnson and Johnson (which at the time included Defendant Kenvue). As explained during the meeting, the results of this clinical study "suggest[ed] no beneficial effect [of phenylephrine] when compared with placebo."[5]

31.     This was hardly surprising.  In 2015, Meltzer, et al., conducted a dose-response study relating to the treatment of nasal congestion. The study subjects were given various combinations of commercially available oral phenylephrine tablets and a placebo. The "commercially available" tablet was reported in an editorial published in the same journal as the study to have been Johnson and Johnson's (now Kenvue's) Sudafed PE.[6] The results of the study were unequivocal. As the authors put it, "we failed to identify a dose for [phenylephrine] … that was significantly more effective than placebo in relieving nasal congestion."[7] As summarized by Leslie Hendeles who led a study on the efficacy of phenylephrine: "If your problem is a stuffy nose and you take medicine that has phenylephrine, you will still have a stuffy nose. "

---

[5] *See* NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 52, available at https://www.fda.gov/media/171915/download.

[6] Hatton and Hendeles, *Over the Counter Oral Phenylephrine: A Placebo for Nasal Congesion*, J. Allergy Clin. Immunol Prac. (Sept/Oct. 2015).

[7] Meltzer, et al., *Oral Phenylephrine HCl for Nasal Congestion in Seasonal Allergic Rhinitis: A randomized, Open-label, Placebo-controlled Study*, 3 J. Allergy Clin. Immunol Pract 6 (Sept/Oct 2015).  Available at    https://www.jaci-inpractice.org/action/showPdf?pii=S2213-2198%2815%2900252-4.

32. Nevertheless, Johnson & Johnson—and now freshly spun-off Kenvue—through its subsidiary Defendant McNeil continued to manufacture, market, and sell its phenylephrine products, including Sudafed PE, as "decongestants".

33. Defendants, as manufacturers of the phenylephrine-containing products, were each aware of the studies indicating that phenylephrine is ineffective as a nasal decongestant. Defendants nonetheless continued to manufacture, market, and sell their phenylephrine-containing products as decongestants. Indeed, Defendants use nearly identical packaging and branding for their pharmaceutical products containing pseudoephedrine, which is an effective decongestant, and for their pharmaceutical products containing phenylephrine, which is an ineffective decongestant.

34. Defendants' marketing and sales of phenylephrine-containing products resulted in higher profits from sales driven by unaware consumers willing to pay a premium for convenient medicines that promised to offer relief from the discomfort of congestion.

## TOLLING OF ALL APPLICABLE STATUTES OF LIMITATIONS

*Discovery Rule Tolling*

35. Plaintiff and the other Class members had no way of knowing about Defendants' deception concerning their Decongestant Products. As consumers, they reasonably believed that products marketed and sold as decongestants were capable of providing relief from congestion.

36. Within the time-period of any applicable statutes of limitations, Plaintiff and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Decongestant Products were ineffective.

37. Plaintiff and the other Class members did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge about the ineffectiveness of their Decongestant Products; nor would a

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

reasonable and diligent investigation have disclosed that Defendants concealed such information about the products' efficacy, which was only known to Plaintiff and the other Class members after the FDA decision in September 2023.

38.     For these reasons, all applicable statutes of limitations have been tolled by operation Joaof the discovery rule for the claims asserted herein.

**_Fraudulent Concealment Tolling_**

39.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time-period relevant to this action.

40.     Rather than disclosing the truth about their Decongestant Products, Defendants falsely represented that these products would relieve congestion.

**_Estoppel_**

41.     Defendants were under a continuing duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of their Decongestant Products.

42.     Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of their Decongestant Products from the public.

43.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

44.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

45. Plaintiff seeks to represent the following Classes:

> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the United States (the "Reckitt Nationwide Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Reckitt Benckiser in the State of Florida (the "Reckitt Florida Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreens, Inc. (the "Walgreens Nationwide Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Walgreens, Inc. in the State of Florida (the "Walgreens Florida Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue (the "Kenvue Nationwide Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant McNeill Consumer Healthcare/Kenvue in the State of Florida (the "Kenvue Florida Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline (the "GSK Nationwide Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant GlaxoSmithKline in the State of Florida (the "GSK Florida Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble (the "Procter & Gamble Nationwide Class").*
>
> *All persons who purchased an oral nasal decongestant containing phenylephrine manufactured by Defendant Procter & Gamble in the State of Florida (the "Procter & Gamble Florida Class").*

46. Excluded from the Classes are the Defendants, and any of the Defendants' members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and the Court staff assigned to this case.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during this litigation.

