BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE ORAL PHENYLEPHRINE MARKETING: AND SALES PRACTICES LITIGATION | MDL No. 3089 |

### INTERESTED PARTY RESPONSE OF PLAINTIFF GREG ENRIQUEZ

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiff Greg Enriquez[1] by and through counsel, responds to the *Barton* plaintiffs' Motion for Transfer of Actions pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. *See* Dkt. 1.

Plaintiff supports the motion for coordination or consolidation under 28 U.S.C. § 1407; however, Plaintiff joins with a number of other Plaintiffs in respectfully submitting that the United States District Court for the Northern District of California should be selected as the transferee district for this nationwide litigation. *See* Dkts. 140,[2] 194, 223, 231. In the alternative, Plaintiff Enriquez supports coordination or consolidation in the Eastern District of New York.

### I. INTRODUCTION

Plaintiff's class action arises out of Defendants' conduct in connection with the promoting, marketing, advertising, distributing, labeling, and/or selling of products containing phenylephrine, which is a compound that Defendants have long represented works as a

---

[1] Mr. Enriquez is the named class Plaintiff in the action styled *Enriquez, et al. v. The Procter & Gamble, Co., et al*., No. 3:23-cv-05715-TLT (N.D. Cal.) filed on November 6, 2023.

[2] Plaintiff Yousefzadeh suggested transfer to the Eastern District of New York and, in the alternative, to the Northern District of California. (Dkt. 140 at 4-7).

1

decongestant and which is used as an active ingredient in hundreds of over-the-counter, orally-administered medication products (the "Products").

Defendants promote, advertise, market, label and sell the Products to alleviate nasal congestion. Millions of people were subject to Defendants' representations and omissions, made in the course of the promotion, advertisement, marketing, distribution, labeling and selling of these Products, for help in alleviating nasal congestion.

However, for years, Defendants have known that phenylephrine is ineffective in alleviating nasal congestion when taken orally. Indeed, on or about September 12, 2023, the Federal Drug Administration, after careful study and consideration, announced publicly that phenylephrine is entirely ineffective as a treatment for nasal congestion when taken orally.[3] Despite this and despite their earlier knowledge that the Products were ineffective, Defendants continued to promote, advertise, market, label, and sell their Products with phenylephrine as effective nasal decongestant medicine.

As a proximate result of Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Plaintiff and Class members collectively suffered substantial damages based upon Defendants' knowingly false representations and omissions about the effectiveness of phenylephrine and the Products. Indeed, had Plaintiff and Class members known that the Products were entirely ineffective for the treatment of nasal congestion, they would not have purchased the Products, or would have paid substantially less for them.

---

[3] FDA Briefing Document *Efficacy of Oral Phenylephrine as a Nasal Decongestant*, Nonprescription Drug Advisory Committee Meeting September 11 and 12, 2023 ("NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph") (available at https://www.fda.gov/media/171915/download).

Numerous class actions have been filed in federal district courts across the United States against the Defendants. At bottom, these actions involve common questions of fact and law, which center on the effectiveness of the Products and Defendants' conduct relating to the marketing, promotion, labeling, distribution, and sale of the Products. *See* Dkt. 1-1 at 1; Dkt. 230 at 7.

For these reasons, Plaintiff supports the transfer of all actions as well as any tag-along cases subsequently filed involving common questions of fact or law to the United States District Court for the Northern District of California for coordinated and/or consolidated pretrial proceedings. In the alternative, Plaintiff Enriquez supports coordination or consolidation in the United States District Court for Eastern District of New York.

## II.     LEGAL STANDARD

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Such transfers are to be made when the Panel determines it will be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*

## III.    ARGUMENT

### A.     Transfer for Coordinated or Consolidated Proceedings Is Warranted

#### 1.     The Actions Involve Common Questions of Fact and Discovery

The actions currently pending rest on common factual allegations. Specifically, at the heart of all the actions at issue are the allegations that: Defendants promoted, advertised, marketed, labeled and sold the Products to alleviate nasal congestion despite knowing that the Products were ineffective at alleviating the symptoms of congestion; and, as a proximate result of

Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Mr. Enriquez, and all Plaintiffs in the actions at issue, collectively suffered substantial damages based upon Defendants' knowingly false representations and omissions about the effectiveness of phenylephrine and the Products. The complaints also allege similar legal theories and seek certification of similar classes and subclasses.

### 2. Transfer and Coordination Will Serve the "Convenience of the Parties and Witnesses" and "Promote the Just and Efficient Conduct of the Action."

Given the common issues inherent in the actions, it is clear that the actions will involve common discovery, including, but not limited to written discovery, corporate depositions, and expert witnesses. For this reason, transfer is warranted. *See, e.g., In re Gardasil Prods. Liab. Litig.,* 619 F.Supp.3d 1356, 1356-57 (J.P.M.L. 2022) ("Discovery in all cases can be expected to focus on the testing, labeling, regulatory approval, and marketing of Gardasil."); *In re: Johnson & Johnson Sunscreen Mktg., Sales Pract. and Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1413 (J.P.M.L. 2021) ("All actions can be expected to share factual questions arising from allegations that plaintiffs purchased sunscreens manufactured by J&J defendants that contained excessive amounts of benzene."); *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 330 F. Supp. 3d 1378, 1379 (J.P.M.L. 2016) ("Issues concerning the design, testing, manufacture, regulatory approval, labeling, and marketing of Zostavax are common to all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings on *Daubert* issues and other pretrial matters; and conserve the resources of the parties, their counsel and the judiciary.").

