**Exhibit 1**

**Docket Sheet and Complaint**

***Harrison v. Johnson & Johnson Consumer, Inc.***, No. 1:23-cv-01625 (E.D. Wis.)

ATTYOPEN

# United States District Court
## Eastern District of Wisconsin (Green Bay)
### CIVIL DOCKET FOR CASE #: 1:23-cv-01625-WCG

Harrison v. Johnson & Johnson Consumer Inc
Assigned to: Judge William C Griesbach
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 12/01/2023
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Christine Harrison**
*on behalf of herself and all others similarly
situated*

represented by **Joshua B Kons**
Law Offices of Joshua B Kons LLC
92 Hopmeadow St - Ste 205
Weatogue, CT 06089
860-920-5181
Email: joshuakons@konslaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Johnson & Johnson Consumer Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/01/2023 | 1 | COMPLAINT with Jury Demand; against Johnson & Johnson Consumer, Inc. by Christine Harrison. ( Filing Fee PAID $405 receipt number BWIEDC-4554158) (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Kons, Joshua) |
| 12/01/2023 | 2 | REQUEST for Issuance of Summons by Christine Harrison (Kons, Joshua) |
| 12/01/2023 | | NOTICE Regarding assignment of this matter to Judge William C Griesbach; Consent/refusal form for Magistrate Judge Duffin to be filed within 21 days; the consent/refusal form is available here. Pursuant to Civil Local Rule 7.1 a disclosure statement is to be filed upon the first filing of any paper and should be filed now if not already filed. (jcl) |
| 12/04/2023 | | Summons Issued as to Johnson & Johnson Consumer Inc. (jmk) |
| 12/04/2023 | | Case Opening Modifications. The following modifications have been made to your case entry: One or more party names have been modified - please remember to follow the Party Name Guidelines found on our website. Please refer to the attorney case opening instructions, the summons instructions and the party name guidelines found in the user manual for further guidance (jmk) |
| 12/15/2023 | 3 | SUMMONS Returned Executed by Christine Harrison. Johnson & Johnson Consumer Inc served on 12/8/2023. (Kons, Joshua) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/19/2023 08:57:05 | | | |
| **PACER Login:** | om002190 | **Client Code:** | 19603/0454015-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-01625-WCG |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

CHRISTINE HARRISON, on behalf of herself
and all others similarly situated,

Plaintiff,                                           Case No. 1:23-cv-1625

v.

JOHNSON & JOHNSON CONSUMER, INC.,

Defendant.

## CLASS ACTION COMPLAINT

Plaintiff, Christine Harrison, individually and on behalf of herself and all others similarly situated, brings this class action against Defendant, Johnson & Johnson Consumer, Inc. ("Defendant" or "J&J"), and alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## <u>GENERAL ALLEGATIONS</u>

1.      J&J is one of the largest manufacturers and sellers of over-the-counter consumer medications in the United States. Upon information and belief, it has spent tens of millions of dollars building its brand recognition and goodwill in the over-the-counter consumer medication industry, all in an effort to develop trust with consumers. It of offers a variety of non-prescription drugs to help alleviate cold and flu symptoms, including oral nasal decongestants.

2.      Using the trust and confidence it has built with consumers as a reputable seller of safe and effective over-the-counter medications, J&J manufactures, markets, offers for sale and sells various products which its purports to be safe and effective non-prescription medications that

1

alleviates nasal congestion. The active ingredient that J&J represents is a safe and effective means of treating nasal congestion is a chemical ingredient known as phenylephrine hydrochloride (also referred to as phenylephrine HCl).

3.    As J&J knew or should have known, phenylephrine hydrochloride's efficacy has been under scientific scrutiny since at least 2007. This scrutiny culminated in a recent unanimous determination (16-0 vote) by a Food and Drug Administration ("FDA") advisory committee in September 2023 that, based on their review of the scientific evidence presented, phenylephrine hydrochloride was no more effective as a nasal decongestant than a placebo. In other words, J&J has been selling products containing an ingredient that purported to be an effective decongestant, when in fact it knew or should have known that the ingredient was actually not effective to treat nasal congestion.

4.    Consumers, including Plaintiff, lack the scientific knowledge necessary to determine whether J&J's products containing phenylephrine hydrochloride is an effective ingredient to help treat nasal congestion. For that reason, reasonable consumers must and do rely on manufacturers like J&J to properly disclose on the packaging all material information regarding the products, including whether or not an ingredient is effective at treating a symptom.

5.    Instead of acting in good faith and with fair dealing towards consumers, J&J manufactured, marketed and sold products containing phenylephrine hydrochloride to the public with representations that phenylephrine hydrochloride was effective for treating congestion, when it fact it knew or should have known that these representations were untrue, deceptive or misleading.