47.     This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

48.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.     *Numerosity*: Rule 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiff is informed and believes that there are hundreds of thousands of members of the Class based on the size of the market for decongestant products and Defendants' share of that market, but the precise number of Class members is unknown to Plaintiff.

50.     *Commonality and Predominance*: Rule 23(a)(2) and (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

    a.   When Defendants knew that phenylephrine was ineffective as a decongestant;

    b.   Whether Defendants sold Decongestant Products as an effective decongestant;

    c.   What measures Defendants took to conceal and misrepresent the true nature of their Decongestant Products;

    d.   Defendants' duty to disclose the true nature of their Decongestant Products;

    e.   Whether Plaintiff and the other Class members overpaid for Defendants' Decongestant Products; and

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

> f.  Whether Plaintiff and the other Class members are entitled to equitable and injunctive relief.

51.  *Typicality*: Rule 23(a)(3): Plaintiff' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above. Plaintiff suffered damages as a direct proximate result of the same wrongful practices in which Defendants engaged.

52.  *Adequacy*: Rule 23(a)(4): Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of the other members of the Class she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the Class's interests.

53.  *Declaratory* Relief: Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making declaratory relief appropriate, with respect to each Class as a whole.

54.  *Superiority*: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in managing this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments. It increases the delay and expense to all parties and the court system. By contrast, a class action is

suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CLAIMS FOR RELIEF

### COUNT ONE
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### (All Defendants)

55.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-54, as if fully set forth herein.

56.     Plaintiff brings this claim on behalf of the Nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

57.     At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose.[8]

58.     Defendants were at all times a "merchant" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

---

[8] *See* e.g., Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84- 2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75¬2-314; Mo. Rev. Stat. § 400.2- 314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382- A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2¬314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, *et seq.*; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36¬2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2¬314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314 and Wyo. Stat. § 34.1-2-314.

15

59.     The Decongestant Products are and were "goods" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

60.     Defendants were obligated to provide Plaintiff and the other Class members Decongestant Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold, and conformed to the standards of the trade.

61.     Defendants impliedly warranted that the Decongestant Products were of merchantable quality and fit for that purpose.

62.     Defendants breached their implied warranties, because their Decongestant Products were not of merchantable quality or fit for their ordinary purpose.

63.     Defendants' breaches of implied warranties were a direct and proximate cause of Plaintiff's and the other Class members' damages.

## COUNT TWO
## FRAUD BY OMISSION OR CONCEALMENT
### (All Defendants)

64.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-54, as if fully set forth herein.

65.     Plaintiff brings this claim on behalf of the Nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

66.     Defendants intentionally and knowingly falsely concealed, suppressed and/or omitted material facts including as to the standard, quality, or grade of the Decongestant Products. Due to their fraudulent conduct, Plaintiff and the other Class members have suffered actual damages.

67.     Defendants knew that oral pharmaceutical products containing phenylephrine are ineffective at providing relief from congestion.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

68.     Defendants were obligated to inform Plaintiff and the other members of the Class of the ineffectiveness of phenylephrine due to their exclusive and superior knowledge of the Decongestant Products. Plaintiff and other Class members also expressly reposed trust and confidence in Defendants because of Defendants' dealings as a healthcare entity with Plaintiff and the other Class members as their consumers.

69.     Plaintiff and the other Class members would not have purchased the Decongestant Products but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Decongestant Products, or Plaintiff and other Class members would have paid less for the Decongestant Products.

70.     Defendants knew that their concealment and suppression of material facts was false and misleading, and Defendants knew the effect of concealing those material facts.

71.     Defendants acted with malice, oppression, and fraud.

72.     Plaintiff and the other Class members reasonably relied on Defendants' knowing, affirmative, and active concealments and omissions. As a direct and proximate result of Defendants' omissions and active concealment of material facts about the Decongestant Products, Plaintiff and the other Class members suffered actual damages in an amount to be determined at trial.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(All Defendants)**

73.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-54, as if fully set forth herein.

74.     Plaintiff brings this claim on behalf of the nationwide Class or, in the alternative, the State Classes (the "Class," for purposes of this Count).

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

75.     There are no material differences in the elements of the unjust enrichment cause of action in the various states. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – (1) the defendant received a benefit from the plaintiff, and (2) it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Florida law applies to those claims.

76.     Defendants' efforts include, but are not limited to, providing point-of-sale materials and coupons to entice Plaintiff and the other Class members to purchase Decongestant Products.

77.     It would be inequitable for Defendants to insulate themselves from liability on this unjust enrichment claim by asserting that retail sales by their retailers cuts off any relationship between the Plaintiff and the Classes and Defendants because Plaintiff and the other Class members cannot seek a remedy directly from Defendants' retailers based on Defendants' sale of the Decongestant Products.