Coordination or consolidation also will reduce duplicative motion practice and reduce the risk of inconsistent rulings. *See, e.g., In re: Johnson & Johnson,* 568 F. Supp. 3d at 1413 ("Centralization offers substantial opportunity to streamline pretrial proceedings; reduce

duplicative discovery and conflicting pretrial obligations; ***prevent inconsistent pretrial rulings (particularly on such issues as common Daubert challenges and class certification motions***); and conserve the resources of the parties, their counsel and the judiciary.") (emphasis added).

### 3. Support for Coordination or Consolidation Is Overwhelming

Further support for coordination or consolidation is provided by the number of interested parties supporting transfer to one court for centralized proceedings. Indeed, the majority of interested parties support coordination or consolidation. *See* Dkt. 257 (Case ILN/1:23-cv-13796 Document 16, Document 16 at 1) (noting that as of November 2, 2023: "90 interested parties (77 plaintiffs and 13 defendants) have spoken up to support centralization" while just "[t]hree plaintiffs (represented by the same counsel and with similar complaints)" oppose inclusion of their actions in the MDL). This overwhelming support for coordination or consolidation further buttresses the motion for centralization. *See In re Interest Rate Swaps Antitrust Litig.,* 190 F.Supp.3d 1364, 1366 (J.P.M.L. 2016) (noting "[a]ll parties support centralization under Section 1407" and transferring cases for coordinated or consolidated proceedings).

### B.  The Actions Should Be Coordinated or Consolidated in the United States District Court for the Northern District of California.

There is no one single factor that determines which venue should serve as the transferee district. *See* Manual of Complex Litigation (Fourth) § 20.131 (May 2023 Update) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214–215(1977).

However, there are a number of salient factors that militated in favor of the Northern District of California as the appropriate transferee forum.

First, the judiciary in the Northern District of California has significant experience, particularly with MDL proceedings and procedure. Currently, there are seventeen pending MDLs in the Northern District of California. *See* MDL Statistics Report - Distribution of Pending MDL

Dockets by District (Oct. 16, 2023).[4] Moreover, the Northern District of California has the resources to handle this MDL. The district has twenty-three Article III Judges and an additional thirteen Magistrate Judges. *See* United States District Court, Northern District of California (https://cand.uscourts.gov/).

Second, California is, by far, the most populous state in the nation, with more than 39 million people. *See* U.S. and World Population Clock.[5] And, in a case such as this, founded upon consumer purchases of over-the-counter products, it is likely that a large number of the proposed Plaintiff class members will be located in California, making the Northern District of California a convenient forum.

Third, for those class members and counsel not located in California, the Northern District of California is located proximately to San Francisco International Airport, which experiences approximately 1,300 flights per day. Also nearby are Oakland International Airport, and San Jose International Airport, making the venue easily accessible to persons across the country.

    **C.**    **In the Alternative, the Panel Should Coordinated or Consolidate the Actions in the Eastern District of New York.**

Plaintiff Enriquez respectfully requests that, in the event the Panel does not coordinate or consolidate the actions in the Northern District of California, the Panel select the Eastern District of New York as the transferee court.

---

[4] Available at: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-16-2023.pdf.

[5] Available at: https://www.census.gov/popclock.

Like the Northern District of California, the Eastern District of New York is located in a large metropolitan area and proximately located to several major airports (John F. Kennedy International Airport, LaGuardia Airport, and Newark International Airport).

In addition, the Eastern District of New York has the experience with MDL proceedings and the resources to efficiently handle this matter. There are currently two MDL actions in the Eastern District of New York. *See* MDL Statistics Report - Distribution of Pending MDL Dockets by District (Oct. 16, 2023).[6] And, the Eastern District of New York has thirty Article III Judges and sixteen Magistrate Judges. *See* United States District Court, Eastern District of New York (https://www.nyed.uscourts.gov/judges-info). And, as Defendants note in their Response, a number of Defendants are located in or near New York. Dkt. 230 at 14.

## IV.   CONCLUSION

Accordingly, and for the foregoing reasons, Plaintiff respectfully requests an Order consolidating these Actions in the Northern District of California or, in the alternative, the Eastern District of New York.

Date: November 22, 2023

Respectfully submitted,

 /s/ Alexander E. Barnett
Alexander E. Barnett
**COTCHETT PITRE & McCARTHY, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Phone: (212) 201-6820
Fax: (917) 398-7753
abarnett@cpmlegal.com

---

[6] Available at: https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-16-2023.pdf.

Adam J. Zapala
Elizabeth T. Castillo
James G. Dallal
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

*Counsel for Plaintiff Greg Enriquez*
N.D. Cal., No. 3:23-cv-05715-TLT