6.    The acts and omissions by J&J materially caused a pecuniary loss to the Plaintiff and the proposed class through their purchase of an ineffective decongestant – when other safe and effective products were available for purchase. The Plaintiff and the class members ultimately paid

2

more for the J&J containing phenylephrine hydrochloride than the merchandise was actually worth. In addition, J&J materially caused the Plaintiff and the proposed class members injury-in-fact by causing their congestion symptoms to go untreated by taking an ingredient ineffective at treating congestion.

7.      For all the reasons set forth herein, including but not limited to J&J's misrepresentations and omissions regarding its express and implied representations that its products containing phenylephrine hydrochloride is effective at treating congestion, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of J&J's products containing phenylephrine hydrochloride, for breach of express and implied warranties, the covenant of fair dealing, and the Wisconsin deceptive trade practice act.

## THE PARTIES

8.      Plaintiff is a citizen of Wisconsin, residing in Brown County. She purchased and used a J&J product containing phenylephrine hydrochloride within the applicable statute of limitations period, most recently in September and October 2023.

9.      J&J is a New Jersey corporation with its principal place of business in Skillman, New Jersey. J&J regularly transacts business within the State of Wisconsin with distributors, retailers, the public, and consumers like the Plaintiff.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over J&J in this matter. The acts and omissions giving rise to this action occurred in the state of Wisconsin. J&J has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised,

3

distributed and/or sold products containing phenylephrine hydrochloride in this state, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiff and putative class members, which arose out of the acts and omissions that occurred in the state of Wisconsin, during the relevant time period, at which time

11.     J&J was at all relevant times engaged in business activities in the state of Wisconsin, and entered into contracts with retailers and consumers in Wisconsin.

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative class members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and J&J are citizens of different states.

13.     Pursuant to 28 U.S.C. § 1391(a), venue is proper because a substantial part of the events giving rise to the claims asserted occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because J&J conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of the Sudafed products containing phenylephrine hydrochloride in this District.

## FACTS COMMON TO ALL CLASS MEMBERS

14.     J&J is one of the largest manufacturers and sellers of over the counter (OTC) medications in the United States. J&J actively manufactures, markets, offers for sale, and sells a variety of OTC medications, including its popular Sudafed branded line of products to help treat cold and flu symptoms – including nasal congestion. Defendant sells products containing phenylephrine hydrochloride through its website, www.sudafed.com, and through various retail

4

stores, including, but not limited to, Walmart, Walgreens, CVS, Target, and a variety of regional grocery and convenience store chains.

15.     Upon information and belief, J&J spends tens of millions of dollars annually to help build and promote its goodwill and reputation as a reputable seller of OTC medications, including its Sudafed line of medications.

16.     Phenylephrine hydrochloride is listed as the active ingredient in some of J&J's products for nasal decongestion, including its Sudafed line of products. A reasonable consumer would consider J&J's use of phenylephrine hydrochloride in a medication to be an effective ingredient in treating nasal congestion.

17.     As far back as 2007, FDA advisory committees and various scientific journals and reports have been questioning the effectiveness of phenylephrine hydrochloride. Despite these doubts as to whether or not phenylephrine hydrochloride was effective at treating nasal congestion, J&J continued to manufacture, market, offer for sale, and sell products containing phenylephrine hydrochloride to the public (including under the Sudafed brand name). In 2015, further independent research was submitted to the FDA requesting the phenylephrine hydrochloride be reclassified as not effective as a nasal decongestant.

18.     In fact, in 2017 and 2018, J&J itself conducted a Phase 2 Study (Johnson and Johnson Phase 2 Study (CO-170302131230-URCT; NCT03339726) on the effectiveness of phenylephrine hydrochloride. This study was conducted by J&J in Canada during the 2017 to 2018 cold season. According to the FDA, the J&J study was the only efficacy study on phenylephrine hydrochloride since the original panel studies were conducted. According to the FDA, "the results for all treatment arms trend in a similar direction, which *suggests <u>no beneficial effect</u> of either PE*

5

*treatment when compared with placebo*."[1] (emphasis added). In other words, by the conclusion of the study in J&J in April 2018, J&J knew or should have known that the use of phenylephrine hydrochloride in connection with treating nasal congestion was no more effective than a placebo.

19.    On September 12, 2023, an advisory panel of the FDA met again to present its findings on scientific literature presented as to the effectiveness of phenylephrine hydrochloride as an oral nasal decongestant. The panel found: "[W]e have now come to the initial conclusion that orally administered PE *is not effective* as a nasal decongestant at the monographed dosage (10 mg of PE hydrochloride every 4 hours) as well as at doses up to 40 mg (dosed every 4 hours)."[2] (emphasis added).