78.     Plaintiff and all other Class members conferred a benefit on Defendants by purchasing Decongestant Products.

79.     Defendants have been unjustly enriched in retaining the revenues derived from the Class members' purchases of Decongestant Products, which retention under these circumstances is unjust and inequitable. Because of Defendants' deception and misrepresentations regarding the Decongestant Products, Plaintiff and all Class members suffered injuries by paying a price premium for the Decongestant Products believing they offered effective relief from congestion.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

80. Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and all Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT FOUR
### Violation of Fla Stat. §501.204(1)
### (All Defendants)

81. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-54, as if fully set forth herein.

82. Plaintiff brings this claim on behalf of themselves and the Florida Classes (the "Class," for purposes of this Count) and against Defendants.

83. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

84. In construing FDUTPA, "due consideration and great weight shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." Fla. Stat. §501.204(2).

85. Plaintiff and the Florida Class members are "[c]onsumers" and "[i]nterested part[ies] or person[s]" as defined by FDUTPA. Fla. Stat. §501.203(6)-(7).

86. Defendants' actions, as set forth herein, occurred while engaging "[t]rade or commerce" as defined by FDUTPA. Fla. Stat. §501.203(8).

87. Defendants' conduct, as set forth herein, constitutes unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices under FDUTPA.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

88.     As alleged in more detail herein, at the time Defendants marketed and sold the Decongestant Products, they knew that the Decongestant Products were not effective at providing congestion relief.

89.     Plaintiff and the other Florida Class members were induced to purchase the Decongestant Products under the false pretense that these products offered congestion relief.

90.     Plaintiff and the other Florida Class members had no way of knowing that the Decongestant Products did not provide congestion relief.

91.     Defendants knowingly and intentionally manufactured, marketed, and sold the Decongestant Products with the intent to mislead reasonable consumers, including Plaintiff and the other Florida Class members.

92.     Defendants knew or should have known that their conduct violated FDUTPA.

93.     Defendants owed Plaintiff and the other Florida Class members a duty to disclose the true nature of their Decongestant Products, because Defendants:

(a)     possessed exclusive knowledge that they were manufacturing, selling, and distributing products throughout the United States that did not perform as advertised; and/or

(b)     intentionally concealed the foregoing from Plaintiff and the other Florida Class members.

94.     Defendants' unfair, unconscionable, or deceptive acts or practices were likely to, and did in fact, deceive ordinary, reasonable consumers, including the Florida Class members, about the quality and efficacy of the Decongestant Products, and the true value of the Decongestant Products.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

95. Defendants' violations present a continuing risk to the Florida Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

96. Defendants had an ongoing duty to all their customers to refrain from unfair, unconscionable, and deceptive acts and practices under FDUTPA.

97. All purchasers of the Decongestant Products suffered ascertainable loss and actual damages as a result of Defendants' deceptive, unconscionable, and unfair acts and practices made in the course of Defendants engaging in trade or commerce through loss of money or property at the time of purchase in form of the full or partial retail price paid for the Decongestant Products.

98. As a direct and proximate result of Defendants' violations of FDUTPA, Plaintiff and the Florida Class members have suffered an injury-in-fact and/or actual damages.

99. As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiff and the Florida Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual damages, reasonable attorneys' fees and costs, an Order enjoining Defendants' deceptive and unfair conduct, and all other appropriate relief available under FDUTPA.

100. Plaintiff, individually and on behalf of the Florida Class, seeks monetary damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgement in her favor and against Defendants, as follows:

1. Certification of the proposed Classes with Plaintiff as class representative;

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

2.      Appointment of Plaintiff's counsel as Class Counsel;

3.      Injunctive relief, including, but not limited to:

    a.  Requiring Defendants to make full disclosure of the efficacy of their Decongestant Products;

    b.  Disgorgement of their profits from the sales of their Decongestant Products;

    c.  Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

    d.  An order requiring Defendants to pay both pre- and post-judgment interest on all amounts awarded;

    e.  An award of costs and attorneys' fees; and

    f.  Such other further relief as may be appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: October 26, 2023           Respectfully submitted,

*/s/ Derek E. León*
Derek E. León
Florida Bar No.: 625507
Scott B. Cosgrove
Florida Bar No.: 161365
Cristina Moreno
Florida Bar No.: 41687
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.351.4059
Email: dleon@leoncosgrove.com
Email: scosgrove@leoncosgrove.com
Email: cmoreno@leoncosgrove.com
Email: anoonan@leoncosgrove.com
Email: eperez@leoncosgrove.com