20.    As a leading manufacturer of OTC medications containing phenylephrine hydrochloride, J&J knew or should have known of the conclusions reached in the same scientific literature reviewed by the FDA. Nonetheless, it continued to manufacture, market, offer for sale and sell OTC medications containing phenylephrine hydrochloride as the active ingredient to treat nasal congestion. J&J does not disclose or otherwise indicate on its product packaging that phenylephrine hydrochloride is ineffective at treating symptoms of nasal congestion.

21.    J&J's marketing efforts are made in an effort to offer for sale, and effect sales of, J&J products containing phenylephrine hydrochloride to treat symptoms of congestion. Consumers, including the Plaintiff and the putative class members, purchase J&J products containing phenylephrine hydrochloride to treat symptoms of congestion. However, at no time was the Plaintiff or the class members informed by J&J that (i) phenylephrine hydrochloride nasal decongestants are inferior in price and quality to other available decongestants for purchase and use

---

[1] U.S. FOOD & DRUG ADMIN., EFFICACY OF ORAL PHENYLEPHRINE AS A NASAL DECONGESTANT 53 (Sept. 12, 2023), https://www.fda.gov/media/171915/download.
[2] U.S. FOOD & DRUG ADMIN., EFFICACY OF ORAL PHENYLEPHRINE AS A NASAL DECONGESTANT 9 (Sept. 12, 2023), https://www.fda.gov/media/171915/download.

6

over the counter; or (ii) that phenylephrine hydrochloride was ineffective at treating symptoms of congestion.

22.     J&J intended for Plaintiff and class members to be deceived or misled by its misrepresentations and omissions. J&J's unfair, deceptive and misleading practices directly and proximately caused harm to Plaintiff and the class members, who ultimately paid a premium price of a product containing ineffective active ingredient, and would not have purchased or used J&J products containing phenylephrine hydrochloride had they known it was ineffective at treating congestion.

23.     The Plaintiffs and the class members not only suffered pecuniary damages for their purchase of a product containing an ineffective active ingredient, but were harmed by the purchase and use of J&J products containing phenylephrine hydrochloride by its failure to treat their congestion – resulting in a delay in care by taking a drug that has no benefit.

## PLAINTIFF'S FACTUAL ALLEGATIONS

24.     J&J offered for sale its J&J products containing phenylephrine hydrochloride to the members of the public throughout the United States, which included Wisconsin consumers. Plaintiff purchased a Sudafed product manufactured and sold by J&J containing phenylephrine hydrochloride on September 29, 2023 and October 16, 2023 in Green Bay, Wisconsin from Walmart.com to treat nasal congestion. She relied on the statements and representations contained on the labeling (both written and in image form) that the Sudafed product phenylephrine hydrochloride would treat her nasal congestion symptoms. Plaintiff further relied on J&J's goodwill and reputation as a reputable manufacturer and seller of safe and effective over-the-counter medications when making the decision to purchase the Sudafed products containing phenylephrine hydrochloride to treat nasal congestion on September 29, 2023 and October 16,

7

2023.

25.     By purchasing and using a Sudafed product containing phenylephrine hydrochloride, the Plaintiff accepted J&J's offer for purchase of a J&J product containing phenylephrine hydrochloride to treat her nasal congestion. The Plaintiff reasonably believed that the Sudafed product containing phenylephrine hydrochloride that she purchased would be effective at treating her nasal congestion.

26.     The Plaintiff used the J&J product containing phenylephrine hydrochloride, and did not experience relief from her nasal congestion symptoms, thereby causing a delay in treatment and injury-in-fact. The delay in treatment caused her congestion to worsen as the J&J product containing phenylephrine hydrochloride she took did not treat her congestion at the early stages. The Plaintiff's congestion did in fact worsen, and ultimately resulted in a visit to urgent care and has led to ongoing sinus issues because her congestion was not treated early.

27.     Had Plaintiff known that phenylephrine hydrochloride was ineffective at treating symptoms of nasal congestion, she would not have purchased the Sudafed product containing phenylephrine hydrochloride and would have purchased an alternative over-the-counter medication that contained an ingredient that was effective at treating nasal congestion. Because phenylephrine hydrochloride is ineffective at treating nasal congestion, the Plaintiff also suffered pecuniary losses and damages by purchasing a product for a higher price than the actual value of what the merchandise was actually worth given the ineffectiveness of one of its primary ingredients.

28.     The representations on the J&J labeling and packaging containing the phenylephrine hydrochloride part of the basis of the bargain in that Plaintiff attributed value to those representations and Plaintiff would not have purchased the product, or would not have purchased them on the same terms or for the same price, if she knew the representations the product's ability

8

to alleviate congestion was untrue, deceptive or misleading.

### FED. R. CIV. P. 9(B) ALLEGATIONS

29.     J&J made untrue, deceptive, and misleading statements of fact in its labeling and marketing of the J&J products containing phenylephrine hydrochloride by representing that it was effective at treating congestion. Based on the results of its own clinical Phase 2 Study (Johnson and Johnson Phase 2 Study (CO-170302131230-URCT; NCT03339726), by 2018 J&J knew or should have known that any unqualified statements and representations that phenylephrine hydrochloride was effective at treating nasal congestion were untrue, deceptive, or misleading.

30.     On October 16, 2023, the Plaintiff purchased a box of Sudafed PE Daytime and Nighttime Sinus Congestion medication for $17.94 online from Walmart.com for her personal use and not for resale, as evidenced below. This medication was delivered to the Plaintiff's home address in Green Bay, Wisconsin on October 18, 2023. Thereafter, the Plaintiff opened and used the Sudafed PE Daytime and Nighttime Sinus Congestion to help treat her nasal congestion.

31.     The Plaintiff inspected the packaging and labeling of the Sudafed PE Daytime and Nighttime Sinus Congestion on the Walmart.com website on October 16, 2023 as well as the packaging based on her September 29, 2023 purchase prior to her purchase of additional product on October 18, 2023. The Plaintiff read and understood the representations on the packaging of the medication regarding the fact that phenylephrine hydrochloride was the ingredient contained in the medication that was effective at treating nasal congestion. As discussed herein, the Plaintiff also reviewed and relied upon the statements and representations made in the imagery on the packaging that suggested or implied relief from nasal congestion. Thereafter, the Plaintiff opened and used the Sudafed PE Daytime and Nighttime Sinus Congestion to help treat her nasal congestion.

9



## Oct 16, 2023 order

Delivery                                                                    $17.94

### Delivered on Oct 18

1 item



Start a return                                         View details





32.     The front of the box of medication that the Plaintiff received and began using on or

about October 18, 2023 (as set forth above) contained clear, unqualified, unambiguous on the

12

statements on the box using the term "Phenylephrine HCI". The references to Phenylephrine HCI were followed by the term "Nasal Decongestant". The box also contained the term "Nasal Congestion" in all caps contrasted by the background, under the term "Phenylephrine HCI" and "Nasal Decongestant".

33.    The untrue, deceptive and misleading statements and representations of fact stating or implying that J&J products containing phenylephrine hydrochloride are effective as a decongestant were located on the front label of the J&J products in all caps, bold lettering that contrasts with the background of the packaging, which instantly catches the eye of all reasonable consumers, including Plaintiff and class members, at the point of sale in every transaction. The J&J products containing phenylephrine hydrochloride are available for sale and sold throughout Wisconsin through both online retailers and retailers with a physical location.

34.    J&J made written misrepresentations of fact on the front label of the J&J products containing phenylephrine hydrochloride, that the products were a nasal decongestant product, even though this fact was untrue, deceptive, and misleading, and that other effective decongestant products are available in the market. As such, J&J's representations that J&J products containing phenylephrine hydrochloride were untrue, deceptive, and misleading. Moreover, J&J omitted from the labeling of J&J products containing phenylephrine hydrochloride the fact that there are other non-prescription products available in the market that are effective decongestants. And as alleged in detail throughout this Complaint, Plaintiff read and relied on J&J's representations and omissions before purchasing the products.

35.    The front of the box also contained an image of a female model with eyes closed, and a slight smile on her face. The model's face was highlighted in red over both nasal passages, and had a white halo protruding from the back of the model's head  Taken together, the Plaintiff

13

reasonably inferred that (i) the J&J product that the Plaintiff purchased contained Phenylephrine HCI, (ii) that Phenylephrine HCI was the active ingredient in the medication that J&J was representing would treat nasal congestion, and that (iii) the model's facial expression combined with the areas highlighted on the nose in red along with the white halos coming from behind the model's head was to be reasonably interpreted as relief from the areas highlighted in red, and (iv) that by using the Sudafed product that the Plaintiff purchased that contained Phenylephrine HCI, that the Sudafed product would be effective in helping to relive the Plaintiff's nasal congestion.

36.     Even taken independently, the fact that the Plaintiff was purchasing medication containing from a reputable manufacturer and seller of safe and effective over-the-counter medication, containing phenylephrine hydrochloride combined with the imagery on the box depicting relief from nasal congestion, the imagery in and of itself constituted an untrue, deceptive and misleading statement or representation of fact which is untrue given that the ingredient J&J used in the medication - phenylephrine hydrochloride – was in fact deemed ineffective at treating nasal congestion (including J&J's own Phase 2 study). The use of this imagery was made with intent to induce the public into purchasing the product or merchandise and did in fact induce the purchase of the Sudafed product by the Plaintiff.

37.     Imagery used on packaging and labeling can be just as deceptive to consumers like the Plaintiff as the written word. For example, the tobacco industry used the Marlboro Man as image of health and independence, when in fact manufacturers and sellers of tobacco products knew or should have known that the product marketed and sold using the Marlboro Man being created dependence and severe health issues.

38.     Here, imagery on the Sudafed PE box purchased and used by the Plaintiff which suggests or implies relief from nasal congestion is untrue, deceptive and misleading because J&J

14

knew or should have known that the active ingredient for the medication in the box that J&J used to nasal congestion - phenylephrine hydrochloride – was actually ineffective at treating nasal congestion. J&J therefore knew or should have known that the Plaintiff would have no relief from her nasal congestion symptoms when using the Sudafed products that she purchased containing phenylephrine hydrochloride, and would have experienced continuing suffering from nasal congestion as a result of the purchase and use of the J&J product containing phenylephrine hydrochloride.

39.     As  result of the ineffectiveness of phenylephrine hydrochloride at treating nasal congestion, the Plaintiff and the class members ultimately paid a premium price for merchandise which had a far lower actual market value. With regard to the Plaintiff, on October 16, 2023, the Plaintiff purchased a box of Sudafed PE Daytime and Nighttime Sinus Congestion medication containing twenty (20) tablets of medication for $17.94 online from Walmart.com, as evidenced above. This equates to a price of $.897 cents per tablet for what was supposed to be effective medication at treating nasal congestion.

40.     However, the J&J product she purchased contained an ingredient that ineffective at treating nasal congestion. Therefore, the true value of the tablet of daytime pills that the Plaintiff purchased – which had phenylephrine hydrochloride as the sole active ingredient – had an actual market value of no more than the cost of the filler contained in the pill. Upon information and belief, blank placebo pills cost far less than the $.897 cents per tablet the Plaintiff paid (and likely less than $.10 cents per tablet).

41.     With regard to the nighttime tablets, in addition to phenylephrine hydrochloride, the nighttime tablets also contained an additional antihistamine ingredient called diphenhydramine HCI. As evidenced by the screenshots below, the current full retail price for a standalone product

containing diphenhydramine HCI manufactured and sold by J&J through Walmart.com as of December 1, 2023 is $24.04 for 100 tablets – which is $.2404 cents per tablet.

42.     Given that the nighttime tablets purchased by the Plaintiff contained an ingredient that J&J knew or should have known was ineffective at treating nasal congestion, and diphenhydramine HCI (the effectiveness of which is not at issue), the $.897 cents per tabled paid by the Plaintiff far exceeds the $.2404 cents per tablet that the merchandise was worth given its comparison to a standalone diphenhydramine HCI pill.





43.    In other words, the Plaintiff and the class members paid a premium price for the J&J products containing phenylephrine hydrochloride which was far above than the actual market value of the merchandise. Had the Plaintiff and the class members been properly advised by J&J about the lack of effectiveness of the J&J products containing phenylephrine hydrochloride as an ingredient to treat nasal congestion, they would not have purchased the products on the same terms or for the same price.

44.    J&J's alleged conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the J&J products containing phenylephrine hydrochloride in fact help alleviate symptoms of nasal congestion. J&J omitted from Plaintiff and class members that J&J products containing phenylephrine hydrochloride are not effective for treating nasal

17

congestion, and that other decongestant products exist in the market that contain ingredients that are effective as decongestants. Had this fact been properly disclosed to the Plaintiff, she would not have purchased the Sudafed product containing phenylephrine hydrochloride to help alleviate her nasal congestion.

45.     J&J knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, as of the filing of this Complaint, J&J has and continues to represent and state that the J&J products containing phenylephrine hydrochloride are effective oral nasal decongestant products when they are not in fact effective, and has omitted from the products' labeling the fact that there are other non-prescription products available in the market that are effective as decongestants.

46.     J&J untrue, deceptive, and misleading statements and representations of fact detailed herein, including that the J&J products containing phenylephrine hydrochloride are effective as decongestants, continuously throughout the applicable class period.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of herself and the following "Class" pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Class are defined as:

> All persons in the State of Wisconsin who purchased J&J products containing phenylephrine hydrochloride in the State of Wisconsin for personal use and not for resale during the applicable statute of limitations period.

48.     Excluded from the Class are (a) any person who purchased the J&J products containing phenylephrine hydrochloride for resale and not for personal or household use, (b) any person who signed a release of any J&J in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any J&J or any entity in which a J&J has a controlling interest, (d) any legal counsel or employee of legal counsel

18

for J&J, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

49.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

### A.     Numerosity – Federal Rule of Civil Procedure 23(a)(1)

50.     The Class members are so numerous and geographically dispersed that joinder of all Class members is impracticable. While the exact number of Class members remains unknown at this time, upon information and belief, there are thousands, if not tens of thousands, of putative Class members.

### B.     Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).

51.     Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are limited to, the following:

a)  Whether J&J made the representations that J&J products containing phenylephrine hydrochloride were effective as nasal decongestants.

b)  Whether J&J promoted the J&J products containing phenylephrine hydrochloride with false and misleading statements of fact and material omissions;

c)  Whether J&J's representations regarding phenylephrine hydrochloride as a nasal decongestant are unfair, deceptive and misleading to the reasonable consumer;

d)  Whether J&J's actions and/or omissions violate applicable laws;

e)  Whether J&J's conduct is a breach of warranty;

f)  Whether J&J's conduct is a breach of contract;

g)  Whether J&J's conduct is a breach of the implied covenant of good faith and fair dealing;

19

h)  Whether Plaintiff and putative members of the Class have suffered a loss of monies or property or other value as a result of J&J's acts, omissions, or misrepresentations of material facts;

i)  Whether Plaintiff and putative members of the Class paid a premium price for the J&J products containing phenylephrine hydrochloride;

j)  Whether J&J's was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with the J&J products containing phenylephrine hydrochloride;

k)  Whether the Plaintiff and members of the putative Class were harmed by their use of an product containing an ineffective nasal decongestant.

l)  Whether Plaintiff and members of the putative Class are entitled to monetary damages or statutory damages and, if so, the nature of such relief; and

m) Whether Plaintiff and members of the putative Class are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

**C.      Typicality – Federal Rule of Civil Procedure 23(a)(3)**

52.    Plaintiff's claims are typical of those of the absent Class members in that Plaintiff and the Class members each purchased and used the J&J products containing phenylephrine hydrochloride and each sustained damages arising from J&J's wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Class, and Plaintiff and all members of the putative Class have been similarly affected by J&J's common course of conduct alleged herein. Plaintiff and all members of the putative Class sustained pecuniary damages and personal injuries including, but not limited to, ascertainable loss arising out of J&J's sales of products containing phenylephrine hydrochloride

20

and injury suffered as a result in a delay in care caused by taking a drug with no benefit. as alleged herein.

### D.      Adequacy – Federal Rule of Civil Procedure 23(a)(4).

53.      Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and their counsel are committed to the vigorous prosecution of this action. Plaintiff does not have any conflicts of interest or interests adverse to those of putative Class.

### E.      Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)

54.      Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for J&J. Accordingly, the proposed Class satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

### F.      Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).

55.      J&J has acted or refused to act on grounds generally applicable to Plaintiff and all members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole. In particular, J&J continues to manufacture, market, distribute, offered for sale and sell J&J products containing phenylephrine

21

hydrochloride as an effective decongestant – when it is not. Injunctive and declaratory relief is the appropriate remedy to prevent this wrongdoing going forward.

### G.    Superiority – Federal Rule of Civil Procedure 23(b)(3).

56.    A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a) The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by J&J's conduct;

b) Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c) The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d) Individual joinder of all members of the Class is impracticable;

e) Absent a class, Plaintiff and members of the putative Class will continue to suffer harm as a result of J&J's unlawful conduct; and

f) This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Class can seek redress for the harm caused by J&J.

57.    In the alternative, the Class may be certified for the following reasons:

a) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for J&J;

22

b) Adjudications of claims of the individual members of the Class against J&J would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class members to protect their interests; and

c) J&J has acted or refused to act on grounds generally applicable to the members of the putative Class, thereby making appropriate final and injunctive relief with respect to the putative Class as a whole.

## CLAIMS FOR RELIEF

### COUNT ONE
### Breach of Express Warranty

58.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

59.    Plaintiff brings this cause of action on behalf of herself and the Class members.

60.    Plaintiff and Class members formed a contract with Defendant at the time Plaintiff and Class members purchased the J&J products containing phenylephrine hydrochloride. The terms of the contract include the promises and affirmations of fact made by Defendant on the packaging of the medications and through marketing and advertising, as described above.

61.    This labeling, marketing, advertising, and J&J's goodwill and as a reputable manufacturer and seller of over-the-counter medications constitute express warranties and became part of the basis of the bargain and are part of the standardized contract with Plaintiff and Class members.

62.    As set forth above, Defendant purports, through its advertising, labeling, marketing, packaging, goodwill, and reputation to create an express warranty that the J&J products containing phenylephrine hydrochloride are an ingredient that is effective at treating symptoms of nasal congestion.

23

63.     The above affirmations of fact were not qualified as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

64.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class members' decision to purchase the J&J products containing phenylephrine hydrochloride.

65.     The description of the J&J products containing phenylephrine hydrochloride which purported to be an effective nasal decongestant was part of the benefit of the bargain of the and were material to the  Plaintiff's and Class members' decision to purchase the J&J products containing phenylephrine hydrochloride. This created an express warranty that the goods containing J&J products containing phenylephrine hydrochloride as an effective decongestant shall conform to the description, and shall be an effective ingredient to treat nasal congestion.

66.     As described herein, despite being a material part of the benefit of the bargain for the Plaintiffs and the Class, the J&J products containing phenylephrine hydrochloride were not effective at treating nasal congestion.

67.     Plaintiff and Class members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy J&J products containing phenylephrine hydrochloride.

68.     Plaintiff and Class members performed all conditions precedent to Defendant's liability under this contract when they purchased J&J products containing phenylephrine hydrochloride.

69.     Defendant thereby breached the following Wisconsin express warranty laws as set forth in Wis. Stat. § 402.313.

24

## COUNT TWO
## Breach of Implied Warranty

70.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

71.    Plaintiff brings this cause of action on behalf of herself and the Class members.

72.    Defendant was in the business of always selling over-the-counter drugs relevant hereto.

73.    Plaintiff and Class members formed a contract with Defendant at the time Plaintiff and Class members purchased J&J products containing phenylephrine hydrochloride. Implied in that contract was a warranty of merchantability.

74.    The implied warranty of merchantability means and includes that the goods will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

75.    Here, the J&J products containing phenylephrine hydrochloride were labeled as nasal decongestants, but did not conform to the promises or affirmations of fact made on the container or label as phenylephrine hydrochloride is not effective at treating nasal congestion.

76.    In addition, J&J knew at the time of contracting that the Plaintiff and the class members would purchase and use the J&J products containing phenylephrine hydrochloride to help treat their nasal congestion, and that the Plaintiff and class members were relying on J&J's skill and judgement to furnish non-prescription medication that was effective at treating congestion.

77.    Defendant breached the Wisconsin implied warranty laws set forth in Wis. Stats. § 402.314 and 402.315.

**COUNT THREE**
**Breach of Implied Covenant of Good Faith in Performance of Agreement**

78.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

79.    Plaintiff brings this cause of action on behalf of herself and the Class members.

80.    Defendant was in the business of always selling over-the-counter drugs relevant hereto.

81.    Every agreement between Defendant and any consumer in Wisconsin is subject to a duty of good faith in its performance of contract under Wis. Stat. § 421.108, which requires honesty in fact in the conduct or transaction concerned and the observance of commercial reasonable standards of fair dealing.

82.    Plaintiff and Class members formed an agreement to with Defendant at the time Plaintiff and Class members purchased J&J products containing phenylephrine hydrochloride. Implied in those agreements is the covenant of good faith and fair dealing.

83.    Plaintiff and Class members Defendant reasonably believed that as a reputable seller of over-the-counter medications, the J&J products containing phenylephrine hydrochloride purporting to alleviate symptoms of nasal congestion would in fact be effective at treating nasal congestion.  J&J was required by law to act with honesty in fact with regard to whether or not the J&J products containing phenylephrine hydrochloride were effective as a decongestant.

84.    J&J breached his implied covenant by manufacturing, marketing and selling J&J products containing phenylephrine hydrochloride to the Plaintiff and the Class as a decongestant when it knew or should have known that phenylephrine hydrochloride was not an effective ingredient at treating nasal congestion. Furthermore, J&J breached this implied covenant by failing to observe commercial reasonable standards of fair dealing when it knew – based on its own studies – that phenylephrine hydrochloride was not an effective ingredient at treating nasal congestion. If

26

there was any serious question as to effectiveness, the commercial reasonable standards of fair

dealing required J&J to not market and sell, in an unqualified manner, products phenylephrine

hydrochloride as an effective decongestant.

85.    Defendant thereby breached the Wisconsin implied covenant and good faith at Wis.

Stat. § 421.108.

## COUNT FOUR
### Unjust Enrichment

86.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

87.    Plaintiff brings this cause of action on behalf of herself and the Class members.

88.    Defendant was in the business of selling over-the-counter drugs at all times relevant

hereto. It is alleged in the alternative to the extent there is no adequate remedy at law.

89.    Plaintiff and class members conferred a benefit on J&J when they purchased the J&J

products containing phenylephrine hydrochloride. By its wrongful acts and omissions described

herein, including selling the J&J products containing phenylephrine hydrochloride which did not

conform to the promises or affirmations of fact made on the label, J&J was unjustly enriched at the

expense of Plaintiff and putative Class members.

90.    Plaintiff's detriment and J&J's enrichment were related to and flowed from the

wrongful conduct challenged in this Complaint.

91.    J&J has profited from its unlawful, unfair, deceptive, and misleading practices at the

expense of Plaintiff and putative Class members under circumstances in which it would be unjust

for J&J to be permitted to retain the benefit. It would be inequitable for J&J to retain the profits,

benefits, and other compensation obtained from their wrongful conduct as described herein in

connection with selling the J&J products containing phenylephrine hydrochloride.

92.    J&J has been unjustly enriched in retaining the revenues derived from Class

27

members' purchases of the J&J products containing phenylephrine hydrochloride, which retention of such revenues under these circumstances is unjust and inequitable because J&J marketed, advertised, distributed, and sold the products, and J&J misrepresented the nature of the products, misrepresented their benefits and attributes, and knowingly marketed and promoted the products with representations that it was a decongestant – when it in fact was ineffective as a decongestant, which caused injuries to Plaintiff and the class members because they would not have purchased the products based on the same representations if the true facts concerning the J&J products containing phenylephrine hydrochloride had been known.

93.     Plaintiff and putative class members have been damaged as a direct and proximate result of J&J's unjust enrichment because they paid a price for a product containing an ineffective ingredient which was more than the actual value of the merchandise, and would not have purchased the J&J products containing phenylephrine hydrochloride on the same terms or for the same price had they known the true nature of the J&J products containing phenylephrine hydrochloride and the misstatements regarding the effectiveness of the J&J products containing phenylephrine hydrochloride as a decongestant.

94.     J&J either knew or should have known that payments rendered by Plaintiff and putative class members were given and received with the expectation that the J&J products containing phenylephrine hydrochloride representations made by J&J in advertising, on J&J's websites, and on the labels and packaging were true, accurate and complete. It is inequitable for J&J to retain the benefit of payments under these circumstances because the representations that the J&J products containing phenylephrine hydrochloride was an effective decongestant are untrue, inaccurate and incomplete.

95.     Plaintiff and putative Class members are entitled to recover from J&J all amounts

28

wrongfully collected and improperly retained by J&J.

96.     As a direct result of J&J's wrongful conduct and unjust enrichment, Plaintiff and putative Class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by J&J for their inequitable and unlawful conduct.

**COUNT FIVE**
**VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT**

97.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

98.     Plaintiff brings this cause of action on behalf of herself and the Class members.

99.     Defendants' activities consist of deceptive acts and practices in the conduct of their business.

100.     Wisconsin law prohibits a corporation like J&J from making any "representation or statement of fact which is untrue, deceptive or misleading" with the "intent to induce the public in any manner to enter into any contract or obligation relating to the purchase ... of any ... merchandise ... or service." Wis. Stats. § 100.18(1)

101.     J&J's representations and statements, both in writing and in image form, that products it manufactured or sold containing phenylephrine hydrochloride as an effective decongestant were statements of fact. J&J's representations and statements were made to the public, including the Plaintiff and class members.

102.     These representations and statements were untrue, deceptive or misleading as J&J knew or should have known that phenylephrine hydrochloride was not effective as a decongestant, or that there were serious questions and doubts as to whether or not it was effective as to render any statement or representation that it was effective as misleading.

29

103.    The representation and statements by J&J about products phenylephrine hydrochloride as an effective decongestant were a significant factor in the Plaintiff and the class members purchase of those products from J&J. The Plaintiff and class members suffered a pecuniary loss by purchasing a product that they would not have otherwise purchased, and by purchasing merchandise for a price higher than it was worth.

104.    Plaintiff and the class seek actual damages for their pecuniary losses as well as restitution, attorney's fees, and any other relief the Court may deem just or proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Class, prays for relief and judgment, including entry of an order:

1.    Declaring that this action is properly maintained as a class action, certifying the proposed Class, appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

2.    Directing that J&J bear the costs of any notice sent to the Class;

3.    Declaring that J&J must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the J&J products containing phenylephrine hydrochloride, or order J&J to make full restitution to Plaintiff's and the members of the Class;

4.    Awarding restitution and other appropriate equitable relief;

5.    Granting an injunction against J&J to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

6.    Granting an Order requiring J&J to fully and appropriately recall the products and/or to remove the claims on its website and elsewhere, any representations that the J&J

30

products containing phenylephrine hydrochloride are an effective ingredient to treat symptoms of nasal congestion;

7. Ordering a jury trial and damages according to proof;

8. Awarding Plaintiff and members of the Class compensatory and punitive damages, or statutory damages, as provided by the applicable state consumer protection statutes invoked above;

9. Enjoining J&J from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

10. Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class;

11. Awarding prejudgment interest, and punitive damages as permitted by law; and

12. Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: December 1, 2023                    Respectfully submitted,

By: /s/ Joshua Kons

Joshua B. Kons, Esq. (WI Bar No. 1063948)
LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow St., Suite 205
Weatogue, Connecticut 06089
T: (860) 920-5181
E: joshuakons@konslaw.com

James Brzezinski (WI Bar No. 1069545)
TABAK LAW, LLC
6045 N. Green Bay Avenue
Glendale, WI 53209
T: 414-351-4400
E: jim@tabakattorneys.com

*Attorneys for Plaintiff*

31